**United States District Court
Southern District of Florida
Case No. 17-22477-Civ-Williams/Torres**

| | |
|---|---|
| **Garland Creedle**,<br><br>      Plaintiff,<br><br>   v.<br><br>**Carlos A. Gimenez,** in his official capacity as Mayor of Miami-Dade County, Florida; and **Miami-Dade County,**<br><br>      Defendants. | |

**Defendants Miami-Dade County and
Carlos A. Gimenez's Motion to Dismiss**

   In this case, Plaintiff Garland Creedle alleges that, while he was in Miami-Dade County's custody on local charges for a domestic dispute, a Deportation Officer with United States Immigration and Customs Enforcement ("ICE") sent an immigration detainer to Miami-Dade County which (1) averred that there was probable cause that Mr. Creedle was a removable alien and, based on that fact, (2) requested that Miami-Dade County maintain custody of Mr. Creedle on the federal government's behalf for a period not to exceed 48 hours in order to allow ICE to assume custody. *See* D.E. 1 at 28. Mr. Creedle claims that Miami-Dade County's cooperation with that request violated his rights under the Fourth and Fourteenth Amendment because, unknown to Miami-Dade County and contrary to the representation provided by ICE, he is actually a U.S. citizen. *See id.* at ¶ 1.

   Notwithstanding the fact that these allegations, if true, identify the federal government as the sole cause of any claimed injury, Mr. Creedle chose not to bring any cause of action against the purportedly mistaken federal official or the United States. Instead, he has exclusively sued Miami-Dade County under the theory that a county policy—and not a federal misidentification—caused his injury. Miami-Dade County, however, does not now and has never had a policy or practice of knowingly detaining United States citizens at the request of federal immigration officers. On the contrary, Miami-Dade County's only policy—even under the Complaint's own allegations—is to provide the federal

1

government with cooperation on federal immigration detainers directed at removable aliens to the extent permissible by law and upon a showing of probable cause.

Simply put, these allegations, even if assumed to be true, provide Mr. Creedle with nothing more than a potential tort claim against the official who issued the immigration detainer. But, because Mr. Creedle is attempting to use this suit as a Trojan horse to mount an improper collateral attack on a policy that was not and could not be the moving force behind his alleged injury, he has sued the wrong parties, asserted the wrong claims, and requested the wrong relief.

Mr. Creedle's attempt to use the federal government's isolated misidentification as a vehicle to challenge Miami-Dade County's policy has led to several fatal errors in his Complaint. First, Mr. Creedle is foreclosed from seeking declaratory relief because he has no live controversy. Second, there can be no municipal liability under 42 U.S.C. § 1983 because an official policy that is authorized by law and that, on its face, requires compliance with the law cannot be the moving force and proximate cause of a constitutional violation. Third, the cooperation provided by Miami-Dade County is expressly allowed under both federal and Florida law and thus occurs under color of authority. Fourth, Mr. Creedle cannot advance this suit in the absence of required parties (i.e., the federal official who made the probable cause representation and the federal government who sought the County's cooperation). And fifth, Mr. Creedle cannot maintain the fiction that this action is a suit against two defendants when it is well-established that those defendants are one and the same.

## Background

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). In the exercise of that power, Congress has granted the Department of Homeland Security ("DHS") the authority to arrest aliens and detain aliens prior to removal. *See, e.g.*, 8 U.S.C. §§ 1226, 1231, 1357.[1] And, in recognition of the fact that "[c]onsultation between federal and state officials is an important feature of the immigration system," *Arizona*, 567 U.S. at 411, Congress has also authorized state and local governments to "cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). *See also* 8 U.S.C. § 1252c (authorizing state and local officials to arrest certain felons who have unlawfully returned to the United

---

[1] Although these statutes often refer to the "Attorney General," those responsibilities were transferred to the Department of Homeland Security. *See* 6 U.S.C. §§ 202, 291, 557.

2

States). This case concerns one method in which that local cooperation can be provided: an immigration detainer.

An immigration detainer is a document that "serves to advise another law enforcement agency that [ICE] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien," and it often includes a request for the local agency to cooperate in that effort. 8 C.F.R. § 287.7.[2] Ordinarily, that request asks the local law enforcement agency "to maintain custody of [the individual] for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from [the agency's] custody to allow DHS to assume custody." D.E. 1 at 28 (emphasis in original). If that request is made, the detainer form—as shown in Ex. C to the Complaint—requires the authorized immigration officer to attest that "probable cause exists that the subject is a removable alien" and note his or her basis for making that determination. *Id.*[3]

Prior to December 2013, Miami-Dade County honored all such immigration detainers. *See id.* at ¶ 31 (incorporating by reference Miami-Dade Bd. of Cty. Comm'rs, Resolution R-1008-123 (Dec. 3, 2013)).[4] In December 2013, the Miami-Dade Board of County Commissioners ("County Commission") adopted Resolution No. R-1008-13, which directed the County Mayor to implement a new policy whereby the County's Corrections Department would no longer honor immigration detainers received from ICE unless (1) the federal government agreed in writing to reimburse the County for all costs relating to compliance with such immigration detainers and (2) the subject inmate

---

[2] Pursuant to 8 C.F.R. § 287.7(b), only certain ICE officers are authorized to issue detainers. Notably, this class of officers is narrower than the class of officers authorized to serve immigration warrants and make arrests. *Compare* 8 C.F.R. § 287.7(b) *with* 8 C.F.R. §§ 287.5(c), 287.5(e)(3)-(4).

[3] Because Mr. Creedle seeks declaratory relief as part of his claims, it is important to note how immigration detainers are currently processed. Now, due to an update to ICE's detainer policy that went into effect on April 2, 2017, every immigration detainer must be accompanied by an administrative warrant issued by an authorized immigration official. *See* ICE Policy No. 10074.2: *Issuance of Immigration Detainers by ICE Immigration Officers* (Mar. 24, 2017), https://www.ice.gov/detainer-policy.

[4] Although Mr. Creedle provided a link to the resolution in his Complaint, D.E. 1 at ¶ 31, Miami-Dade County has attached a copy (hereinafter "Ex. 1") to this motion for ease of reference. In addition, this exhibit and two other soon-to-be referenced exhibits may be properly considered by the Court as part of this Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal")

had a previous conviction for a forcible felony or a pending charge of a non-bondable offense. *See* Ex. 1 at 5.

On January 26, 2017, the County Mayor issued a memorandum directing the Corrections Department to "honor all immigration detainers received from the Department of Homeland Security." *See* D.E. 1 at 18. The memorandum also noted that the County Mayor would "partner with the Board of County Commissioners to address any issues necessary to achieve this end." *Id.* In response to the County Mayor's memorandum, the County Commission called for a special meeting on February 17, 2017 and adopted Resolution R-163-17. *See id.* at ¶ 37 (incorporating by reference Miami-Dade Bd. of Cty. Comm'rs, Resolution R-163-17 (Feb. 17, 2013)).[5] Resolution R-163-17 amended the County Commission's 2013 resolution (R-1008-13) and directed the County Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County … cooperat[es] with the federal government to the extent permissible by law … [and] **continues to require the federal government to show probable cause on all immigration detainer requests**."[6] Ex. 2 at 6 (emphasis added).

On March 12, 2017, Mr. Creedle was arrested on charges of aggravated battery on a pregnant woman, a second degree felony under Fla. Stat. § 784.045. *See* Docket in Case No. F-17-004932 (Fla. 11th Cir. Ct. 2017); D.E. 1 at ¶ 45. By the time of Mr. Creedle's arrest, it had been more than 10 days since the County Commission passed Resolution No. R-163-17. Therefore, although the Complaint devotes much of its attention to the County Mayor's January 27, 2017 memorandum, *see, e.g.*, D.E. 1 at ¶¶ 36-38, 64, 75, the County policy regarding immigration detainers in effect at the time of his arrest was actually the Board's 2017 resolution amending the Board's 2013 policy and directing the County

---

[5] Although Mr. Creedle provided a link to the resolution in his Complaint, D.E. 1 at ¶ 37, Miami-Dade County has attached a copy (hereinafter "Ex. 2") to this motion for ease of reference.

[6] In his Complaint, Mr. Creedle conveniently omitted the portion of the County Commission's resolution that established, as a matter of County policy, a requirement that the federal government show probable cause on an immigration detainer as a condition for the County providing cooperation. *Compare* D.E. 1 at ¶ 37 *with* Ex. 2 at 6. Unfortunately, that was also not Mr. Creedle's only sin of omission. For example, the copy of the I-247X detainer form provided by Mr. Creedle clearly notes in the bottom-right corner that this form is "Page 1 of 3." D.E. 1 at 28. The exhibit, however, is a single page. For matters relevant to this case, the exclusion of the other two pages is notable because those pages provide a notice to the detainee in six different languages that "[i]f you believe you are a United States citizen …, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903." A complete copy of a sample I-247X is attached (hereinafter "Ex. 3").

4

Mayor to "cooperate with the federal government to the extent permissible by law … [and] to require the federal government to show probable cause on all immigration detainer requests." *See also* D.E. 1 at ¶ 32 (acknowledging that, in the absence of a mayoral veto, a resolution of the County Commission "bec[o]mes effective … ten days after its adoption"); Miami-Dade County Home Rule Charter § 2.02(A) (noting that County Mayor "shall be responsible … for carrying out policies adopted by the [County] Commission").

While Mr. Creedle was in the County's custody on local charges, the Corrections Department received an immigration detainer from ICE Deportation Officer Alexander Martinez. *See* D.E. 1 at ¶ 48. The detainer is specifically addressed to the Corrections Department, lists Mr. Creedle as its subject, and is signed by Ofr. Martinez. *Id.* at 28. The detainer also contains two important representations from Ofr. Martinez. First, the detainer advises Miami-Dade County that "DHS suspects that [Mr. Creedle] is an immigration enforcement priority because … in the judgment of a designated senior DHS official, his/her removal would serve an important federal interest." *Id.* Second, it represents that "[p]robable cause exists that [Mr. Creedle] is a removable alien" and that "[t]his determination is based on … biometric confirmation of [Mr. Creedle's] identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that [Mr. Creedle] either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* And, as a result of those factors, the detainer requested that Miami-Dade County "maintain custody of [Mr. Creedle] for a period not to exceed 48 hours beyond the time when [he] would otherwise have been released from [the County's] custody to allow DHS to assume custody." *Id.* Furthermore, there is nothing on the face of the detainer to call into question the veracity of Ofr. Martinez's representations. *See generally id.*

On March 13, 2017, Mr. Creedle posted bond on his local charges. D.E. 1 at ¶ 55. However, because (1) Miami-Dade County had received an immigration detainer by a federal official authorized under 8 C.F.R. § 287.7 to issue such forms; (2) the immigration detainer included a representation by that federal official that there was probable cause that Mr. Creedle was a removable alien; (3) federal law authorizes Miami-Dade County to "cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10); and (4) caselaw and statutes recognize that local officials can rely on the representations by fellow officers as to probable cause when offering assistance, Miami-Dade County maintained custody of Mr. Creedle to allow DHS to assume custody, D.E. 1 at ¶ 57. Then, less than 24 hours after Mr. Creedle posted bond on his local charges, "ICE officials interviewed Mr. Creedle and withdrew the detainer request."

5

*Id.* at ¶ 60. "After ICE withdrew the detainer request, Mr. Creedle was released on bond." *Id.* at ¶ 61. Thus, Mr. Creedle was only in Miami-Dade County's custody when either (1) he was arrested on local charges and had not yet posted bond or (2) there was an open request for assistance by the federal government and an averment from the federal government that there was probable cause that Mr. Creedle was a removable alien.

In his Complaint, Mr. Creedle asserts the same three claims against Miami-Dade County and the County Mayor, in his official capacity: a Fourth Amendment violation under 42 U.S.C. § 1983 (Count I); a Fourteenth Amendment violation under 42 U.S.C. § 1983 (Count II); and a state law claim for unlawful imprisonment (Count III). *See* D.E. 1 at 62-78. As to relief, he asks for (1) declaratory relief that "Mayor Gimenez's January 26, 2017 directive on immigration detainers is invalid"; (2) declaratory relief that his detention "pursuant to ICE's immigration detainer violated his Fourth Amendment right to be free from unreasonable seizure, violated his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and constituted unlawful imprisonment under Florida law"; and (3) compensatory damages, attorneys' fees, and costs. *Id.* As explained below, the relief that he seeks is improper and the claims that he asserts should be dismissed.

## Argument

### I. These allegations are not a proper basis for declaratory relief

In this case, Mr. Creedle asks this Court to provide declaratory relief in two ways: (1) "[d]eclare Mayor Gimenez's January 26, 2017 directive on immigration detainers invalid"; and (2) "[d]eclare the Defendants' detention of Mr. Creedle pursuant to ICE's immigration detainer violated his Fourth Amendment right to be free from unreasonable seizure, violated his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and constituted unlawful imprisonment under Florida law." D.E. 1 at 14. However, "declaratory relief may only be issued in the case of an 'actual controversy.' That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interest." *Emory v. Peeler*, 756 F.2d 1547, 1551 (11th Cir. 1985). Here, there is no "actual controversy" because the facts, as alleged, demonstrate that no such "continuing controversy" between Mr. Creedle and Miami-Dade County exists because: (1) the Mayor's directive is not the County's current operating policy on immigration detainers, *see* D.E. 1 at ¶ 37; (2) a new ICE policy now requires all immigration detainers to not just be supported by probable cause but also include an administrative warrant, *see supra* at fn. 3; (3) Mr. Creedle is not

6

in Miami-Dade's custody, D.E. 1 at ¶ 61; (4) the detainer request that was issued against him has been withdrawn, *id.* at ¶ 60; (5) there are no allegations that he fears this purported misidentification reoccurring; and (6) even if there were, they would be entirely conjectural.

As a result, Mr. Creedle ostensibly seeks nothing more than a declaration that his constitutional rights were previously violated under a policy and set of circumstances that are no longer in effect. That is not a proper basis for Mr. Creedle to seek declaratory relief. In fact, the Eleventh Circuit dealt with a substantively identical request for declaratory relief in *Emory*, 756 F.2d 1547, and it was denied. There, like here, the plaintiff's only allegations were "that he ha[d] been injured by [the defendant's] past conduct," and he made "no factual allegation, however, that such conduct has continued or will be repeated in the future." *Id.* at 1552. Thus, the Eleventh Circuit affirmed the dismissal of these claims and held that "[a] declaration that [defendant's] past conduct violated [plaintiff's] constitutional rights and [state] law 'would be nothing more than gratuitous comment without any force or effect.'" *Id.* (quoting *Northern Virginia Women's Medical Center v. Balch,* 617 F.2d 1045, 1049 (4th Cir. 1980)). *See also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, … they must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."); *Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1166 (11th Cir. 2012) (holding that the case becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief"); *Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury."); *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987) ("This argument, which would render any past illegal conduct subject to a declaratory judgment, is insupportable because even a favorable ruling would be of no benefit to him."). This Court should treat Mr. Creedle's request for declaratory relief similarly and grant dismissal.

### II. Miami-Dade County can provide assistance pursuant to an immigration detainer

When distilled to its essence, the crux of Mr. Creedle's Complaint is that, in his view, Miami-Dade County could not maintain custody of him for the federal government based solely on an immigration detainer. *See generally* D.E. 1 at ¶ 69. However, it is undisputed that ICE officials have the authority to detain removable aliens, enlist the cooperation of local governments to assist in that function, and, specifically, issue immigration detainers to request that assistance. *See* 8 U.S.C. § 1357, 8 C.F.R. § 287.7.

7

*See also Davila v. N. Reg'l Joint Police Bd. ("Davila I")*, 979 F. Supp. 2d 612, 635 (W.D. Pa. 2013), *opinion vacated in part on other grounds*, No. 2:13-CV-0070, 2014 WL 3735631 (W.D. Pa. July 28, 2014) ("The Court is not aware of, nor is the Plaintiff able to cite to, a case that has held that a local government entity's decision to rely on and comply with this federal regulation to be unconstitutional on its fact, and no basis has been advanced to conclude that it was unconstitutional for the Jail to abide by the immigration detainer issued here."). Furthermore, when Miami-Dade County receives a facially valid detainer request, the law does not require the County to treat that request with skepticism or doubt. On the contrary, Miami-Dade is entitled to rely on ICE's representations as to probable cause and provide the requested assistance even if it is "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985); *People v. Xirum*, 993 N.Y.S. 2d 627, 631 (N.Y. Sup. Ct. 2014) (dismissing claim that copy of actual order of removal had to be provided with detainer and holding that "the [Department of Corrections] had the right to rely upon the very federal law enforcement agency charged under the law with the identification, apprehension, and removal of illegal aliens from the United States") (internal quotation omitted). In addition, Miami-Dade County is also entitled "fill in any gaps in the account with reasonable inferences premised on [the fellow officer] acting in a constitutional manner and in good faith." *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). Thus, when presented with a facially valid detainer request, Miami-Dade County is entitled to make a reasonable inference that all appropriate procedures were followed and all necessary investigation was conducted prior to the federal officer requesting assistance and averring that there is probable cause to conclude that the subject is a removable alien.[7]

The need to allow for this level of good faith reliance is readily apparent in a jail setting where, in its capacity as a jailer, Miami-Dade County must frequently rely upon the representations made by officers from municipal, state, and federal agencies who daily bring arrestees to its doors. For that reason, precedent in this circuit provides that a jailer is not liable "if [an] error take[s] place outside of [its] realm of responsibility" and "[it] has acted reasonably and in good faith" *Bryan v. Jones*, 530 F.2d

---

[7] With specific respect to claims that a potential detainee is a U.S. citizen, Miami-Dade County has an even stronger basis to reasonably infer that those issues are thoroughly vetted because ICE has a specific procedure for investigating the potential U.S. citizenship of individuals and directs its personnel to "not lodge an immigration detainer against or arrest an individual" when there is "strong/facially credible or probative evidence of U.S. citizenship." *See* ICE Policy No. 16001.2: *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015), https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf

1210, 1215 (5th Cir. 1976).[8] *See also Davila I*, 979 F. Supp. 2d at 635 ("[T]he Plaintiff cites to no authority that places a duty on local jails to independently investigate the adequacy of the probable cause supporting immigration detainers."); *Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000) ("We agree with the district court that absent any objectively apparent lack of a basis for a detention which should arouse suspicion, a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest.").

Here, the purported error that led to Mr. Creedle's allegedly unlawful detention was a mistaken representation by a federal immigration official that there was probable cause to conclude that Mr. Creedle was a removable alien. That determination, however, took place outside of Miami-Dade County's realm of responsibility and there was no objectively apparent basis for Miami-Dade County to call that determination into question. Accordingly, even under the Mr. Creedle's version of events, Miami-Dade County acted reasonably and in good faith by relying on a facially valid federal detainer request and should, therefore, not be liable for any cause of action.

### III. Miami-Dade cannot be liable under § 1983 because its policy was not the "moving force" behind Mr. Creedle's alleged injuries

With respect to his federal claims (Counts I and II), Mr. Creedle has only asserted municipal liability claims against Miami-Dade County under 42 U.S.C. § 1983. *See* D.E. 1 at ¶¶ 62-70. In order to properly state such a claim, any plaintiff carries a considerable burden because "[t]he Supreme Court has placed strict limitations on [local government] liability under § 1983." *Tennant v. Florida*, 111 F. Supp. 2d 1326, 1331 (S.D. Fla. 2000). The most critical of those limitation is that local governments cannot be held vicariously liable for the actions of their employees when its agents or employees have caused a constitutional injury. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.");[9] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("A county's liability

---

[8] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981.

[9] Because *Monell* was the seminal decision that spawned these types of claims, municipal liability claims under § 1983 are also frequently referred to as "*Monell* claims." In this Motion to Dismiss, Miami-Dade County will use both terms interchangeably.

under § 1983 may not be based on the doctrine of respondeat superior."); *accord Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("But it is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have **itself** caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory.") (emphasis in original).

"Given the importance, under § 1983, of distinguishing between direct and vicarious liability, the [Supreme] Court repeatedly has stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation." *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987); *Monell*, 436 U.S. at 694; *Grech*, 335 F.3d at 1329; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[t]o subject a county to liability under section 1983 [a] plaintiff must show that the [claimed] constitutional violation occurred as a result of a county policy."). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Springfield*, 480 U.S. at 267 (internal quotation omitted). Thus, in order to state a § 1983 claim against Miami-Dade County, Mr. Creedle must allege that the constitutional violations that allegedly injured him were the result of either: (1) an officially promulgated County policy; or (2) an unofficial custom or practice of the County shown through the repeated acts of a final policymaker for Miami-Dade County. *See Grech*, 335 F.3d at 1329. Because Mr. Creedle's Complaint is devoted exclusively to his isolated incident, Miami-Dade County assumes that he intends to pursue *Monell* liability through the "official promulgated policy" route.

With "official policy" claims, the Supreme Court has set the bar considerably high and has usually found this standard to only be met in rare occurrences when "[t]he causal link between the municipal policy and the constitutional violation [is] readily apparent." *Kibbe*, 480 U.S. at 267. *Monell*, itself, is a prime example. There, "[t]he gravamen of the complaint was that the Board and the Department had as a matter of official policy compelled pregnant employees to take unpaid leaves of absences before such leaves were required for medical reasons." *Monell*, 436 U.S. at 661. Naturally, when analyzing whether such a policy was the moving force behind a constitutional violation, no "evidence [was] needed other than a statement of the policy by the municipal corporation, and its exercise." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality op.). But *Monell* is the easy exception to an otherwise demanding standard.

Few cases present such a clear causal connection. Instead, the Supreme Court has been far more likely to strike down an "official policy" claim as being too "tenuous," *Kibbe*, 480 U.S. at 268, or "nebulous" *Tuttle*, 471 U.S. at 822. The alleged policy in Mr. Creedle's Complaint merits either term. In this case, Mr. Creedle claims that the Mayor's January 26, 2017 directive is the "official policy" that

proximately caused his claimed unlawful detention. D.E. 1 at ¶ 64. *See Rheuark v. Shaw*, 628 F.2d 297, 305-06 (5th Cir. 1980) ("In order for a governmental unit to be liable under s 1983, the policy or custom must, however, by the very terms of the statute, be a proximate cause of the constitutional violation."). This argument fails for at least three reasons.

First, the Mayor's directive was not the relevant County policy when Mr. Creedle was held on the immigration detainer. According to his own allegations, the County Commission passed a resolution approximately one month prior to Mr. Creedle's arrest that directed the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County … cooperat[es] with the federal government to the extent permissible by law … [and] continues to require the federal government to show probable cause on all immigration detainer requests." Ex. 2 at 6. As a matter of law, the policy enacted by the County Commission overrides the Mayor's directive and is official policy for Miami-Dade County. *See Citizens for Reform v. Citizens for Open Government, Inc.*, 931 So.2d 977, 988 (Fla. 3d DCA 2006) (holding that the County Mayor's "administrative powers exist to carry out the policies adopted by the Commission. Thus, it is clear that the powers of administration must conform to the dictates and policies of the County Commission and not vice-versa.").

Second, the true proximate cause for any constitutional violation that Mr. Creedle may have suffered lies with the alleged error in identifying Mr. Creedle as a removable alien and the subsequent issuance of the immigration detainer based on that misidentification. Neither of those events were in Miami-Dade County's control, and, if neither of those events had occurred, Miami-Dade County would not have maintained custody of Mr. Creedle on behalf of the federal government. Consequently, the "moving force" behind Mr. Creedle's alleged violation was federal action not Miami-Dade County's policy. *See Davila v. United States* ("*Davila II*"), ___ F. Supp. 3d ____, 2017 WL 1162912, at *8 (W.D. Pa. Mar. 28, 2017) ("[T]he weight of authority demonstrates that a detention solely based upon an immigration detained issued at the behest of a federal immigration officer is attributable to ICE.").

Third, on a more fundamental level, a policy that simply provides that Miami-Dade County will "cooperate with the federal government to the extent permissible by law" is not only facially constitutional it is also far too general to serve as the proximate cause for any of Mr. Creedle's alleged constitutional violations. If this "policy" were to be a sufficient causal link for *Monell* liability, then there would be no limit to municipal liability because every constitutional violation could be tenuously tied back to a policy. *See Tuttle*, 471 U.S. at 823 ("[S]ome limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell*

will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal officer."); *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791–92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *City of Springfield,* 480 U.S. 257, 267-268 ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate Monell's distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's own constitutional violations."). Simply put *Monell* liability may only attach to the actions that the policy intended to occur, not for the actions that the policy reasonably failed to foresee.

### IV. Mr. Creedle's allegations do not establish that Miami-Dade County is deliberately indifferent to his constitutional rights

In addition to establishing that an official policy was the proximate cause for his alleged constitutional violation, there is another element that Mr. Creedle must establish in order to state a *Monell* claim: he must show that Miami-Dade County's policy constituted deliberate indifference to his constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). For purposes of municipal liability, deliberate indifference has been defined as "a strong likelihood rather than a mere possibility that [a constitutional violation] will occur … and will not be found to exist in the face of negligence only." *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). By design, that is a high mark to reach and Mr. Creedle's Complaint comes up glaringly short. First, the County's policy, on its face, denotes a concern and desire to avoid even the mere possibility of a constitutional violation. Specifically, it directs the County Mayor to cooperate with the federal government to "the extent permissible by law and upon a showing of probable cause." Ex. 2 at 6. Second, the events in the Complaint demonstrate that Mr. Creedle was released immediately after interviewing with ICE officials and having his detainer withdrawn. *See* D.E. 1 at ¶ 60. Mr. Creedle also does not allege that Miami-Dade County ignored any readily apparent objective information that would have rendered its continued reliance on the facially valid detainer form to be unreasonable. Consequently, there is

nothing in the Complaint—other than Mr. Creedle's own conclusory allegations—to support a finding that Miami-Dade County was deliberately indifferent to Mr. Creedle's constitutional rights.

### V. Miami-Dade County cannot be liable under § 1983 because, under federal law, honoring immigration detainers is an act under color of federal authority

Ordinarily, 42 U.S.C. § 1983 is the proper vehicle to impose liability on a local government or its employees when they are the cause of an alleged constitutional violation. That is so because, when a local government or its employees act, they typically do so "under color of [state authority]" and thereby satisfy an essential element for a § 1983 claim. However, this case presents a unique circumstance because the same federal law that authorizes state and local governments to "otherwise cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" also states that "[a]n officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting **under color of Federal authority**." 8 U.S.C. § 1357(g)(8), (10) (emphasis added). Thus, when Miami-Dade County and its employees provide cooperation in the identification, apprehension, and detention of removable aliens through its honoring of immigration detainers, it does so under color of federal authority and cannot be liable for those actions under § 1983. *See* 42 U.S.C. § 1983 (requiring that the relevant "deprivation of rights, privileges or immunities" occur "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Colombia"). As a result, the federal claims against Miami-Dade County should be dismissed. *See Arias v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, No. CIV. 07-1959 ADMJSM, 2008 WL 1827604, at *13–14 (D. Minn. Apr. 23, 2008) (dismissing § 1983 claims based on finding that "Congress's statutory directive in § 1357(g)(8) is clear" and, therefore, "the City Defendants were acting under color of federal authority."); *Santos v. Frederick Cty. Bd. of Comm'rs.*, No. L-09-2978, 2010 WL 3385463, at *3 (D. Md. Aug. 25, 2010) (holding that local law enforcement officers "were acting under the color of federal law and [could] not be sued under § 1983" when they cooperated in the enforcement of immigration law even in the absence of a formal agreement). *Accord Buonocore v. Harris,* 65 F.3d 347, 359 (4th Cir. 1995) (quoting district court's statement that "because [deputy sheriff] was acting pursuant to federal authority, he took on the rights and obligations of a federal officer"); *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir. 1976) (stating that "the mere assertion that one is a state officer does not necessarily mean that one is acting under color of state law").

### VI. Mr. Creedle Does Not Allege a Proper False Imprisonment[10] Claim under Florida Law

In his Complaint, Mr. Creedle asserts a state law claim of false imprisonment against Miami-Dade County. *See* D.E. 1 at ¶¶ 71-78. To state a cause of action for false imprisonment, the plaintiff must establish four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006)). Mr. Creedle attempts to satisfy these elements by alleging that (1) "Defendants lacked a warrant to detain him and had no authority to make a warrantless arrest" and (2) "Defendants were not empowered under Florida law or any other authority to detain Mr. Creedle based on a civil immigration detainer." *Id.* at ¶¶ 69, 72. However, in drawing this conclusion, Mr. Creedle ignores the statutes and precedent that doom his assertion.

Even under Mr. Creedle's own allegations, Miami-Dade County had the requisite "legal authority or 'color of authority'" to cooperate with federal immigration officials and maintain custody of him for a brief period so as to allow DHS to assume custody. To wit, the immigration detainer, which Mr. Creedle attached to his Complaint, *see* D.E. 1 at 28, provides Miami-Dade County with all the necessary legal authority or color of authority to defeat this claim. That legal authority is doubly backed by both federal and state law.

Looking first to federal law, ICE has the authority to arrest and detain aliens prior to removal. *See, e.g.*, 8 U.S.C. §§ 1226, 1231, 1357. Under the corresponding federal regulations, Ofr. Martinez was authorized to issue detainer forms and request assistance from Miami-Dade County in the execution of those duties. *See* 8 C.F.R. § 287.7. And, under those same federal laws, Miami-Dade County is not only authorized to provide the requested cooperation; it is to be treated as "acting under color of Federal authority" when it does. 8 U.S.C. § 1357(g)(8). *See also Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591, 593 (Fla. 4th DCA 2008) (stating that when an inmate subject to a detainer request "posts bond … he will be released from state custody and then booked on [a] federal immigration detainer"

---

[10]  Although Mr. Creedle has styled this cause of action as one for "unlawful imprisonment," this claim is more often referred to as a claim for "false imprisonment," even in the cases cited in his Complaint. *See, e.g., City of Hialeah v. Rehm*, 455 So.2d 458 (Fla. 3d DCA 1984). To avoid any confusion between the language in these opinions and the analysis in this motion, Miami-Dade County will refer to Count III as one for "false imprisonment."

14

whereby "the sheriff will not be holding [him] pursuant to state authority but pursuant to federal authority"). Thus, there was certainly requisite authority under federal law for Miami-Dade County to honor a facially valid immigration detainer averring that there was probable cause that Mr. Creedle was a removable alien.

Now, turning to state law, Mr. Creedle incorrectly asserts that Miami-Dade County's potential liability under state tort law rises or falls depending on whether its offer of assistance was authorized under Fla. Stat. § 901.15, D.E. 1 at ¶ 72. That statute simply provides the circumstances under which a law enforcement officer may conduct a warrantless arrest for a state crime. *See* Fla. Stat. § 901.15. It does not, however, govern how (and under what circumstances) a jailer may offer assistance to federal immigration officials in the performance of their duties. For that question, there are two statutes of note. First, Florida law expressly provides for County jails to detain individuals on behalf of the federal government. Fla. Stat. § 950.03 states:

> The keeper of the jail in each county within this state **shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States** and shall safely keep each prisoner according to the warrant or precept for such commitment until he or she is discharged by due course of law of the United States.

(emphasis added). In this case, the immigration detainer provided to Miami-Dade County by Ofr. Martinez requested that the County maintain custody of Mr. Creedle, who was already in its charge, under the authority of the United States for a period not to exceed 48 hours and, when ICE withdrew the detainer before that time period expired, Mr. Creedle was released. *See* D.E. 1 at ¶¶ 60-61. These allegations are perfectly in line with the requirements under Fla. Stat. § 950.03. Second, as a more general matter, Florida law not only allows for assistance to be provided to law enforcement officers when arresting subjects, it also immunizes those who offer assistance from civil liability. *See* Fla. Stat. § 901.18 ("A person commanded to aid a peace officer … shall not be civilly liable for any reasonable conduct in rendering assistance.").[11] Here, all that Mr. Creedle has alleged is that Miami-Dade County engaged in reasonable conduct to render assistance to DHS based upon their representations that (1)

---

[11] There is at least one federal analogue to this state statute. 19 U.S.C. § 507 provides: "Any person other than an officer or employee of the United States who renders assistance in good faith upon the request of a customs officer shall not be held liable for any civil damage as a result of rendering of such assistance if the assisting person acts as an ordinary, reasonably prudent person would have acted under the same or similar circumstances." *See also Gonzales v. FedEx Ground Package System, Inc.*, Case No. 12-cv-80125, 2013 WL 12080223 (S.D. Fla. Aug. 1, 2013) (applying immunity under 19 U.S.C. § 507 to assistance provided to ICE during an "immigration raid")

15

"[p]robable cause exists to conclude that [Mr. Creedle] is a removable alien" and that (2) Mr. Creedle "is an immigration enforcement priority because …in the judgment of a designated senior DHS official, [his] removal would serve an important federal interest." D.E. 1 at 28. As a result, the immunity from civil liability provided under Fla. Stat. § 901.18 applies.

To the extent that Mr. Creedle argues that this conduct could not have been reasonable because, ultimately, it allegedly led to the accidental detention of a U.S. citizen, that argument does not find support under prevailing precedent. In fact, when confronted with this scenario, state courts have held that a jailer is entitled to rely upon the document provided by the official initiating the seizure and accept it as valid provided that the document is "regular on [its] face and issued by a legal body having authority to issue [them]." *Andrews v. Florida Parole Comm'n*, 768 So. 2d 1257, 1263 (Fla. 1st DCA 2000). Here, neither of those factors are in dispute and, therefore, the state law claim for false imprisonment should be dismissed.

### VII. Mr. Creedle Failed to Include an Indispensable Party

Mr. Creedle alleges that he was unlawfully detained pursuant to an immigration detainer issued by a federal immigration official that mistakenly took him for a removable alien when he is, in fact, a US citizen. *See* D.E. 1 at ¶ 1. That immigration detainer was issued, and can only be issued, by an authorized federal official. When a local government, such as Miami-Dade County, agrees to honor the detainer's request, federal law provides that the local government's actions are "subject to the direction and supervision of [DHS]" and the local government is "considered to be acting under color of Federal authority." 8 U.S.C. § 1357(g)(3), (8). In short, federal law requires that the claims underlying this case center on federal action rather than a county policy.

Nevertheless, Mr. Creedle brought no claims against the federal parties in interest and exclusively asserted claims against Miami-Dade County that challenge its policy of cooperating with federal officials on immigration detainers to the extent consistent with the law and upon a showing of probable cause. Because the claims brought by Mr. Creedle originate from and center on federal action by federal parties this case may not proceed without the presence of the federal officials.[12]

---

[12] Prior to filing this motion, undersigned counsel conferred with counsel for Mr. Creedle and asked if they would be amenable to amending the complaint to include a federal defendant in this suit. That request was respectfully rejected.

16

Under Fed. R. Civ. P. 12(b)(7), a complaint should be dismissed when it "fail[s] to join a party under Rule 19." Under Rule 19:

> A person who is subject to service of process … must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

When deciding whether Rule 19 applies in a given case, "the court must [first] ascertain … whether the person in question is one who should be joined if feasible." *Challenge Homes Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). And, it is "pragmatic concerns, especially the effect on the parties and the litigation [that] control this analysis." *Fla. Wildlife Federation, Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1316 (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003)).

Here, Mr. Creedle seeks to hold Miami-Dade County—and no one else—liable for compensatory damages based upon an alleged misidentification by a federal official. The pragmatic concerns with this proceeding without such federal official are threefold. First, it may hinder the court's ability to "accord complete relief" because the proximate cause for the alleged harm is not in the litigation. Fed. R. Civ. P. 19. Second, it could leave Miami-Dade County "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" because it is currently the sole defendant even though it was acting under the authority and subject to the direction of a non-party. *Id.* Third, the individual with the best knowledge as to the basis for the detainer's probable cause determination—Ofr. Martinez—is currently a non-party and, therefore, Miami-Dade County's ability to provide a defense would be prejudiced.

Similarly, Mr. Creedle's request for declaratory relief, if it were granted notwithstanding its mootness, would potentially compromise the cooperation between Miami-Dade County and the federal government on immigration detainers without any input from the federal government even though such cooperation "is an important feature of the immigration system," *Arizona*, 567 U.S. at 411. *See Fla. Wildlife Federation, Inc.*, 859 F.3d at 1317 (finding party to be indispensable because "any adjudication of the Corps's liability or the scope of its authority has the potential to carve a jagged line through the cooperative arrangements that the Corps and the Water District use to implement the Project"); *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) ("When an interest of the federal government is involved in a suit and a judgment cannot be rendered without affecting

that interest, the government must be made a party to the action."). Based on Mr. Creedle's allegations, resolution of that issue may require this Court to resolve matters pertaining to the constitutionality of immigration detainers writ large and, if so, the federal government would be unquestionably aggrieved by any ruling without being a party to the suit or even, at a minimum, being provided the requisite notice under Fed. R. Civ. P. 5.1.[13]

For all these reasons, this Court should find that the federal official issuing the detainer and the United States are required parties under Rule 19(a) and this Court should either (1) dismiss this matter without prejudice and grant Mr. Creedle leave to include the proper, necessary parties in an amended complaint, or (2) order that these required parties be joined in this matter under Fed. R. Civ. P. 19(a)(2).

### VIII. The Redundant Claims against Mayor Gimenez, in his Official Capacity, Should Be Dismissed

It is axiomatic that "[w]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. .... Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (footnote, citations, and internal marks omitted). *See also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Penley v. Eslinger* 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted); *Snow ex rel. Snow v. City of Citronelle, AL,* 420 F.3d 1262, 1270 (11th Cir. 2005) (similar). Nevertheless, Mr. Creedle has named the same defendant twice in his Complaint: once as Miami-Dade County and once again as Carlos A. Gimenez, in his official capacity as Mayor of Miami-Dade County. *See* D.E. 1 at ¶¶ 7-9. Mr. Creedle raised the exact same allegations and asserted the exact same three causes of action against either of these named defendants. *See id.* at ¶¶ 62-78. The reason no unique claim against either defendant exists is simple: Miami-Dade County and Mayor Gimenez, in his official capacity, are, as a matter of law, the same entity.

When confronted with similar situations, courts in this Circuit have routinely deemed suits against both a local government official in his official capacity and the entity of which the officer is an agent

---

[13]   These concerns are further exemplified by the federal government's recent filing in this matter where it states that it "may have an interest in [this] litigation" and will "consider filing an appropriate pleading." D.E. 9 at 2.

to be redundant, and dismissed the official-capacity claims against the individual defendant on that basis. *See, e.g., Abusaid v. Hillsborough County Bd. of County Com'rs,* 405 F.3d 1298, 1302 n. 3 (11th Cir. 2005) (explaining that where plaintiff named county and county fire marshal in his official capacity as separate defendants, only the fire marshal's employer—the county—was proper party); *Busby,* 931 F.2d at 776 ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.").[14] Thus, although Mr. Creedle seeks to treat Miami-Dade County and Mayor Gimenez as two separate defendants, caselaw commands that this Court do otherwise and dismiss the claims against Mayor Gimenez as redundant.

## Conclusion

Accordingly, the claims against Miami-Dade County and Mayor Carlos Gimenez, in his official capacity, should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: July 25, 2017

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Michael B. Valdes*
Michael B. Valdes
Assistant County Attorney
Florida Bar No. 93129
Phone: (305) 375-5151
Fax: (305) 375-5634
E-Mail: mbv@miamidade.gov

---

[14] State courts evaluating state law claims have given similar treatment to this form of redundant pleading. *See, e.g., DeArmas v. Ross,* 680 So.2d 1130, 1131-32 (Fla. 3d DCA 1996).

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on August 18, 2017 on all counsel or parties of record in the manner indicated on the Service List below.

/s/ *Michael B. Valdes*
Assistant County Attorney

## Service List

**Counsel for Plaintiff**

Rebecca Sharpless
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Telephone: (305) 284-3576
E-mail: rsharpless@law.miami.edu

Ira Kurzban, Edward Ramos, and Ian Shaw
Kurzban Kurzban Weinger Tetzeli & Pratt P.A
2650 SW 27th Avenue, Second Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Telephone: (305) 444-3503

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone: (813) 288-8390
E-mail: akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (305) 786-363-2700
Fax: (786) 363-1448
E-mail: nabudu@aclufl.org

*Electronic Service*

**Counsel for Defendants**

Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Fax: (305) 375-5634
E-mail: mbv@miamidade.gov
       orosent@miamidade.gov

*No service necessary*