OFFICIAL FILE COPY
CLERK OF THE BOARD
OF COUNTY COMMISSIONERS
MIAMI-DADE COUNTY, FLORIDA

# MEMORANDUM

Agenda Item No. 11(A)(10)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairwoman Rebeca Sosa and Members, Board of County Commissioners | **DATE:** | December 3, 2013 |
| **FROM:** | R. A. Cuevas, Jr. County Attorney | **SUBJECT:** | Resolution directing the Mayor to implement policy on responding to detainer requests from the United States Department of Homeland Security Immigration and Customs Enforcement Resolution No. R-1008-13 |

The accompanying resolution was prepared and placed on the agenda at the request of Co-Prime Sponsors Commissioner Jean Monestime and Commissioner Sally A. Heyman, and Co-Sponsors Commissioner Audrey M. Edmonson and Commissioner Juan C. Zapata.

R. A. Cuevas, Jr.
County Attorney

RAC/smm

/



# MEMORANDUM
(Revised)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairwoman Rebeca Sosa<br>and Members, Board of County Commissioners | **DATE:** | December 3, 2013 |
| **FROM:** | R. A. Cuevas, Jr.<br>County Attorney | **SUBJECT:** | Agenda Item No. 11(A)(10) |

Please note any items checked.

_____  "3-Day Rule" for committees applicable if raised

_____  6 weeks required between first reading and public hearing

_____  4 weeks notification to municipal officials required prior to public hearing

_____  Decreases revenues or increases expenditures without balancing budget

_____  Budget required

_____  Statement of fiscal impact required

_____  Ordinance creating a new board requires detailed County Mayor's report for public hearing

_____  No committee review

_____  Applicable legislation requires more than a majority vote (i.e., 2/3's \_\_\_\_, 3/5's \_\_\_\_, unanimous \_\_\_\_) to approve

_____  Current information regarding funding source, index code and available balance, and available capacity (if debt is contemplated) required

| | |
|---|---|
| Approved _____ Mayor | Agenda Item No. 11(A)(10) |
| Veto      _____ | 12-3-13 |
| Override _____ | |

RESOLUTION NO. R-1008-13

RESOLUTION DIRECTING THE MAYOR OR MAYOR'S DESIGNEE TO IMPLEMENT POLICY ON RESPONDING TO DETAINER REQUESTS FROM THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY IMMIGRATION AND CUSTOMS ENFORCEMENT

**WHEREAS,** the United States Department of Homeland Security Immigration and Customs Enforcement ("Immigration and Customs Enforcement") issues immigration detention requests, known as Detainers, to local criminal justice agencies, including Miami-Dade Corrections and Rehabilitations Department; and

**WHEREAS,** Immigration and Customs Enforcement Detainers are issued to Miami-Dade Corrections and Rehabilitation requesting that the County hold the inmate until Immigration and Customs Enforcement can assume custody of the inmate, up to forty-eight (48) hours after the inmate's local charges have resolved; and

**WHEREAS,** Miami-Dade County has previously honored all such Immigration and Customs Enforcement Detainers regardless of the charges or reasons for the Detainer requests; and

**WHEREAS,** Immigration and Customs Enforcement issued 3,262 Detainers to Miami-Dade Corrections and Rehabilitation Department in 2011; and

**WHEREAS,** 57 percent of the Detainers issued by Immigration and Customs Enforcement to Miami-Dade Corrections and Rehabilitation Department in 2011 involved inmates not charged with felonies; and

Agenda Item No. 11(A)(10)
Page No. 2

**WHEREAS,** compliance with Immigration and Customs Enforcement Detainers cost the taxpayers of Miami-Dade County $1,002,700 in 2011; and

**WHEREAS,** Immigration and Customs Enforcement issued 2,499 Detainers to Miami-Dade Corrections and Rehabilitation Department in 2012; and

**WHEREAS,** 61 percent of the Detainers issued by Immigration and Customs Enforcement to Miami-Dade Corrections and Rehabilitation Department in 2012 involved inmates not charged with felonies; and

**WHEREAS,** compliance with Immigration and Customs Enforcement Detainers cost the taxpayers of Miami-Dade County $667,076 in 2012; and

**WHEREAS,** the federal government does not directly reimburse Miami-Dade County for costs of compliance with Immigration and Customs Enforcement Detainers; and

**WHEREAS,** a record 409,849 people were deported from the United States during the fiscal year ending 2012; and

**WHEREAS,** nearly a quarter of the total deportations between July 2010 and the end of September 2012 involved parents of children who are United States citizens; and

**WHEREAS,** the County Attorney has recently opined that Immigration and Customs Enforcement Detainers are merely requests which may be declined by Miami-Dade County (a copy of which is attached hereto); and

**WHEREAS,** many municipalities and counties around the country, including New York City, the City of Los Angeles, the City of Chicago, and Washington, D.C., have implemented policies establishing criteria to determine whether and under what circumstances Immigration and Customs Enforcement Detainers will be honored; and

Agenda Item No. 11(A)(10)
Page No. 3

WHEREAS, a policy of blanket compliance with Immigration and Customs Enforcement Detainers could undermine trust between local police officers and the immigrant community of Miami-Dade County,

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA, that the Mayor or Mayor's designee is directed to implement a policy whereby Miami-Dade Corrections and Rehabilitations Department may, in its discretion, honor detainer requests issued by United States Immigration and Customs Enforcement only if the federal government agrees in writing to reimburse Miami-Dade County for any and all costs relating to compliance with such detainer requests and the inmate that is the subject of such a request has a previous conviction for a Forcible Felony, as defined in Florida Statute section 776.08, or the inmate that is the subject of such a request has, at the time the Miami-Dade Corrections and Rehabilitations Department receives the detainer request, a pending charge of a non-bondable offense, as provided by Article I, Section 14 of the Florida Constitution, regardless of whether bond is eventually granted.

The Co-Prime Sponsors of the foregoing resolution are Commissioner Jean Monestime and Commissioner Sally A. Heyman, and the Co-Sponsors are Commissioner Audrey M. Edmonson and Commissioner Juan C. Zapata. It was offered by Commissioner **Lynda Bell**, who moved its adoption. The motion was seconded by Commissioner **Esteban L. Bovo, Jr.** and upon being put to a vote, the vote was as follows:

Agenda Item No. 11(A)(10)
Page No. 4

|  | Rebeca Sosa, Chairwoman |  | aye |
|---|---|---|---|
|  | Lynda Bell, Vice Chair |  | aye |
| Bruno A. Barreiro | aye | Esteban L. Bovo, Jr. | aye |
| Jose "Pepe" Diaz | absent | Audrey M. Edmonson | aye |
| Sally A. Heyman | aye | Barbara J. Jordan | absent |
| Jean Monestime | aye | Dennis C. Moss | absent |
| Sen. Javier D. Souto | aye | Xavier L. Suarez | aye |
| Juan C. Zapata | aye |  |  |

The Chairman thereupon declared the resolution duly passed and adopted this 3rd day of December, 2013. This resolution shall become effective ten (10) days after the date of its adoption unless vetoed by the Mayor, and if vetoed, shall become effective only upon an override by this Board.



MIAMI-DADE COUNTY, FLORIDA
BY ITS BOARD OF
COUNTY COMMISSIONERS

HARVEY RUVIN, CLERK

By: *Christopher Agrippa*
    Deputy Clerk

Approved by County Attorney as
to form and legal sufficiency.

Benjamin D. Simon

6

# Memorandum   MIAMI-DADE COUNTY

**Date:** July 15, 2013

**To:** Honorable Carlos A. Gimenez, Mayor
Miami-Dade County, Florida

**From:** R. A. Cuevas, Jr.
County Attorney

**Subject:** Immigration and Customs Enforcement Detainer Policy and Miami-Dade Corrections and Rehabilitation Department

---

You have asked about immigration detainer requests issued by U.S. Immigration and Customs Enforcement ("ICE") to the Miami-Dade Corrections and Rehabilitation Department ("MDCR"). Specifically you ask what is "the legal requirement for MDCR to hold inmates, whose charges have been resolved, with an ICE immigration detainer for up to 48 hours." The current policy of MDCR is to hold in-custody inmates who have an immigration detainer placed by ICE. As explained below, it is my conclusion that compliance with ICE detainer requests is voluntary and not mandated by federal law or regulations.

## ANALYSIS

ICE immigration detainer requests are issued pursuant to 8 CFR § 287.7. An immigration detainer pursuant to Section 287.7(d) is a "mechanism by which federal immigration authorities may *request* that another law enforcement agency temporarily detain an alien "in order to permit assumption of custody by the Department [of Homeland Security]." *United States v. Uribe-Rios*, 558 F.3d 347,359 fn. 1 (4th Cir. 2009) (citing 8 C.F.R. § 287.7(d)) (emphasis added). This detainer, or "hold request" is no more than a request from the Department of Homeland Security that a detainee be held for up to 48 hours. *See Buquer v. City of Indianapolis*, 2013 WL 1332158 at 3, (S.D. Indiana 2013) ("ICE may issue a detainer *requesting* that the law enforcement agency hold the individual for up to 48 hours beyond the time that the detainee would otherwise be released in order to allow ICE to assume custody, if it chooses to do so.") (emphasis added); *See also, Euroza v. Salt Lake County*, 2013 WL 653968 at 1 (C. D. Utah 2013) (finding that Form I-247 is a hold request that a detained continue to be detained pending an investigation.)

1

The text of Section 287.7(d) supports this conclusion since it is titled "Temporary detention at department *request*." (emphasis added). 8 CFR § 287.7(d). In addition, the form used by the Department, DHS Form I-247, titled "Immigration Detainer- Notice of Action" contains a section where the Department can "check off" a box "requesting" that a certain agency maintain custody over a subject for a period not to exceed 48 hours. (A copy of Form I-247 is attached hereto).

Furthermore, when asked the question "[i]s it ICE's position that localities are required to hold individuals pursuant to Form I-247 or are detainers merely requests with which a county could legally decline to comply?", David Venturella, the Assistant Director of ICE, responded that "ICE views an immigration detainer as a request...." (see letter attached from David Venturella, Assistant Director of ICE).

## CONCLUSION

Consistent with the plain meaning of the word "request" and based on the analysis above, including the interpretation of ICE officials themselves, an immigration detainer pursuant to 8 CFR § 287.7 is merely a request to a local law enforcement agency to notify ICE prior to the release of a certain detainee as well as a request that the law enforcement agency maintain custody of that detainee for a period not to exceed 48 hours to allow ICE to take the detainee into custody. MDCR is not obligated to comply with such a request. It may, however, choose to comply with the request as a matter of policy. In the event, that MDCR decides to hold a detainee for up to 48 hours pursuant to one of these detainer requests the regulations do not mandate federal fiscal responsibility for such detainer.

cc: Honorable Chairwoman Rebeca Sosa
   and Members, Board of County Commissioners
   Timothy P. Ryan, Director of Miami-Dade Corrections & Rehabilitation

Memorandum 

Date: April 9, 2013

To: Robert Cuevas
County Attorney

VIA: Genaro "Chip" Iglesias
Deputy Mayor/Chief of Staff

From: Timothy P. Ryan, Director
Miami-Dade Corrections and Rehabilitation Department

Subject: Immigration (ICE) Detainer Policy (re: MDCR Policy and Practice)

---

It is the current practice of the Miami-Dade Corrections and Rehabilitation Department (MDCR) to hold in-custody inmates who have an immigration detainer placed by US Immigration and Customs Enforcement (ICE). This means that whenever an inmate's local charges have been resolved (i.e., bails, released in court, etc.), MDCR notifies ICE that the inmate must be picked up no later than 48 hours, excluding weekends. If the inmate is not picked by ICE within the stipulated time frame, the inmate is released.

During a recent meeting with the Public Defender's Office, it has now come to our attention, due to a reinterpretation of the law, that the immigration detainer may not be a legal mandate but rather simply a request from ICE. Attached, for your convenience, is information provided during this meeting. Therefore, a legal opinion is requested as to the legal requirement for MDCR to hold inmates, whose charges have been resolved, with an ICE immigration detainer for up to 48 hours.

If you have any questions, or need further information, please feel free to contact Mr. Tyrone Williams, Senior Legal Advisor, at telephone 786.263.5939.

TPR/vms

Attachment

§ 287.7                                                                    8 CFR Ch. I (1-1-11 Edition)

custody of the record or by an authorized deputy.

[50 FR 37834, Sept. 18, 1986, as amended at 54 FR 39337, Sept. 26, 1989; 54 FR 49851, Nov. 28, 1989]

§ 287.7  Detainer provisions under section 287(d)(3) of the Act.

(a) *Detainers in general.* Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

(b) *Authority to issue detainers.* The following officers are authorized to issue detainers:

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Deportation officers;

(4) Immigration inspectors;

(5) Adjudications officers;

(6) Immigration enforcement agents;

(7) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(8) Immigration officers who need the authority to issue detainers under section 287(d)(3) of the Act in order to effectively accomplish their individual missions and who are designated individually or as a class, by the Commissioner of CBP, the Assistant Secretary for ICE, or the Director of the BCIS.

(c) *Availability of records.* In order for the Department to accurately determine the propriety of issuing a detainer, serving a notice to appear, or taking custody of an alien in accordance with this section, the criminal justice agency requesting such action or informing the Department of a conviction or act that renders an alien inadmissible or removable under any provision of law shall provide the Department with all documentary records and information available from the agency that reasonably relates to the alien's status in the United States, or that may have an impact on conditions of release.

(d) *Temporary detention at Department request.* Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

(e) *Financial responsibility for detention.* No detainer issued as a result of a determination made under this chapter I shall incur any fiscal obligation on the part of the Department, until actual assumption of custody by the Department, except as provided in paragraph (d) of this section.

[68 FR 35279, June 13, 2003]

§ 287.8  Standards for enforcement activities.

The following standards for enforcement activities contained in this section must be adhered to by every immigration officer involved in enforcement activities. Any violation of this section shall be reported to the Office of the Inspector General or such other entity as may be provided for in 8 CFR 287.10.

(a) *Use of force*—(1) *Non-deadly force.* (i) Non-deadly force is any use of force other than that which is considered deadly force as defined in paragraph (a)(2) of this section.

(ii) Non-deadly force may be used only when a designated immigration officer, as listed in paragraph (a)(1)(iv) of this section, has reasonable grounds to believe that such force is necessary.

(iii) A designated immigration officer shall always use the minimum non-deadly force necessary to accomplish the officer's mission and shall escalate to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities of the suspect, prisoner, or assailant.

(iv) The following immigration officers who have successfully completed

DEPARTMENT OF HOMELAND SECURITY
IMMIGRATION DETAINER - NOTICE OF ACTION

Subject ID:
Event #:

File No:
Date:

TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency)

FROM: (Department of Homeland Security Office Address)

**MAINTAIN CUSTODY OF ALIEN FOR A PERIOD NOT TO EXCEED 48 HOURS**

Name of Alien: _____
Date of Birth: _____ Nationality: _____ Sex _____

THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:

☐ Determined that there is reason to believe the individual is an alien subject to removal from the United States. The individual (check all that apply):

☐ has a prior a felony conviction or has been charged with a felony offense;
☐ has three or more prior misdemeanor convictions;
☐ has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults; sexual abuse or exploitation; driving under the influence of alcohol or a controlled substance; unlawful flight from the scene of an accident; the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance; or other significant threat to public safety;
☐ has been convicted of illegal entry pursuant to 8 U.S.C. § 1325;
☐ has illegally re-entered the country after a previous removal or return;
☐ has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud;
☐ otherwise poses a significant risk to national security, border security, or public safety; and/or
☐ other (specify): _____

☐ Initiated removal proceedings and served a Notice to Appear or other charging document. A copy of the charging document is attached and was served on _____ (date).

☐ Served a warrant of arrest for removal proceedings. A copy of the warrant is attached and was served on _____ (date).

☐ Obtained an order of deportation or removal from the United States for this person.

*This action does not limit your discretion to make decisions related to this person's custody classification, work, quarter assignments, or other matters. DHS discourages dismissing criminal charges based on the existence of a detainer.*

**IT IS REQUESTED THAT YOU:**

☐ Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS**, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject. This request derives from federal regulation 8 C.F.R. § 287.7. For purposes of this immigration detainer, you are not authorized to hold the subject beyond these 48 hours. As early as possible prior to the time you otherwise would release the subject, please notify DHS by calling _____ during business hours or _____ after hours or in an emergency. If you cannot reach a DHS Official at these numbers, please contact the ICE Law Enforcement Support Center in Burlington, Vermont at (802) 872-6020.

☐ Provide a copy to the subject of this detainer.

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☐ Notify this office in the event of the inmate's death, hospitalization or transfer to another institution.

☐ Consider this request for a detainer operative only upon the subject's conviction.

☐ Cancel the detainer previously placed by this Office on _____ (date).

_____  _____
(Name and title of Immigration Officer)  (Signature of Immigration Officer)

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE SUBJECT OF THIS NOTICE:**
Please provide the information below, sign, and return to DHS using the envelope enclosed for your convenience or by faxing a copy to _____. You should maintain a copy for your own records so you may track the case and not hold the subject beyond the 48-hour period.

Local Booking/Inmate #: _____ Latest criminal charge/conviction: _____ (date) Estimated release: _____ (date).
Last criminal charge/conviction: _____

Notice: Once in our custody, the subject of this detainer may be removed from the United States. If the individual may be the victim of a crime, or if you want this individual to remain in the United States for prosecution or other law enforcement purposes, including acting as a witness, please notify the ICE Law Enforcement Support Center at (802) 872-6020.

_____  _____
(Name and title of Officer)  (Signature of Officer)

DHS Form I-247 (12/12)                          Page 1 of

*Secure Communities*

U.S. Department of Homeland Security
500 12th Street, SW
Washington, D.C. 20536



U.S. Immigration
and Customs
Enforcement

Mr. Miguel Márquez
County Counsel
County of Santa Clara
70 West Hedding Street, Ninth Floor
San Jose, CA 95110-1770

Dear Mr. Márquez:

Thank you for your August 16, 2010, letter regarding U.S. Immigration and Customs Enforcement's (ICE) Secure Communities Initiative. I appreciate the opportunity to discuss ICE's immigration enforcement policies with you and to respond to your questions.

As an overview, Secure Communities is ICE's comprehensive strategy to improve and modernize the identification and removal of criminal aliens from the United States. As part of the strategy, ICE uses a federal biometric information sharing capability to more quickly and accurately identify aliens when they are booked into local law enforcement custody. ICE uses a risk-based approach that prioritizes immigration enforcement actions against criminal aliens based on the severity of their crimes, focusing first on criminal aliens convicted of serious crimes like murder, rape, drug trafficking, national security crimes, and other "aggravated felonies," as defined in § 101(a)(43) of the Immigration and Nationality Act (INA). Under this strategy, ICE maintains the authority to enforce immigration law. The activation of biometric information-sharing capability in new jurisdictions enables ICE to identify criminal aliens before they are released from law enforcement custody into our communities, which strengthens public safety. ICE works with state identification bureaus to develop deployment plans for activating the biometric information sharing capability in their jurisdictions. Your specific questions about Secure Communities are answered below.

1. **Is there a mechanism by which localities can opt out?**

    As part of the Secure Communities activation process, ICE conducts outreach to local jurisdictions, which includes providing information about the biometric information sharing capability, explaining the benefits of this capability, explaining when the jurisdiction is scheduled for activation, and addressing any concerns the jurisdiction may have. If a jurisdiction does not wish to activate on the scheduled date in the Secure Communities deployment plan, it must formally notify its state identification bureau and ICE in writing by email, letter, or facsimile. Upon receipt of that information, ICE will request a meeting with federal partners, the jurisdiction, and the state to discuss any issues and come to a resolution, which may include adjusting the jurisdiction's activation date or removing the jurisdiction from the deployment plan.

Mr. Miguel Márquez
Page 2

    a) Can you provide information on the Statement of Intent referenced in the cover letter accompanying the 2009 MOA?

ICE does not require local jurisdictions to sign Statements of Intent or any other document to participate in Secure Communities. The reference to the Statement of Intent in the cover letter to the MOA was an oversight. The MOA signed by the state of California makes no mention of a Statement of Intent, and ICE has advised the California Department of Justice that it will not be utilizing Statements of Intent.

    b) Do you view the State of California as having the ability to exempt certain counties from the program under the 2009 MOA signed by ICE and the California Department of Justice?

ICE recognizes the California Department of Justice as the agency having the responsibility for the management and administration of the state's criminal data repositories, which includes development of and adherence to policies and procedures that govern their use and how information is shared with other state and federal agencies. Therefore, ICE defers to the California State Attorney General on how state, county, and local law enforcement agencies within the state of California will share biometric data under the MOA.

    c) Have you allowed other localities of law enforcement agencies, either inside or outside California, to opt out or modify their participation in the program?

The Washington, D.C. Metropolitan Police Department is the only jurisdiction to date that has terminated its signed Memorandum of Agreement. As referenced by your letter, activated jurisdictions do not have to receive the "match responses" and Secure Communities, in coordination with the state identification bureaus and the FBI's Criminal Justice Information Services (CJIS) Division, has accommodated jurisdictions that requested not to receive that information.

    d) What is the purpose of receiving the "match messages"? Do they require or authorize counties to take action with respect to arrested individuals?

The purpose of local law enforcement receiving a 'match message' is to provide any additional identity information about the subject, including aliases, from the DHS biometric database storing over 100 million records that may not have been available based only on a criminal history check. Additional identity information may further a law enforcement officer's open investigations and lead to improved officer safety. Receiving a 'match message' does not authorize or require any action by local law enforcement.

Mr. Miguel Márquez
Page 3

2. Once Secure Communities is deployed in a locality, is the locality required to comply with detainers, and will you provide reimbursement and identification?

   a) Is it ICE's position that localities are required to hold individuals pursuant to Form I-247 or are detainers merely requests with which a county could legally decline to comply?

ICE views an immigration detainer as a request that a law enforcement agency maintain custody of an alien who may otherwise be released for up to 48 hours (excluding Saturdays, Sundays, and holidays). This provides ICE time to assume custody of the alien.

   b) Who bears the costs related to detaining individuals at ICE's request?

Pursuant to 8 C.F.R. § 287.7(e), ICE is not responsible for incarceration costs of any individual against whom a detainer is lodged until "actual assumption of custody." The exception provided in section 287.7(e) stating that ICE shall not incur "fiscal obligation...except as provided in paragraph (d) of this section" only serves to authorize payment but does not require it. To the extent a payment is considered, it should only be made pursuant to a written agreement because, under INA § 103(a)(11), ICE pays detention costs when aliens are in its custody pursuant to "an agreement with a State or political subdivision of a State."

   c) Will ICE reimburse localities for the cost of detaining individuals pursuant to Form I-247 beyond their scheduled release times? Will ICE indemnify localities for any liability incurred because of that detention?

ICE does not reimburse localities for detaining any individual until ICE has assumed actual custody of the individual. Further, ICE will not indemnify localities for any liability incurred because the Anti-Deficiency Act prohibits such indemnity agreements by federal agencies.

3. Is it ICE's position that localities where Secure Communities is deployed are legally required to:

   i. Inform ICE if a subject is to be transferred or released thirty days in advance of any release or transfer? If so, what is the legal basis for such a requirement?

The notification to ICE of inmate transfer or release within thirty days is pursuant to ICE's request for that information. It is not a statutory requirement.

14

Mr. Miguel Márquez
Page 4

    ii. Allow ICE agents and officers access to detainees to conduct interviews and serve documents? If so, what is the legal basis for such a requirement?

INA § 238, 8 U.S.C. 1228, provides for the availability of special removal proceedings at federal, state, and local correctional facilities for aliens convicted of certain criminal offenses. Such programs require ICE officers to conduct inmate interviews to determine alienage and any possibilities for relief or protection from removal. The statute does not require state or local jurisdictions to participate in such programs.

    iii. Assist ICE in acquiring information about detainees? If so, what is the legal basis for such a requirement?

Assisting ICE in acquiring detainee information is not a legal requirement.

Thank you again for your letter. If you have any additional questions, please feel free to contact me at (202) 732-3900.

Sincerely yours,

David Venturella
Assistant Director

15