**United States District Court**
**Southern District of Florida**
**Case No. 17-22477-Civ-Williams/Torres**

**Garland Creedle**,

      Plaintiff,

    v.

**Carlos A. Gimenez,** in his official capacity as Mayor of Miami-Dade County, Florida; and **Miami-Dade County,**

      Defendants.

## Defendants' Reply in Support of Their Motion to Dismiss

This case concerns the intersection of the federal government's "broad, undoubted power over the subject of immigration," *Arizona v. United States*, 567 U.S. 387, 394 (2012), and the valuable role that state and local governments can serve in assisting the federal government with those responsibilities, *see id.* at 410 (citing to Department of Homeland Security ("DHS") memorandum on this issue). Under applicable case law, statutes, and regulations, the only general limitation imposed on the way in which that assistance can be provided is that the state or local government must actually be *assisting* the federal government in the exercise of their duties and not engaging in the unilateral enforcement of immigration laws or acting outside the scope of the federal government's direction. *See id.* (noting that cooperation does not include "the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government."); 8 U.S.C. § 1357(g) (providing, generally, that a local officer's performance of immigration functions "shall be subject to the direction and supervision of [DHS]").

In their Motion to Dismiss, Defendants Miami-Dade County and Mayor Carlos Gimenez, in his official capacity, demonstrated that the alleged conduct in this case falls squarely within the ambit of that space. To wit, the federal government first acts pursuant to its authority to issue detainer requests, *see* 8 C.F.R. § 287.7, and then Miami-Dade County, upon receipt of a facially valid detainer, responds to that request for assistance in accordance with (1) the express terms of the detainer form and (2) the County's policy to "cooperat[e] with the federal government to the extent permissible by law" and

1

"require the federal government to show probable cause on all immigration detainer requests," *see* D.E. 11-2 at 6.

Notwithstanding these facts, Plaintiff Garland Creedle attempts in his Response to the Motion to Dismiss to portray Miami-Dade County's policy as an impermissible and unauthorized "blanket policy of honoring immigration detainers." D.E. 19 at 2-3. But, in so doing, Mr. Creedle paints this picture with overly broad brush strokes that misapplies case law, fails to fully quote both the relevant statutes and the relevant policy, and oversimplifies the issues.[1] Accordingly, his claims against Defendants ought to be dismissed with prejudice for the reasons stated in the Motion to Dismiss and this Reply.

### I.    Miami-Dade County had the requisite authority to detain Mr. Creedle

In his Response, Mr. Creedle argues that "[n]either federal nor state law authorized the County's re-arrest and detention of Mr. Creedle after he posted bond in his criminal case." D.E. 19 at 2. But, as evinced in the Motion to Dismiss, Miami-Dade County is authorized to assist the federal government under both, and each source of statutory authority is addressed in turn. *See* D.E. 11 at 14-16.

### a.   Miami-Dade County is authorized under federal law to honor detainers

Under 8 U.S.C. § 1357(g), the federal government has authorized the performance of immigration officer functions by state and local government officials. And, as spelled out in the statute, the cooperation can come in one of two forms: (1) a "written agreement" with the state or local government or (2) cooperation, absent a written agreement, "in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(1), (10). As such, Miami-Dade County's policy to provide assistance by honoring detainers supported by probable cause lies within the permissible cooperation in § 1357(g)(10) because it is cooperation in the detention of aliens not lawfully present in the United States. *See United States v. Ovando-Garzo*, 752 F.3d 1161, 1164-65 (8th Cir. 2014) (holding—in a case dealing with a state trooper that detained a removable alien "until the Border Patrol agent could take custody"—that "no written agreement is required for a state official to cooperate with [DHS] in identifying apprehending, and detaining any individual unlawfully present in the United States."); *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010); *Arizona*, 567 U.S. at 456 ("§ 1357(g)(10)(B) makes clear that States and municipalities need

---

[1] For example, Mr. Creedle makes reference to Miami-Dade County's policy on immigration detainers on at least a dozen occasions in his Response but displays a seemingly inveterate reluctance to acknowledge that the County's policy requires the federal government to show probable cause on immigration detainers in order for Miami-Dade County to offer its cooperation. *See*, *e.g.*, D.E. 19 at 2, 9, 10, 11, 12, 16, and 17.

not enter into those agreement 'otherwise to cooperate … in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.'"). *See also Santos v. Frederick Cty. Bd. of Comm'rs.* ("Santos I"), No. L-09-2978, 2010 WL 3385463, at *3 (D. Md. Aug. 25, 2010) ((holding that local law enforcement officers "were acting under the color of federal law" when they cooperated in the enforcement of immigration law by honoring detainers even in the absence of a formal agreement); *City of El Cenizo v. Texas*, Case No. 17-50762, 2017 WL 4250186 at *2 (5th Cir. Sept. 25, 2017) (reversing district court and staying injunction that would have prohibited State of Texas from requiring its local law enforcement agencies to "comply with, honor, and fulfill any immigration detainer request issued by United States Immigration and Customs Enforcement" by finding that "the defendants are likely to succeed on the merits").

In attempting to disavow the plain language of the statute, Mr. Creedle argues that § 1357(g)(10) must be read narrowly so that the "cooperation" mentioned in the statute is limited to only " 'include situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to allow officials to gain access to detainees held in state facilities' … not the outright arrest and detention of persons believed to be civil immigration violators." D.E. 19 at 4 (quoting *Arizona*, 567 U.S. at 410).[2] Although the language in 1357(g)(10) imposes no such restriction, Mr. Creedle reads this limitation into the statute by misquoting *Arizona*, 567 U.S. at 410. When read in its proper context, the list of cooperative situations described in *Arizona* was not intended to be a definitive listing of all that 1357(g)(10) permits. Instead, it was an illustrative sampling of the types of cooperation that could be provided and it came directly from a DHS memorandum that explicitly described this list as a "non-exhaustive list of examples." *See* DHS Memorandum at 2.[3]

In a similar vein, Mr. Creedle attempts to offer additional precedential support for his position by misapplying *Santos v. Frederick Cty. Bd. of Com'rs* ("Santos II"), 725 F.3d 451, 463 (4th Cir. 2013), and *Ochoa v. Campbell*, No. 1:17-CV-03124-SMJ, 2017 WL 3476777 (E.D. Wash. July 31, 2017). D.E. 19 at 4, n. 4-5. In both of those cases, the relevant fact was that the local officials detained the plaintiff prior

---

[2]  Notably, Mr. Creedle's interpretation of 1357(g) is directly at odds with the federal government's own interpretation of the statute and the type of cooperation that it permits. *See* Statement of Interest on Behalf of the United States, *City of El Cenizo v. Texas*, No. 5:17-cv-00404-OLG (W.D. Tex. June 23, 2017) D.E. 90 at 29 (stating that honoring detainers, even absent written agreements, "is well within the cooperative authority *Arizona* concluded that the States retain").

[3]  A copy of the memorandum referenced in *Arizona*, 567 U.S. at 410, can be found at: https://www.dhs.gov/sites/default/files/publications/guidance-state-local-assistance-immigration-enforcement.pdf.

to receiving any request by the federal government for assistance, which is a wholly distinct scenario than this case where Miami-Dade County is only acting pursuant to a detainer. *See Ochoa*, 2017 WL 3476777 at \*14 ("[I]n the instant case, there is no detainer request…"). In *Santos* II, the officers had not received a detainer request and relied exclusively on knowledge that an immigration warrant that was not directed to them had been issued.  725 F.3d at 466 ("[I]t is undisputed that the deputies' initial seizure of Santos was not directed or authorized by ICE"). In fact, the Fourth Circuit's decision in *Santos* II supports Miami-Dade County's position because the actual holding was "that, **absent express direction or authorization by federal statute or federal official**, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violation of federal immigration law." *Id.* at 465 (emphasis added). Here, unlike in *Santos* II, Miami-Dade County had express direction from the federal government through the facially valid detainer.[4]

In addition to the authority conferred by 8 U.S.C. 1357(g)(10), Miami-Dade County also argued that local assistance on detainers is also expressly contemplated under applicable federal regulations. *See* 8 C.F.R. § 287.7. On its face, 8 C.F.R. § 287.7 provides a clear delineation as to the purpose of detainers, who has authority to issue them, and how local agencies should proceed should they choose to honor the request. In particular, § 287.7(d) provides that "[u]pon determination by [DHS] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours … in order to permit assumption of custody by [DHS]."

Notwithstanding this clear language contemplating local assistance on detainers, Mr. Creedle claims that the regulation does not authorize local officials to honor detainers and that the regulation instead simply "instructs jurisdictions in receipt of an immigration detainer [to] limit the length of any detention to a 'period not to exceed 48 hours.'" D.E. 19 at 5.[5] However, if there is no federal authority

---

[4]  Mr. Creedle also incorrectly states that *Santos* II stands for the proposition that the provisions of 8 U.S.C. § 1357(g)(8) do not apply absent a written agreement. See D.E. 19 at 4, n. 4. In reality, the Fourth Circuit only held that 1357(g)(8) did not apply to this the facts of that case because the deputies were alleged to have acted outside the parameters of that sheriff office's written agreement with ICE and had not been given direction by federal officials for their actions. *See Santos* II, 725 F.3d at 463. Moreover, Mr. Creedle's claim that the other provisions of 1357(g) only apply pursuant to written agreements is further undermined by subsequent discussion in *Santos* II. *Id.* at 464 (noting that § 1357(g)(3) applies "[w]hen enforcing federal immigration law pursuant to Section 1357(g)" with or without a written agreement).

[5]  In support, Mr. Creedle relies on *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014). D.E. 19 at 5, n. 6. However, much like *Ochoa* and *Santos* II, *Villars* dealt with a substantively distinct set of facts. Notably, "the detainer in Villars's case was not even addressed to the [ ] Defendants" and it

4

to honor detainers as Mr. Creedle claims, then what purpose would these instructions and limits serve? Indeed, Mr. Creedle's position creates a peculiar framework whereby (1) federal law and regulations authorize federal immigration officials to request assistance from state and local governments and impose limitations on the length of time in which that assistance can be provided but (2) those same laws and regulations evidently do not allow the state and local governments to provide that assistance. It simply defies credulity that the federal government intended to achieve such an illogical system. *See Jay v. Boyd*, 351 U.S. 345, 360 (1956) ("We must read the body of regulations [for the Immigration and Nationality Act] so as to give effect, if possible, to all of its provisions."). *See also* Statement of Interest on Behalf of the United States, *City of El Cenizo v. Texas*, No. 5:17-cv-00404-OLG (W.D. Tex. June 23, 2017) D.E. 90.

Lastly, Mr. Creedle argues that Miami-Dade County was not entitled to honor the detainer request because "even federal immigration agents may make warrantless arrests of persons suspected of civil immigration violation only in narrow circumstances" that did not apply in this case. D.E. 19 at 5. While Mr. Creedle is certainly correct that it is incumbent upon federal immigration officials to make proper determinations prior to seeking assistance in conducting a warrantless seizure, Miami-Dade County as a matter of law is entitled to presume that the federal immigration officials have made those requisite determinations prior to issuing a detainer. *See Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) (noting that officers providing assistance may "fill in any gaps in the account with reasonable inferences premised on [the fellow officer] acting in a constitutional manner and in good faith."). In addition, the federal government has acknowledged that it deems it authority to issue detainers as an extension of its statutory authority to make warrantless arrests. *See* Defendants' Memorandum in Support of Opposition to Plaintiffs' Motion for Summary Judgment, *Moreno v. Napolitano* ("Moreno I"), No. 1:11-cv-05452 (N.D. Ill. Feb. 9, 2016) D.E. 218 at 12. Therefore, the presumption that federal officials have made all determinations required for a warrantless arrest prior to issuing a detainer is even more well-founded.[6]

---

also had no averment as to probable cause because this case dealt with an older version of the I-247 form requesting that the subject be detained for investigatory purposes. *Id.* at 797, 802.

[6]  In his Response, Mr. Creedle points to *Moreno v. Napolitano* ("Moreno II"), 213 F. Supp. 3d 999, 1006 (N.D. Ill. 2016) as support because it held that ICE agents had previously failed to "make any determination at all with respect to [flight risk]" before issuing the detainer request." But the prior conduct described in *Moreno* II is of no legal moment given the inference and good faith presumption that *Wilkerson* entitles Miami-Dade County to make. Moreover, the implication of Mr. Creedle's argument (i.e. that ICE agents would continue to not make these necessary determinations prior to issuing detainers) is belied by subsequent developments in that case and

### b. Miami-Dade County is authorized under state law to honor detainers

Having established federal law authority, we now to Mr. Creedle's claim that the County lacks state law authority to honor detainers supported by probable cause to the extent permitted by law.

First, Mr. Creedle argues that Fla. Stat. § 950.03 is not applicable because "Mr. Creedle was never a prisoner lawfully committed to the County's charge under the authority of the United States because he was never arrested by the federal government." D.E. 19 at 6. However, Mr. Creedle's argument is undermined by the very case that he cites: *Gethers v. State*, 838 So. 2d 504 (Fla. 2003). In *Gethers*, the Florida Supreme Court described the differences between an executed warrant and a detainer for purposes of calculating an inmate's credit for time served and held that a detainer that had been lodged—but not acted upon—would not cause the inmate to be "in custody pursuant to the detainer." Id. However, the very next sentence in that opinion provides clarity as to what happens **after** the detainer is acted upon and supports Miami-Dade County's position. *See id.* ("Only if the prisoner is subject to release but is being held because a detainer has been lodged can it be said that **the person is in custody pursuant to the detainer.**") (emphasis added). *See also Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591, 593 (Fla. 4th DCA 2008) (stating that when an inmate subject to a detainer request "posts bond … he will be released from state custody and then booked on [a] federal immigration detainer" whereby "the sheriff will not be holding [him] pursuant to state authority but pursuant to federal authority").[7]

Second, Mr. Creedle argues that Fla. Stat. § 901.18 is similarly inapplicable because "[t]he application of this statute to this case would entail that a DHS officer is a 'peace officer' engaged in a 'lawful arrest' and 'command[ing]' County correctional officers to its aid." D.E. 19 at 8. However, that is precisely the stated purpose of a detainer. *See* 8 C.F.R. § 287.7(a) ("A detainer serves to advise another law enforcement agency that the [DHS] seeks custody of an alien presently in the custody of that agency **for the purpose of arresting and removing the alien.**") (emphasis added). *See also Mauldin v. United States*, 328 F.2d 779 (5th Cir. 1964) (applying Florida law relating to "peace officers"

---

ICE's own policy. *See* Judgment, *Moreno v. Napolitano* ("Moreno III"), No. 1:11-cv-05452 (N.D. Ill. Nov. 28, 2016) D.E. 239 at 2 (permanently enjoining the ICE Chicago Field Office from issuing detainers unless the ICE official has probable cause that a subject is a non-removable alien and either a warrant or reason to believe the individual is likely to escape); D.E. 11 at 3, n.3 (noting that pursuant to ICE Policy No. 10074.2 every immigration detainer must be accompanied by an administrative warrant issued by an authorized immigration official as of April 2, 2017.

[7] Similarly, *Orozco v. U.S. I.N.S.*, 911 F.2d 539 (11th Cir. 1990) (cited at D.E. 19 at 6), does not provide the support that Mr. Creedle intends because that case only dealt with the effect of "the filing of a detainer" not what occurs once that detainer is honored.

to the actions of a federal agent). In addition, Mr. Creedle misapplies the relevant provisions of Fla. Stat. § 901.18 when he asserts that "nothing in this statute confers authority on correctional officers to arrest Mr. Creedle for a civil immigration violation pursuant to an immigration detainer." D.E. 19 at 8. While technically true, Mr. Creedle's statement is legally irrelevant because § 901.18 does not need to provide specific grants of authority because it states, as a general matter, that "[a] person commanded to aid a peace officer *shall have the same authority to arrest as that peace officer* and shall not be civilly liable for any reasonable conduct in redering assistance to that officer" (emphasis added). Thus, when Miami-Dade County is in receipt of a facially valid detainer from the federal government that seeks assistance, Miami-Dade County, under the express terms of § 901.18, is imbued with the same authority to arrest as the immigration official who lodged the detainer.

## II.     Mr. Creedle fails to allege a proper policy and practice to establish a *Monell* claim

In their Motion to Dismiss, Defendants argued that "any constitutional violation that Mr. Creedle may have suffered lies with the federal government's alleged error in identifying Mr. Creedle as a removable alien and the subsequent issuance of the immigration detainer based on that misidentification" not Miami-Dade County's policy to honor immigration detainers supported by probable cause. D.E. 11 at 11. Nevertheless, Mr. Creedle attempts to keep his *Monell* claim against Defendants alive by arguing that the County's decision to honor detainers—and not the mistake made by the entity issuing the detainer—was the moving force behind his alleged harm. In so doing, Mr. Creedle misunderstands the relevant causation analysis for *Monell* claims.[8] *City of Springfield v. Kibbe,* 480 U.S. 257, 267-268 (1987) ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate Monell's distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's own constitutional violations.")

## III.    The fellow officer rule applies in this context

In his Response, Mr. Creedle argues that the "fellow officer" rule does not apply. D.E. 19 at 13. His argument, however, relies on cases that are either taken entirely out of context or misapplied. For example, Mr. Creedle cites to *United States v. Webster*, 750 F.2d 307, 323-24 (5th Cir. 1984) for the

---

[8]  Part of that misunderstanding lies in the fact that, in addition to the misapplication of other case law, one of the case that Mr. Creedle cites, *Martinez v. California*, 444 U.S. 277 (1980), D.E. 19 at 11, does not deal with Monell liability.

proposition that the fellow officer rule does not apply if "insufficient information was communicated." *Id.* In actuality, however, *Webster* does not deal with the quality or quantity of the information received; it deals with the time in which it was received. In *Webster*, the dispositive fact was that the relevant information was not shared until *after* the arrest was made. *See* 750 F.2d 307.

Similarly, Mr. Creedle also argues that the fellow officer rule cannot apply because he "had informed the County that he was a U.S. citizen." D.E. 19 at 13. But a self-serving statement as to one's U.S. citizenship, absent objective evidence or additional corroboration, cannot require a correctional facility to disregard the representations made by law enforcements officials. Indeed, if Mr. Creedle's contention was legally valid, then the most common phrase at the County jail ("I'm innocent.") would be all that one would have to say to ensure their release. *See Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Baker v. McCollan,* 443 U.S. 137, 145–46 (1979) ("[W]e are quite certain that a detention of three days over a New Year's weekend [notwithstanding the accused's protests of mistaken identity] does not and could not amount to such a deprivation. … The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").

**IV.    Declaratory relief is not appropriate in this case**

As explained in the Motion to Dismiss, this case concerns a single incident of past conduct that bears no reasonable likelihood of repetition. According to his own allegations, Mr. Creedle is a United States citizen who was improperly detained based upon a mistaken identification by an ICE official and, after being interviewed by ICE officials during the course of his brief detention pursuant to the immigration detainer, his detainer was withdrawn and he was immediately released. *See* D.E. 1 at ¶¶ 60-61. This is simply not a case where there is a reasonable expectation that Mr. Creedle would be subject to the same action again. And the cases relied upon by Mr. Creedle are inapposite. D.E. 19 at 17.

First, *Fla. Right to Life, Inc. v. Lamar*, 272 F.3d 1318 (11th Cir. 2001) dealt with a wholly different scenario. In that case, the stature in question dealt with elections and campaign finance provisions where a lawsuit concerning the constitutionality of the statute could not be likely to be fully litigated during the course of a single election cycle, and the plaintiffs had alleged that they would be negatively

impacted by the relevant provisions each election cycle. *See id.* There is no similar allegation, or even reasonable concern, that Mr. Creedle could be subject to a similar cycle of potential constitutional violations in this context.

Second, *Massachusetts v. EPA*, 549 U.S. 497 (2007) does not stand, as Mr. Creedle contends, for a general proposition relating to the probability of injury needed to establish a case or controversy. Instead, that opinion expressly dealt with the "special solitude" that state governments have with respect to the Supreme Court's standing analysis. *Id.* Because Mr. Creedle is not a state government seeking to establish standing under that specific doctrine, the holding in *Massachusetts* does not apply.

## V. The federal government and its employees are required parties to this action

In both his Complaint and Response, Mr. Creedle has plainly indicated that the relief he seeks would effectively prohibit Miami-Dade County from being able to cooperate with ICE via detainer requests. See, e.g., D.E. 19 at 18. And, while Mr. Creedle contends that the federal government is not a required party to this lawsuit because its policies or actions are not at issue, his requested relief would moot the federal government's policy because Miami-Dade County would no longer be able to provide the cooperation that it seeks. Accordingly, an interest of the federal government (i.e. future cooperation on immigration matters) is involved and this case should not proceed without their involvement. *See Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) ("When an interest of the federal government is involved in a suit and a judgment cannot be rendered without affecting that interest, the government must be made a party to the action.").

## VI. The claims against Mayor Gimenez are redundant

On their Motion to Dismiss, Defendants argued that the claims against Mayor Gimenez, in his official capacity, should be dismissed because they were functionally equivalent to the identical claims against Miami-Dade County. *See* D.E. 11 at 18-19 (citing to *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) and *DeArmas v. Ross*, 680 So.2d 1130, 1131-32 (Fla. 3d DCA 1996)). In response, Mr. Creedle suggests that dismissal is not necessary "absent a concern of jury confusion," which, in his view, the County has not yet suggested. D.E. 19 at 19-20. Aside from the fact that Miami-Dade County made that very suggestion, *see* D.E. 11 at 19 (citing to *Busby*, 931 F.2d at 776, for the proposition that claims against a City and an officer in his official capacity are "redundant and possibly confusing to the jury"), the potential for jury confusion by allowing both named defendants to remain in this case is glaringly obvious. With his claims against Miami-Dade County and Mayor Gimenez, in his official capacity, Mr. Creedle has done the same thing twice: sued Miami-Dade County. *See Penley v. Eslinger*,

605 F.3d 843, 854 (11th Cir. 2010) (noting that official capacity claims are "only another way of pleading an action against an entity of which an officer is an agent"). Therefore, how should this Court treat a potential verdict finding liability for one defendant but not the other? Does Mr. Creedle prevail and thereby get two bites at the apple on the same claim? Or, does Miami-Dade County get judgment in its favor and have the contrary verdict dismissed as moot?

In addition, Mr. Creedle attempts to blunt these concerns by relying on *C.P. by & through Perez v. Collier Cnty.*, 145 F. Supp. 3 1085 (M.D. Fla. 2015), which allowed claims to proceed against a county and the sheriff, in his official capacity. But there is a reason why the Middle District of Florida allowed the plaintiff in *Perez* to proceed against both Collier County and the Collier County Sheriff's Office: Collier County and the Sheriff's Office are two distinct governmental entities. *See* Fla. Const., Art. VIII, § 1(d) (listing the sheriff as a county officer). *Accord Ramirez v. Hillsborough County Sheriff's Office*, Case No. 8:10-cv-1819-T-23TBM, 2011 WL 976380, at *5 (M.D. Fla. Mar. 18, 2011) ("As the Sheriff correctly asserts, Hillsborough County is an entity separate and legally distinct from the Sheriff."). That same arrangement exists in 66 of Florida's 67 counties with one notable and relevant exception— Miami-Dade County.

Under the Dade County Home Rule Amendment, codified in Fla. Const., Art. VIII, §6(e), Miami-Dade County has the unique constitutional authority to "abolish and [ ] provide a method for abolishing from time to time all offices provided for by Article VIII, Section 6, of the Constitution or by the Legislature, except the Superintendent of Public Instruction and may provide for the consolidation and transfer of the functions of such offices." The electors of Miami-Dade County exercised that authority, abolished the Office of County Sheriff—as well as Tax Collector, Property Appraiser, and Supervisor of Elections—and consolidated the powers and functions of those offices in the County Mayor. *See* Miami-Dade County Home Rule Charter, § 9.01. Furthermore, the County Mayor does not exercise those powers and functions as a separate governmental office as was the case in *Perez*. Instead, the County Mayor does so in his or her capacity as "head of the county government … responsible for the management of all administrative departments of County government and for carrying out polices adopted by the Commission." Miami-Dade County Home Rule Charter, § 2.02.

## Conclusion

For the reasons stated above and in the Defendants' Motion to Dismiss, D.E. 11, Miami-Dade County and Mayor Gimenez, in his official capacity, request that Mr. Creedle's claims be dismissed.

10

Dated: October 17, 2017

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Michael B. Valdes*
Michael B. Valdes
Assistant County Attorney
Florida Bar No. 93129
Phone: (305) 375-5151
Fax: (305) 375-5634
E-Mail: mbv@miamidade.gov

11

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on October 17, 2017 on all counsel or parties of record in the manner indicated on the Service List below.

_/s/ Michael B. Valdes_
Assistant County Attorney

## Service List

### Counsel for Plaintiff

Rebecca Sharpless
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Telephone: (305) 284-3576
E-mail: rsharpless@law.miami.edu

Ira Kurzban, Edward Ramos, and Ian Shaw
Kurzban Kurzban Weinger Tetzeli & Pratt P.A
2650 SW 27th Avenue, Second Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Telephone: (305) 444-3503

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone: (813) 288-8390
E-mail: akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (305) 786-363-2700
Fax: (786) 363-1448
E-mail: nabudu@aclufl.org

_Electronic Service_

### Counsel for Defendants

Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Fax: (305) 375-5634
E-mail: mbv@miamidade.gov
     orosent@miamidade.gov
_No service necessary_

### Others Receiving Service

Erez Reuveni and Vinita Andrapalliyal
U.S. Dept. of Justice, Civil Division
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085

Lesley Blackner
340 Royal Poinciana Way, Suite 317-377
Palm Beach FL 33480
Telephone: (561)659-5754
E-mail: lesleyblackner@gmail.com

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
E-mail: chajec@irli.org

_Electronic Service_

12