# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Garland Creedle, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 17-cv-22477-KMW |
| | ) |
| Carlos A. Gimenez; and Miami-Dade County, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## STATEMENT OF INTEREST ON BEHALF OF
## THE UNITED STATES

CHAD A. READLER
*Acting Asst. Attorney Gen.*

WILLIAM C. PEACHEY
*Director*
Office of Immigration  Litigation
District Court Section



Dated October 23, 2017

EREZ REUVENI
*Senior Litigation Counsel*
U.S. Dept. of Justice
Civil Division,
450 5th St. NW
Washington D.C. 20530
Tel: 202-307-4293
Email: Erez.r.reuveni@usdoj.gov


JOSEPH A. DARROW
Trial Attorney

*Counsel for the United States*

TABLE OF CONTENTS

INTEREST OF THE UNITED STATES .......................................................................1

BACKGROUND ..........................................................................................................3

    A.    Federal law authorizes States and localities to aid federal immigration
enforcement, including by cooperating with federal detainer requests ...........3

    B.    Miami-Dade's cooperation policy ...................................................................6

    C.    The complaint here ........................................................................................6

The County's Policy Is Consistent with Federal Law and Does Not Violate the Fourth
Amendment ...............................................................................................................7

    A.    The County's policy is permitted by federal law..............................................7

    B.    Cooperation with ICE detainers is consistent with Florida law ......................9

    C.    The County's Policy is Consistent with the Fourth Amendment ...................13

    D.    Plaintiff has not shown any basis for facial invalidation of the County's
policy ............................................................................................................19

CONCLUSION ..........................................................................................................20

CERTIFICATE OF SERVICE ......................................................................................22

# TABLE OF AUTHORITIES

## CASE LAW

*Abel v. United States,*
  362 U.S. 217 (1960) ....................................................................................... 14, 15

*Andrews v. State,*
  962 So. 2d 971 (Fla. Dist. Ct. App. 2007) ................................................................17

*Arizona v. United States,*
  567 U.S. 387 (2012) .................................................................................*passim*

*Atwater v. City of Lago Vista,*
  532 U.S. 318 (2001) ...........................................................................................10

*Blondin v. Dubois,*
  78 F. Supp. 2d 283 (S.D.N.Y. 2000) ......................................................................1

*Bonner v. City of Prichard, Ala.,*
  661 F.2d 1206 (11th Cir.1981) .............................................................................11

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1972) ...........................................................................................20

*Chamber of Commerce of U.S. v. Whiting,*
  563 U.S. 582 (2011) .............................................................................................9

*Christopher v. Sussex County,*
  77 A.3d 951 (Del. 2013) .....................................................................................11

*City of El Cenizo, Texas v. Texas,*
  No. 17-50762, 2017 WL 4250186 (5th Cir. Sept. 25, 2017) ................................8, 16, 17, 19

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .............................................................................................20

*Clark v. Martinez,*
  543 U.S. 371 (2005) .............................................................................................3

*Com. v. Leet,*
  537 Pa. 89 (1994) ......................................................................................... 10. 11

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma,*
  644 F. Supp. 2d 1177 (N.D. Cal. 2009) .....................................................................4

*Dep't of Pub. Safety v. Berg,*
  342 Md. 126 (1996) .................................................................................... 10, 11

*Flatow v. Islamic Republic of Iran,*
   305 F.3d 1249 (D.C. Cir. 2002) ..................................................................................1

*Furrow v. U.S. Bd. of Parole,*
   418 F. Supp. 1309 (D. Me. 1976) ...............................................................................17

*Gil v. Winn Dixie Stores, Inc.,*
   242 F. Supp. 3d 1315 (S.D. Fla. 2017) ........................................................................1

*Goodman v. State,*
   399 So. 2d 1120 (Fla. Dist. Ct. App. 1990) ...............................................................12

*Henderson v. Simms,*
   223 F.3d 267 (4th Cir. 2000) .....................................................................................14

*Huebner v. State,*
   731 So. 2d 40 (Fla. Dist. Ct. App. 1999) ...................................................................12

*Koog v. United States,*
   79 F.3d 452 (5th Cir. 1996) .........................................................................................9

*Lewis v. Casey,*
   518 U.S. 343 (1996) ...................................................................................................20

*Liu v. Phillips,*
   234 F.3d 55 (1st Cir. 2000) ........................................................................................17

*Lopez v. U.S. I.N.S.,*
   758 F.2d 1390 (10th Cir. 1985) .................................................................................14

*Lunn v. Commonwealth,*
   477 Mass. 517 (2017) ................................................................................................11

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ...................................................................................................20

*Manigault v. Springs,*
   199 U.S. 473 (1905) ...................................................................................................10

*Marsh v. United States,*
   29 F.2d 172 (2d Cir. 1928) ........................................................................................11

*Martinez-Medina v. Holder,*
   673 F.3d 1029 (9th Cir. 2011) ...................................................................................16

*Mauldin v. United States,*
   328 F.2d 779 (5th Cir. 1964) .....................................................................................12

*Mayor, Aldermen & Commonalty of City of New York v. Miln,*
  36 U.S. 102 (1838) ................................................................................................. 10

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ..................................................................................... 8

*Mendoza v. United States Immigration & Customs Enf't.,*
  849 F.3d 408 (8th Cir. 2017) .................................................................................... 17

*Moreno v. Napolitano,*
  213 F. Supp. 3d 999 (N.D. Ill. 2016) ........................................................................ 19

*Rice v. Santa Fe Elevator Corp.,*
  331 U.S. 218 (1947) ................................................................................................ 13

*Rodriguez v. Farrell,*
  280 F.3d 1341 (11th Cir. 2002) ................................................................................ 18

*Roy v. United States Immigration & Customs Enf't.,*
  No. 13-4416, 2017 WL 2559616 (C.D. Cal. June 12, 2017) .................................... 15

*Santos v. Frederick Cnty. Bd. of Comm'rs,*
  725 F.3d 451 (4th Cir. 2013) ..................................................................................... 8

*Sherman v. U.S. Parole Comm'n,*
  502 F.3d 869 (9th Cir 2007) .............................................................................. 14, 15

*Smith v. State,*
  719 So. 2d 1018 (Fla. Dist. Ct. App. 1998) ............................................................. 17

*Spinella v. Esperdy,*
  188 F. Supp. 535 (S.D.N.Y. 1960) .......................................................................... 15

*State v. Boatman,*
  901 So. 2d 222 (Fla. Dist. Ct. App. 2005) ............................................................... 12

*State v. Eldridge,*
  565 So. 2d 787 (Fla. Dist. Ct. App. 1990) ............................................................... 12

*State v. Rodriguez,*
  317 Or. 27 (1993) .................................................................................................... 15

*State v. Stahl,*
  838 P.2d 1193 (Wy. 1992) ....................................................................................... 10

*Sturges v. Crowninshield,*
  17 U.S. (4 Wheat.) 122 (1819) ................................................................................ 10

*United States v. Ashley*,
    569 F.2d 975 (5th Cir. 1978) ............................................................................18

*United States v. Bowdach*,
    561 F.2d 1160 (5th Cir. 1977) ....................................................................10, 12

*United States v. Cardona*,
    903 F.2d 60 (1st Cir. 1990) ...........................................................................17

*United States v. Clay*,
    355 F.3d 1281 (11th Cir. 2004) .....................................................................15

*United States v. Garcia-Avalino*,
    444 F.3d 444 (5th Cir. 2006) .........................................................................14

*United States v. Hensley*,
    469 U.S. 221 (1985) ....................................................................................16

*United States v. House*,
    684 F.3d 1173 (11th Cir. 2012) .....................................................................15

*United States v. Janik*,
    723 F.2d 537 (7th. Cir. 1983) ......................................................................11

*United States v. Lucas*,
    499 F.3d 769 (8th Cir. 2007) ....................................................................14, 15

*United States v. McDonald*,
    606 F.2d 552 (5th Cir. 1979) ..............................................................12, 17, 19

*United States v. Ovando-Garzo*,
    752 F.3d 1161 (8th Cir. 2014) ........................................................................8

*United States v. Phillips*,
    834 F.3d 1176 (11th Cir. 2016) .....................................................................14

*United States v. Salerno*,
    481 U.S. 739 (1987) ....................................................................................19

*United States v. Santana-Garcia*,
    264 F.3d 1188 (10th Cir. 2001) .....................................................................10

*United States v. Webster*,
    750 F.2d 307 (5th Cir. 1984) .........................................................................17

*United States v. Witten*,
    No. 13-CR-10022, 2014 WL 3101912 (S.D. Fla. July 7, 2014) .........................15

*Virginia v. Moore,*
   553 U.S. 164 (2008) ................................................................................................ 14, 15

## FEDERAL STATUTES

6 U.S.C. § 211 ....................................................................................................................4

8 U.S.C. § 1103(a)(3) ........................................................................................................4

8 U.S.C. § 1226 .............................................................................................................2, 5

8 U.S.C. § 1226(a) ....................................................................................................3, 4, 19

8 U.S.C. § 1226(c) .............................................................................................................4

8 U.S.C. § 1226(c)(1) ........................................................................................................3

8 U.S.C. § 1231 ...........................................................................................................2, 19

8 U.S.C. § 1231(a) ........................................................................................................4, 5

8 U.S.C. § 1231(a)(1)(A) ..................................................................................................3

8 U.S.C. § 1231(a)(2) ........................................................................................................3

8 U.S.C. § 1324a(d) ...........................................................................................................9

8 U.S.C. § 1357(a) ...........................................................................................................19

8 U.S.C. § 1357(a)(1) ........................................................................................................3

8 U.S.C. § 1357(a)(2) ..................................................................................................3, 19

8 U.S.C. § 1357(d) .............................................................................................................4

8 U.S.C. § 1357(g) .............................................................................................................3

8 U.S.C. § 1357(g)(1)-(9) ..................................................................................................3

8 U.S.C. § 1357(g)(3) ........................................................................................................3

8 U.S.C. § 1357(g)(10) ..........................................................................................4, 8, 13

8 U.S.C. § 1373 .................................................................................................................9

8 U.S.C. § 1373(c) ...........................................................................................................18

28 U.S.C. § 517 ..............................................................................................................1, 7

28 U.S.C. § 518 ....................................................................................................................1

## FEDERAL REGULATIONS

8 C.F.R. § 236.1 ...................................................................................................................5

8 C.F.R. § 241.2 ...................................................................................................................5

8 C.F.R. § 287.5 ...................................................................................................................5

8 C.F.R. § 287.7(a) ..............................................................................................................4

## STATE STATUES

Fla. Stat. § 901.15 .........................................................................................................11, 12

Fla. Stat. § 901.18 ..............................................................................................................12

## FEDERAL CONSTITUTIONAL PROVISIONS

Fourth Amendment.........................................................................................................*passim*

Tenth Amendment ...........................................................................................................8, 9

## FEDERAL RULES

Fed. R. Civ. P. 4.1(b) .........................................................................................................14

## MISCELLANEOUS

ICE Form I-247A (Immigration Detainer – Notice of Action),
   https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf .......................5

ICE Policy No. 10074.2 ¶¶ 2.4, 2.5,
   https://www.ice.gov/detainer-policy ...................................................................................5

Miami-Dade ICE cooperation policy,
   http://www.miamidade.gov/govaction/legistarfiles/Matters/Y2017/170412.pdf. .........................6

## INTERESTS OF THE UNITED STATES

The United States respectfully submits this brief in accordance with federal statutes that authorize the Department of Justice "to attend to the interests of the United States" by "argu[ing] any case in a court of the United States in which the United States is interested." 28 U.S.C. §§ 517, 518.[1] As explained below, this Court should reject Plaintiff's manifestly erroneous—and improperly raised—challenges to Miami-Dade County's cooperation with federal immigration enforcement efforts.

The United States has a substantial interest in, and long history of, working cooperatively with state and local governments on a range of law-enforcement priorities, including violent crime, homeland security, illegal narcotics, human trafficking, and immigration. On immigration, the federal government and local governments cooperate by sharing information about illegally present aliens who are removal priorities—such as unlawfully present aliens who have committed serious crimes.

To pursue these removal priorities, the federal government asks localities to cooperate with federal requests—contained in federal immigration "detainers" issued by U.S. Immigration and Customs Enforcement (ICE)—for local assistance in immigration-enforcement efforts against potentially removable criminal aliens. In accordance with federal law, ICE policy provides that ICE issues such detainers only when there is probable cause to believe that the subject of the detainer is a removable alien. ICE detainers are accompanied by an administrative warrant that rests on probable

---

[1] Title 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." Title 28 U.S.C. § 518 provides that "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so." These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party, *see, e.g., Application of Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000), and are not intended to "subject[] it to the general jurisdiction of this Court." *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002). Section 517 "contains no time limitation and does not require the Court's leave." *Gil v. Winn Dixie Stores, Inc.,* 242 F. Supp. 3d 1315, 1317 (S.D. Fla. 2017) (Scola, J.).

cause and is issued under federal statutes authorizing the detention and removal of certain aliens. *See* 8 U.S.C. §§ 1226, 1231. Detainers ask local law enforcement to notify ICE about potentially removable aliens who are in local custody and to detain them briefly (no more than 48 hours beyond when they would otherwise be released) so that ICE can take custody of them directly from local law enforcement. Without such cooperation, removable aliens would be released into local communities, where it is harder and more dangerous for ICE to take custody of them and where they may commit more crimes. Because detainers generally target aliens with pending criminal charges or convictions, they promote public safety and enforcement of the immigration laws.

Defendant Miami-Dade County has embraced this cooperative approach. It has adopted a policy requiring local law enforcement to cooperate with ICE detainer request. It has thus sought to promote the orderly, peaceful, and lawful apprehension of potentially removable criminal aliens.

Plaintiff now—belatedly—challenges Miami-Dade's policy of cooperation, contending that cooperation by localities such as Miami-Dade is facially unlawful. Opp. to Motion to Dismiss (Opp.) 1-2. Although Plaintiff's complaint alleges only that his brief detention by Miami-Dade was unlawful, he has—in his opposition to Defendants' motion to dismiss—belatedly launched a full-blown facial attack on the County's "practice of voluntarily detaining people after the criminal basis of their custody has ended at the request of Immigration and Customs Enforcement." *Id.* at 1.

The United States submits this statement of interest to explain that Plaintiff's challenges are legally baseless. This brief addresses three issues: (1) whether the County's policy is consistent with – and not preempted by -- federal law; (2) whether the policy is consistent with Florida law; and (3) whether the policy facially violates the Fourth Amendment. As explained below, the policy is consistent with federal law, Florida law, and the Fourth Amendment. Plaintiff's arguments to the contrary should be rejected.

## BACKGROUND

**A. Federal law authorizes States and localities to aid federal immigration enforcement, including by cooperating with federal detainer requests**

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending removal decision); *id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id.* § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[2]

Although the federal government possesses broad power over immigration, enforcing the laws concerning removable aliens is a formidable challenge. To meet that challenge, the federal government works with state and local governments. These cooperative efforts are critical to enabling the federal government to identify and remove the hundreds of thousands of aliens who violate immigration laws each year.

Federal law contemplates and authorizes these cooperative efforts. Congress has authorized the Department of Homeland Security (DHS) to enter into cooperative agreements with States and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, trained and qualified state and local officers may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform specified immigration enforcement functions relating to investigating, apprehending, and detaining aliens. *Id.* § 1357(g)(1)-(9). Even without a formal agreement, States and localities may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully

---

[2] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

present in the United States," *id.* § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include: "participat[ion] in a joint task force with federal officers"; "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable"; and "responding to requests for information about when an alien will be released from their custody." *Id.* The INA permits such cooperation whether it is directed by state statute or local directive or is implemented *ad hoc* by a local sheriff. *See id.* at 413.

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in federal immigration detainers issued by ICE, a component of DHS responsible for immigration enforcement in the interior of the country.[3] An immigration detainer notifies a State or locality that ICE intends to take custody of a removable alien who is detained in state or local criminal custody, and asks the State or locality to cooperate with ICE in that effort. A detainer asks a State or locality to cooperate in two main respects: (1) by notifying ICE of the alien's release date; and (2) by holding the alien for up to 48 hours, based on ICE's determination that it has probable cause that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing notification of release), (d) (describing request for temporary detention).[4]

DHS's detainer form, Form I-247A, sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable-

---

[3] U.S. Customs and Border Protection, another DHS component, also issues detainers in certain situations, not all of which require probable cause. 6 U.S.C. § 211. This brief addresses only ICE detainers, which do.

[4] Statutes authorizing such action include 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d). *See, e.g., Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009).

cause finding is based on: (1) a final order of removal against the alien; (2) the pendency of removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf.    The detainer form specifies that the State or locality should "[m]aintain custody of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Form I-247A (emphasis in original). Moreover, the form provides the "alien must be served with a copy of this form for the detainer to take effect," and that the existence of the detainer "should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." *Id.* The form encourages local law enforcement and the subject of the detainer himself to contact ICE's Law Enforcement Support Center with "*any* questions or concerns" about a detainer request. *Id.*

As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5, https://www.ice.gov/detainer-policy. That arrest warrant—either a Form I-200, Warrant for Arrest of Alien (issued for aliens not yet subject to a removal order) or a Form I-205, Warrant of Removal/Deportation (issued for aliens subject to a final removal order)—is issued by an executive immigration officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing officers who may issue such warrants and when). Except when the alien is already detained by ICE, ICE may issue a detainer to a law enforcement agency only when that agency has arrested the alien for a criminal offense in an exercise of its independent

arrest authority. ICE Policy No. 10074.2 ¶ 2.5. The policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

### B. Miami-Dade's cooperation policy

Miami-Dade's ICE cooperation policy, effective February 17, 2017, directs the Mayor of Miami-Dade County to return to its pre-2013 policy of cooperating with ICE detainer requests to the extent permissible by law without requiring federal reimbursement provided that the federal government show probable cause on all immigration detainers. *See* Resolution No. R-163-17, ECF 11-2, at 6. So under Miami-Dade's policy, the County cooperates with ICE detainer requests by both (1) notifying ICE of an alien's impending release, and (2) holding such individuals for up to 48 hours so that ICE may take custody of such individuals in a safe custodial environment.

### C. The complaint here

Plaintiff is a United States citizen who filed this lawsuit alleging that Miami-Dade's policy of cooperation with ICE detainers caused his wrongful detention. *See* Complaint ¶¶ 62-78. According to the complaint, the County's policy caused it to wrongly detain an American citizen, and therefore harmed Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution and in violation of Florida law governing the tort of unlawful imprisonment. *Id.* The complaint rests on the fact that Plaintiff is a U.S. citizen and therefore is not "removable under federal immigration law." *Id.* ¶ 25. The complaint acknowledges that as soon as ICE learned that Plaintiff is a U.S. citizen, it cancelled his detainer. *Id.* ¶¶ 60-61.

Plaintiff has not amended his complaint to add any claim challenging the County's policy as facially invalid under federal or state law. Yet on October 2, 2017, in his brief opposing the County's motion to dismiss, Plaintiff took the position that his complaint does not bring an as-applied

6

challenge to his allegedly wrongful detention as a U.S. citizen, but rather brings a facial challenge to the County's allegedly "unlawful policy and practice of voluntarily detaining people after the criminal basis of their custody has ended at the request of [ICE]." Opp. 1. Plaintiff now suggests that the County has "maintained a practice of holding individuals in its custody beyond the time they would otherwise be released on the sole basis that the person is the subject of an immigration detainer request," *id.* at 9-10, and that this policy violates federal law, state law, and the Fourth Amendment. *Id.* at 2-8, 9-12. Plaintiff's attempted expansion of the scope of his complaint—to challenge the legality of local cooperation with ICE detainers—raises issues that, if ruled upon by this Court, would affect the "interests of the United States." 28 U.S.C. § 517.

**The County's Policy Is Consistent with Federal Law,**
**with Florida Law, and with the Fourth Amendment**

The County's cooperation policy directs local law enforcement officers to cooperate with federal detainers by notifying federal authorities about removable aliens and detaining such aliens based on probable cause of removability. Plaintiff argues that this policy is facially unlawful because it conflicts with federal law, is not authorized by Florida law, and violates the Fourth Amendment. Opp. at 2-8, 9-12. Those arguments are baseless. Federal law allows this cooperation, state law does too, and that cooperation is fully consistent with the Fourth Amendment.

**A.   The County's policy is permitted by federal law**

Plaintiff suggests that federal law does not permit the County to implement a policy of cooperation with ICE detainers. Opp. 2-6. That is plainly wrong. The INA provides that state and local officers may "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). Such cooperation is consistent with the INA so long as it is undertaken pursuant to a "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410. The detainer mechanism satisfies that test. Detainers are "request[s] . . . from the Federal Government" to a State

or locality to assist its efforts to detain a particular alien, so complying with those requests is necessarily permissible cooperation at the federal government's "request, approval, or other instruction." *Id.* Courts have thus recognized that federal law permits States and localities to cooperate with federal notification and detention requests. *See, e.g., Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (detention by state officer lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (cooperation without "written agreement" is lawful if "not unilateral"). Federal law thus does not preempt the County's policy requiring cooperation with ICE detainers supported by a federal warrant.[5] *See City of El Cenizo, Texas v. Texas*, No. 17-50762, 2017 WL 4250186, *1-2 (5th Cir. Sept. 25, 2017) (staying injunction of such a state-wide policy because the State is "likely to succeed on the merits" of the claim that such state-mandated cooperation is consistent with federal law and the Fourth Amendment).

Plaintiff suggests that the fact that "Tenth Amendment prohibits the federal government from compelling the County to detain people" might alter this conclusion. Opp. 2, 8. It does not. Whatever limits there may be on federal compulsion of localities, there is no such federal compulsion here: detainers seek voluntary cooperation, not compulsion. And even if the federal government could not compel cooperation by a locality, Miami-Dade has authority to require county-wide cooperation with detainers—just as it may impose innumerable other county-wide measures. And Miami-Dade may do so without raising preemption concerns. Supreme Court caselaw bears this out. For example, the Supreme Court has recognized that a state law requiring local officers to ask the federal government amount an individual in their custody's immigration status is not preempted, even though no federal law explicitly requires such inquiries. *See Arizona,*

---

[5] Cases deeming unlawful certain state and local immigration arrests have—unlike here—involved *unilateral* state or local action without an express federal request or direction. *See, e.g., Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012).

567 U.S. at 411-13.[6] Similarly, while 8 U.S.C. § 1324a(d)—which established E-Verify, "an internet-based system that allows an employer to verify an employee's work-authorization status"—makes an employer's reliance on the federal E-Verify system voluntary, the Supreme Court has held that a state law mandating use of E-Verify is not preempted. *See Chamber of Commerce v. Whiting*, 563 U.S. 582, 590, 608-09 (2011). In short, even where the federal government may lack authority to mandate state or local action, States and localities may still use the "powers . . . reserved to the[m]," U.S. Const. amend. X, to accomplish the same end. *See Koog v. United States*, 79 F.3d 452, 460 (5th Cir. 1996).

## B. Cooperation with ICE detainers is consistent with Florida law

Plaintiff next contends that the County lacked "Florida law authority to detain" Plaintiff, Opp. 6, and that nothing in Florida law "confers authority on correctional officers to arrest [Plaintiff] for a civil immigration violation pursuant to an immigration detainer," *id.* at 8. Thus, in Plaintiff's view, the County cannot cooperate with ICE detainers because Florida law does not permit it.

Plaintiff is wrong. States retain inherent authority to cooperate with ICE detainers, and Plaintiff cannot demonstrate that the State of Florida has affirmatively relinquished that authority or that Congress has done so.

Like any other State, Florida wields broad "police powers," which are "an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people." *Manigault v. Springs*, 199 U.S. 473, 480 (1905). States did not give up their common law police powers by joining the Union. *See Arizona*, 567 U.S. at 400. The States' status as separate sovereigns means that they possess all residual powers not abridged or superseded by the United

---

[6] 8 U.S.C. § 1373 provides, among other things, that a jurisdiction may not restrict the sharing of "information regarding citizenship and immigration status" between federal and local officers.

States Constitution. *Mayor of New York v. Miln*, 36 U.S. 102, 139 (1838). This residual authority preexists any statutory invocation or clarification of that authority by a State's legislature. *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 193 (1819) (Marshall, C.J.). And while many state legislatures have, from the earliest days of the Republic, defined and regulated the circumstances under which their officers can effectuate arrests, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 336-38 (2001), such developments have generally been construed to supplement—not supplant—each State's residual, common law authority. *See, e.g.*, *Dep't of Pub. Safety & Corr. Servs. v. Berg*, 342 Md. 126, 137-39 (1996); *Commonwealth v. Leet*, 537 Pa. 89, 96 (1994); *State v. Stahl*, 838 P.2d 1193, 1196 (Wy. 1992). And absent evidence that it "was the clear and manifest purpose of Congress" to abridge some aspect of those common law police powers, Courts "assume that the historic police powers of the States are not superseded." *Arizona*, 567 U.S. at 400.

Thus, it is generally understood that there is no requirement that "before a state law enforcement officer may arrest a suspect for violating federal immigration law, state law must affirmatively authorize the officer to do so," and that such authority is implicitly retained, so long as there is "no state or local law to the contrary." *United States v. Santana-Garcia*, 264 F.3d 1188, 1193-94 (10th Cir. 2001). Rather, the overwhelming consensus is that at common law, a State's inherent police powers are not diminished absent explicit legislative action cabining a state or local peace officer's arrest authority. *See id.*; *accord United States v. Bowdach*, 561 F.2d 1160, 1167-68 (5th Cir. 1977) (Florida state officers may make arrests based on federal statutes or arrest warrants notwithstanding absence of state statute explicitly and specifically so permitting);[7] *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) (recognizing state law enforcement officers' implicit authority to arrest suspects for federal offenses, notwithstanding fact that "no Illinois statute explicitly authorized an Illinois

---

[7] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), all decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent in this Circuit.

officer to arrest"); *cf. Marsh v. United States*, 29 F.2d 172, 174 (2d Cir. 1928) (Hand, J.) (the fact that state statute governing arrest authority does not explicitly authorize a specific arrest does not mean that arrest is not authorized, because it is inappropriate to infer in such circumstances an intent to restrict pre-existing authority to arrest for other offenses); *Leet*, 537 Pa. at 96 ("it is not necessary to find a motor vehicle code provision granting to sheriffs the power to enforce the code—sheriffs have had the power and duty to enforce the laws since before the Magna Carta; rather, it would be necessary to find an unequivocal provision in the code abrogating the sheriff's power in order to conclude that the sheriff may not enforce the code"); *Christopher v. Sussex Cnty.*, 77 A.3d 951, 959 (Del. 2013) (recognizing residual common law arrest authority, but noting a state legislature may narrow that authority); *Berg*, 342 Md. at 137-39 (stating courts should "not attribute" to the legislature "an intent to restrict" common law arrest authority).[8]

No Florida statute or judicial precedent abrogates or limits Florida's common law police powers, including authority to effect arrests in cooperation with the federal government. To the contrary, Florida law reinforces its common law police powers by providing that any "peace officer," regardless of whether they themselves possess a "warrant," may "arrest a person" when "[a] warrant for the arrest has been issued and is held by another peace officer for execution." Fla. Stat. § 901.15. Although the statute does not define "peace officer," the term is understood to be interchangeable with the term "law enforcement officer," *Huebner v. State*, 731 So. 2d 40, 43 (Fla. Dist. Ct. App. 1999), and it encompasses *federal* law enforcement officers. *See Mauldin v. United States*, 328 F.2d 779, 780 (5th Cir. 1964) (explaining that a "reasonable ground for the arrest by the federal agent existed

---

[8] One State's judiciary has ruled to the contrary, holding that States may not act on their common law police powers absent *affirmative* legislation activating those powers. *See Lunn v. Commonwealth*, 477 Mass. 517, 528-33 (2017) ("[t]here is no history of 'implicit' or 'inherent' arrest authority having been recognized in Massachusetts that is greater than what is recognized by our common law and the enactments of our Legislature"). *Lunn* represents the minority view, rests on Massachusetts law, and conflicts with the authorities cited above.

within the scope of the Florida law"). Thus, Florida law contemplates that local police officers will assist federal "peace officers" in effecting federal law enforcement's warrant for and ultimate arrest of an alien for purposes of initiating removal proceedings or executing a final order of removal. *See, e.g., Bowdach*, 561 F.2d at 1167-68 (holding that Fla. Stat. § 901.15 permits *state* officers to make arrests based on *federal* arrest warrants). And nothing in Florida statutory law or caselaw precludes the application of that authority to warrants issued and held by federal immigration law enforcement officers. *See, e.g., United States v. McDonald*, 606 F.2d 552, 553 (5th Cir. 1979) ("Officer Robinson had probable cause to arrest appellant under Florida law, so long as the officer reasonably believed that appellant was the subject of a federal arrest warrant").

Indeed, not only does Florida law authorize local officers to assist other peace officers, including federal officers, but it also immunizes those officers engaged in any such assistance from any civil liability for "any or any reasonable conduct in rendering assistance to that officer." Fla. Stat. § 901.18. Under this provision, "[a] person commanded to aid a peace officer shall have the same authority to arrest as that peace officer." *Id.* Although that provision applies when a peace officer is "commanded" to assist, *id.*, Florida law makes clear that "command" as used in this statute does not mean a mandatory directive, and may include a *request* for assistance. *See, e.g., State v. Boatman*, 901 So. 2d 222, 224 (Fla. Dist. Ct. App. 2005); *Goodman v. State*, 399 So. 2d 1120, 1121 (Fla. Dist. Ct. App. 1990). Thus, because "peace officer" under Florida law encompasses federal officers, *see supra* at 11-12, cooperation with a federal detainer, regardless of the identity of the State or local officer in fact cooperating, fits comfortably within the language of Fla. Stat. § 901.18. *See Goodman*, 399 So. 2d at 1121 (holding section 901.18 applies where local officer "had been requested to aid" another law enforcement entity "in effecting an arrest" and that the cooperating officer "had, under these circumstances, the same authority as that" of those requesting assistance); *cf. State v. Eldridge*, 565 So. 2d 787, 788 (Fla. Dist. Ct. App. 1990) ("To hold otherwise may allow a suspect to frustrate an on-

the-scene arrest by incapacitating the officer conducting an investigation in the first instance."). These authorities make clear that the Florida Legislature has not abridged state or local police officers' common law authority to cooperate with ICE detainer requests.

Although Congress could abrogate a State's common law authority to exercise its police powers, *see Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), it has not done so. To the contrary, the INA provides that federal law does not otherwise preempt any state or local power to "to communicate with the Attorney General regarding the immigration status of any individual" or "otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10)(B), at least where that cooperation follows, as it does here, "a request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410.

In light of these authorities, there is no basis for ruling that the absence of a specific, affirmative Florida statute authorizing cooperation with federal requests for assistance contained in immigration detainers and administrative warrants, means that state peace officers lack such authority.

## C. The County's policy is consistent with the Fourth Amendment

Plaintiff contends that Miami-Dade may not rely on ICE's probable-cause determinations in cooperating with ICE because they are "based on a probable cause finding of a civil immigration violation made by federal immigration officers." Opp. 13. Three points show that the district court erred: (1) federal officials can (as no party disputes) constitutionally arrest aliens under a federal administrative warrant; (2) the lawfulness of that practice for Fourth Amendment purposes does not change when local officials make such an arrest; and (3) there is no constitutional problem when local officials rely on federal officials' probable-cause determinations.

*First*, there is no dispute that the Fourth Amendment permits *federal* officers to make civil

13

arrests of aliens based only on probable cause of removability contained in a detainer or administrative warrant. To start, the "Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense." *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) (collecting examples, including bench warrants for civil contempt and writs of replevin); *see* Fed. R. Civ. P. 4.1(b) (allowing "order[s] committing a person for civil contempt"). Indeed, given that "[i]n determining whether a search or seizure is unreasonable, [courts] begin with history," including "statutes and common law of the founding era," *Virginia v. Moore*, 553 U.S. 164, 168 (2008), that understanding is especially settled in the immigration context. There is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960) (noting "impressive historical evidence" of validity of "administrative deportation arrest from almost the beginning of the Nation"); *see, e.g., Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (aliens "may be arrested by administrative warrant issued without order of a magistrate").

Plaintiff does not contest that federal immigration officers can detain an alien based on a civil administrative warrant attesting to probable cause of removability. Instead, Plaintiff suggests that Fourth Amendment problems arise when a local officer effects an arrest based on probable cause of a civil—as opposed to a criminal—violation. *See* Opp. 13. The authorities discussed above rebut that suggestion.[9] To the extent that Plaintiff suggests that warrants accompanying detainers are problematic because they are issued by an ICE official rather than a judicial officer, he is mistaken: given the civil context of federal immigration detainers, an executive immigration officer can

---

[9] Immigration is but one of several civil circumstances involving administrative warrants where the Fourth Amendment imposes lesser restrictions. *See, e.g., United States v. Garcia-Avalino*, 444 F.3d 444, 446-47 (5th Cir. 2006) (administrative warrants issued to "supervised releasees"); *accord Sherman*, 502 F.3d at 876-80 (same, parole violators); *Lucas*, 499 F.3d 769, 776-79 (same, prison escapees); *Henderson v. Simms*, 223 F.3d 267 (4th Cir. 2000) (same, so-called "retake" warrants issued by State officials directed at prisoners released prematurely).

14

constitutionally make the necessary probable-cause determination. "[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel*, 362 U.S. at 234. So "it is not unconstitutional under the Fourth Amendment for the Legislature to delegate a probable cause determination to an executive officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court judge." *Roy v. County of Los Angeles*, No. 13-4416, 2017 WL 2559616, *10 (C.D. Cal. June 12, 2017); *see Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876-80 (9th Cir. 2007) (in immigration context, warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause"); *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (same); *Spinella v. Esperdy*, 188 F. Supp. 535, 540-41 (S.D.N.Y. 1960) (same); *State v. Rodriguez*, 317 Or. 27, 42-43 (1993) (similar).

*Second*, because the Fourth Amendment allows federal immigration officers to arrest and detain based on an administrative warrant attesting to probable cause of removability, state and local officials can do the same when they act at the request or direction of the federal government. The Fourth Amendment does not apply differently when a local official rather than a federal official is arresting or detaining. "The Fourth Amendment's meaning [does] not change with local law enforcement practices." *Virginia*, 553 U.S. at 172. To hold otherwise would cause Fourth Amendment "protections [to] vary if federal officers were not subject to the same statutory constraints as state officers." *Id.* at 176.

Thus, if a seizure is legal under the Fourth Amendment when a federal officer effectuates it, then so too when a state or local officer does so, even where state law does not authorize the arrest. A seizure is "reasonable under the Fourth Amendment when supported by probable cause or reasonable suspicion even if it is inconsistent with agency policy, or state law." *United States v. House*,

684 F.3d 1173, 1184 (11th Cir. 2012) (citations omitted); *see United States v. Clay*, 355 F.3d 1281, 1283 (11th Cir. 2004) ("whether [State] law permits or does not permit" the arrest "is irrelevant in a federal court's independent evaluation of the admissibility and the reasonableness of a search and seizure by state officers"); *United States v. Witten*, No. 13-CR-10022, 2014 WL 3101912, at *6 (S.D. Fla. July 7, 2014) ("even where state officers are involved in the arrest at issue, state law does not govern the Fourth Amendment probable cause determination").

Accordingly, a police officer's "violation of [state] law [in arresting alien based on a violation of federal immigration law] does not constitute a violation of the Fourth Amendment." *Martinez-Medina v. Holder*, 673 F.3d 1029, 1037 (9th Cir. 2011). And the legality of an arrest made by a state officer is especially certain where, as here, a local officer is not just arresting for a federal offense, but doing so at and after the express request of the federal government supported by a federal administrative warrant. Thus, Plaintiff's suggestion that the Fourth Amendment bars local officials—but not federal officials—from detaining aliens based upon suspicion of removability alone is incorrect. Such arrests are lawful if the local officer does not act unilaterally. *See supra* at pp. 8 (citing Fourth, Fifth, and Eighth Circuit cases affirming that point). Indeed, the Fifth Circuit recently affirmed this proposition, staying an injunction of a state law that, among other things, required cooperating with federal requests for detention and notification of an alien's release date, because "defendants are likely to succeed on the merits" of their claim that such cooperation does not violate the Fourth Amendment. *El Cenizo*, 2017 WL 4250186, *1-2. Under Miami-Dade's current policy, local officers do not act unilaterally—they act at ICE's request.

*Third*, arrests or detentions based on probable cause may lawfully be made where the probable-cause determination is made by one official (here, a federal ICE officer) and relied on by another official who serves under a different sovereign (here, a local official). Put differently, state and local officers may rely on ICE's findings of probable cause, as articulated in a detainer and

administrative warrant, to detain the subject of a detainer when the federal government so requests. Where one officer obtains an arrest warrant based on probable cause, other officers can make the arrest even if they are "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985). An officer may thus arrest someone, even when the officer does not know the facts establishing probable cause, if the "officer reasonably believed that appellant was the subject of a federal arrest warrant." *McDonald*, 606 F.2d at 553.

This rule of collective law-enforcement knowledge applies when "the communication [is] between federal and state or local authorities," 3 Wayne R. LaFave, SEARCH AND SEIZURE § 3.5(b) (2016) (collecting cases), including when a state or local officer arrests someone based upon probable cause from information received from an immigration officer. *See, e.g.*, *Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer"); *Liu v. Phillips*, 234 F.3d 55, 57-58 (1st Cir. 2000) (relying on collective knowledge to uphold qualified immunity for a local officer who arrested an alien at the direction of an INS officer for a suspected violation of the immigration laws); *Smith v. State*, 719 So. 2d 1018, 1022 (Fla. Dist. Ct. App. 1998) (upholding stop by local police based on the reasonable suspicion provided by immigration officer that defendant present illegally). Courts routinely apply the collective-knowledge doctrine to uphold arrests in the civil context where one sovereign makes an arrest based on another sovereign's probable-cause determination.[10]

Therefore, Plaintiff is wrong to suggest that the Fourth Amendment requires local law enforcement to make probable-cause assessments for themselves, despite the determination made by federal immigration officers. *See* Opp. 13-15. Indeed, an arresting officer need not possess

---

[10] *See e.g.*, *United States v. Cardona*, 903 F.2d 60, 63-64 (1st Cir. 1990) (parole violator warrant issued by New York, effectuated by local police in Rhode Island); *Furrow v. U.S. Bd. of Parole*, 418 F. Supp. 1309, 1312 (D. Me. 1976) (warrant issued by federal government, effectuated by Maine); *Andrews v. State*, 962 So. 2d 971, 973 (Fla. Dist. Ct. App. 2007) (military desertion warrant issue by federal agents, but effected in part by local police in the search of his residence and arrest).

"personal knowledge of *any* of the facts establishing probable cause." *United States v. Webster*, 750 F.2d 307, 324 (5th Cir. 1984) (emphasis in original). All that is required is that "the officer who issues the directive must himself have probable cause to arrest." *Id.* If it were otherwise, then the collective-knowledge doctrine would not exist—arresting officers could not rely on what other officers tell them, but would instead have to gather all facts themselves before making an arrest. That is not the law in this Circuit. *See United States v. Ashley*, 569 F.2d 975, 983 (5th Cir. 1978) (collective-knowledge inapplicable only "if the directing officer does not have probable cause").

Plaintiff contends that the County's policy requires its officers to detain when they have information negating probable cause, including the possibility that the detainee is a citizen. Opp. 13. That is incorrect. The County's policy calls on its officers to cooperate with ICE detainers. But an ICE detainer does not demand blind action; it seeks *cooperation*. It invites local law enforcement *and* the subject of the detainer himself to contact ICE's Law Enforcement Support Center with "*any* questions or concerns" about a detainer request. Form I-247A at 1 (emphasis added). Part of ICE's detainer policy is to seek local law enforcement insight—which would include information negating probable cause. Honoring detainers thus includes alerting ICE to facts negating probable cause. Indeed, federal law *requires* ICE to respond to such actions. *See* 8 U.S.C. § 1373(c).

Moreover, the detainer form itself clearly, in six different languages, provides that "[i]f you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903." Form I-247A at 2. Indeed, just such an interaction occurred here: less than 24 hours after Plaintiff posted bond on his local charges, ICE official interviewed him and, upon learning of his status as a citizen, immediately withdrew the detainer request, after which Plaintiff was released. *See* Complaint ¶¶ 57, 61. And as the County explains, the fact that Plaintiff is a U.S. citizen alone does not render his temporary seizure unlawful under the Fourth Amendment. Reply Br. 8 (collecting cases); *see also, e.g., Rodriguez v. Farrell*, 280 F.3d

1341, 1346-49 (11th Cir. 2002) (explaining that reasonable mistake precludes finding of Fourth Amendment violation). Regardless, that Plaintiff alleges that *he* might have been unlawfully detained cannot support a finding that Miami-Dade's policy as a *facial* matter violates the Fourth Amendment. *El Cenizo*, 2017 WL 4250186, *1-2 (staying injunction of state statute requiring cooperation with ICE detainers entered on a facial basis and premised in part on erroneous conclusion that local officers may not rely on federal determinations of probable cause under the collective knowledge doctrine); *accord United States v. Salerno*, 481 U.S. 739, 746 (1987) (holding Plaintiff must demonstrate "that no set of circumstances exists under which [Miami-Dade's policy] would be valid").

Plaintiff also asserts that any arrest in response to a detainer issued under ICE's current policy is a warrantless seizure, even under federal law. *See* Opp. 5-8, 13-14. That too is wrong. As explained, the Department of Homeland Security has explicit authority to issue, as it did here, warrants of arrest for individuals who are removable from the United States or subject to final orders of removal. *See* 8 U.S.C. §§ 1226(a), 1231. That the warrant is issued pursuant to federal authority in no way precludes another sovereign, like a State or locality, from relying on the probable cause determination made in that warrant. *See, e.g.*, *McDonald*, 606 F.2d at 553 ("officer reasonably believed that appellant was the subject of a federal arrest warrant"). Plaintiff relies on 8 U.S.C. § 1357(a)(2) to suggest that such arrests, even when effected by *federal* officers, may occur only when a federal officers views an alien entering the United States unlawfully or has reason to believe the person is likely to escape before a warrant can be obtained. Opp. 5. But that statute governs only *warrantless* arrests of aliens. *See* 8 U.S.C. § 1357(a) (describing when federal agents may take action "without warrant"). Indeed, the case on which Plaintiff relies, *see* Opp. 5-6, for his view of federal law, *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1009 (N.D. Ill. 2016), [11] cites 8 U.S.C. § 1226(a) and

---

[11] The *Moreno* court ultimately issued an order endorsing the legality of ICE's reliance on administrative warrants issued "in accordance with the applicable statute and regulations" as a basis

acknowledges that an alien may be detained "pursuant to 'a warrant issued by the Attorney General'" without any finding of flight risk before issuance of the warrant.

For these reasons, the Fourth Amendment allows local officials to detain aliens for up to 48 hours in response to federal detainer requests. Miami-Dade's cooperation policy is thus valid—and is plainly valid on its face. Plaintiff errs in arguing otherwise.

### D. Plaintiff has not shown any basis for facially invalidating the County's policy

The arguments above establish that Plaintiff is wrong that Miami-Dade's policy is unconstitutional as applied to him. And those arguments certainly establish that Plaintiff cannot obtain relief on his (improperly raised) argument that the policy is *facially* invalid. He cannot show "that no set of circumstances exists under which [Miami-Dade's policy] would be valid." *Salerno*, 481 U.S. at 746.

Even if Plaintiff had alleged a plausible claim on his own behalf, he is not entitled to obtain sweeping relief on behalf of others. Article III demands that "[t]he remedy" sought must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). The facial invalidation of the County's cooperative policy plainly violates this rule. Plaintiff has no "personal stake" in any relief beyond his own situation. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). To hold otherwise would violate the tenet that a party "will not be heard to challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1972).

### CONCLUSION

The Court should reject Plaintiff's challenges to the County's policy and dismiss Plaintiff's complaint.

---

for detention, Order, ECF No. 239, *Moreno v. Napolitano*, No. 11-5452 (N.D. Ill. Nov. 28. 2016), and rejected a request to limit the holding to judge-issued criminal warrants. *See id.*, ECF No. 254.

Dated: October 23, 2017                         Respectfully submitted,

                                                CHAD A. READLER
                                                *Acting Assistant Attorney General*
                                                Civil Division

                                                WILLIAM C. PEACHEY
                                                *Director*, District Court Section
                                                Office of Immigration Litigation

                                                /s/ Erez Reuveni
                                                EREZ REUVENI
                                                *Senior Litigation Counsel*
                                                U.S. Department of Justice
                                                Civil Division
                                                450 5th Street NW
                                                Washington, D.C. 20530
                                                Tel: 202-307-4293
                                                erez.r.reuveni@usdoj.gov

                                                JOSEPH A. DARROW
                                                Trial Attorney

                                                *Counsel for United States of America*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2017, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the attorneys of record for all parties.

/s/ Erez Reuveni
EREZ REUVENI
Senior Litigation Counsel
U.S. Department of Justice
