**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

GARLAND CREEDLE,

    Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually.

    Defendants.

_____/

Case No.:


**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiff Garland Creedle sues Defendants Miami-Dade County, Florida, United States Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), and Alexander Martinez, ICE Deportation Officer, and states the following:

### INTRODUCTION

1. Miami-Dade County unlawfully arrested and detained Plaintiff Garland Creedle solely for civil immigration purposes, even though Mr. Creedle is a U.S. citizen who cannot be deported. The County arrested Mr. Creedle at the request of Defendant Alexander Martinez, an ICE deportation officer, pursuant to a check-the-box ICE detainer form. The County's arrest of Mr. Creedle occurred pursuant to a policy and practice of Miami-Dade County that requires the

Miami-Dade Corrections and Rehabilitation Department (MDCR) to deny release for 48 hours or more to any person who is the subject of an ICE detainer request.

2. The policy and practice of Miami-Dade County started on January 26, 2017 when Mayor Carlos A. Gimenez issued a directive instructing MDCR to honor all ICE detainers. *See* Exhibit A, Attached. The directive reversed over three years of prior policy, under which Miami-Dade Co. declined to use millions of taxpayer dollars to underwrite the federal government's immigration enforcement agenda.

3. The County's policy of acceding to immigration detainer requests runs contrary to hundreds of other cities and counties across the country that have reaffirmed their commitment to limit their unnecessary and unlawful involvement in federal immigration enforcement. The detention policy causes the County routinely to violate the Fourth and Fourteenth Amendments to the U.S. Constitution as well as Florida law.

4. Mr. Creedle requests a declaratory judgment that the County's detainer arrest policy violates the prohibition against unlawful seizures under the Fourth Amendment to the U.S. Constitution as incorporated into the Fourteenth Amendment, Mr. Creedle's substantive due process rights under the Fourteenth Amendment of the U.S. Constitution, and Florida law. Mr. Creedle requests monetary damages pursuant to 42 U.S.C. § 1983. Mr. Creedle also seeks a declaratory judgment that the detainer issued by Defendant ICE against the Plaintiff exceeded Defendant's statutory authority. Finally, Mr. Creedle seeks monetary damages against Defendant Alexander Martinez as having violated Mr. Creedle's clearly established Fourth and Fifth Amendment rights.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, 1367,

2201-02, 5 U.S.C. §§ 702-03, Article III of the U.S. Constitution, and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2).

## PARTIES

### Plaintiff

6. Plaintiff Garland Creedle was born in Honduras. He is 19 years old. Mr. Creedle is a U.S. citizen and has been since birth by virtue of the U.S. citizenship held by his father, Willie Edward Creedle.

### Defendants

7. Defendant Miami-Dade County is a political subdivision of the State of Florida that can be sued in its own name. Miami-Dade County is responsible for authorizing the policy. and practice that led to the unlawful arrest of Mr. Creedle. The County is responsible for the acts of MDCR, an administrative department of Miami-Dade County.

8. Defendant Miami-Dade County is sued in its official capacity and is a "person" liable for monetary damages pursuant to 42 U.S.C. § 1983. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

9. Defendant DHS is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant ICE is a component of DHS responsible for the criminal and civil enforcement of the immigration laws and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

11.     Defendant Alexander Martinez is the ICE deportation officer who issued the detainer requesting that the County arrest Mr. Creedle. Defendant Martinez is an agent and employee of ICE. Mr. Creedle sues Defendant Martinez in his personal capacity.

**STATEMENT OF FACTS**

**"Immigration Detainer" Requests**

12.     When a person is arrested and taken to a Miami-Dade County jail, MDCR officials take their fingerprints. These fingerprints are sent to the Federal Bureau of Investigation and DHS.

13.     The fingerprint background check reveals any outstanding judicial warrants, which appear on the booking officer's computer screen. A MDCR official transfers this information to the inmate's "jail card."

14.     The fingerprint background check may also trigger a detainer request from federal immigration authorities at ICE to re-arrest a person after the person's criminal custody has come to an end.

15.     A detainer request is not a judicial warrant but a request issued by an ICE enforcement official.

16.     An immigration detainer request is a boilerplate, checkbox form issued by a rank-and-file federal immigration officer for a civil immigration purpose.

17.     Once MDCR officials are alerted of a detainer request made by ICE, they mark the detained person's jail card with the phrase "immigration hold" or "immigration detainer."

18.     MDCR officials announce in open court when people have immigration holds on them.

19. From the moment that a person's jail card is marked to indicate an immigration detainer MDCR treats the detained person as if he or she is not eligible for release.

20. The practice of treating everyone with an immigration detainer as not eligible for release has immediate and dire effects.

21. People with immigration detainers cannot pay the standard bond amount to get out of the jail the same day that they are arrested.

22. Any inmate with an immigration detainer becomes ineligible for house arrest or a diversion program.

23. When detained persons or their family and friends ask about a detained person's eligibility for bond or try to post bond, MDCR officials announce that the detained person will not be released because of the detainer.

24. As a result of the immigration detainers, some bond companies will not post bond.

25. DHS agency regulations authorize the issuance of detainers in certain circumstances. *See* 8 C.F.R. § 287.7(b) (authorizing all "deportation officers" and "immigration enforcement agents," among others, to issue detainers). A detainer requests a local law enforcement agency (LEA) to arrest and detain an individual in the LEA's custody for potential civil action by federal immigration authorities *after* the person is entitled to release.

26. Under the immigration detainer, MDCR officials re-arrest and detain the person for potential civil action by federal immigration authorities *after* the individual is entitled to release.

27. A detainer is not supported by a warrant or any other probable cause determination by a detached and neutral judicial officer. Nor is it supported by a sworn,

particularized showing of probable cause that the subject is a noncitizen and removable under federal immigration law.

28.     A detainer is a fill-in-the-blank form with check boxes for a generic list of potential sources of information that do not form the basis for a particularized probable cause determination that the detainer subject is removable on a civil immigration violation, including "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."

29.     The form used by ICE to lodge a detainer is called a "Department of Homeland Security (DHS) Request for Voluntary Transfer."

30.     Detainer requests are not supported by probable cause in the form of a sworn statement of specific facts relating to the subject of the detainer.

31.     The detainer request form contains no determination that there is a reason to believe that the subject individual is "likely to escape before a warrant can be obtained," as is required when federal authorities make a warrantless civil immigration arrest under federal law. 8 U.S.C. § 1357(a)(2).

### The 2013 County Resolution Limiting Miami-Dade's Participation in the Federal Government's Immigration Detainer Regime

32.     ICE detainers are merely *requests* for detention – they do not purport to *require* localities like Miami-Dade County to do anything. *See Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014) (detainer regulation "authoriz[es] only permissive requests" for detention); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 40 (D.R.I. 2014); *aff'd in part,* 793 F.3d 208 (1st

Cir. 2015); *Miranda-Olivares v. v. Clackamas County*, 2014 WL 1414305, *4-8 (D. Or. Apr. 11, 2014).

33. In December 2013, Miami-Dade's Board of County Commissioners enacted a resolution which directed the Mayor to limit the County's authority to arrest individuals pursuant to immigration detainer requests. *See* Miami-Dade Cty. Bd. of Comm'rs, Resolution 1008-13 (Dec. 3, 2013), *available at* http://www.miamidade.gov/govaction/legistarfiles/Matters/Y2013/132196.pdf. Under this policy:

> Miami-Dade Corrections and Rehabilitation Department may, in its discretion, honor detainer requests issued by United States Immigration and Customs Enforcement only if the federal government agrees in writing to reimburse Miami-Dade County for any and all costs relating to compliance with [ICE] detainer requests and the inmate that is the subject of such a request has a previous conviction for a Forcible Felony, as defined in Florida Statute section 776.08, or the inmate that is the subject of such request has, at the time the Miami-Dade Corrections and Rehabilitation Department receives the detainer request, a pending charge of a non-bondable offense, as provided by Article I, Section 14 of the Florida Constitution, regardless of whether bond is eventually granted.

*Id*. at 5. The policy thus imposed two conditions that must be satisfied before the County may detain an individual pursuant to an ICE detainer. As a threshold matter, the County would not participate in any immigration detention unless the federal government agreed to reimburse the County for all associated costs in writing. And if the federal government agreed to reimbursement, the County would arrest only individuals who have been charged or convicted of certain enumerated offenses.

34. The Resolution became effective on December 13, 2013, ten days after its adoption. *See id*. at 6; Miami-Dade Home Rule Charter § 2.02(D) (providing the Mayor a 10-day veto period over "any legislative [ . . . ] decision of the Commission"). Because the federal

government declined to reimburse the County for any expenses associated with detainers, the MDCR, the department responsible for the County's jails, stopped arresting individuals pursuant to ICE detainer requests in January 2014.

35. The Board of County Commissioners ratified its position when, just over a year ago, it unanimously resolved to oppose statewide legislation that would preempt its anti-detainer policy. *See* Miami-Dade Cty. Bd. of Comm'rs, Resolution 77-16 (Jan. 20, 2016), *available at* http://www.miamidade.gov/govaction/legistarfiles/MinMatters/Y2015/153028min.pdf. The resolution recognized that, since the County Commission adopted the County's detainer policy in 2013, "the taxpayers of Miami-Dade County have saved hundreds of thousands of dollars in costs that are unreimbursed by the federal government associated with honoring immigration detainer requests." *Id*. at 4.

36. The Board's 2013 resolution also recognized that federal courts across the United States "have found that local law enforcement agencies that detain individuals on the sole authority of a detainer request violate the Fourth Amendment of the U.S. Constitution, exposing such agencies to legal liability unless there has been an independent finding of probable cause to justify detention." *Id*. The Board noted that "a judge is not required to review or approve an immigration detainer," and that a detainer "may be issued by a single Immigration[] and Customs Enforcement officer when there are no immigration proceedings pending." *Id*. at 6. This process, the Board recognized, "does not meet the U.S. Constitution's minimum standard for authorizing detention after an inmate is scheduled to be released." *Id*. The Board thus opposed "legislation that would preempt policies set by th[e] Board related to immigration detainer requests." *Id*. at 8.

37. For more than three years, MDCR dutifully followed the detainer policy enacted by the Board of County Commissioners.

**The 2017 Change In Policy and Practice**

38. On January 26, 2017, Miami-Dade County Mayor Gimenez sent a memorandum to MDCR's Interim Director, Daniel Junior, directing Mr. Junior and his staff "to honor all immigration detainer requests[.]" *See* Exhibit A, Attached. The directive was not preceded by any public notice or opportunity for debate, nor did it make any mention of the Board of County Commissioners' resolution to limit MDCR's authority to hold people pursuant to detainer requests.

39. On February 17, 2017, the Board of County Commissioners amended its 2013 Resolution (1008-13) to direct the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County … is cooperating with the federal government to the extent permissible by law." Miami-Dade Cty. Bd. of Comm'rs, Resolution 163-17 (Feb. 17, 2017), *available at* http://www.miamidade.gov/govaction/matter.asp?matter=170440&file=false&yearFolder=Y2017.

40. MDCR is following Mayor Gimenez's directive and, since January 26, 2017, has maintained a policy and practice of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request.

**MDCR's Unlawful Arrest and Detention of Plaintiff**

41. Plaintiff Garland Creedle, who was born in Honduras, has been a U.S. citizen since the moment of his birth by virtue of his father's U.S. citizenship. He is 19 years old.

42.    Mr. Creedle came to the United States from Honduras in 2015.

43.    Immigration enforcement officials arrested him and put him in administrative removal proceedings before an immigration judge.

44.    On April 28, 2015, immigration officials with DHS filed a motion with the immigration judge stating that the proceedings should be terminated on the grounds that Mr. Creedle is a U.S. citizen. *See* Exhibit B, Attached.

45.    In the motion, the Department stated that Mr. Creedle had submitted documentation showing that he had acquired citizenship through his father, Willie Edward Creedle, and that termination was warranted because Mr. Creedle is a U.S. citizen. *Id.*

46.    On April 30, 2015, an immigration judge granted the federal government's motion and terminated proceedings against Mr. Creedle. *See* Exhibit C, Attached.

47.    On the evening of March 12, 2017, Mr. Creedle was arrested after an alleged domestic dispute and taken to Miami-Dade County jail, where he was held on bond.

48.    Mr. Creedle was never charged in court with the offense for which the police arrested him. The State of Florida issued a "No Action" in his case.

49.    On the evening that police arrested Mr. Creedle, MDCR officials fingerprinted him.

50.    Early the next morning, on March 13, 2017, MDCR received an immigration detainer request, a Request for Voluntary Transfer naming Mr. Creedle as its subject, from Defendant Alexander Martinez from ICE. *See* Exhibit D, Attached.

51.    Defendant Martinez is an immigration enforcement officer.

52.    Defendant Martinez is not a neutral and detached adjudicator.

53.    Mr. Creedle told MDCR officials that he is a U.S. citizen.

54. The Request for Voluntary Transfer form contained the bare assertion by Defendant Martinez that Mr. Creedle was "a removable alien" under civil immigration law.

55. The box checked on the detainer form stated that this determination was based on a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in adition to other reliable information, that the subject either lacks immigration status or nothwithstanding such status is removable under U.S. immigration law." The form contained no additional information concerning this supposed "biometric confirmation" or "records check" of Mr. Creedle.

56. The detainer form requested MDCR to re-arrest Mr. Creedle and jail him for an additional 48 hours, excluding holidays and weekends, beyond the time he would otherwise be entitled to release.

57. The detainer form did not allege probable cause to believe that Mr. Creedle had committed any crime.

58. The detainer form did not state facts amounting to an individualized determination that there was probable cause to believe that Mr. Creedle was removable from the U.S., or that there was reason to believe that Mr. Creedle posed a risk of flight.

59. The detainer form listing Mr. Creedle as a subject was not supported by a warrant or any other probable cause determination by a detached and neutral judicial officer, nor did it include any individualized assessment of Mr. Creedle's risk of flight.

60. On March 13, 2017, during normal business hours, Mr. Creedle sought to be released from MDCR and posted bond. *See* Exhibit E, Attached.

61. Mr. Creedle was entitled to be released immediately upon posting bond.

62. Rather than release Mr. Creedle after the bond was posted, MDCR re-arrested him and maintained custody over him for transfer to ICE.

63. Mr. Creedle spent the night of March 13, 2017 in jail in the custody of MDCR.

64. Based on nothing more than the purported authority of the immigration detainer, MDCR detained Mr. Creedle beyond the time he was entitled to release solely because ICE issued a detainer request.

65. On March 14, 2017, ICE officials interviewed Mr. Creedle in jail and withdrew the detainer request.

66. After ICE withdrew the detainer request, Mr. Creedle was released on bond.

## CAUSES OF ACTION

### COUNT I
### Fourth Amendment Violation
### (42 U.S.C. § 1983)
### Damages and Declaratory Judgment
### Against Miami-Dade County

67. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

68. Defendants arrested Mr. Creedle by continuing to hold him after the legal grounds for his custody expired, solely because Defendants had received an immigration detainer requesting his continued arrest.

69. Defendants arrested Mr. Creedle pursuant to an official policy and practice of the County, which requires MDCR to "honor all immigration detainer requests." MDCR has engaged in a practice of arresting and holding all individuals subject to an immigration detainer beyond the time they would otherwise be entitled to release.

70. As a consequence of Defendants' actions, Mr. Creedle suffered violations of the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and

12

seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the incorporation doctrine, the due process clause of the Fourteenth Amendment makes the Fourth Amendment applicable to local governments. *See*, *e.g.*, *Mapp v. Ohio*, 367 U.S. 643 (1961) (freedom from unreasonable search and seizure); *Aguilar v. Texas*, 378 U.S. 108 (1964) (warrant requirement).

71. As a proximate and reasonably foreseeable result of Defendants' actions, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

**COUNT II**
**Violation of Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**Damages and Declaratory Relief**
**Against Miami-Dade County**

72. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

73. Defendants unlawfully arrested Mr. Creedle by violating the due process clause of the Fourteenth Amendment to the U.S. Constitution and committing the common law tort of unlawful arrest. *See Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009).

74. Pursuant to its policy of honoring ICE detainers, Defendants arrested and held Mr. Creedle after he was no longer in lawful custody on state criminal charges. The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id*. at 840 (citing *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (1994)). Defendants intended to confine Mr. Creedle and arrested him with deliberate indifference to his unlawful arrest. Defendants were aware of a risk of serious harm and disregarded that risk by actions beyond mere negligence. Mr. Creedle was aware of his

confinement. As alleged in Count III and incorporated herein, Defendants were not empowered under Florida law or any other authority to arrest Mr. Creedle based on a civil immigration violation.

75. As a proximate and reasonably foreseeable result of Defendants' actions, Mr. Creedle suffered injuries, including pain and suffering, humiliation, and emotional harm.

**COUNT III**
**Florida False Imprisonment**
**Damages and Declaratory Relief**
**Against Miami-Dade County**

76. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

77. Defendants arrested Mr. Creedle without any authority, in violation of Florida law, thereby falsely imprisoning him. Defendants lacked a warrant to detain him and had no authority to make a warrantless arrest. *See* § 901.15, Fla. Stat.

78. Defendants falsely imprisoned Mr. Creedle against his will and without legal authority or "color of authority," which was unreasonable and unwarranted under the circumstances. *See Mathis v. Coats*, 24 So.3d 1284 (Fla. 2d DCA 2010); *City of Hialeah v. Rehm*, 455 So.2d 458 (Fla. 3d DCA 1984).

79. MDCR employees are not law enforcement officers authorized to arrest without a warrant. *See Pierre v. City of Miramar, Florida, Inc.*, 537 Fed. Appx. 821, 824-25 (11th Cir. 2013) (holding that a county correctional officer is not a "law enforcement officer" for purposes of section 901.15(1)).

80. Mr. Creedle's detention was made pursuant to the policy and practice of the County to "honor all immigration detainer requests."

81. Since the start of this policy and practice on or about January 26, 2017, the

County has arrested and held individuals subject to an immigration detainer beyond the time they would otherwise be entitled to release.

82. As a proximate and reasonably foreseeable result of Defendants' actions, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

83. Pursuant to Fla. Stat. § 768.28(6), Mr. Creedle has provided the requisite administrative notice of his false imprisonment claim.

**COUNT IV**
**Violation of 5 U.S.C. §§ 706(2)(A)-(D) (Ultra Vires)**
**Declaratory Relief**
**Against DHS and ICE**

84. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

85. Pursuant to 8 U.S.C. § 1357, Congress limited Defendant ICE's authority to transfer its arrest powers to LEAs to certain conditions involving a written agreement.

86. When Defendant ICE issued a detainer against Mr. Creedle, they were asking and purporting to authorize Miami-Dade County to make an arrest of Mr. Creedle on Defendant ICE's behalf, yet they did so without a written agreement and other conditions, in violation of the limitations placed by 8 U.S.C. § 1357.

87. Defendant ICE's issuance of a detainer against Mr. Creedle in excess of its statutory authority foreseeably caused Miami-Dade County to arrest and continue to hold Mr. Creedle after the legal grounds for his custody expired.

88. As a result, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

**COUNT V**
**Violation of the Fourth Amendment**
**Declaratory Relief**

**Against DHS and ICE**

89. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

90. By issuing a detainer against Mr.Creedle in excess of its statutory authority, Defendant ICE foreseeably caused Miami-Dade County to arrest and continue to hold Mr. Creedle. Defendant ICE unreasonably deprived Mr. Creedle of his liberty, in violation of the Fourth Amendment, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

91. As a result, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

**COUNT VI**
**Violation of the Fourth Amendment**
**(*Bivens* Claim)**
**Damages and Declaratory Relief**
**Against Alexander Martinez**

92. Mr. Creedle incorporates paragraphs 1 to 66 as if fully stated herein.

93. Defendant Alexander Martinez issued a detainer request that foreseeably caused Miami-Dade County to arrest Mr. Creedle by continuing to hold him after the legal grounds for his custody expired.

94. As a consequence of Defendant Martinez's actions, Mr. Creedle suffered violations of his clearly established rights under the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

95. The actions and omissions of Defendant Martinez were committed in his

16

discretionary capacity. Further, these actions were committed knowingly, intentionally, and with deliberate indifference to Mr. Creedle's clearly established constitutional rights.

96. As a result of Defendant Martinez's actions, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

**COUNT VII**
**Violation of Fifth Amendment**
**(*Bivens* Claim)**
**Damages and Declaratory Relief**
**Against Alexander Martinez**

97. Plaintiff incorporates paragraphs 1 to 66 as if fully stated herein.

98. Defendant Martinez violated the clearly established substantive due process rights of Mr. Creedle under the Fifth Amendment of the U.S. Constitution. *Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir. 2009) (substantive due process challenge to imprisonment under the Fifth and Fourteenth Amendments).

99. Defendant Martinez issued a detainer request that caused Miami-Dade County to arrest him after he was no longer in lawful custody on state criminal charges. Mr. Creedle's substantive due process rights include the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id*. at 840 (citing *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993), *modified on other grounds*, 15 F.3d 1022 (1994)). Defendant Martinez intended to cause Mr. Creedle's confinement with deliberate indifference to his unlawful arrest. Defendant Martinez was aware of a risk of serious harm and disregarded that risk by actions beyond mere negligence. Mr. Creedle was aware of his confinement.

100. As a result of Defendant Martinez's actions, Mr. Creedle suffered injuries, including pain and suffering, humiliation, and emotional harm.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and:

a.      Declare unlawful Miami-Dade County's policy and practice of arresting people on immigration detainer requests;

b.      Declare that the County's arrest of Mr. Creedle pursuant to ICE's immigration detainer request violated his Fourth Amendment right to be free from unreasonable seizure, violated his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and constituted false imprisonment under Florida law;

c.      Declare that ICE's issuance of a detainer against Plaintiff exceeded the agency's statutory authority and violated the Fourth Amendment because it purported without lawful authority to authorize Plaintiff's arrest and detention by the County;

d.      Declare that Defenant Martinez violated Mr. Creedle's Fourth and Fifth Amenment rights by issuing the detainer that caused Mr. Creedle's unlawful arrest;

e.      Award Mr. Creedle compensatory damages;

f.      Award Mr. Creedle punitive damages;

g.      Award Mr. Creedle reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

h.      Grant any other equitable relief this Court may deem just and proper.

Respectfully submitted,

By: /s/ Rebecca Sharpless

REBECCA SHARPLESS
Florida Bar No. 0131024
ROMY LERNER
Florida Bar. No. 0116713

IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576, direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

IRA J. KURZBAN
Florida Bar No. 225517
EDWARD F. RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN WEINGER
TETZELI & PRATT, P.A.
2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF FLORIDA, INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390
akacou@aclufl.org

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF FLORIDA, INC.
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448
nabudu@aclufl.org

*Attorneys for Plaintiff*