UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

        Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

        Defendants.

_____/

## DEFENDANT ALEXANDER MARTINEZ'S MOTION TO DISMISS

Defendant Alexander Martinez, by and through his undersigned counsel, files his Motion

to Dismiss Plaintiff's First Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), and states:

### I.      PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff Garland Creedle was born in Honduras.  D.E. 48 at 3, ¶ 6.  He is a U.S. citizen at

birth by virtue of the U.S. citizenship held by his father, Willie Edward Creedle.  Id.  Garland

Creedle came to the United States from Honduras in 2015.  Id., ¶ 42.  He was placed in removal

proceedings before an immigration judge in New York City, New York. Id., ¶ 43, D.E. 48:Exh

C.  On April 28, 2015, DHS officials filed a motion with the immigration judge, stating that the

proceedings should be terminated because Creedle was a U.S. citizen.  D.E. 48:Exh B.  On April

30, 2015, the immigration judge granted the DHS's motion and terminated proceedings against

Creedle.  D.E. 48:Exh C.

On the evening of March 12, 2017, Creedle was arrested in Miami-Dade County, Florida, after an alleged domestic dispute, and taken to Miami-Dade County Jail, where he was held on bond.  D.E. 48 at 10, ¶ 47.   On the evening of March 12, 2017, Miami Dade Corrections and Rehabilitation (MDCR) officials fingerprinted Creedle.  Id., ¶ 49.

Early in the morning of March 13, 2017, MDCR received an immigration detainer request, a Request for Voluntary Transfer, naming Creedle as its subject.  Id., ¶ 50.  The detainer came from defendant Alexander Martinez, an immigration enforcement officer.  Id. ¶¶ 50-51, D.E. 48-1 at 12.

The Request for Voluntary Transfer listed under Name of Subject, "Creedle-Quinonez, Garland Edward."  Under Date of Birth, "01/06/1999" was listed.  Under "Suspected or Known Citizenship, "Honduras" was listed.   Under Sex, "M" was indicated.  D.E. 48-1 at 12.

Part B ("DHS Requests Your Cooperation as follows (complete box 1 or 2 below)"), Box 2 ("Detainer") of the Request for Voluntary Transfer was checked.   Box 2 states:

> DETAINER:  Please serve a copy of this form on the subject and maintain custody of him/her for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. Probable cause exists that the subject is a removable alien.  This determination is based on (check at least one box below):
>
> ☐       a final order of removal against the subject;
> ☐       the pendency of ongoing removal proceedings against the
>          subject;
> ■       biometric confirmation of the subject's identity and a
>          records check of federal databases that affirmatively
>          indicate, by themselves or in addition to other reliable
>          information, that the subject either lacks immigration status
>          or notwithstanding such status is removable under U.S.
>          immigration law; and/or
>
> ☐       statements made voluntarily by the subject to an
>          immigration officer and/or other reliable evidence that
>          affirmatively indicate the subject either lacks immigration

2

> status or notwithstanding such status is removable under
> U.S. immigration law.
>
> NOTE:  This request takes effect only if you serve a copy
> of this form on the subject, and it does not request or
> authorize that you hold the subject beyond 48 hours.

D.E. 48-1 at 12 (emphasis in original).

On March 13, 2017, during normal business hours, Creedle sought to be released from MDCR and posted bond.  D.E. 48, ¶ 60.   Instead of releasing Creedle on bond, MDCR maintained custody over him for transfer to ICE.  Id., ¶ 62.  Creedle spent the night of March 13, 2017 in jail in the custody of MDCR.  Id., ¶ 63.

On March 14, 2017, ICE officials interviewed Creedle in jail and withdrew the detainer request.  Id., ¶ 65.   After ICE's withdrawal of the detainer request, Creedle was released on bond.  Id., ¶ 66.

II.     CREEDLE'S INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANT MARTINEZ

Creedle alleges two constitutional claims against defendant Martinez under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).   In Count VI, Creedle alleges Officer Martinez violated his Fourth Amendment right not to be unreasonably seized by issuing a detainer which caused MDCR to continue to hold him after the legal grounds for his custody expired.  D.E. 48 at 16-17.  In Count VII, Creedle claims Officer Martinez violated his substantive due process right under the Fifth Amendment by issuing a detainer request that cause MDCR "to arrest him after he was no longer in lawful custody on state criminal charges."  D.E. 48 at 17, ¶ 99.

III.    NO CAUSE OF ACTION SHOULD BE IMPLIED UNDER <u>BIVENS</u> FOR AN ALLEGEDLY WRONGFUL IMMIGRATION DETAINER LODGED BY AN IMMIGRATION OFFICER

In <u>Bivens</u>, the Supreme Court found an implied cause of action for money damages under the Fourth Amendment, where agents of the Federal Bureau of Narcotics entered and searched Bivens' residence without a warrant.  Recognizing that "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation," the Court nevertheless found an implied cause of action, noting that "the present case involves no special factors counseling hesitation in the absence of affirmative action by Congress."  403 U.S. at 396.   The instant case involves a Fourth Amendment unlawful arrest claim and a Fifth Amendment substantive due process claim arising out of the lodging of an immigration detainer on an already incarcerated individual.   These claims arise in a new context than other recognized <u>Bivens</u> actions, which require analysis of whether special factors counsel against finding a cause of action, in the absence of affirmative action by Congress.

In <u>Ziglar v. Abassi</u>, 137 S.Ct. 1843 (2017), the Supreme Court noted that in the 35 years' since <u>Bivens</u> was decided, it had only found implied causes of action in two cases involving other constitutional violations.  <u>Id.</u> at 1854-55.  In <u>Davis v. Passman</u>, 442 U.S. 228 (1979), the Court found the Fifth Amendment due process clause gave a damages remedy to a female administrative assistant who had been fired by a Congressman because she was a woman.  In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Court held the Eighth Amendment's Cruel and Unusual Punishments Clause gave a damages remedy to a prisoner's estate where the federal jailers failed to treat the prisoner's asthma.   The Court noted it had "consistently refused to extend *Bivens* to any new context or new category of defendants," for the past 30 years.  137 S.Ct. at 1857, citing <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001).

4

Creedle's constitutional claims do arise in a new context than prior Fourth Amendment unlawful arrest actions.   The Eleventh Circuit has identified three types of encounters between police and citizens for purposes of Fourth Amendment analysis:  (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.  Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006).   The "encounter" between Creedle and Martinez was not an encounter at all, since there was no physical interaction between the two.  Instead, ICE was notified of Creedle's incarceration by MDCR, which prompted Officer Martinez to conduct a computer records check of Creedle, in the exercise of authority granted by Congress in 8 U.S.C. § 1357.  Section 1357 authorizes Immigration and Naturalization Service officers to interrogate any person 'believed to be an alien as to his right to be or remain in the United States."  U.S. v. Rodriguez-Franco, 749 F.2d 1555, 1559 (11th Cir. 1985).   Officer Martinez did not interrogate Creedle, but did conduct a computer records search to determine if Creedle was an alien, and if so, whether he had a right to be or remain in the United States.

In Abbasi, the Supreme Court found the Second Circuit failed to engage in a special factors analysis, and set forth the test for determining whether a case presents a new Bivens context:  "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."  137 S.Ct. at 1859.  The instant case differs from previous Fourth and Fifth Amendment claims since it involves the authority of an immigration officer to lodge a detainer against an already incarcerated individual.  The purpose of the detainer is to ask the law enforcement agency holding the suspected alien to retain custody for a brief period, not to exceed 48 hours, so ICE can further investigate whether the detainee is amenable to removal proceedings under the INA.  Creedle seeks to hold the immigration officer personally liable for

lodging the detainer.

In Alvarez v. U.S. Immigration and Customs Enforcement, 818 F.3d 1194 (11th Cir. 2016), cert. denied, 137 S.Ct. 2321 (2017), the Eleventh Circuit found that no Bivens cause of action should be implied for a claim of unlawful post-removal order detention under 8 U.S.C. § 1231. The lawsuit was brought by a Cuban citizen who argued ICE continued to detain him even though it knew he could not be repatriated to Cuba. The appellate court engaged in the two-step inquiry outlined in Minneci v. Pollard, 565 U.S. 118, 122-23 (2012). First, the Eleventh Circuit asked "whether any alternative, existing process for protecting the constitutionally recognized interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." 818 F.3d at 1206, citing Minneci, 565 U.S. 122-23. The alternative remedy need not "provide complete relief for the plaintiff," and as long as Congress has established "an elaborate, comprehensive scheme" governing a particular type of claim, this Court will not allow a *Bivens* remedy to supplement that system. Second, even in the absence of an adequate alternative, "a *Bivens* remedy is a subject of judgment," and a court "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." 818 F.3d at 1206, citing Bush v. Lucas, 462 U.S. 367, 378 (1983).

Alvarez relied upon Mirmehdi v. U.S., 689 F.3d 975 (9th Cir. 2011), and De La Paz v. Coy, 786 F.3d 367 (5th Cir. 2015). 813 F.3d at 1207. In Mirmehdi, the Ninth Circuit declined to imply a Bivens cause of action where an alien claimed two federal agents lied about his alleged tie to a terrorist organization, which led to an immigration judge revoking his bond, and resulted in him spending four years in detention while his removal proceedings went forward. In De La Paz, the Fifth Circuit found that two illegal aliens, who claimed they were unlawfully arrested by

Border Patrol agents because of their Hispanic appearance, had no cause of action under Bivens.

The Eleventh Circuit agreed with the analyses in Mirmehdi and De La Paz. 818 F.3d at 1208. The Court found the INA is "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." Id., citing Bush, 462 U.S. at 388. The Court also noted the host of review procedures provided in the INA for aliens to obtain review of ICE decisions. Further, the Eleventh Circuit noted that "the Supreme Court has made it abundantly clear that a detained alien can seek a petition for a writ of habeas corpus to challenge his detention in the event the statute's review procedures are insufficiently protective." Id., citing Zadvydas v. Davis, 533 U.S. 678, 688 (2001). Finally, the Eleventh Circuit noted that "[a]nalysis of the statutory scheme also confirms the conclusion that the congressional decision not to provide a private action for damages was deliberate." Id. at 1209, citing De La Paz, 786 F.3d at 377-78, and Mirmehdi, 689 F.3d at 982. The Court noted that the INA had been amended "on no less than seven occasions," and concluded that "[i]n light of the frequent attention that the legislature has given to the complex scheme governing removal and its review procedures over many years, we are satisfied that Congress has weighed the policy consideration in favor of and against providing damages." Id.

In this case, there is an alternative existing process for protecting a detained individual's rights when a detainer is lodged against him. The Request for Voluntary Transfer (DHS Form I-247X (08/15)) signed by Officer Martinez is actually a three-page form. Exhibit A. Creedle attached a copy of the detainer to his amended complaint, but only provided the first page.[1] D.E. 48-1 at 12. The second and third pages of the I-247X contain a Notice to The Detainee, in six

---

[1] In a Rule 12(b)(6) motion, exhibits attached to the complaint can be considered as part of the complaint by the Court. Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215-16 (11th Cir. 2012). Since plaintiff omitted the second and third pages of the DHS Form I-247X in his amended complaint, Officer Martinez has filed the complete I247X to his motion to dismiss. Fed.R.Evid. 106.

different languages, including Spanish.  The Notice states:

### NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you.  An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you would be otherwise released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law. DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions.  **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is hold you now) to inquire about your release.  **if you have a question or complaint regarding this detainer, please contact the ICE ERO Detention Reporting and Information Line at (888) 351-4024.  For complaints related to alleged violations of civil rights or civil liberties connected to DHS activities, please contact the Joint Intake Center at (877) 2INTAKE (877-246-8253).  If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

Exhibit A at 2 (emphasis in original).

Specific provision is made in the I-247X to notify the subject of the detainer that he/she can call a toll-free number if there are questions or complaints about the detainer.   More importantly for this case, the last sentence of the Notice states, "If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903."   The detainer anticipates that a subject may believe he is a United States citizen, and provides a toll free number for him to contact the ICE Law Enforcement Support Center to address that issue.    The I-247X asks the law enforcement agency detaining the subject that "This request takes effect only if you serve a copy of this form on the subject, and it does not request or authorize that you hold the subject beyond 48 hours.) Exhibit A at 1.   This provision ensures that the detainee has a copy of the I-247X, which contains the Notice to the Detainee referenced above, at or before the time the detainer goes into

8

effect.[2]

Further, the I-247X requests the law enforcement agency to only hold the individual for up to 48 hours.  Since ICE offices are not located in close proximity to every location where the subject of a detainer may be confined, ICE requires 48 hours to physically respond to the detention location, interview the detainee, and determine if he should be taken into custody for removal proceedings under the INA.  See Mendoza v. U.S. Immigration & Customs Enforcement, 849 F.3d 408 (8th Cir. 2017)(plaintiff detained at Sarpy County, Nebraska, jail; ICE agent located in Cedar Rapids, Iowa).   In this case, ICE did have offices located in close proximity to the detention location, such that ICE agents were able to interview Creedle on March 13, 2017, determine he was not subject to removal proceedings, and lift the detainer.

The second and third factors identified by the Alvarez court, the availability of habeas corpus proceedings and the Congressional amendment of the INA on seven occasions since 1952, are also present in this case.  818 F.3d at 1208-09.   Thus, the existence of an alternate remedy, other than a claim for money damages, militates against a finding that a cause of action for a constitutional violation should be implied.

The Eleventh Circuit also analyzed whether any special factors counseled hesitation in implying a cause of action.   "Moreover, even if we were to conclude that no sufficient alternative remedy exists, we would still find that numerous special factors counsel hesitation in this context."  Id. at 1210.   The first special factor identified by the Eleventh Circuit was "the breadth and detail of the Immigration and Nationality Act itself counsels in favor of hesitation."  The Court looked to the Supreme Court's observation that, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms

---

[2] In his amended complaint, Creedle asserts he "told MDCR officials that he is a U.S. citizen."  D.E. 48, ¶ 53.  There is no allegation in the amended complaint that he told ICE officials that he was a U.S. citizen

9

for constitutional violations that may occur in the course of its administration," this constitutes a special factor counseling hesitation.  Id., citing Schweiker v. Chilicky, 487 U.S. 412, 423 (1988).

Second, the Eleventh Circuit found that the importance of demonstrating due respect for the Constitution's separation of powers was another special factor counseling hesitation.  The Constitution gave Congress the power "to establish a uniform Rule of Naturalization," and the Executive Branch possesses "inherent power as sovereign to control and conduct relations with foreign nations."  Id. at 1210(citations omitted).   The Eleventh Circuit noted that Congress and the Executive are better suited to consider sensitive policy issues that immigration cases may implicate.   The Eleventh Circuit agreed with the De La Paz court's observation that, "[l]ack of institutional competence as well as a lack of constitutional authority counsel … hesitation by the judiciary in fostering litigation of this sort."  813 F.3d at 1210, citing De La Paz, 786 F.3d at 379.

The Alvarez court identified a third special factor counseling hesitation – the claim Alvarez asked the Court to recognize would be doctrinally novel and difficult to administer.  Id. at 1210-11.  Alvarez's claim of unlawful detention would require a court to consider ICE's motivations for continuing his detention, as well as every other alien detained past the 90-day removal period, such as ICE's exercise of its discretion, its enforcement priorities, and the likelihood of effecting removal.   The Eleventh Circuit noted that "the claim Alvarez asks us to recognize is not generally susceptible to the kind of analysis the courts are competent to undertake."  Id. at 1211.   Finally, the Court pointed to the likelihood that many aliens would raise such claims, given the lack of a clearly defined standard by which to judge such claims, and the nature of the claim as based primarily on the credibility of each party.  "We cannot ignore that this volume of litigation could chill ICE officials from engaging in robust enforcement of this country's immigration laws."  Id., citing De La Paz, 786 F.3d at 379 ("Faced with a threat to

his checkbook from suits based on evolving and uncertain law, the officer may too readily shirk his duty.").

This Court should find that no Bivens remedy is available for a plaintiff who claims an ICE detainer was wrongfully lodged against him.   An alternative remedy exists because the subject of the detainer can contact ICE to contest the basis of the detainer, including a claim that the person is a U.S. citizen.  Further, in addition to a writ of habeas corpus, there are various remedies in the INA for establishing that one is a U.S. citizen, and not subject to removal proceedings.   Finally, the INA has been amended seven times since 1952, and Congress has not seen fit to create a remedy for money damages.

There are also special factors counseling hesitation in finding an implied cause of action for money damages where Congress has not affirmatively provided one.   The INA is a broad and comprehensive statute regulating the admission and expulsion of aliens, which contains no provision for a damages remedy.   Congress may well have believed a damages remedy was not needed.  Next, respect for the doctrine of separation of powers counsels hesitation, since Congress has been given constitutional authority to prescribe a uniform rule of Naturalization, while the Executive has inherent authority and power to conduct foreign relations.  Finally, the type of claim brought by Creedle, asking this Court to look into whether an ICE official had legal justification for lodging a request to another law enforcement agency to voluntarily hold an individual, would exert a chilling effect on a basic tool used by ICE to identify individuals who may be aliens unlawfully present in the United States.

IV.      OFFICER MARTINEZ IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's constitutional claims should be dismissed under Fed.R.Civ.P. 12(b)(6), because those claims are barred by the doctrine of qualified immunity.  A motion to dismiss a

complaint on qualified immunity grounds will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007)(citations omitted).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court set out the standard to be applied in evaluating complaints attacked under Rule 12(b)(6).   While the complaint does not need detailed allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted).   Factual allegations must be enough to raise a right to relief above a speculative level.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570.   In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court examined Twombly and noted that it was based on two working principles: (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id. at 678, citing Twombly, 550 U.S. at 555-56.

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.   In Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit found that Iqbal overturned the Eleventh Circuit cases requiring heightened pleading in actions under 42 U.S.C. § 1983 and Bivens.  Id. at 708-10.

> Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal.  A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth–legal conclusions must be supported by factual allegations.  The district court should assume, on a case-by-case basis, that well pleaded factual allegations are

true, and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 709-10(footnote omitted).    Complaints in § 1983 and Bivens cases must now "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Id. at 707 n.2(citations omitted).

Qualified immunity protects government officials, acting within their discretionary authority, "from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc)(internal quotation marks omitted).  To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The burden then shifts to the plaintiff to show that qualified immunity is not appropriate.  Id.

The doctrine of qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Pearson v. Callahan, 555 U.S. 223, 231 (2009).    "The qualified immunity doctrine means that government agents are not always required to err on the side of caution." Davis v. Scherer, 468 U.S. 183, 196 (1984).  Further, because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation. Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)(citations omitted).

In this case, Creedle contends he was unlawfully arrested on March 13, 2017, by virtue of

13

the detainer lodged by Officer Martinez.  D.E. 48, ¶¶ 93-94.   Law enforcement officers are entitled to qualified immunity on claims of false arrest so long as they had probable cause or arguable probable cause for the arrest.  Coffin v. Brandau, 642 F.3d 999, 1006 (11th Cir. 2011)(en banc), citing Lee v. Ferraro, supra.   Probable cause to arrest exists under both federal and Florida law when an arrest is "objectively reasonable based on the totality of the circumstances."  Coffin, 642 F.3d at 1006.  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Id.   Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiffs.  Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998).

Officer Martinez was exercising his discretionary authority as an ICE Deportation Officer on March 13, 2017, when he lodged a detainer on Creedle with MDCR.[3]   That being the case, the burden shifts to Creedle to show that the grant of qualified immunity is inappropriate.  Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

A court is obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate: (1) that the facts when viewed in a light most favorable to the plaintiff, establish a constitutional violation; and (2) that the illegality of the officer's actions was "clearly established" at the time of the incident.  Id. at 905(citations omitted).   In Pearson v. Callahan, 555 U.S. at 235-36, the Supreme Court left it to the sound discretion of the judges of the lower

---

[3] Creedle admits that defendant Martinez was exercising his discretionary authority when he issued the detainer against him.  D.E. 48, ¶ 95 ("The actions and omissions of Defendant Martinez were committed in his discretionary capacity.").

14

federal courts to decide which of the two prongs should be addressed first.

A.       Fourth Amendment Unlawful Arrest

On March 13, 2017, Officer Martinez lodged a Request for Voluntary Transfer with MDCR, asking it to hold Creedle for a period not to exceed 48 hours from the time it would otherwise release him.  Exhibit A.  "Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983." Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010), citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).   Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007).   The "existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest."  Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009)(quotations and citation committed).

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime … and the operative fact pattern."  Skop v. City of Atlanta, GA, 485 F.3d 1130, 1137-38 (11th Cir. 2007), citing Crosby v. Monroe Cty., 394 F.3d 1328, 1333 (11th Cir. 2004).  Since this case arises in the civil immigration context, the issue is whether Officer Martinez had probable cause, or arguable probable cause, to believe Creedle was an alien, who was subject to removal from the United States under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et. seq.  The INA provides grounds of inadmissibility in 8 U.S.C. § 1182(a)(1)(health related grounds); (2)(criminal and related grounds); (3)(security and related grounds); (4)(public charge); (5)(labor certification and

qualifications for certain immigrants); (6)(illegal entrants and immigration violators);(7)(documentation requirements); (8)(ineligible for citizenship); (9)(aliens previously removed); and (10)(miscellaneous).   Further, Congress set out the grounds of deportability in 8 U.S.C. § 1227(a)(1)(inadmissible at time of entry or of adjustment of status or violates status; (2)(criminal offenses); (3)(failure to register and falsification of documents); (4)(security and related grounds; (5)(public charge); and (6)(unlawful voters).   Aliens who are covered by one or more of these categories are placed in removal proceedings under § 1229 to determine if they should be expelled from the United States.

Creedle admits he was born in Honduras.  D.E. 48, ¶ 6.  He hastens to add that he has been a U.S. citizen since birth by virtue of the U.S. citizenship held by his father, Willie Edward Creedle.  Id.  The Request for Voluntary Transfer signed by Officer Martinez lists at the top Creedle's name, date of birth, and sex.   Under the heading "Suspected or Known Citizenship," Officer Martinez listed "Honduras."   Plainly, at the time he prepared the detainer, Officer Martinez believed Creedle was a citizen of Honduras.

There are no factual allegations in the first amended complaint stating that Officer Martinez knew:  (1)  Creedle was a U.S. citizen at birth, or  (2) Creedle's father was Willie Edward Creedle; or (3) Willie Edward Creedle was a U.S. citizen.   What Martinez knew at the time he prepared the detainer, was that Creedle was born in Honduras, which was correct.

Creedle attached to his first amended complaint a document filed by DHS trial attorneys in the removal proceeding held in New York City, New York, in April 2015.  D.E. 48-1ExhB.  In that document, DHS asked the immigration judge to terminate proceedings against Creedle because Creedle had submitted documentation, through his attorney, showing that he acquired U.S. citizenship from his father, Willie Edward Creedle, through 8 U.S.C. § 1401(g) and 8

16

U.S.C. § 1409.  The immigration judge terminated the proceedings.  D.E. 48-1 at 10.

There are no factual allegations in the first amended complaint contending that Officer Martinez knew Creedle had acquired U.S. citizenship at birth, because his father was a U.S. citizen.   What Martinez knew was that Creedle was born in Honduras, which was correct. Further, in describing the basis for the determination that probable cause existed to believe Creedle was a removable alien, the detainer signed by Martinez also noted, "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law …" D.E. 48-1 at 12.

Creedle was arrested on the evening of March 12, 2017 "after an alleged domestic dispute." D.E. 48, ¶ 47.   The first amended complaint omits any mention of the specific offense for which Creedle was arrested.  Id., ¶ 48.  Nevertheless, 8 U.S.C. § 1227(a)(E) provides, in pertinent part, that "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable."   Based on Creedle's arrest for "an alleged domestic dispute," defendant Martinez could reasonably believe that Creedle could be amenable to removal from the United States, if he was ultimately convicted of one of the offenses enumerated in § 1227(a)(E).

Individuals arrested and taken to Miami-Dade County jail are fingerprinted, with the fingerprints sent to the Federal Bureau of Investigation.  D.E. 48, ¶ 12.  Martinez conducted computer database checks to determine whether probable cause existed to believe Creedle was subject to removal.   He found that Creedle was born in Honduras, and either lacked immigration

status, or notwithstanding such status was removable under U.S. immigration law.

Creedle's references in his first amended complaint to his acquisition of U.S. citizenship at birth due to his father's U.S. citizenship are unavailing. "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). Based on his computer checks, Martinez reasonably concluded that Creedle was a citizen of Honduras, due to his birth in Honduras. Further, Martinez deduced from his computer checks that Creedle either lacked immigration status in the U.S., or despite having immigration status, was still removable under U.S. immigration law.

The Supreme Court recently observed that, "[b]ecause probable cause 'deals with probabilities and depends on the totality of the circumstances," … it is a 'fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" Dist. of Columbia v. Wesby, 138 S.Ct. 577, 586 (2018), quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003), and Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id.

The first amended complaint fails to allege sufficient facts to establish a plausible claim that Officer Martinez lacked probable cause, or arguable probable cause, to issue the detainer to MDCR. Creedle alleges that, "[a]s a consequence of Defendant Martinez's action, Mr. Creedle suffered violations of his clearly established rights under the Fourth Amendment to the U.S. Constitution, which prohibits 'unreasonable searches and seizures' and provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." D.E. 48, ¶ 94. This

18

is a conclusory statement which this Court is not bound to accept as true.  Iqbal, 556 U.S. at 678-79 ("In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

The focus of the probable cause inquiry is the knowledge possessed by Officer Martinez at the time he lodged the detainer. Just as no officer has a duty to prove every element of a crime before making an arrest, Scarbrough v. Myles, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001)("Police officers are not expected to be lawyers or prosecutors."), Officer Martinez was not legally obligated to consider and discard any potential defense to removal Creedle might have.  "An officer, however, need not take 'every conceivable step … at whatever cost, to eliminate the possibility of convicting an innocent person.'"  Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998)(citations omitted), and Lee v. Ferraro, 284 F.3d  at 1195 ("Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction.").

Moreover, "[r]egardless of whether probable cause actually existed, an officer is entitled to immunity if he 'reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009)(citation omitted).  "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 555 U.S. at 231(citation omitted).   Further, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343 (1986).   Officer Martinez acted reasonably in assuming that Creedle was a citizen of Honduras,

19

due to his birth in Honduras.   Further, Creedle's arrest for a "domestic disturbance" was a reasonable basis for Martinez to believe that Creedle would be subject to removal, if he were ultimately convicted of a domestic violence offense covered by § 1227(a)(E). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F.3d at 1303(footnote omitted).

There is no factual allegation that Officer Martinez knew Creedle's father was a U.S. citizen.   Even if Officer Martinez had that knowledge, the mere fact that Creedle's father was a U.S. citizen does not conclusively establish Creedle acquired U.S. citizenship at birth.  "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." Miller v. Albright, 523 U.S. 420, 424 (1998).   The starting point in the inquiry is determining which Congressional statute to apply since "[t]he applicable law for transmitting citizenship to a child born abroad when one parent is a [United States citizen] is the statute that was in effect at the time of the child's birth."  Runnett v. Shultz, 901 F.2d 782, 783 (9th Cir. 1990).  The next step would be to determine if the person was born in wedlock, 8 U.S.C. § 1401(g), or out of wedlock, § 1409, since Congress imposes different requirements for acquiring U.S. citizenship.   Not only that, where the birth was out of wedlock, the law imposes different requirements if the claim of citizenship is through a U.S. citizen father, § 1409(a), or a U.S. citizen mother, § 1409(c). Nguyen v. INS 533 U.S. 53, 59-60 (2001).

In order to determine if Creedle acquired U.S. citizenship at birth, one would have to determine if Creedle's father satisfied the statutory residence requirement for transmitting citizenship. Drozd v. INS, 155 F.3d 81, 86 (2nd Cir. 1998).   Since Creedle was born in 1999, the

20

version of 8 U.S.C. § 1401(g) in effect required Creedle's father, prior to Creedle's birth, to have been "physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years." § 12, Pub. L. 99-653, 100 Stat. 3657 (Nov. 14, 1986).  If Creedle's father did not satisfy this five year physical presence requirement, then Creedle would not have acquired U.S. citizenship at birth.  Tullius v. Albright, 240 F.3d 1317, 1320-21 (11th Cir. 2001).

Additionally, "[i]f the child is born out of wedlock, however, he or she is eligible for United States citizenship only if certain additional requirements, set forth in 8 U.S.C. § 1409, are met."  Retuya v. Secretary, DHS, 412 Fed.Appx. 185, 187 (11th Cir. 2010).  Where the citizenship claim is based upon a U.S. citizen father the additional requirements are:

(1) a blood relationship between the person and the father is established by clear and convincing evidence;

(2)  the father had the nationality of the United States at the time of the person's birth;

(3)  the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years –

    (A)  the person is legitimated under the law of the person's residence or domicile,
    (B)  the father acknowledges paternity of the person in writing under oath, or
    (C)  the paternity of the person is established by adjudication of a competent court.

"In addition, § 1409(a) incorporates by reference, as to the citizen parent, the residency requirement of § 1401(g)."  Nguyen, 533 U.S. at 59.  Thus, in addition to satisfying the requirements in § 1409(a)(1), (2), (3), and (4), Creedle's father had to be physically present in the United States for five years, two after the age of 14, prior to Creedle's birth in 1999.[4]

---

[4] In Sessions v. Morales-Santana, 137 S.Ct. 1678 (2017), the Supreme Court held that § 1409(c)'s requirement that only one year of physical presence in the United States was necessary for an unwed U.S. citizen mother to transmit U.S. citizenship, while § 1409(a)'s requirement of five years' physical presence was needed for an unwed U.S.

21

Just as a police officer is not required to be a lawyer or prosecutor in making his probable cause determination, Officer Martinez was not required to be an immigration attorney in determining whether the requirements in §§ 1401(g) and 1409 had been satisfied, assuming he even knew Creedle's father was a U.S. citizen.   In a removal proceeding, "[e]vidence of foreign birth … gives rise to a rebuttable presumption of alienage, and the burden then shifts to the petitioner to prove citizenship."  Scales v. INS, 232 F.3d 1159, 1163 (9th Cir. 2000).   Further, in United States ex rel. Bilokumsky v. Tod, 263 U.S. 149 (1923), the Supreme Court held that in a deportation proceeding, the Government could properly infer from the respondent's silence that he was an alien.  "A person arrested on the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case.  There is no provision which forbids drawing an adverse inference from the fact of standing mute."[5]  Id. at 154.  Consequently, Creedle's birth in Honduras was a reasonable basis for Officer Martinez to believe Creedle was a citizen of Honduras.

The issue of whether a foreign-born child acquired U.S. citizenship at birth is regularly litigated in removal proceedings.  See Villegas-Sarabia v. Sessions, 874 F.3d 871 (5th Cir. 2017); Rosales v. Lynch, 821 F.3d 625 (5th Cir. 2016); Thomas v. Lynch, 796 F.3d 535 (5th Cir. 2015); Ragasa v. Holder, 752 F.3d 1173 (9th Cir. 2014); and Zavala-Ramirez v. Holder, 396 Fed.Appx. 446 (9th Cir. 2010).   The disputes center on whether the statutory requirements for acquiring citizenship were met.   In Acevedo-Miranda v. Holder, 528 Fed.Appx. 719 (9th Cir. 2013), Acevedo-Miranda claimed he acquired U.S. citizenship from his birth mother, who was a U.S.

---

citizen father to transmit citizenship, was a violation of equal protection since it was gender based.  The Court found the appropriate remedy was to apply the five year requirement to unwed U.S. mothers also.  Id. at 1698-1701.

[5] In De La Paz, the Fifth Circuit relied upon Bilokumsky concluding that, "[a]s a result, border patrol agents can rightfully assume that when a suspected alien conceals his status, either by standing silent or answering evasively, he is in fact in this country illegally."  786 F.3d at 370 n.2.

22

citizen.  At the time of his birth in 1960 in Mexico, § 1401(a)(7)(1958), predecessor to §

1401(g), required Acevedo-Miranda's mother to be "physically present in the United States or its

outlying possessions for a period or periods totaling not less than ten years, at least five of which

were after attaining the age of fourteen years."  Id.  Acevedo-Miranda's mother turned fourteen

on August 12, 1955.  Acevedo-Miranda was born on August 20, 1960 – five years and eight days

later.   The Ninth Circuit observed, "if Acevedo-Miranda's mother was absent from the United

States for more than eight days after she turned fourteen, she cannot transmit citizenship to him."

Id. at 720.   She testified before the Immigration Judge that she left the United States

approximately three weeks before Acevedo-Miranda was born.  Consequently, she could not

transmit U.S. citizenship to him because she did satisfy the physical presence requirement prior

to Acevedo-Miranda's birth.  Id.

"The Constitution does not guarantee that only the guilty will be arrested.  If it did, §

1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect

released."  Baker v. McCollan, 443 U.S. 137, 145 (1979).  In the same vein, the Constitution

does not guarantee that only foreign-born persons with no viable claims to U.S. citizenship will

be arrested by ICE agents.   Whether U.S. citizenship was acquired depends on a factual inquiry

into the background of the U.S. citizen parent from whom citizenship is claimed, which is

conducted by an ICE or U.S. Citizenship and Immigration Services official, to determine if the

statutory requirements were met.  Much as a police officer investigates an arrested suspect's alibi

to determine if he committed the crime, ICE officials investigate any claim of citizenship made

by the arrested individual.  However, just as a probable cause determination does not require a

police officer to investigate a subject's alibi prior to making an arrest, Brodnicki v. City of

Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996), Officer Martinez was not obligated to rule out any

claim of citizenship by Creedle prior to lodging the detainer.

        B.      Fifth Amendment Substantive Due Process Claim

In Count VII, Creedle alleges Officer Martinez violated his substantive due process rights by issuing a detainer which caused him to be held by MDCR after his lawful custody on the state criminal charges expired.  D.E. 48, ¶ 99.  A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment.  Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009).  To establish such a violation, a plaintiff must show that the defendant acted with deliberate indifference to plaintiff's due process rights.  West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007), citing Cannon v. Macon County, 1 F.3d 1558, 1562-63 (11th Cir. 1993).  Specifically, a plaintiff must show that defendants had (1) subjective knowledge of a risk of serious harm, (2) disregarded that risk, (3) by conduct that is more than mere negligence.   In Campbell, the Eleventh Circuit explained that, "[t]his means that Sheriff Johnson had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence."  586 F.3d at 840.

The first amended complaint fails to provide factual allegations to plausibly allege deliberate indifference to a risk of serious harm by Officer Martinez in lodging the detainer.  In Chandler v. Secretary Fla. Dept. of Transportation, 695 F.3d 1194 (11th Cir. 2012), plaintiffs filed a § 1983 action claiming they were unlawfully seized under the Fourth Amendment by a toll booth operator on the Florida Turnpike.   The Chandlers attempted to pay their toll using a large denomination bill ($50 and $100).  Under the policy of the FDOT, toll booth operators were required to document certain observable vehicle information (make, model, color, tag number, and state of issuance) in a Bill Detection Report, in order to guard against payment of tolls with counterfeit currency.  Id. at 1197-98.  The Chandlers claimed the delay occasioned by

24

the completion of the Report constituted an unlawful seizure under the Fourth Amendment.   The district court denied the defendants' motion to dismiss on the basis of qualified immunity.

The Eleventh Circuit reversed, finding that the Chandlers' factual allegations were insufficient to allege a violation of a constitutional right.   First, the allegation of a toll booth stop, required by the State and enforced by the toll both collector did not, without more, constitute a seizure within the meaning of the Fourth Amendment.  Id. at 1200.   Second, the delay occasioned by the toll booth operator's completion of the Bill Detection Report was insufficient to allege a Fourth Amendment seizure.   The specific pleading deficiencies identified by the Eleventh Circuit was a failure by the Chandlers to allege that he was "forced" to submit to the alleged unconstitutional delay; that he was forced to drive on the turnpike; that he received no notice that he would have to stop at the toll booth and pay tolls.   The appellate court noted that, in choosing to drive on the turnpike, the Chandlers implicitly consented to stopping at toll booths and paying tolls to enjoy the privilege of using the toll road.  Id.   Further, the Chandlers did not allege that they were forced to pay the toll with a large denomination bill.   Instead, they chose to pay with such a bill.   The appellate court found that the Chandlers' claim was based upon an unfounded assumption that he had an absolute right to immediately proceed through the toll booth upon tendering the toll in any denomination.  Id.

The Eleventh Circuit concluded that "[t]he Chandlers cannot transform what is basically FDOT's unremarkable condition for acceptance of a toll payment by a large-denomination bill into a constitutional violation by conclusorily labeling it 'unlawful' and referring to it as a 'seizure.'   In short, the Chandlers have not plead facts under which there is 'more than a sheer possibility that [the defendants] acted unlawfully.'"  Id. at 1201, citing Iqbal, 556 U.S. at 676.

In the same vein, Creedle cannot sufficiently allege a substantive due process violation by

25

simply alleging that "Defendant Martinez intended to cause Mr. Creedle's confinement with deliberate indifference to his unlawful arrest.  Defendant Martinez was aware of a risk of serious harm and disregarded that risk by actions beyond mere negligence.  Mr. Creedle was aware of his confinement."  D.E. 48, ¶ 99.   This is plainly a formulaic recitation of the elements of a Fifth Amendment substantive due process claim which is insufficient to state a claim for relief under Rule 12(b)(6).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Twombly, 550 U.S. at 555.

In Franklin v. Curry, 738 F.3d 1246 (11th Cir. 2013), the Eleventh Circuit carefully outlined the factual allegations needed to plead a claim. of deliberate indifference under the Fifth Amendment.  Plaintiff Franklin was a pretrial detainee who claimed she was sexually assaulted by Michael Gay, a corrections officer.   In her lawsuit, she alleged that five supervisory prison officials violated her constitutional rights because these officials were deliberately indifferent to a substantial risk of serious harm to her.  The district court denied the supervisory officials motion to dismiss on the basis of qualified immunity.  Id. at 1249.

On appeal, the Eleventh Circuit reversed, finding the district court erred by applying an incorrect legal standard, and allowing the plaintiff to satisfy the standard it applied with conclusory allegations.  Id.  Since Franklin's claim was that the supervisory prison officials were deliberately indifferent to the risk that Michael Gay was likely to sexually assault her, she was required to show the defendant supervisory officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that was more than gross negligence.  Id. at 1250, citing Goodman v. Kimbrough, 718 F.3d 1325, 1331-32 (11th Cir. 2013).  In her complaint, Franklin alleged that the supervisory officials "knew or should have known" of Officer Gay's pattern of inappropriate conduct with female detainees and inmates …"  The

26

Eleventh Circuit found this fell short of the deliberate indifference standard, which required that the supervisory officials "actually knew of the serious risk Gay posed." Id. at 1250.

Insofar as the district court's acceptance of Franklin's conclusory allegations, the Eleventh Circuit found that the handful of properly pled facts were insufficient "to state a plausible claim that each of the Supervisory Defendants should have known of a substantial risk that Gay would sexually assault Franklin, much less that each defendant was subjectively aware of the risk and knowingly disregarded it." Id. at 1251.   In this case, Creedle alleges that defendant Martinez is an immigration enforcement officer, ¶ 51; Martinez is not a neutral and detached adjudicator, ¶ 52; he was the ICE deportation officer who issued the detainer requesting that the County arrest Creedle; ¶ 11.

Absent from Creedle's complaint are any factual allegations that Officer Martinez subjectively knew of a substantial risk that Creedle would be wrongfully denied his liberty by the lodging of the detainer, and knowingly disregarded it.   There are no factual allegations that Martinez knew the identity of Creedle's father, or that Creedle's father was a U.S. citizen.   While Creedle alleges that he "told MDCR officials that he is a U.S. citizen," (¶ 53), there is no allegation that he told that to Officer Martinez.

The first amended complaint contains only conclusory allegations that Martinez was deliberately indifferent to a substantial risk that the ICE detainer he was lodging would wrongfully deprive Creedle of his liberty.   Accordingly, Count VII should be dismissed.

V.      DEFENDANT MARINTEZ DID NOT VIOLATE ANY CLEARLY
        ESTABLISHED CONSTITUTIONAL RIGHTS

If the plaintiff can make out a violation of a constitutional right, then the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.   Pearson v. Callahan, 550 U.S. at 232.   Qualified immunity applies unless the

official's conduct violated a clearly established constitutional right.   A party may show that the law was clearly established by pointing to a materially similar case that has already decided that what the police officer was doing was unlawful.  Lee v. Ferraro, 284 F.3d at 1198.   For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).   "Clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.   That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Id.

The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  In Ashcroft v. Al-Kidd, 563 U.S. 731 (2011), the Supreme Court observed that, "[w]e have repeatedly told courts – and the Ninth Circuit in particular … -- not to define clearly established law at a high level of generality."  Id. at 742 (citations omitted).  Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  Anderson, 483 U.S. at 639.   Qualified immunity is no immunity at all if "clearly established" law can simply be defined as the right to be free from unreasonable searches and seizures.  City & County of San Francisco v. Sheehan, 135 S.Ct. 1765, 1776 (2015).

Creedle cannot demonstrate that it was sufficiently clear, on March 13, 2017, to a law

28

enforcement officer, that lodging an immigration detainer against him violated federal law.  A reasonable law enforcement officer could have believed that lodging an ICE detainer against Creedle was lawful, in light of clearly established law and the information Martinez possessed. Creedle was born in Honduras, and had been arrested for a domestic violence incident.   Thus, Creedle reasonably appeared to be an alien, who was potentially amenable to removal from the United States depending upon whether he was lawfully present in the United States, or had engaged in conduct that rendered him subject to removal. These facts supported lodging the detainer, to permit ICE to more thoroughly investigate Creedle, upon his release from MDCR custody.

Creedle cannot show that Officer Martinez violated clearly established law in his Fifth Amendment due process claim either.   Under the specific facts of this case, there is no case law establishing that lodging an immigration detainer against a foreign born individual, already in jail on a criminal charge, posed a risk of serious harm.

CONCLUSION

Creedle's constitutional claims under the Fourth and Fifth Amendments should be dismissed since they arise in a new context than the <u>Bivens</u>' claims recognized by the Supreme Court.  Further, alternative remedies to his unlawful detention claim exist under the INA, and there are special factors counseling hesitation in implying a new Bivens remedy in the civil immigration context.

Officer Martinez is also entitled to qualified immunity because the first amended complaint does not allege a violation of any clearly established constitutional rights.  By virtue of Creedle's birth in Honduras, Officer Martinez could rightfully assume Creedle was a citizen of Honduras.  Creedle's presence in a county jail was a reasonable basis for Officer Martinez to

29

believe that Creedle might have engaged in conduct that rendered him subject to removal under the INA.

Dated:  August 10, 2018                    Respectfully submitted,

                                           BENJAMIN G. GREENBERG
                                           UNITED STATES ATTORNEY


                               By:     __s/ Dexter A. Lee_____
                                       DEXTER A. LEE
                                       Assistant U.S. Attorney
                                       Fla. Bar No. 0936693
                                       99 N.E. 4th Street
                                       Miami, Florida   33132
                                       (305) 961-9320
                                       Fax:  (305) 530-7139
                                       E-mail:  dexter.lee@usdoj.gov

                                       ATTORNEY FOR DEFENDANT
                                       ALEXANDER MARTINEZ

                       CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that, on August 10, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.


                                       ___s/ Dexter A. Lee_____
                                       DEXTER A. LEE
                                       Assistant U.S. Attorney

                             SERVICE LIST

                 Garland Creedle v. Miami-Dade County, et al.,
                      Case No. 17-22477-CIV-WILLIAMS
             United States District Court, Southern District of Florida
Rebecca Sharpless
Fla. Bar No. 0131024
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273

30

Coral Gables, Florida  33146
(305) 284-3576 (direct)
(305) 284-6092 (clinic)
rsharpless@law.miami.edu

ATTORNEY FOR PLAINTIFFS

Dexter A. Lee, AUSA
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANT
ALEXANDER MARTINEZ