UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

        Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

        Defendants.

_____/

**INTRODUCTION**

In March 2017, Plaintiff was briefly detained by Miami Dade County after he posted bond on state criminal charges. Plaintiff alleges that this detention was in response to a "detainer" from U.S. Immigration and Customs Enforcement (ICE) requesting that Miami-Dade County notify it of Plaintiff's release and hold Plaintiff for up to, but no more than, 48 hours to facilitate transfer of custody upon Plaintiff's release from state charges. As to Defendants the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) (hereinafter the Federal Agency Defendants), Plaintiff alleges that the issuance of a document called a detainer to Miami-Dade County, which is authorized by federal statute and regulation, is unauthorized by the Immigration and Nationality Act (INA) and therefore violates the Administrative Procedure Act (APA) as an action ultra vires to the statute (Count IV). In addition, Plaintiff asserts that the issuance of a detainer violates the Fourth

1

Amendment because it caused Miami-Dade County to continue to detain Plaintiff after his release on state charges (Count V).

These claims are without merit and should be dismissed. Plaintiff lacks Article III standing to seek declaratory relief as to the Federal Agency Defendants because he does not allege any real and immediate possibility that he will again be subject to the same alleged conduct. Even if he had standing, his request for declaratory relief is now moot, because he challenges the issuance of a detainer pursuant to a policy that no longer exists. Plaintiff's claims also fail on the merits. The INA authorizes ICE to issue requests to state and local law enforcement to notify ICE of an alien's impending release and to briefly detain that individual for no more than 48 hours so that ICE may take custody in a safe custodial setting. Moreover, the issuance of a detainer does not violate any rights Plaintiff may have under the Fourth Amendment. Accordingly, Plaintiff fails to state a claim upon which relief can be granted as to the Federal Agency Defendants, and Counts IV and V should be dismissed.

## LEGAL BACKGROUND

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending removal decision); *id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id.* § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[1]

---

[1] Following passage of the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

Although the federal government possesses broad power over immigration, enforcing the laws concerning removable aliens is a formidable challenge. To meet that challenge, the federal government works with state and local governments. These cooperative efforts are critical to enabling the federal government to identify and remove the hundreds of thousands of aliens who violate immigration laws each year.

Federal law contemplates and authorizes these cooperative efforts. Congress has authorized the Department of Homeland Security (DHS) to enter into cooperative agreements with States and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, local officers may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform specified immigration enforcement functions relating to investigating, apprehending, and detaining aliens. *Id.* § 1357(g)(1)-(9). Even without a formal agreement, States and localities may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id.* § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include: "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable"; and "responding to requests for information about when an alien will be released from their custody." *Id.* The INA permits such cooperation whether it is directed by state or local directive or is implemented *ad hoc* by a county sheriff. *See id.* at 413.

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in immigration detainers issued by ICE, a component of DHS responsible for immigration enforcement in the country's interior. An immigration detainer

3

notifies a State or locality that ICE intends to take custody of an alien in that jurisdiction's criminal custody, and asks them to cooperate with ICE in two main respects: (1) by notifying ICE of the alien's release date; and (2) by holding the alien for up to 48 hours, based on ICE's determination that it has probable cause that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing release notification), (d) (describing temporary detention request). These notification and detention requests are authorized by the INA. *See, e.g.*, *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1998).

DHS's current detainer form, Form I-247A, as well as its predecessor, the I-2-47X, set forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable-cause finding is based on: (1) a final order of removal; (2) the pendency of removal proceedings; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf. The detainer form specifies that the State or locality should "[m]aintain custody of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Form I-247A (emphasis in original). The form provides that the "alien must be served with a copy of this form for the detainer to take effect," and that the existence of the detainer "should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." *Id.* The form encourages local law enforcement and the subject of the detainer to contact ICE's Law Enforcement Support Center with "*any* questions or

4

concerns" about a detainer request. *Id.* (emphasis added); *see also id.* at 2.

As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5, https://www.ice.gov/detainer-policy. That arrest warrant—either a Form I-200, Warrant for Arrest of Alien (issued for aliens not yet subject to a removal order) or a Form I-205, Warrant of Removal/Deportation (issued for aliens subject to a final removal order)—is issued by an executive officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing officers who may issue warrants). Unless the alien is already detained by ICE, ICE may issue a detainer only when a state or local agency has arrested the alien for a *criminal* offense in an exercise of its independent arrest authority. ICE Policy No. 10074.2 ¶ 2.5. The policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

## FACTUAL BACKGROUND

On March 12, 2017, Plaintiff Garland Creedle was arrested after an alleged domestic dispute and booked into the Miami-Dade County Jail. First Amended Complaint ("Am. Compl."), ECF No. 47 ¶. The next morning, the Jail received an immigration detainer request regarding Plaintiff. *Id.* ¶ 50. The detainer reflects that a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* ¶ 55. On March 13, 2017, Plaintiff posted bond. *Id.* ¶ 60. The Jail maintained custody of him after his release as requested by the detainer, and on March 14, 2017 ICE officers interviewed Plaintiff in the Jail. *Id.* ¶¶ 61-65. After his interview, ICE withdrew the detainer request and

Plaintiff was released.  ¶¶ 65-66.

**STANDARD OF REVIEW**

Federal courts only possess the power to review causes of action authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005). Whether the federal court has subject-matter jurisdiction to review a claim is a threshold issue that must be addressed before examining the merits of a cause of action. *Dillard v. Baldwin Cnty. Comm'rs*, 495 F.3d 1324, 1330 (11th Cir. 2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of establishing jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).  Challenges to jurisdiction can be either "facial" of "factual." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Facial challenges are limited to a plaintiff's allegations, taken as true for purposes of the motion, whereas factual challenges encompass matters outside the pleadings and allow a district court to weigh the factual record. *Id.* at 1529.

To survive a motion to dismiss, a pleading must include a "'short and plain statement showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

6

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

In considering a Rule 12(b)(6) motion, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller *Federal Practice and Procedure* § 1357 (3d ed. 2004 & Supp.2007)) (citations omitted). A court may consider documents that a plaintiff has attached to the complaint. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). Moreover, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

## ARGUMENT

Plaintiff alleges that the Federal Agency Defendants' actions in issuing a detainer violate the APA (Count IV) because the detainer was issued without a written agreement pursuant to 8 U.S.C. § 1357. Plaintiff also complains that the issuance of a detainer alone, without any other action by the Federal Government, violates Plaintiff's Fourth Amendment rights. These claims fails at the threshold— because Plaintiff lacks Article III standing to seek declaratory relief, and because his claims are moot. Furthermore, Plaintiff loses on the merits, because the INA authorizes ICE to issue detainers without any formal agreement and because the issuance of a detainer is not a Fourth Amendment violation.

### I.   **Plaintiff lacks Article III standing to seek prospective declaratory relief**

Plaintiff seeks relief declaring that Miami-Dade County's cooperation with detainers is unlawful,

declaring that the County's detention of Plaintiff pursuant to a detainer violated his Fourth Amendment rights and constituted false imprisonment under Florida law, declaring that ICE's issuance of a detainer exceeded its statutory authority and violated the Fourth Amendment, declaring that Defendant Martinez violated Plaintiff's Fourth and Fifth Amendment rights, and awarding compensatory and punitive damages, and attorney's fees and costs. Am. Compl. p. 18. However, Plaintiff lacks Article III standing to raise claims for prospective equitable relief, such as his requests for declaratory relief, and the Court cannot provide him with redress. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-02 (1998) (rejecting notion of "hypothetical jurisdiction" and requiring resolution of antecedent Article III jurisdictional questions). That is because even if a plaintiff has standing to obtain damages to redress *past* injury, to obtain prospective equitable relief for constitutional violations a plaintiff must demonstrate that he is "likely to suffer future injury from" the challenged conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)—*i.e.*, that Plaintiff faces "a real and *immediate* threat that he again" will suffer the same harm. *Lyons*, 461 U.S. at 105. Plaintiff fails to allege—let alone demonstrate—*any* likelihood that he will ever again be subject to an ICE detainer. Indeed, he has been released from both criminal and immigration custody, and will not be subject to detention again because ICE has updated its records to reflect that Plaintiff is a citizen. *See* Declaration of Dean Caputo, attached hereto as Exhibit 1. He thus has "shown insufficient likelihood of future injury to warrant equitable relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999), *see also Lopez-Lopez v. Allegan Cty.*, Case No. 1:17-cv-786, pp. 5-7 (W.D. Michigan) (attached hereto) (finding plaintiff lacks standing to challenge detention alleged to have been in response to an ICE detainer where he cannot show a likelihood of being detained in the future, relying on *Lyons*).

Furthermore, the Court cannot provide Plaintiff redress. The "irreducible constitutional

8

minimum of standing" contains three requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must have suffered an "injury in fact." *Id.* Second, there must be a "causal connection" between the injury and the conduct complained of. *Id.* Third, and most importantly here, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 560-61 (internal citations omitted). Unless a plaintiff can meet these requirements, a federal court has no jurisdiction to hear the claim, and it should be dismissed.

Plaintiff fails to show that a favorable decision by this Court likely will redress his alleged injury—his allegedly unlawful arrest and detention on the basis of a detainer. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983); *cf. Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question [also] bears close affinity to [the] question[] . . . of mootness—whether the occasion for judicial intervention persists."). That is because, as discussed in the next section, ICE has changed its detainer policies and detainer form. *See* Section II. Thus, even if Plaintiff were somehow able to show that he is likely to be subject to a detainer again, any decision by this Court granting him the relief he seeks would be an impermissible advisory opinion, and thus unable to provide him with meaningful relief. Accordingly, because Plaintiff lacks standing, his claims against the Federal Agency Defendants must be dismissed.

## II.      Plaintiff's requested relief is moot

For relief, Plaintiff requests that this Court (as relevant to the Federal Agency Defendants) issue a judgement declaring that "ICE's issuance of a detainer against Plaintiff exceeded the agency's statutory authority and violated the Fourth Amendment because it purported without lawful authority to authorize Plaintiff's arrest and detention by the County." Am. Compl. p. 18. However, not only does Plaintiff not have standing to bring this claim, as explained above, but his request for relief is moot, because ICE has changed its detainer policies. Events post-dating the allegations of the complaint can

moot out claims. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

As noted above, ICE's detainer policies have changed since the time of the allegations of Plaintiff's complaint. As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5. That arrest warrant—either a Form I-200 or a Form I-205—is issued by an executive officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5. Unless the alien is already detained by ICE, ICE may issue a detainer only when an agency has arrested the alien for a *criminal* offense in an exercise of its independent arrest authority. ICE Policy No. 10074.2 ¶ 2.5. The policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

"When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). The Eleventh Circuit had held that "a challenge to a government policy moot when it has been replaced by a new policy that "'appears to have been the result of substantial deliberation' on the part of the alleged wrongdoers and has 'been consistently applied' in the recent past." *Id.* at 1285 (citing *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998).

This demonstrates that Plaintiff's requested relief—a declaration that ICE's issuance of a detainer exceeded the agency's statutory authority and violated the Fourth Amendment—is indeed

moot. It is clear that the new policy was the result of "substantial deliberation." The policy is a change from previous policy that affects nationwide operations. The policy has been formalized and published online for all to see. The policy change was undertaken voluntarily. And there is no allegation that since the policy change, ICE has engaged in conduct that violates it. Thus, given the policy change, the issue is "purely academic." *See Jews for Jesus*, 162 F.3d 629. "In short, this Court has consistently held that a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated. In the absence of any such evidence, there is simply no point in allowing the suit to continue and we lack to power to allow it to do so." *Troiano*, 382 F.3d 1285.

Thus, because this Court cannot enjoin a policy that is no longer in place, the relief Plaintiff requests is now moot because ICE has changed its policies and detainer forms. Accordingly, his claims against the Federal Agency Defendants must be dismissed.

**III.  Even if Plaintiff had standing and his request for relief was not moot, he fails to state a claim**

Even if Plaintiff had standing, and his requested relief was not moot, his claims would fail on the merits. That is because Plaintiff fails to allege a cognizable claim. The only action challenged as to the Federal Defendants is the issuance of a detainer, and the issuance of a detainer is authorized by the INA. Furthermore, the issuance of a detainer does not violate the Fourth Amendment. Thus, Plaintiff's claims as to the Federal Defendants fail, and must be dismissed.

**a.  Issuing a detainer is not ultra vires because it is authorized by law**

While Plaintiff's complaint does not explicitly specify which prong of the APA (5 U.S.C. § 706(2)(A)-(D)) he believes the Federal Defendants' actions violate, he makes a reference to "Ultra Vires" and so the Federal Agency Defendants presume that his claim is pursuant to 5 U.S.C. § 706(2)(C). Am. Compl. p. 15. Claims that an action is in excess of statutory jurisdiction, authority, or limitations, or

short of statutory right require the application of *Chevron U.S.A., Inc. v. Nat. Res. Defense Council,* 467 U.S. 837 (1984).

Plaintiff claims that pursuant to 8 U.S.C. § 1357, "Congress limited Defendant ICE's authority to transfer its arrest powers to LEAs to certain conditions involving a written agreement." Am. Compl. ¶ 85. Plaintiff goes on to state that by asking Miami-Dade to cooperate with a detainer request, the Federal Agency Defendants "did so without a written agreement and other conditions, in violation of the limitations placed by 8 U.S.C. § 1357." *Id.* ¶ 86.

This argument is meritless. As the courts across the country have explained, pursuant to the INA, ICE may issue a detainer to request cooperation from a state or local law enforcement agency "either to hold the prisoner for the agency or to notify the agency when release [] is imminent." *McLean v. Crabtree*, 173 F.3d 1176, 1185 n.12 (9th Cir. 1998) (defining detainer as a request "to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent" and holding that DHS "has authority to lodge a detainer against a prisoner"). *See* 8 C.F.R. § 287.7(a) (describing release notification), (d) (describing temporary detention request). This detainer "authority," authorized by 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), "predates the INA and has long been viewed as implied by federal immigration enforcers' authority to arrest those suspected of being removable." *Santoyo v. United States*, No. 16-855, 2017 WL 6033861, at *3 (W.D. Tex. Oct. 18, 2017)[2]; *see Mendez v. United States*, 2009 U.S. Dist. LEXIS 116522, at *2 n.2 (S.D.N.Y 2009) (similar); *Comm. for*

---

[2] To the extent Plaintiff suggests that a detainer may not be issued unless ICE has made the findings required for a *warrantless* arrest pursuant to 8 U.S.C. § 1357(a)(2), he is mistaken. Those provisions pertain to an ICE officer's powers without a warrant, not ICE's authority to issue detainers. *See Mendez*, 2009 U.S. Dist. LEXIS 116522, at *2 n.2 (noting that ICE has authority to lodge a detainer pursuant to § 1357(g)); *Galarza*, 2012 U.S. Dist. LEXIS 47023, at *38 ("[I]n order to issue a detainer pursuant to § 1357, there must be probable cause to believe that the subject of the detainer is (1) an 'alien' who (2) 'may not have been lawfully admitted to the United States' or (3) 'otherwise is not lawfully present in the United States.'") (quoting 8 U.S.C. § 1357(d)(1)); *Sonoma Cty.*, 644 F. Supp. 2d 1177, 1199 (upholding ICE's ability to issue detainer pursuant to 8 C.F.R. § 287.7).

*Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009) (similar); *see also Akande v. U.S. Marshals Serv.*, 659 F. App'x 681, 684 (2d Cir. 2016) ("the immigration detainer would appear . . . to justify an additional 48 hours of detention beyond the expiration of the prisoner's term"); *United States v. Carlos Gomez-Robles*, No. 17-730, 2017 WL 6558595, at *3 (D. Ariz. Nov. 28, 2017) ("federal law provides both the authority for DHS to issue immigration detainers and for law enforcement agencies, like the Pima County Jail, to detain those identified in those detainers"); *Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer"); *Rosario v. New York City*, 2013 U.S. Dist. LEXIS 69410, at *12 (S.D.N.Y. 2013) (noting INA "authority to detain [alien] under [] detainer"); *cf. Morales v. Chadbourne*, 793 F.3d 208, 218 (1st Cir. 2015) (explaining that ICE must have probable cause of an alien's removability to issue a detainer under the INA requesting a local law enforcement agency temporarily detain an alien); *Galarza v. Szalczyk*, 2012 U.S. Dist. LEXIS 47023,*38 (D.N.J. 2012) (explaining probable cause to issue detainer); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (cooperation with ICE by local officer lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (local officer's cooperation with ICE request for detention without "written agreement" lawful if "not unilateral").[3]

ICE's authority to issue detainers to state and local law enforcement is not limited to only those jurisdictions which have so-called 287(g) agreements with ICE, as Plaintiff seems to suggest. The INA authorizes local officers to "cooperate" with federal officials "in the identification, apprehension, detention, or removal of aliens." 8 U.S.C. § 1357(g)(10)(B). Pursuant to the very statute that Plaintiff cites, that cooperation expressly does "not[]" "require an agreement," and nothing in the statute suggests

---

[3] *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 2017 WL 5634965, at *7-10 (S.D. Ind. Nov. 7, 2017), incorrectly suggests that ICE lacks authority to request temporary detention. The cited authorities above reject that contention. *See Akande*, 659 F. App'x at 684; *Rosario*, 2013 U.S. Dist. LEXIS 69410, at *12.

that local officers need formal training before cooperating with federal enforcement efforts, including detainer requests. *Id.* § 1357(g)(10). Plaintiff's argument was recently rejected by the Fifth Circuit. *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018). As that Court explained, the INA, through section 1357(g)(10)(B), "indicates that Congress intended local cooperation without a formal agreement," and without "a written agreement, training, and direct supervision by DHS . . . in a range of key enforcement functions." *Id.* That is, cooperation with immigration detainers is permitted and envisioned by the INA without any of the formal training and certification requirements necessary for "state and local officials [to] become de facto immigration officers, competent to act on their own initiative" under a formal 287(g) agreement. *Id.* And as a panel (at the stay stage) of the Fifth Circuit held, "nothing in *Arizona v. United States*, 567 U.S. 387 (2012), prohibits such assistance" and "8 U.S.C. § 1357(g), provides for such assistance." *See City of El Cenizo, Texas v. Texas*, 2017 WL 4250186, *1-2 (5th Cir. Sept. 25, 2017). *See also Tenorio-Serrano v. Driscoll*, -- F. Supp. 3d --, No. CV1808075PCTDGCBSB, 2018 WL 3329661, at *9 (D. Ariz. July 6, 2018) ("the Court is not persuaded at this stage that § 1357(g) prohibits Defendants from complying with detainers. Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual. This conduct appears to fall within § 1357(g)(10)(B)."); *Perez-Ramirez v. Norwood*, No. 18-4043-JWL, -- F. Supp. 3d --, 2018 WL 3524606, *2 (D. Kan. July 18, 2018) (holding that compliance with ICE detainer was lawful).

### b.       Issuing a detainer does not violate the Fourth Amendment

Count V also fails because the mere fact that ICE lodged a detainer with Miami-Dade County does not effect a seizure or create other constitutional problems. The Fourth Amendment prohibits

unreasonable "seizures." For the government to effect a new Fourth Amendment seizure of a person, the government must exert its authority to "willful[ly]" to restrain or constrain the person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). As the Supreme Court has put the point, "implicit in the word 'seizure'" is the understanding that a "detention [] be willful." *Id.* Thus, a Fourth Amendment "seizure" does not occur as the result of "an unknown act" or of "the accidental effects of otherwise lawful government conduct." *Id.* Instead, there must be "an intentional acquisition of physical control" by a government actor. *Id.* The government action alleged to be a seizure must be "designed to produce" the seizure. *Id.* at 598. "A seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625 (1991) (quoting *Thompson v. Whitman*, 29 Wall. 457, 471 (1874)).

Thus, the question is whether the very act of issuing a detainer, rather than some action later in time by some other actor, effects a Fourth Amendment seizure. That is not the case for the simple reason that detainers are requests. "All Courts of Appeals to have commented on the character of ICE detainers refer to them as 'requests' or as part of an 'informal procedure.'" *Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014). Thus, cases addressing on the merits the question whether a detainer request effects a Fourth Amendment seizure have emphasized that the detainer does not itself cause the seizure, and that such a seizure instead requires a further, intentional act. *See Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011) ("[D]etainer alone does not cause imprisonment or a seizure by ICE. Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE."); *Nasious v. Two Unknown B.I.C.E. Agents*, 657 F. Supp. 2d 1218, 1223, 1225 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010) ("Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer," and "could not, as a matter of law, constitute a restraint on or deprivation of a liberty"); *see also Hendrickson v. Thurston Cty.*, 2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008)

15

(rejecting Fourth Amendment claim premised on claim that existence of a warrant on a separate charge "influenc[ed] third-party bail bondsmen to refuse to issue a bond to assist the individual in posting bail"). Indeed, for that reason in the related habeas context, multiple circuits have held "[t]he filing of [a] detainer, standing alone, [does] not cause [the petitioner] to come within the custody of [immigration officials]." *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 623 (11th Cir. 2013) (citing *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990)). *See also Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994) (the issuance of a "bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available."); *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (collecting cases and agreeing that absent an order of removal, "prisoners are not 'in custody' for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them"). It follows *a fortiori* that the issuance of a detainer request alone, without further action by ICE, does not "seize" an alien. Rather, a seizure occurs, if at all, when ICE *arrests* the alien, which never happened here.[4]

Likewise, the mere fact that ICE requests through a detainer to be notified of an alien's impending release, or even for an alien to be detained at some future point in time so ICE may take custody, does not render the issuance of a document titled a detainer a seizure, let alone an unreasonable one. A federal request for notification is "simply an administrative mechanism that ensure[s] that upon the completion of his state criminal matter, [the alien] [will] be transferred to federal custody." *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014). Such requests "do not limit [the receiving agency's] discretion" in any way. *Garcia*, 40 F.3d at 303. "[S]tate charges [remain] the impetus for the

---

[4] To the extent Plaintiff relies on section 1357(a)(2), the bare fact of issuing a detainer does not amount to an *arrest* of an alien already in another sovereign's custody, and so there can be no "warrantless arrest" such that 8 U.S.C. §1357(a)(2) is implicated at all, because issuing a detainer cannot be a "seizure" of an individual already in the custody of a local law enforcement agency. *See, United States v. Al Nasser*, 555 F.3d 722, 730 (9th Cir. 2009) (a new Fourth Amendment seizure of a person must involve newly constraining that person's liberty by "means intentionally applied."). To clarify, an ICE officer can effect an arrest only when *that specific ICE officer's* action is "the very instrumentality set in motion or put in

entire duration of [any] pretrial detention" in such circumstances. *Juarez-Velasquez*, 763 F.3d at 436. A locality's "responding to requests for information about when an alien will be released from their custody," in turn, is a permissible act of cooperation with the federal government and raises no Fourth Amendment—or other constitutional—concerns. *Arizona*, 567 U.S. at 410.

And even were Plaintiff correct—which he is not—that the bare issuance of a detainer might somehow be a seizure, even if no law officer in fact effects an arrest or causes a detention at the time the detainer is issued, as the Fifth Circuit has recently held, such seizures are fully consistent with the Fourth Amendment, whether effected by the federal government or a state or local officer at the federal government's request. *See El Cenizo,* 890 F.3d at 187; *see also Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("The Fourth Amendment's meaning [does] not change with local law enforcement practices."). Even if the bare issuance of a detainer can constitute a seizure, that seizure is fully consistent with the Constitution because "an ICE-detainer request evidences probable cause of removability in every instance." *El Cenizo,* 890 F.3d at 187. Accordingly, as the Fifth Circuit explained, "[c]ompliance with an ICE detainer [] constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts." *Id.*

Moreover, the Fifth Circuit also rejected the argument "that state and local officers may only arrest individuals if there is probable cause of criminality." *Id.* Rather, the court held, seizures based on probable cause of a civil violation are consistent with longstanding precedent, and there is no requirement that an arrest may not occur "absent probable cause that a crime has been committed." *See id.* at 188 (collecting cases). As the Court explained, the contention to the contrary is "patently at odds with immigration law and procedure; civil removal proceedings necessarily contemplate detention absent

---

place in order to achieve that result" and effects the "detention." *Nasser*, 555 F.3d at 731 *Id.* at 731.

proof of criminality." *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

To the extent that Plaintiff suggests ICE violates the Fourth Amendment by failing to procure a warrant from a magistrate judge or otherwise getting a probable cause finding from a magistrate prior to issuing a detainer, that claim is without merit. It is well-settled that an executive immigration officer can constitutionally make the necessary probable-cause determination without any presentment to a judicial officer. "[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel v. United States*, 362 U.S. 217, 234 (1960). "[I]t is not unconstitutional under the Fourth Amendment for the Legislature to delegate a probable cause determination to an executive officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court judge." *Roy v. ICE*, No. 13-4416, 2017 WL 2559616, *10 (C.D. Cal. June 12, 2017) (upholding legality under the Fourth Amendment of ICE issuing detainers without presentment to a magistrate). *See Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876-80 (9th Cir. 2007) (immigration warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause"); *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (same); *see also El Cenizo*, 890 F.3d 186-90. Thus, there can be no plausible argument that any federal government official effected a seizure in violation of the Fourth Amendment merely by issuing a Form I-247 detainer *request* to Miami-Dade County without first procuring a probable cause finding from a judge [5]

---

[5] Plaintiff asserts that ICE violated the Fourth amendment by exceeding its "statutory authority." But it is well-settled that the Fourth Amendment does not turn on violations of federal or state statutory law. *Virginia v. Moore*, 553 U.S. 164, 173 (2008). Regardless, ICE does not violate the INA when it issued a detainer without a warrant or a finding that the alien is a flight risk, as Plaintiff might suggest. 8 U.S.C. § 1357(a)(2) establishes an *immigration officer's* authority under the INA to arrest an alien *without a warrant.* Specifically, section 1357(a)(2) provides that an immigration officer may effect a warrantless arrest "if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." This provision has no application to ICE's action in this case because the only ICE action challenged is the issuance of a

18

In short, because the mere *issuance* of a detainer by ICE, absent any further action by ICE to effect a seizure, like serving an arrest warrant or taking physical custody of the alien upon release from state custody, is not a seizure for Fourth Amendment purposes, let alone an unreasonable one, Plaintiff's claim premised on the Fourth Amendment fails.

## CONCLUSION

For the above reasons, Plaintiff's claims as to the Federal Agency Defendants should be dismissed, and the Federal Agency Defendants should be dismissed from this case.

Dated:  August 10, 2018                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

EREZ REUVENI
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

Attorneys for the Federal Defendants

---

*detainer.* ICE does not, and will not effect an arrest, warrantless or otherwise, until it takes custody from Miami-Dade. Whether ICE failed to rely on a warrant to effect that hypothetical arrest at a later time is not a claim before the court, as ICE never took custody of Plaintiff, but instead lifted the detainer request.

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 10, 2018, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served

this day on all counsel of record identified on the below Service List in the manner specified, either via

transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner

for those counsel or parties who are not authorized to receive notices of electronic filing.

Dated:  August 10, 2018                         Respectfully submitted,

                                                */s/ Lauren C. Bingham*
                                                Lauren C. Bingham
                                                Trial Attorney
                                                U.S. Department of Justice, Civil Division
                                                Office of Immigration Litigation
                                                District Court Section

**SERVICE LIST**

Creedle v. Miami-Dade County, et al.
CASE NO. 1:17-cv-22477-KMW

**Attorneys for Plaintiff, Garland Creedle**

Rebecca Sharpless and Romy Louise Lerner
University of Miami School of Law
Immigration Clinic
1311 Miller Drive, Suite E-273
Coral Gables, Florida 33146
 (305) 284-3576,
(305) 284-5448
rsharpless@law.miami.edu
rlerner@law.miami.edu

Ira J. Kurzban, Edward F. Ramos,
Ian K. Shaw, and Kevin A. Gregg
Kurzban, Kurzban Weinger
Tetzeli & Pratt, P.A.
2650 SW 27th Avenue, 2d Floor
Miami, FL 33133
(305) 444-0060
ira@kkwtlaw.com
eramos@kkwtlaw.com
ishaw@kktlaw.com
kgregg@kkwtlaw.com

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue
Tampa, FL 33607
(813) 288-8390
akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Ste. 340
Miami, FL 33137
(786) 363-2700
nabudu@aclufl.org

**Attorneys for Miami-Dade County**

Michael B. Valdes
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Ste. 2810
Miami, Florida 33128
(305) 375-5151
mbv@miamidade.gov

**Attorney for U.S. Dept. of Homeland Security, U.S. Immigration and Customs Enforcement**

Lauren C. Bingham
U.S. Dept. of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-4458
(202) 598-8085
Lauren.c.bingham@usdoj.gov

**Attorney for Officer Martinez**

Dexter A. Lee
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9320
dexter.lee@usdoj.gov