**United States District Court**
**Southern District of Florida**
**Case No. 17-22477-Civ-Williams/Torres**

**Garland Creedle**,
        Plaintiff,

        v.

**Miami-Dade County, et al.,**
        Defendants.

---

**Defendant Miami-Dade County's Motion**
**to Dismiss Plaintiffs' Amended Complaint**

In this matter, Plaintiff Garland Creedle had previously filed an original Complaint, which raised three claims against Miami-Dade County: a Fourth Amendment violation under 42 U.S.C. § 1983 (Count I); a Fourteenth Amendment violation under 42 U.S.C. § 1983 (Count II); and a state law claim for false imprisonment (Count III). *See* D.E. 1 at ¶¶ 62-78. Miami-Dade County responded to that Complaint by filing a Motion to Dismiss and asserting that Mr. Creedle failed to state a proper claim because he had sued the wrong parties, asserted the wrong claims, and requested the wrong relief. *See* D.E. 11. After that Motion was fully briefed, this Court subsequently held a hearing on the Motion to Dismiss and ordered Mr. Creedle to file a new amended complaint. D.E. 47.

Pursuant to that Order, Mr. Creedle filed an Amended Complaint. D.E. 48. Although Mr. Creedle's Amended Complaint has now added new claims against new federal defendants, he raises the same three claims against Miami-Dade County and, consequently, those claims suffer from the same deficiencies as before. First, Mr. Creedle lacks standing to seek declaratory relief because he does not allege any real and immediate possibility that he will be again be subject to the same alleged conduct. Second, there can be no municipal liability under 42 U.S.C. § 1983 because all relevant actions were taken under color of federal authority and an official policy that is authorized by law and that, on its face, requires compliance with the law cannot be the moving force and proximate cause of a constitutional violation. Third, the cooperation provided by Miami-Dade County is expressly allowed under both federal and Florida law and thus occurs under color of authority, and, more specifically, federal authority.

Thus, for the reasons stated below, the claims against Miami-Dade County in Mr. Creedle's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

**Background**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). In the exercise of that power, Congress has granted the Department of Homeland Security ("DHS") the authority to arrest aliens and detain aliens prior to removal. *See, e.g.*, 8 U.S.C. §§ 1226, 1231, 1357.[1] And, in recognition of the fact that "[c]onsultation between federal and state officials is an important feature of the immigration system," *Arizona*, 567 U.S. at 411, Congress has also authorized state and local governments to "cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). *See also* 8 U.S.C. § 1252c (authorizing state and local officials to arrest certain felons who have unlawfully returned to the United States). This case concerns one method in which that local cooperation can be provided: an immigration detainer.

An immigration detainer is a document that "serves to advise another law enforcement agency that [Immigration and Customs Enforcement ("ICE")] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien," and it often includes a request for the local agency to cooperate in that effort. 8 C.F.R. § 287.7.[2] Ordinarily, that request asks the local law enforcement agency "to maintain custody of [the individual] for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from [the agency's] custody to allow DHS to assume custody." D.E. 48-1 at 12 (emphasis in original). If that request is made, the detainer form—as shown in Ex. D to the Amended Complaint—requires the authorized immigration officer to attest that "probable cause exists that the subject is a removable alien" and note his or her particularized basis for making that determination. *Id.*

Under applicable ICE Policy No. 16001.2, "an ICE officer, agent, or attorney must assess the potential U.S. citizenship of an individual encountered by ICE…when indicia of potential U.S. citizenship are present in a case," and no immigration detainer should be lodged against any individual for whom there is even "some probative evidence … that the individual may be a U.S. citizen." *See*

---

[1]  Although these statutes often refer to the "Attorney General," those responsibilities were transferred to the Department of Homeland Security. *See* 6 U.S.C. §§ 202, 291, 557.

[2]  Pursuant to 8 C.F.R. § 287.7(b), only certain ICE officers are authorized to issue detainers. Notably, this class of officers is narrower than the class of officers authorized to serve immigration warrants and make arrests. *Compare* 8 C.F.R. § 287.7(b) *with* 8 C.F.R. §§ 287.5(c), 287.5(e)(3)-(4).

D.E. 70-1 at 4-6.[3] *See also id.* at 6-7 ("In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration detainer against the individual and should cancel any immigration detainer already lodged by ICE."). This policy has been in effect since November 10, 2015. *See id.* at 1. In addition, pursuant to ICE Policy No. 10074.2, every immigration detainer issued by ICE since April 2, 2017 must be accompanied by an administrative warrant issued by an authorized immigration official. *See* D.E. 70-2.[4]

Prior to December 2013, Miami-Dade County honored such immigration detainers. *See* D.E. 48 at ¶ 33 (incorporating by reference Miami-Dade Bd. of Cty. Comm'rs, Resolution R-1008-13 (Dec. 3, 2013)).[5] In December 2013, the Miami-Dade Board of County Commissioners ("County Commission") adopted Resolution No. R-1008-13, which directed the County Mayor to implement a new policy whereby the County's Corrections Department would no longer honor immigration detainers received from ICE unless (1) the federal government agreed in writing to reimburse the County for all costs relating to compliance with such immigration detainers and (2) the subject inmate had a previous conviction for a forcible felony or a pending charge of a non-bondable offense. *See* D.E. 70-3 at 5.

On January 26, 2017, the County Mayor issued a memorandum directing the Corrections Department to "honor all immigration detainers received from the Department of Homeland Security." *See* D.E. 48-1 at 2. The memorandum also noted that the County Mayor would "partner with the Board of County Commissioners to address any issues necessary to achieve this end." *Id.* In response to the County Mayor's memorandum, the County Commission called for a special meeting on February 17, 2017 and adopted Resolution R-163-17. *See id.* at ¶ 39 (incorporating by reference

---

[3]   A copy of ICE Policy No. 16001.2: *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015) is available online at https://www.ice.gov/detainer-policy.

[4]   A copy of ICE Policy No. 10074.2: *Issuance of Immigration Detainers by ICE Immigration Officers* (Mar. 24, 2017) is available at https://www.ice.gov/detainer-policy.

[5]   Although Mr. Creedle provided a link to the resolution in his Amended Complaint, D.E. 48 at ¶ 33, Miami-Dade County has attached a copy to this motion at D.E. 70-3 for ease of reference. In addition, this exhibit and two other soon-to-be referenced exhibits may be properly considered by the Court as part of this Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal")

Miami-Dade Bd. of Cty. Comm'rs, Resolution R-163-17 (Feb. 17, 2013)).[6] Resolution R-163-17 amended the County Commission's 2013 resolution (R-1008-13) and directed the County Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County … cooperat[es] with the federal government *to the extent permissible by law* … [and] *continues to require the federal government to show probable cause on all immigration detainer requests*."[7] D.E. 70-4 at 6 (emphasis added).

On March 12, 2017, Mr. Creedle was arrested on charges of aggravated battery on a pregnant woman, a second degree felony under Fla. Stat. § 784.045. *See* Docket in Case No. F-17-004932 (Fla. 11th Cir. Ct. 2017); D.E. 48 at ¶ 47. By the time of Mr. Creedle's arrest, it had been more than 10 days since the County Commission passed Resolution No. R-163-17. Therefore, although the Amended Complaint devotes much of its attention to the County Mayor's January 27, 2017 memorandum, *see, e.g.*, D.E. 48 at ¶¶ 38-40, 69, 80, the County policy regarding immigration detainers in effect at the time of his arrest was actually the Board's 2017 resolution amending the Board's 2013 policy and directing the County Mayor to "cooperate with the federal government to the extent permissible by law … [and] to require the federal government to show probable cause on all immigration detainer requests."[8]

---

[6]   Although Mr. Creedle provided a link to the resolution in his Complaint, D.E. 48 at ¶ 39, Miami-Dade County has attached a copy to this motion at D.E. 70-4 for ease of reference.

[7]   In his Amended Complaint, Mr. Creedle conveniently omitted the portion of the County Commission's resolution that established, as a matter of County policy, a requirement that the federal government show **probable cause** on an immigration detainer as a condition for the County providing cooperation. *Compare* D.E. 48 at ¶ 39 *with* D.E. 70-4 at 6. Unfortunately, that was also not Mr. Creedle's only sin of omission. For example, the copy of the I-247X detainer form provided by Mr. Creedle clearly notes in the bottom-right corner that this form is "Page 1 of 3." D.E. 48-1 at 12. The exhibit, however, is a single page. For matters relevant to this case, the exclusion of the other two pages is notable because those pages provide a notice to the detainee in six different languages that "[i]f you believe you are a United States citizen …, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903." A complete copy of a sample I-247X is attached at D.E. 70-5. Also, Miami-Dade County had advised Mr. Creedle of these omissions in its prior Motion to Dismiss, D.E. 11 at 4, and yet he failed to correct these issues in his Amended Complaint.

[8]   Both the Court and Plaintiff acknowledged this fact at the hearing held on Miami-Dade County's Motion to Dismiss. *See* D.E. 70-6 at 4, ln. 6-11 ("THE COURT: … Mr. Creedle was not apprehended until after the resolution in any event; so the authority came from the resolution as opposed to the Mayor's directive. … MR. KURZBAN: I think that's right. …"). Further, because this exhibit only provides excerpts from the hearing transcript, the citation refers to the pagination generated by CM/ECF rather than the transcript page numbers themselves.

4

While Mr. Creedle was in the County's custody on local charges, the Corrections Department received an immigration detainer from ICE Deportation Officer Alexander Martinez. *See* D.E. 48 at ¶ 50. The detainer is specifically addressed to the Corrections Department, lists Mr. Creedle as its subject, and is signed by Ofr. Martinez. *See* D.E. 48-1 at 12. The detainer also contains two important representations from Ofr. Martinez. First, the detainer advises Miami-Dade County that "DHS suspects that [Mr. Creedle] is an immigration enforcement priority because … in the judgment of a designated senior DHS official, his/her removal would serve an important federal interest." *Id.* Second, it represents that "[p]robable cause exists that [Mr. Creedle] is a removable alien" and that "[t]his determination is based on … biometric confirmation of [Mr. Creedle's] identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that [Mr. Creedle] either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* And, as a result of those factors, the detainer requested that Miami-Dade County "maintain custody of [Mr. Creedle] for a period not to exceed 48 hours beyond the time when [he] would otherwise have been released from [the County's] custody to allow DHS to assume custody." *Id.* Furthermore, there is nothing on the face of the detainer to call into question the veracity of Ofr. Martinez's representations. *See generally id.*

On March 13, 2017, Mr. Creedle posted bond on his local charges. D.E. 48 at at ¶ 60. However, because (1) Miami-Dade County had received an immigration detainer by a federal official authorized under 8 C.F.R. § 287.7 to issue such forms; (2) the immigration detainer included a representation by that federal official that there was probable cause that Mr. Creedle was a removable alien; (3) federal law authorizes Miami-Dade County to "cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10); and (4) caselaw and statutes recognize that local officials can rely on the representations by fellow officers as to probable cause when offering assistance, Miami-Dade County maintained custody of Mr. Creedle to allow DHS to assume custody, D.E. 48 at ¶ 62. Then, less than 24 hours after Mr. Creedle posted bond on his local charges, "ICE officials interviewed Mr. Creedle and withdrew the detainer request." *Id.* at ¶ 65. "After ICE withdrew the detainer request, Mr. Creedle was released on bond." *Id.* at ¶ 66. Thus, by his own admission, Mr. Creedle was only in Miami-Dade County's custody when either (1) he was arrested on local charges and had not yet posted bond or (2) there was an open and validly issued request for cooperation by the federal government and an averment from the federal government that there was probable cause that Mr. Creedle was a removable alien.

## Argument

In this case, Miami-Dade County asks this Court to dismiss Counts I-III, *see* D.E. 48 at 12-15, pursuant to FED. R. CIV. P. 12(b)(1) and (6) because (i) Mr. Creedle  has failed to state a claim upon which relief can be granted, and (ii) Mr. Creedle lacks standing to request declaratory relief and, therefore, this Court lacks subject matter jurisdiction to grant his request.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a 12(b)(6) motion, "courts must generally accept the plaintiff's allegations as true," but "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. JB. Hunt Transp., Inc.*, 427 F. App'x 705, 707 (11th Cir. 2011) (internal quotation omitted). Also, while courts must construe non-conclusory allegations in the light most favorable to plaintiffs for purposes of Rule 12(b)(6), the same does not hold true when dismissal is sought under Rule 12(b)(1).

"[I]n the context of a Rule 12(b)(1) challenge to standing, 'we are obliged to consider not only the pleadings, but to examine the record as a whole to determine whether we are empowered to adjudicate the matter at hand.'" *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003). And, because Miami-Dade County is asserting a factual challenge to Mr. Creedle's standing, this Court may consider evidence outside of the Amended Complaint. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Accordingly, the Court is "free to weigh the facts" and it is "not constrained to view them in the light most favorable" to Mr. Creedle. *Id. See also Morrison v. Amway Corp.*, 323 F.3d 920, 952 (11th Cir. 2003) ("In short, no presumptive truthfulness attaches to his allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.") (internal citation omitted).

### I.   Mr. Creedle lacks standing to seek declaratory relief

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). With respect to Mr. Creedle's request for declaratory relief, that threshold is simply not met. *See Warth,* 422 U.S. at 518 ("It is the responsibility

6

of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'").

Because declaratory relief is a wholly prospective remedy, "[a] plaintiff has standing to seek declaratory … relief *only* when he allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury *in the future.*" *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation omitted) (emphasis added). Furthermore, "[t]he binding precedent in the [Eleventh Circuit] is clear that for an injury to suffice for prospective relief, it must be *imminent.*" *Elend*, 471 F.3d at 1207 (emphasis added). Thus, "it follows that 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). *See also Emory v. Peeler*, 756 F.2d 1547, 1551 (11th Cir. 1985) (holding that "declaratory relief may only be issued in the case of an 'actual controversy'… [t]hat is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interest").

In this case, Mr. Creedle asks this Court to issue the following declaratory relief: (1) "[d]eclare unlawful Miami-Dade County's policy and practice of arresting people on immigration detainer requests"; and (2) "[d]eclare that the County's arrest of Mr. Creedle pursuant to ICE's immigration detainer violated his Fourth Amendment right to be free from unreasonable seizure, violated his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and constituted unlawful imprisonment under Florida law." D.E. 48 at 18. Yet, his own allegations, the evidence presented in this record, and the relevant case law demonstrate that Mr. Creedle is unable to establish the necessary standing for either.

First, Mr. Creedle is not entitled to declaratory relief because he has failed to properly allege that he has a substantial likelihood that he will suffer injury in the future. Specifically, in order to establish standing, Mr. Creedle would have to show that he is danger of imminent injury in the future due to "Miami-Dade County's policy and practice of arresting people on immigration detainer requests," *id.* This would effectively require Mr. Creedle to allege all of the following: (1) that he would have another encounter that would cause him to be arrested on criminal charges and brought to the Miami-Dade County Jail; and (2) that all ICE officers in the Miami Field Office would ignore probative evidence of his U.S. citizenship and nevertheless issue a detainer request notwithstanding (a) the Declaration of Dean Caputo, D.E. 69-1 at 2, averring that Mr. Creedle is now denoted in ICE's database as a U.S. citizen and (b) the prohibition on issuing detainers when such facts are present under ICE Policy No. 16001. *See, e.g., Lyons*, 461 U.S. at 105–06 (1983) (finding lack of standing because "[i]n order to

7

establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.").

Because Mr. Creedle does not—and cannot—provide any plausible allegations that all of these conditions will be met in the imminent future, his claim for declaratory relief must be dismissed. Indeed, by his own admission, Mr. Creedle is a U.S. citizen and the federal government—after learning this fact—revoked its detainer request and ordered him released. D.E. 48 at ¶¶ 53, 65-66. Additionally, the federal government has noted that its database now properly reflects this fact. D.E. 69-1 at 2. Thus, any future involvement between Mr. Creedle, Miami-Dade County, and ICE based upon an immigration detainer is wholly speculative, not imminent, and, above all else, highly unlikely.[9] These facts stand in stark contrast to the instances where the Eleventh Circuit has found standing for declaratory relief. *See Elend*, 471 F.3d at 1208 ("Where we have found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury.").[10]

Second, Mr. Creedle's other request for declaratory relief (i.e., that the Court "[d]eclare that the County's arrest of Mr. Creedle pursuant to ICE's immigration detainer *violated* his Fourth Amendment right to be free from unreasonable seizure, *violated* his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and *constituted* unlawful

---

[9]     As explained by the Eleventh Circuit in *Miccosukee Tribe of Indians of Fla. V. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000), "we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none. … If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." But, even, if Mr. Creedle were afforded the very leeway that *Miccosukee* expressly forbids, his request for relief would still be subject to dismissal on the ground of mootness for the reasons stated in the motion to dismiss filed by co-defendants DHS and ICE. *See* D.E. 69 at 9-11.

[10]    By way of example, the Eleventh Circuit's decision in *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), is perhaps the most instructive. There, the Eleventh Circuit "found standing for children who actually were in the custody of the foster care system involuntarily, but not standing for children who had run away and were no longer in the defendants' physical custody because the prospect of their returning to foster care was too speculative." *Elend*, 471 F.3d at 1208 (describing holding in *31 Foster Children*). Here, Mr. Creedle's circumstance is indisputably closer to the latter than the former.

imprisonment under Florida law") is deficient on its face, D.E. 48 at 12 (emphasis added). As an initial matter, Mr. Creedle's exclusive use of the past verb tense in his request, *see supra*, shows that he is solely seeking a declaration about past conduct. Thus, Mr. Creedle ostensibly seeks nothing more than a declaration that his constitutional rights were previously violated under a policy and set of circumstances that are no longer in effect. That is not a proper basis for Mr. Creedle to seek declaratory relief, which as discussed above is wholly prospective in nature. In fact, the Eleventh Circuit dealt with a substantively identical request for declaratory relief in *Emory*, 756 F.2d 1547, and it was denied. There, like here, the plaintiff's only allegations were "that he ha[d] been injured by [the defendant's] past conduct," and he made "no factual allegation, however, that such conduct has continued or will be repeated in the future." *Id.* at 1552. Thus, the Eleventh Circuit affirmed the dismissal of these claims and held that "[a] declaration that [defendant's] past conduct violated [plaintiff's] constitutional rights and [state] law 'would be nothing more than gratuitous comment without any force or effect.'" *Id.* (quoting *Northern Virginia Women's Medical Center v. Balch,* 617 F.2d 1045, 1049 (4th Cir. 1980)). *See also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, … they must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."); *Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1166 (11th Cir. 2012) (holding that the case becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief"); *Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury."); *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987) ("This argument, which would render any past illegal conduct subject to a declaratory judgment, is insupportable because even a favorable ruling would be of no benefit to him."). This Court should treat Mr. Creedle's request for declaratory relief similarly and grant dismissal. *See Elend*, 471 F.3d at 1211-12 ("When a case involving prospective relief provides a court with no factual assurances that future injury is likely and no clues about its contours should such an injury arise, we are left with only the faintest picture of a possible constitutional transgression occurring someday, somewhere in this country. Such a claim is not fit for adjudication by this Court.").

## II. Mr. Creedle Fails to Establish a Claim against Miami-Dade County under 42 U.S.C. 1983.

With respect to his federal claims (Counts I and II), Mr. Creedle has only asserted municipal liability claims against Miami-Dade County under 42 U.S.C. § 1983. *See* D.E. 48 at ¶¶ 67-75. In order to properly state such a claim, any plaintiff carries a considerable burden because "[t]he Supreme Court has placed strict limitations on [local government] liability under § 1983." *Tennant v. Florida*, 111 F. Supp. 2d 1326, 1331 (S.D. Fla. 2000). The most critical of those limitation is that local governments cannot be held vicariously liable for the actions of their employees when its agents or employees have caused a constitutional injury. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.");[11] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("A county's liability under § 1983 may not be based on the doctrine of respondeat superior."); *accord Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) ("But it is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have **itself** caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory.") (emphasis in original). Instead, *Monell* liability will only extend to a local government when it can be shown that (1) an official policy promulgated by a final policymaker; (2) was the moving force behind a constitutional violation; (3) that occurred under color of state authority and (4) demonstrated deliberate indifference to those rights. *See generally City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987). Here, none of these four elements is met.

### a. Mr. Creedle's constitutional rights were not violated by Miami-Dade County because Miami-Dade County can provide assistance to the Federal Government pursuant to an immigration detainer

When distilled to its essence, the crux of Mr. Creedle's Amended Complaint is that, in his view, Miami-Dade County could not maintain custody of him on behalf of the federal government based solely on an immigration detainer. *See generally* D.E. 48 at ¶ 74. However, it is undisputed that ICE

---

[11] Because *Monell* was the seminal decision that spawned these types of claims, municipal liability claims under § 1983 are also frequently referred to as "*Monell* claims." In this Motion to Dismiss, Miami-Dade County will use both terms interchangeably.

officials have the authority to detain removable aliens, enlist the cooperation of local governments to assist in that function, and, specifically, issue immigration detainers to request that assistance. *See* 8 U.S.C. § 1357, 8 C.F.R. § 287.7. *See also Davila v. N. Reg'l Joint Police Bd. ("Davila I")*, 979 F. Supp. 2d 612, 635 (W.D. Pa. 2013), *opinion vacated in part on other grounds*, No. 2:13-CV-0070, 2014 WL 3735631 (W.D. Pa. July 28, 2014) ("The Court is not aware of, nor is the Plaintiff able to cite to, a case that has held that a local government entity's decision to rely on and comply with this federal regulation to be unconstitutional on its fact, and no basis has been advanced to conclude that it was unconstitutional for the Jail to abide by the immigration detainer issued here."). Furthermore, when Miami-Dade County receives a facially valid detainer request, the law does not require the County to treat that request with skepticism or doubt. On the contrary, Miami-Dade is entitled to rely on ICE's representations as to probable cause and provide the requested assistance even if it is "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985); *People v. Xirum*, 993 N.Y.S. 2d 627, 631 (N.Y. Sup. Ct. 2014) (dismissing claim that copy of actual order of removal had to be provided with detainer and holding that "the [Department of Corrections] had the right to rely upon the very federal law enforcement agency charged under the law with the identification, apprehension, and removal of illegal aliens from the United States") (internal quotation omitted). In addition, Miami-Dade County is entitled to "fill in any gaps in the account with reasonable inferences premised on [the fellow officer] acting in a constitutional manner and in good faith." *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013). Thus, when presented with a facially valid detainer request, Miami-Dade County is entitled to make a reasonable inference that all appropriate procedures were followed and all necessary investigation was conducted prior to the federal officer requesting assistance and averring that there is probable cause to conclude that the subject is a removable alien.[12]

In the most recent and direct examination of this issue by a federal appellate court, the Fifth Circuit in *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018), held that local corrections officials could honor detainers consistent with both federal law and the Fourth Amendment because "an ICE-detainer request evidences probable cause of removability in every instance" and "[u]nder the collective-knowledge doctrine, … the ICE officer's knowledge may be imputed to local officials even

---

[12]   With specific respect to claims that a potential detainee is a U.S. citizen, Miami-Dade County has an even stronger basis to reasonably infer that those issues are thoroughly vetted because ICE has a specific procedure for investigating the potential U.S. citizenship of individuals and directs its personnel to "not lodge an immigration detainer against or arrest an individual" when there is "strong/facially credible or probative evidence of U.S. citizenship." *See* D.E. 70-1.

when those officials are unaware of the specific facts that establish probable cause of removability." *See also Lopez-Lopez v. County of Allegan*, -- F.Supp.3d --, No. 1:17-cv-786, 2018 WL 3407695, at \*6 (W.D. Mich. July 13, 2018) (holding that "Plaintiff has not presented a plausible Fourth Amendment claim against [the] County *as a matter of law*" when allegations showed that plaintiff was held by county pursuant to federal government's request via a facially valid immigration") (emphasis added); *Tenorio-Serrano v. Driscoll*, -- F. Supp. 3d --, No. CV1808075PCTDGCBSB, 2018 WL 3329661, at \*9 (D. Ariz. July 6, 2018) (finding that 8 U.S.C. § 1357(g)(10) "authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual").[13]

Additionally, the need to allow for this level of good faith reliance is readily apparent in a jail setting where, in its capacity as a jailer, Miami-Dade County must frequently rely upon the representations made by officers from municipal, state, and federal agencies who daily bring arrestees to its doors. For that reason, precedent in this circuit provides that a jailer is not liable "if [an] error take[s] place outside of [its] realm of responsibility" and "[it] has acted reasonably and in good faith" *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976).[14] *See also Davila I*, 979 F. Supp. 2d at 635 ("[T]he Plaintiff cites to no authority that places a duty on local jails to independently investigate the adequacy of the probable cause supporting immigration detainers."); *Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000) ("We agree with the district court that absent any objectively apparent lack of a basis for a detention which should arouse suspicion, a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest.").

Here, the purported error that led to Mr. Creedle's allegedly unlawful detention was a mistaken representation by a federal immigration official that there was probable cause to conclude that Mr. Creedle was a removable alien. That determination, however, took place outside of Miami-Dade

---

[13]  Furthermore, the Fifth Circuit (and others) have also held that this cooperation can be provided in the absence of any written agreement, without a warrant from a "neutral detached adjudicator," and without probable cause of a criminal act. *El Cenizo*, 890 F.3d at 185-90; *Tenorio-Serrano*, 2018 WL 3329661, at \*8-10. *Accord Abel v. United States,* 363 U.S. 217, 230 (1960) ("Statutes authorizing administrative arrest to achieve detention pending deportation have the sanction of time."); *United State v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) ("The Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense.").

[14]  In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981.

County's realm of responsibility and there was no objectively apparent basis for Miami-Dade County to call that determination into question. Accordingly, even under the Mr. Creedle's version of events, Miami-Dade County acted reasonably and in good faith by relying on a facially valid federal detainer request and should, therefore, not be liable for any cause of action.

### b. Miami-Dade cannot be liable under § 1983 because its policy was not the "moving force" behind Mr. Creedle's alleged injuries

"Given the importance, under § 1983, of distinguishing between direct and vicarious liability, the [Supreme] Court repeatedly has stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation." *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987); *Monell*, 436 U.S. at 694; *Grech*, 335 F.3d at 1329; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[t]o subject a county to liability under section 1983 [a] plaintiff must show that the [claimed] constitutional violation occurred as a result of a county policy."). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Springfield*, 480 U.S. at 267 (internal quotation omitted). Thus, in order to state a § 1983 claim against Miami-Dade County, Mr. Creedle must allege that the constitutional violations that allegedly injured him were the result of either: (1) an officially promulgated County policy; or (2) an unofficial custom or practice of the County shown through the repeated acts of a final policymaker for Miami-Dade County. *See Grech*, 335 F.3d at 1329. Because Mr. Creedle's Complaint is devoted exclusively to his isolated incident, Miami-Dade County assumes that he intends to pursue *Monell* liability through the "official promulgated policy" route.

With "official policy" claims, the Supreme Court has set the bar considerably high and has usually found this standard to only be met in rare occurrences when "[t]he causal link between the municipal policy and the constitutional violation [is] readily apparent." *Kibbe*, 480 U.S. at 267. *Monell*, itself, is a prime example. There, "[t]he gravamen of the complaint was that the Board and the Department had as a matter of official policy compelled pregnant employees to take unpaid leaves of absences before such leaves were required for medical reasons." *Monell*, 436 U.S. at 661. Naturally, when analyzing whether such a policy was the moving force behind a constitutional violation, no "evidence [was] needed other than a statement of the policy by the municipal corporation, and its exercise." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality op.). But *Monell* is the easy exception to an otherwise demanding standard.

13

Few cases present such a clear causal connection. Instead, the Supreme Court has been far more likely to strike down an "official policy" claim as being too "tenuous," *Kibbe*, 480 U.S. at 268, or "nebulous" *Tuttle*, 471 U.S. at 822. The alleged policy in Mr. Creedle's Amended Complaint merits either term. In this case, Mr. Creedle claims that he was unlawfully detained pursuant to "an official policy and practice of the County, which requires MDCR to 'honor all immigration detainer requests.'" D.E. 48 at ¶ 69. *See Rheuark v. Shaw*, 628 F.2d 297, 305-06 (5th Cir. 1980) ("In order for a governmental unit to be liable under s 1983, the policy or custom must, however, by the very terms of the statute, be a proximate cause of the constitutional violation."). This argument fails for at least three reasons.

First, Mr. Creedle erroneously describes the applicable policy as one that "requires MDCR to 'honor all immigration detainer requests.'" *Id.* This language, however, is taken from the Mayor's directive, and the Mayor's directive was not the relevant County policy when Mr. Creedle was held on the immigration detainer. *See supra* at 4. According to his own allegations, the County Commission passed a resolution approximately one month prior to Mr. Creedle's arrest that directed the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County … cooperat[es] with the federal government to the extent permissible by law … [and] continues to require the federal government to show probable cause on all immigration detainer requests." D.E. 70-4 at 6. As a matter of law, the policy enacted by the County Commission overrides the Mayor's directive and is the official policy for Miami-Dade County. *See Citizens for Reform v. Citizens for Open Government, Inc.*, 931 So.2d 977, 988 (Fla. 3d DCA 2006) (holding that the County Mayor's "administrative powers exist to carry out the policies adopted by the Commission. Thus, it is clear that the powers of administration must conform to the dictates and policies of the County Commission and not vice-versa."). More importantly, at the hearing on Miami-Dade County's Motion to Dismiss, this Court expressly advised Mr. Creedle that, when amending his complaint, he needed to seek relief based on "the [County Commission's] resolution as opposed to the [County Mayor's] directive." D.E. 70-6 at 8, ln. 22-24. *See also id.* at 4, ln. 6-8. Thus, after having already been given one opportunity to re-plead his complaint to address the relevant policy and failing, Mr. Creedle's federal claims, which rely on language in a no-longer-applicable directive, should be dismissed.

Second, the true proximate cause for any constitutional violation that Mr. Creedle may have suffered lies with the alleged error in identifying Mr. Creedle as a removable alien and the subsequent issuance of the immigration detainer based on that misidentification. Neither of those events were in Miami-Dade County's control, and, if neither of those events had occurred, Miami-Dade County would not have maintained custody of Mr. Creedle on behalf of the federal government.

14

Consequently, the "moving force" behind Mr. Creedle's alleged violation was federal action not Miami-Dade County's policy. *See Davila v. United States* ("*Davila II*"), ___ F. Supp. 3d ____, 2017 WL 1162912, at *8 (W.D. Pa. Mar. 28, 2017) ("[T]he weight of authority demonstrates that a detention solely based upon an immigration detained issued at the behest of a federal immigration officer is attributable to ICE.").

Third, on a more fundamental level, a policy that simply provides that Miami-Dade County will "cooperate with the federal government to the extent permissible by law" is not only facially constitutional it is also far too general to serve as the proximate cause for any of Mr. Creedle's alleged constitutional violations. If this "policy" were to be a sufficient causal link for *Monell* liability, then there would be no limit to municipal liability because every constitutional violation could be tenuously tied back to a policy. *See Tuttle*, 471 U.S. at 823 ("[S]ome limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal officer."); *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791–92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *City of Springfield,* 480 U.S. 257, 267-268 ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate Monell's distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's own constitutional violations."). Simply put, *Monell* liability may only attach to the actions that the policy intended to occur, not for the actions that the policy reasonably failed to foresee.

### c. Mr. Creedle's allegations do not establish that Miami-Dade County is deliberately indifferent to his constitutional rights

In addition to establishing that an official policy was the proximate cause for his alleged constitutional violation, there is another element that Mr. Creedle must establish in order to state a *Monell* claim: he must show that Miami-Dade County's policy constituted deliberate indifference to his constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). For purposes of municipal

liability, deliberate indifference has been defined as "a strong likelihood rather than a mere possibility that [a constitutional violation] will occur … and will not be found to exist in the face of negligence only." *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). By design, that is a high mark to reach and Mr. Creedle's Amended Complaint comes up glaringly short. First, the County's policy, on its face, denotes a concern and desire to avoid even the mere possibility of a constitutional violation. Specifically, it directs the County Mayor to cooperate with the federal government to "the extent permissible by law and upon a showing of probable cause." D.E. 70-4 at 6.[15] Second, the events in the Amended Complaint demonstrate that Mr. Creedle was released immediately after interviewing with ICE officials and having his detainer withdrawn. *See* D.E. 48 at ¶ 65. Mr. Creedle also does not allege that Miami-Dade County ignored any readily apparent objective information that would have rendered its continued reliance on the facially valid detainer form to be unreasonable. Consequently, there is nothing in the Amended Complaint—other than Mr. Creedle's own conclusory allegations—to support a finding that Miami-Dade County was deliberately indifferent to Mr. Creedle's constitutional rights.

### d.  Miami-Dade County cannot be liable under § 1983 because, under federal law, honoring immigration detainers is an act under color of federal authority

Ordinarily, 42 U.S.C. § 1983 is the proper vehicle to impose liability on a local government or its employees when they are the cause of an alleged constitutional violation. That is so because, when a local government or its employees act, they typically do so "under color of [state authority]" and thereby satisfy an essential element for a § 1983 claim. However, this case presents a unique circumstance because the same federal law that authorizes state and local governments to "otherwise cooperate with [DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" also states that "[a]n officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting ***under color of Federal authority***." 8 U.S.C. § 1357(g)(8), (10) (emphasis added). Thus, when Miami-Dade County and its employees provide

---

[15]   Notably, Mr. Creedle either fails to quote this policy in its entirety, D.E. 48 at ¶ 39, or falls back on language in the County Mayor's no-longer-in-effect directive, *id.* at 69, 80, when describing Miami-Dade County's relevant policy in his Amended Complaint. The full relevant language of the County Commission's resolution—including reference to "and upon a showing of probable cause"—is never mentioned once in the Amended Complaint perhaps in tacit admission that such a policy, if properly described, would not establish a plausible claim for relief under *Monell*.

cooperation in the identification, apprehension, and detention of removable aliens through its honoring of immigration detainers, it does so under color of federal authority and cannot be liable for those actions under § 1983. *See* 42 U.S.C. § 1983 (requiring that the relevant "deprivation of rights, privileges or immunities" occur "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Colombia"). As a result, the federal claims against Miami-Dade County should be dismissed. *See Arias v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, No. CIV. 07-1959 ADMJSM, 2008 WL 1827604, at *13–14 (D. Minn. Apr. 23, 2008) (dismissing § 1983 claims based on finding that "Congress's statutory directive in § 1357(g)(8) is clear" and, therefore, "the City Defendants were acting under color of federal authority."); *Santos v. Frederick Cty. Bd. of Comm'rs.*, No. L-09-2978, 2010 WL 3385463, at *3 (D. Md. Aug. 25, 2010) (holding that local law enforcement officers "were acting under the color of federal law and [could] not be sued under § 1983" when they cooperated in the enforcement of immigration law even in the absence of a formal agreement). *Accord Buonocore v. Harris,* 65 F.3d 347, 359 (4th Cir. 1995) (quoting district court's statement that "because [deputy sheriff] was acting pursuant to federal authority, he took on the rights and obligations of a federal officer"); *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir. 1976) (stating that "the mere assertion that one is a state officer does not necessarily mean that one is acting under color of state law").

### III. Mr. Creedle does not allege a proper False Imprisonment claim under Florida Law

In his Amended Complaint, Mr. Creedle asserts a state law claim of false imprisonment against Miami-Dade County. *See* D.E. 48 at ¶¶ 76-83. To state a cause of action for false imprisonment, the plaintiff must establish four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006)). Mr. Creedle attempts to satisfy these elements by alleging that (1) "Defendants lacked a warrant to detain him and had no authority to make a warrantless arrest" and (2) "Defendants were not empowered under Florida law or any other authority to detain Mr. Creedle based on a civil immigration detainer." *Id.* at ¶¶ 69, 72. However, in drawing this conclusion, Mr. Creedle ignores the statutes and precedent that doom his assertion.

Even under Mr. Creedle's own allegations, Miami-Dade County had the requisite "legal authority or 'color of authority'" to cooperate with federal immigration officials and maintain custody of him

17

for a brief period so as to allow DHS to assume custody. To wit, the immigration detainer, which Mr. Creedle attached to his Amended Complaint, *see* D.E. 48-1 at 12, provides Miami-Dade County with all the necessary legal authority or color of authority to defeat this claim. That legal authority is doubly backed by both federal and state law.

Looking first to federal law, ICE has the authority to arrest and detain aliens prior to removal. *See, e.g.,* 8 U.S.C. §§ 1226, 1231, 1357. Under the corresponding federal regulations, Ofr. Martinez was authorized to issue detainer forms and request assistance from Miami-Dade County in the execution of those duties. *See* 8 C.F.R. § 287.7. And, under those same federal laws, Miami-Dade County is not only authorized to provide the requested cooperation; it is to be treated as "acting under color of Federal authority" when it does. 8 U.S.C. § 1357(g)(8). *See also Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591, 593 (Fla. 4th DCA 2008) (stating that when an inmate subject to a detainer request "posts bond … he will be released from state custody and then booked on [a] federal immigration detainer" whereby "the sheriff will not be holding [him] pursuant to state authority but pursuant to federal authority").[16] Thus, there was certainly requisite authority under federal law for Miami-Dade County to honor a facially valid immigration detainer averring that there was probable cause that Mr. Creedle was a removable alien. *See also, e.g., Arias*, 2008 WL 1827604, at *13–14; *Santos v. Frederick Cty. Bd. of Comm'rs.*, 2010 WL 3385463, at *3; *United States v. Gomez-Robles*, No. CR-17-0730-TUC-CKJ, 2017 WL 6558595, at *3 (D. Ariz. Nov. 28, 2017), *adopted by* 2017 WL 655914 (D. Ariz. Dec. 22, 2017) ("Thus, under the provisions of 8 C.F.R. 287.7, the Pima County Jail was authorized to maintain custody of the [d]efendant for up to 48 hours beyond the time he would otherwise have been released to allow DHS an opportunity to assume custody.").

Now, turning to state law, Mr. Creedle incorrectly asserts that Miami-Dade County's potential liability under state tort law rises or falls depending on whether its offer of assistance was authorized under Fla. Stat. § 901.15, D.E. 48 at ¶ 77. But Fla. Stat. § 901.15 simply provides the circumstances under which a law enforcement officer may conduct a warrantless arrest for a state crime. *See id.* It does not govern how (and under what circumstances) a jailer may offer assistance to federal

---

[16]  When a federal court is deciding a matter of state law, "the rule is that, absent a decision from the state supreme court on an issue of state law, [the federal court] is bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). "That rule is, if anything particularly appropriate in Florida, where the state's highest court had held that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court].'" *Id.* (quoting *Pardo v. State*, 596 So.2d 665, 666 (Fla. 1992)). Therefore, this Court is bound, on matters of state law, by *Ricketts.*

immigration officials in the performance of their duties. For that question, there are two statutes of note.

First, Florida law expressly provides for County jails to detain individuals on behalf of the federal government. Fla. Stat. § 950.03 states:

> The keeper of the jail in each county within this state **shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States** and shall safely keep each prisoner according to the warrant or precept for such commitment until he or she is discharged by due course of law of the United States.

(emphasis added). In this case, the immigration detainer provided to Miami-Dade County by Ofr. Martinez requested that the County maintain custody of Mr. Creedle, who was already in its charge, under the authority of the United States for a period not to exceed 48 hours and, when ICE withdrew the detainer before that time period expired, Mr. Creedle was released. *See* D.E. 48 at ¶¶ 65-66. These allegations are perfectly in line with the requirements under Fla. Stat. § 950.03.

Second, as a more general matter, Florida law not only allows for assistance to be provided to law enforcement officers when arresting subjects, it also immunizes those who offer assistance from civil liability. *See* Fla. Stat. § 901.18 ("A person commanded to aid a peace officer … shall not be civilly liable for any reasonable conduct in rendering assistance.").[17] Here, all that Mr. Creedle has alleged is that Miami-Dade County engaged in reasonable conduct to render assistance to DHS based upon their representations that (1) "[p]robable cause exists to conclude that [Mr. Creedle] is a removable alien" and that (2) Mr. Creedle "is an immigration enforcement priority because …in the judgment of a designated senior DHS official, [his] removal would serve an important federal interest." D.E. 48-1 at 12. As a result, the immunity from civil liability provided under Fla. Stat. § 901.18 applies. *Accord City of El Cenizo*, 890 F.3d at 187 (recognizing the cooperation provided by local governments when honoring detainer requests to be "a paradigmatic instance of the collective-knowledge doctrine").

But, even putting aside the express statutory authority referenced above, there is a more fundamental reason why Mr. Creedle's state law claim fails: he simply misunderstands the role of Miami-Dade County's Corrections Department with respect to detaining inmates, generally. In his

---

[17]   There is at least one federal analogue to this state statute. 19 U.S.C. § 507 provides: "Any person other than an officer or employee of the United States who renders assistance in good faith upon the request of a customs officer shall not be held liable for any civil damage as a result of rendering of such assistance if the assisting person acts as an ordinary, reasonably prudent person would have acted under the same or similar circumstances*." See also Gonzales v. FedEx Ground Package System, Inc.*, Case No. 12-cv-80125, 2013 WL 12080223 (S.D. Fla. Aug. 1, 2013) (applying immunity under 19 U.S.C. § 507 to assistance provided to ICE during an "immigration raid")

Amended Complaint, Mr. Creedle bases his state law claim upon an allegation that "MDCR employees are not law enforcement officers authorized to arrest without a warrant." D.E. 48 at ¶ 79. That allegation, however, is of no legal moment because this case does not turn on whether correctional officers are law enforcement officials or whether they have the independent authority to effectuate a warrantless arrest outside of the jail setting. Instead, this case should rest on one simple, undisputed fact: correctional officers, by definition, are officials who have the authority to detain individuals on behalf and upon the authority of fellow law enforcement officials.

More specifically, in the jail setting, no inmate is being detained on the correctional facility's independent arrest authority; they are in custody based upon the authority of a law enforcement official that has requested that the jail maintain custody of that individual on their behalf. Here, Ofr. Martinez, who is authorized by federal law and regulations to both detain removable aliens and issue immigration detainers seeking local assistance in that effort, provided Miami-Dade County with a facially valid detainer concerning an individual—Mr. Creedle—that already happened to be in its custody on local, criminal charges. *See* D.E. 48-1 at 12. Notably, this detainer also represented that there was probable cause that Mr. Creedle was a removable alien. *See id.* And, the immigration detainer did nothing more than ask Miami-Dade County to maintain custody of Mr. Creedle on behalf and on the authority of the federal government until federal officials could arrive and assume custody themselves. *See id.* That type of cooperation clearly lies within the ambit of authority given to correctional facilities.

Lastly, to the extent that Mr. Creedle argues that this conduct could not have been reasonable because, ultimately, it led to the accidental detention of a U.S. citizen, that argument does not find support under prevailing precedent. In fact, when confronted with this scenario, state courts have held that a jailer is entitled to rely upon the document provided by the official initiating the seizure and accept it as valid provided that the document is "regular on [its] face and issued by a legal body having authority to issue [them]." *Andrews v. Florida Parole Comm'n*, 768 So. 2d 1257, 1263 (Fla. 1st DCA 2000). Here, neither of those factors are in dispute and, therefore, the state law claim for false imprisonment should be dismissed.

## Conclusion

Accordingly, the claims against Miami-Dade County should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1),(6).

Dated: August 13, 2018

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Michael B. Valdes*
Michael B. Valdes
Assistant County Attorney
Florida Bar No. 93129
Phone: (305) 375-5151
Fax: (305) 375-5634
E-Mail: mbv@miamidade.gov

21

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on August 13, 2018 on all counsel or parties of record in the manner indicated on the Service List below.

*/s/ Michael B. Valdes*
Assistant County Attorney

## Service List

**Counsel for Plaintiff**

Rebecca Sharpless and Romy Lerner
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Telephone: (305) 284-3576
E-mail: rsharpless@law.miami.edu

Ira Kurzban, Edward Ramos, and Ian Shaw
Kurzban Kurzban Weinger Tetzeli & Pratt P.A
2650 SW 27th Avenue, Second Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Telephone: (305) 444-3503

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone: (813) 288-8390
E-mail: akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (305) 786-363-2700
Fax: (786) 363-1448
E-mail: nabudu@aclufl.org

*Electronic Service*

**Counsel for Defendants**

Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Fax: (305) 375-5634
E-mail: mbv@miamidade.gov
        orosent@miamidade.gov
*No service necessary*

Lauren C. Bingham
U.S. Dept. of Justice, Civil Division
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085
E-mail: Lauren.c.bingham@usdoj.gov

Dexter A. Lee
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9320
E-mail: dexter.lee@usdoj.gov

*Electronic Service*

22