GARLAND CREEDLE,

       Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

       Defendants.

_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Garland Creedle files this opposing memorandum of law to Defendants, the United States Department of Homeland Security ("DHS") and the United States Immigration and Customs Enforcement ("ICE") (collectively, "Federal Defendants"), motion to dismiss ("Motion") filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## BACKGROUND

On March 13, 2017, Federal Defendants issued an immigration detainer naming Plaintiff Garland Creedle as its subject with the Miami-Dade Corrections and Rehabilitation Department ("MDCR"). In violation of both statutory and constitutional law, Federal Defendants issued this detainer against Mr. Creedle without any written agreement with Miami-Dade County ("the County") and without any probable cause to believe Mr. Creedle was removable from the United States.

On July 5, 2017, Mr. Creedle filed this lawsuit originally against Miami-Dade County alleging only that the County's policy of honoring immigration detainer requests issued by Federal Defendants and federal immigration officers to hold individuals beyond the time authorized by law violated the Fourth and Fourteenth Amendments of the United States Constitution, as well as Florida law. *See* D.E. 1 at ¶¶ 64, 65, 68, 69. The County then filed its first Motion to Dismiss, alleging, *inter alia*, that "the federal government was the sole cause of any claimed injury" and that the proper parties to sue were "the mistaken federal official or the United States." D.E. 11 at 1. Mr. Creedle filed his First Amended Complaint on June 1, 2018. *See* D.E. 48. Taking the County's advice that "[i]f [Mr. Creedle's] allegations [we]re true and he is in fact a U.S. Citizen that was improperly identified by a Federal Immigration official as being a removable alien, then he may have a claim under Bivens – or some other action against the officer individually or the Federal Government as an entity," Mr. Creedle named ICE Officer Alexander Martinez and Federal Defendants as additional defendants. *See* Exhibit A, Trans. of Hearing, at 19; D.E. 48.

Federal Defendants argue that because ICE has changed its detainer policy, and because ICE's database currently lists Mr. Creedle as a United States citizen, Mr. Creedle lacks standing to bring this suit and his requested declaratory relief is moot. *See* D.E. 69 at 7–11. As explained below, neither the procedural nor the substantive law regarding standing, mootness, and declaratory relief support this argument. Federal Defendants also argue that the issuance of detainers is authorized by both the Immigration and Nationality Act (INA) and the Fourth Amendment. *See* D.E. 69 at 11–19. This argument, however, is unresponsive to Mr. Creedle's challenges. Mr. Creede has never argued that the issuance of detainers in general violates the INA or that the issuance of detainers in general violates the Fourth Amendment. Rather, Mr. Creedle argues that Federal Defendants' issuance of the detainer against him on March 13, 2017 violated the INA because the detainer was issued without a written agreement under INA § 287(g), 8 U.S.C. § 1357(g)(l) ("Section 287(g)"). *See* D.E. 48 at ¶ 86. At a

minimum, Mr. Creedle has alleged that the detainer against him violated his Fourth Amendment rights because, in the particular circumstances of this case, it was issued without probable cause that he was a removable noncitizen. *See* D.E. 48 at 18.

**STATEMENT OF FACTS[1]**

Mr. Creedle was born in Honduras and has been a U.S. citizen since the moment of his birth by virtue of his father's U.S. citizenship. When Mr. Creedle came to the United States from Honduras in 2015, immigration enforcement officials arrested him and put him in administrative removal proceedings before an immigration judge. On April 28, 2015, DHS filed a motion with the immigration judge stating that the proceedings should be terminated on the grounds that Mr. Creedle is a U.S. citizen. In the motion, DHS stated that Mr. Creedle had submitted documentation showing that he had acquired citizenship through his father, Willie Edward Creedle, and that termination was warranted because Mr. Creedle was a U.S. citizen. On April 30, 2015, an immigration judge granted the federal government's motion and terminated proceedings against Mr. Creedle.

On the evening of March 12, 2017, Mr. Creedle was arrested after an alleged domestic dispute and taken to Miami-Dade County jail, where he was held on bond. Mr. Creedle was never charged in court with the offense for which the police arrested him. The State of Florida issued a "No Action" in his case. On the evening that police arrested Mr. Creedle, MDCR officials fingerprinted him. Early the next morning, on March 13, 2017, MDCR received an immigration detainer issued by Federal Defendants and signed by Defendant Alexander Martinez, which named Mr. Creedle as its subject.

---

[1] The following facts are set forth in the First Amended Complaint and are restated here as relevant to Mr. Creedle's claims against Federal Defendants. *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277 (11th Cir. 2001)("We consider allegations in the complaint as true for the purposes of the motion").

Checkboxes on the detainer indicated that Mr. Creedle was "a removable alien" under civil immigration law and that this determination was based on a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *See* D.E. 48-4. Apart from the Officer's check marks next to these boilerplate statements, the detainer provided no additional information concerning this supposed "biometric confirmation" or "records check" of Mr. Creedle.

The detainer requested that MDCR to re-arrest Mr. Creedle and jail him for an additional 48 hours beyond the time he would otherwise be entitled to release. The detainer did not allege probable cause to believe that Mr. Creedle had committed any crime. The detainer was not supported by a warrant (judicial or administrative) or any other probable cause determination, nor did it include any individualized assessment of Mr. Creedle's risk of flight.

On March 13, 2017, during normal business hours, Mr. Creedle sought to be released from MDCR and posted bond. While Mr. Creedle was entitled to be released immediately upon posting bond, MDCR instead complied with the detainer and re-arrested Mr. Creedle. MDCR then maintained custody over Mr. Creedle while awaiting a transfer to ICE detention. Mr. Creedle spent the night of March 13, 2017 in jail in the custody of MDCR based on nothing more than the purported authority of the detainer issued by Federal Defendants.

## ARGUMENT

### I. The Court Has Subject Matter Jurisdiction Over Mr. Creedle's Claims.

#### A. Mr. Creedle Has Article III Standing to Seek Prospective Declaratory Relief.

Federal Defendants first move for dismissal under Rule 12(b)(1), arguing that Mr. Creedle lacks Article III standing to seek prospective relief. D.E. 69 at 7–9. To support this argument, Federal Defendants make two statements: (1) Mr. Creedle "has been released from both criminal and

immigration custody, and will not be subject to detention again because ICE has updated its records to reflect that Plaintiff is a citizen"; and (2) "ICE has changed its detainer policies and detainer form." *Id.* at 8–9. Federal Defendants conclude that Mr. Creedle has "shown insufficient likelihood of future injury" and "fails to show that a favorable decision by this Court likely will redress his alleged injury." *Id.* at 8–9. Federal Defendants attached an affidavit attesting that "ICE ERO database records state that the Plaintiff, Garland Creedle, is a United States citizen." *Id.* Ex. 1, at 1.

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). It is unclear whether Federal Defendants make a facial attack, by challenging the sufficiency of Mr. Creedle's allegations, or a factual attack, by challenging the existence of subject matter jurisdiction in fact. But in either case, Mr. Creedle's First Amended Complaint survives.

If faced with a facial attack regarding his standing to seek declaratory relief, Mr. Creedle would be "left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised" and "the court must consider the allegations in [Mr. Creedle's] complaint as true." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Furthermore, "[a] 'facial attack' on the complaint 'require[s] the court merely to look and see if [Mr. Creedle] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When addressing a motion to dismiss for lack of standing, "general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing" and a plaintiff must only plead the same manner and degree of evidence that is usually required at this stage of the litigation. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000)

5

(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2015 WL 11197772, at *1 (S.D. Fla. July 22, 2015).

Mr. Creedle has sufficiently plead an injury in fact and a causal connection between the injury and the conduct of Federal Defendants. Specifically, Mr. Creedle alleges that Federal Defendants' "issuance of a detainer against Mr. Creedle in excess of its statutory authority foreseeably caused Miami-Dade County to arrest and continue to hold Mr. Creedle after the legal grounds for his custody expired." *Id.* at ¶¶ 87, 90. Mr. Creedle states that this conduct caused him several injuries, including "financial, pain and suffering, humiliation, and emotional harm." *Id.* at ¶¶ 88, 91.

Mr. Creedle has also sufficiently plead a likelihood that the injury will be redressed by a favorable decision of this Court and a likelihood of suffering future injury from Federal Defendants' conduct. Unlike in *Lyons*, where the plaintiff merely alleged that he had been illegally choked by a police officer without alleging any relevant facts to establish a reasonable inference that it was likely he would again suffer future injury from the defendant's conduct, Mr. Creedle includes several clear allegations that create such a reasonable inference. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Specifically, Mr. Creedle alleges that this is not the first time Federal Defendants have attempted to place him in removal proceedings despite the fact he is a U.S. citizen, and that an immigration judge terminated these proceedings at the request of DHS, because DHS acknowledged that Mr. Creedle was a U.S. citizen in 2015 after Mr. Creedle submitted documentation to prove his citizenship. *See* D.E. 48 at ¶¶ 42–46. Nevertheless, DHS's express acknowledgement of Mr. Creedle's U.S. citizenship did nothing to prevent ICE's issuance of a detainer against him on March 13, 2017. Therefore, because Mr. Creedle has alleged "general factual allegations of injury resulting from the defendant's conduct" that, if accepted as true, would "state a claim to relief that is plausible on its face," it would be premature and in error to dismiss Mr. Creedle's claims based on this ground. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bischoff*, 222 F.3d at 878.

Mr. Creedle's claim of standing also survives a factual attack. Unlike a facial attack, "[a] factual attack, … challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley*, 524 F.3d at 1233 (11th Cir. 2008). The Court may hear conflicting evidence and decide the factual issues that determine jurisdiction. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

Federal Defendants' have failed to directly attack any specific factual allegations made in Mr. Creedle's First Amended Complaint. Even if they had made such an attack, however, Mr. Creedle's claims against Federal Defendants would survive. It would be improper for the Court to dismiss this suit under Rule 12(b)(1) because the facts necessary to sustain jurisdiction implicate the merits of Mr. Creedle's underlying claim that Federal Defendants lacked probable cause to issue the detainer against him. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) ("The Eleventh Circuit has cautioned, however, that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. If a jurisdictional challenge does implicate the merits of the underlying claim then the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.'") (emphasis altered) (citing *Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256, 1261 (11th Cir. 1997)); *Lawrence*, 919 F.2d at 1529 (finding that jurisdiction was "inextricably intertwined" with the merits of the case when a decision on jurisdiction would effectively decide the merits of the case).

The declaration submitted by Federal Defendants, written by an ICE officer in Miami, states that "[u]pon information and belief," unspecified "ICE ERO database records" indicate that Mr. Creedle is a U.S. citizen. D.E. 69-1, at 1. Notably, the declarant provides no indication as to what "ICE ERO database records" showed about Mr. Creedle on March 13, 2017 – the date Federal Defendants

wrongfully issued a detainer against him. If database records indicated that Mr. Creedle was a citizen on March 13, 2017 (as they presumably did, given ICE's express acknowledgement of Mr. Creedle in immigration court proceedings in 2015), then the fact that unspecified "database records" say Mr. Creedle is a U.S. citizen *now* hardly shows that Mr. Creedle will not be subject to the same unlawful issuance of a detainer in the future.

Under these circumstances, "the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of [Mr. Creedle's] case." *Id.* This way of proceeding provides Mr. Creedle, who faces a challenge to the validity and merits of his claims, a "greater level of protection" by forcing Federal Defendants to proceed under Rule 12(b)(6) or Rule 56, where the Court must either rely only on the four corners of the pleadings or may only dismiss the case if there are no genuine issues of material fact, respectively. *Morrison*, 323 F.3d at 925. A dismissal of Mr. Creedle's claims against Federal Defendants based on the affidavit would be premature and improper at the current phase of litigation.

In any event, the Federal Defendants' declaration raises more factual questions than it answers. As a result, "there are conflicting factual inferences that could be drawn from the facts before the court" regarding whether Mr. Creedle will ever be subject to an immigration detainer again. *Lawrence*, 919 F.2d at 1530. The affidavit submitted by Federal Defendants says nothing other than that the ICE database *currently* shows Mr. Creedle is a U.S. citizen. D.E. 69, Ex. 1, at 1. It does not say the records have been permanently updated, if Mr. Creedle's records were previously updated after he was found to be a U.S. citizen in 2015 and, if so, why the records did not show this update in 2017. Thus, even if the facts necessary to establish jurisdiction do *not* implicate the merits of Mr. Creedle's underlying

8

claim, it would still be improper to dismiss Mr. Creedle's claim based on the affidavit alone and Mr. Creedle should be allowed to pursue discovery based on these conflicting factual inferences. *Id.*[2]

### B. Mr. Creedle's Requested Relief is Not Moot.

Federal Defendants also move for dismissal under Rule 12(b)(1) on the ground that ICE has changed its detainer policy and thus, according to Federal Defendants, Mr. Creedle's requested relief is moot. D.E. 69 at 9–11. Regardless of whether Federal Defendants attempt to make a facial or factual attack, Mr. Creedle's claims should survive Federal Defendants' motion. As stated above, Mr. Creedle does not argue that either ICE's previous or current policy of issuing detainers generally violates statutory or constitutional law. Rather, Mr. Creedle claims that Federal Defendants' specific issuance of the detainer against him on March 13, 2017 violated statutory law and his constitutional rights. It is thus irrelevant whether ICE has changed its policy. Mr. Creedle alleges more than sufficient facts that, if accepted as true, would "state a claim to relief that is plausible on its face" and are enough to survive a facial attack. *Iqbal*, 556 U.S. at 677–78; *see supra* at 6–7.

Mr. Creedle's claims also survive a factual attack. Federal Defendants have failed to show how changes to ICE's policy affect the specific practices or behavior that he alleges caused his injury. The government appears to argue that the new policy is materially different from the old one, such that declaratory relief that the detainer was unlawful would be useless. This contention vastly overstates the change. Under ICE's new policy, it issues administrative warrants along with detainers. This

---

[2] At a minimum, the Court should order limited jurisdictional discovery to permit Mr. Creedle to test both the accuracy and relevance of the government's declaration. The relevant facts regarding the government's databases are, of course, entirely in the possession of the government. If the Court believes this issue to be dispositive regarding standing, it should ensure Mr. Creedle is afforded a meaningful opportunity to contest it. *Lawrence*, 919 F.2d at 1530 ("Since the INS's motion was functionally an indirect attack on the merits of the plaintiff's claim, we conclude that it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage…Furthermore, since we adopt a summary judgment standard in evaluating Rule 12(b)(1) motions that also implicate the merits of a claim, the full panoply of protections afforded the party opposing such a motion will apply here.") (citations omitted).

change alters nothing with regard to Mr. Creedle's arguments. Indeed, ICE's new policy itself acknowledges that the policy of issuing administrative warrants was adopted to address a "district court's ruling that detention pursuant to an ICE detainer constitutes a warrantless arrest and that section 287(a)(2) of the INA only authorizes a warrantless arrest if there is reason to believe the alien will escape before an arrest warrant can be secured." ICE Policy No. 10074.2 n.2; *see also Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1009 (N.D. Ill. 2016) (holding that federal government was systematically exceeding its authority by issuing detainers without administrative warrants or satisfaction of the statutory requirements of a warrantless arrest). Mr. Creedle has *not* asserted a claim against Federal Defendants regarding their failure to include an administrative warrant along with the detainer request, so the change is irrelevant.[3]

Moreover, voluntary cessation of allegedly illegal conduct does not deprive the Court of its power to hear and determine the case if there is a reasonable expectation that the unlawful activity will recur following the termination of the suit. *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). Federal Defendants fail to show that there is no reasonable expectation that the unlawful behavior Mr. Creedle complains of will not recur. *Id.* In fact, Federal Defendants *cannot* show this, as all evidence submitted, and allegations made, establish that there *is* a reasonable expectation that Federal Defendants can and will continue the unlawful behavior Mr. Creedle alleges. The current written ICE policy itself states that the issuance of administrative warrants is not required under the law and could be revoked at any moment. ICE Policy No. 10074.2 ("This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice."); n.2 (""ICE maintains that [new policy] is not legally

---

[3] Certainly, the existence of an administrative warrant does not obviate the need for probable cause. *See Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1252 (E.D. Wash. 2017) (ICE warrant not issued by neutral magistrate); *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 276 (D. Conn. 2008) (same).

required"). It is clear that ICE intends this policy not to be legally binding. Mr. Creedle's allegations thus establish that, if the Court dismisses this case as moot, Federal Defendants may well persist in the behavior that led to his injury.

In arguing for mootness, Federal Defendants conveniently ignore the fact that DHS itself found Mr. Creedle to be a U.S. citizen in 2015, two years before Mr. Creedle filed this action. They fail to address whether the ICE database was updated with Mr. Creedle's citizenship information prior to the allegations in the complaint and, if so, why the database did not reflect this change at the time Federal Defendants issued the detainer. The fact that Federal Defendants issued the detainer against Mr. Creedle on March 13, 2017, despite the fact that DHS was already aware he was a U.S. citizen, supports Mr. Creedle's assertion that, if this case is terminated at this stage, Federal Defendants' unlawful conduct is likely to recur.

## II.    Mr. Creedle Has Stated Valid Claims Against Federal Defendants.

Federal Defendants move to dismiss under rule 12(b)(6) arguing that Mr. Creedle fails to state claims on the merits because issuing detainers is authorized by the INA and does not violate the Fourth Amendment. D.E. 69 at 11–19. However, Mr. Creedle does not contend that Federal Defendants' issuance of detainers in general violates the INA or the Fourth Amendment. *See* D.E. 69 at 12–13. Rather, Mr. Creedle argues that Federal Defendants' issuance of *this specific* detainer against him on March 13, 2017 exceeded Federal Defendants' statutory authority. He also argues that, at a minimum, the issuance violated Mr. Creedle's rights under the Fourth Amendment because probable cause of removability was nonexistent under the facts of this case. *See* D.E. 48 at 15–16.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Mr. Creedle has sufficiently stated a claim showing he is entitled to a declaration that Federal Defendants violated the INA and his Fourth Amendment rights by issuing the detainer against him on March 13, 2017. When reviewing a motion to dismiss under

11

Rule 12(b)(6), the Court must accept as true all facts of the First Amended Complaint and construe them in the light most favorable to Mr. Creedle. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). The Court does not need to determine whether Mr. Creedle's victory is probable. Rather, the inquiry must focus on whether the facts pled, if true, would entitle Mr. Creedle to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A. Federal Defendants Exceeded their Statutory Authority by Issuing the Detainer Against Mr. Creedle Without a Formal Written Agreement with the County.

Federal Defendants lacked authority to issue a detainer against Mr. Creedle. The INA authorizes three "limited circumstances in which state officers may perform the [civil arrest] functions of an immigration officer." *Arizona v. United States*, 567 U.S. 387, 409 (2012) (citing 8 U.S.C. § 1357(g)(l); § 1103(a)(10); § 1252c). Of the three authorizations, only an agreement under 8 U.S.C. § 1357(g)(l) ("Section 287(g)"), would permit non-federal officials to make civil immigration arrests based on detainers or immigration warrants in the manner requested by Federal Defendants in this case. Section 287(g) permits cooperative agreements whereby non-federal officials "determined by the [DHS Secretary] to be qualified" are authorized "to perform [the] function of an immigration officer" as to the "investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(l). Section 287(g) requires these non-federal officials to "receive[] adequate training regarding the enforcement of relevant Federal immigration laws" and be "subject to the direction and supervision of the [DHS Secretary]." 8 U.S.C. §1357(g)(2)-(3); *Arizona*, 567 U.S. at 409.

Such training is a critical feature of the system "Congress created." *Arizona*, 567 U.S. at 408. To protect the integrity of Congress's scheme, the INA preempts local officers from engaging in the "function[s] of an immigration officer," such as arrests, absent a formal agreement under 8 U.S.C. § 1357(g)(1), even if done at the federal government's request. While the issuance of a detainer request

might serve as an indication of federal *priorities*, it does not ensure that the execution of that request satisfies the *standards* imposed by the INA. Those require training and certification. *See Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 973 (S.D. Ind. 2017)(an arrest pursuant to an immigration detainer "exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created'") (quoting *Arizona*, 567 U.S. at 408).

While the INA authorizes local officers to "cooperate with federal officials" without a formal agreement, §1357(g)(10), it does not authorize Federal Defendants to request or encourage conduct by local officers that exceeds "cooperation" absent a formal agreement. 8 U.S.C. § 1357(g)(2)–(3); *Arizona*, 567 U.S. at 409. Non-federal civil immigration arrests, like the County's arrest of Mr. Creedle, exceeds "cooperation" as contemplated under Section 287(g)(l0)(B) of the INA. This provision of the INA—which is a saving clause, not an affirmative grant of authority—must be construed narrowly in light of other provisions of the INA.

*Arizona* itself strongly supports this conclusion. The Supreme Court gave several examples of actions that likely constituted "cooperation" under § 1357(g)(10). Notably, each example involved local officers playing a supporting role as *federal* officers perform immigration-officer functions, "includ[ing] situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration official to gain access to detainees held in state facilities." 567 U.S. at 410. These traditional forms of "cooperation" are far removed from the core immigration function of detaining an individual on suspicion of a civil immigration violation, even where a detainer request has issued.

Even more importantly, the Supreme Court in *Arizona* did *not* include detainers among its examples of cooperation. It omitted detainers even though the United States insisted in its brief in *Arizona* that arrests pursuant to detainers *were* an example of permissible cooperation, *see* U.S. Br., 2012 WL 939048 at *54, so there is little question the issue was squarely before the Court. Furthermore, the

Court described the one INA provision that mentions a "detainer" (8 U.S.C. § 1357(d)), as allowing states to "respond[] to requests for *information* about when an alien will be released from their custody"—without mentioning arrest or detention. *Arizona*, 567 U.S. at 410 (emphasis added). In concluding that arrests pursuant to detainers fall outside the scope of § 1357(g)(10)(B), the court in *Lopez-Aguilar* observed that this "negative implication invited by the *Arizona* majority opinion is difficult to avoid." 2017 WL 5634965, at *10.

The error in the defendants' interpretation appears to derive from a misreading of *Arizona*'s holding. The Court explained that the case before it was an easy one because "no coherent understanding of the term ["cooperation"] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410. That statement does *not* endorse the idea that § 1357(g)(10)(B) permits local officers to engage in *any* immigration function as long as it was in response to an ICE request. Rather, the Court merely held that "unilateral state action to detain" went "*far beyond*" what Congress could have meant in § 1357(g)(10)(B). 567 U.S. at 410 (emphasis added); *see also Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 463-65 (4th Cir. 2013) (*Arizona* "makes clear that under Section 1357(g)(10) local law enforcement officers cannot arrest aliens for civil immigration violations absent, *at a minimum*, direction or authorization by federal officials") (emphasis added). In other words, *Arizona* established that federal direction is necessary, but not always sufficient on its own to provide local officials with the additional authority required to partake in immigration enforcement functions, including detaining and arresting individuals for being removable from the United States.

In each instance where Congress authorized non-federal enforcement of civil immigration laws, Congress expressly used the word "authorize" in relation to delegated arrest authority. 8 U.S.C. §§ 1357(g)(l ), (5); § 1103(a)(10); § 1252c(a); *Lunn v. Commonwealth*, 78 N.E.3d 1143, 1159 (Mass. 2017)

(observing that "[i]n those limited instances where the [INA] affirmatively grants authority to [non-federal] officers to arrest, it does so in more explicit terms than those in [8 U.S.C.] § 1357(g)(l0).").[4] Furthermore, the one reference to detainers in the INA only authorizes *requests for notification* of an individual's pending release from criminal custody related to drug crimes. 8 U.S.C. § 1357(d); *Arizona*, 567 U.S. at 410.[5] It does not authorize detainers requesting arrest and prolonged detention in *any* context, including for an arrest involving an alleged domestic dispute. *See U.S. v. Alabama*, 691 F.3d 1269, 1294 (11th Cir. 2012) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). Indeed, Defendant DHS's own written guidance on Section 287(g)(10)(B), submitted in *Arizona*, demonstrates that arrests and detention based on detainers, administrative warrants, or any other action that is the function of an immigration

---

[4] By contrast, other intergovernmental arrangements touching on civil immigration enforcement under the INA do not authorize arrests and, therefore, do not require a Section 287(g) agreement. *See, e.g.* 8 U.S.C. § 1373 (prohibiting restrictions on communications with any government entity regarding the immigration or citizenship status of any individual); 8 U.S.C. § 1228(a)(1) (directing the Attorney General to "provide for the availability of special removal proceedings at certain Federal, State, and local correctional facilities for aliens convicted" of certain criminal offenses); 8 U.S.C. § 1103(a)(11)(B) (allowing the Attorney General to contract with local authorities for the use of local facilities in the detention of persons held under federal authority).

[5] This interpretation is consistent with the history of immigration detainer practice when this provision was first enacted: at that time, federal immigration authorities used detainers "to request that a law enforcement agency transfer an alien to [federal immigration] custody at the completion of the alien's criminal sentence, or notify [federal immigration authorities] prior to the alien's release," and not normally "to request that a person be held after he or she would otherwise have been released for any criminal offense so that [federal immigration authorities] could investigate the person's removability and/or take custody." KATE M. MANUEL, CONG. RESEARCH SERV., R42690, IMMIGRATION DETAINERS: LEGAL ISSUES 4 (2015). There is no specific mention of intent to authorize local detention of suspected removable aliens beyond their period of criminal custody in the statute. *See Whitman v. American Trucking Ass'n, Inc.,* 531 U.S. 457, 468 (2001) ("Congress […] does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

officer should *not* be understood as "cooperation … in the identification, apprehension, detention, or removal of aliens" contemplated by Section 287(g)(10)(B).[6]

The expansive reading of Section 287(g)(10) proposed by Federal Defendants would render superfluous other provisions of the INA limiting to specified circumstances local officials' authority to make immigration arrests.[7] *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citing the rule that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). For example, 8 U.S.C. § 1252c authorizes non-deputized local officers to make immigration arrests when three conditions are met: (1) the person reentered the country after a previous felony conviction in the United States, (2) ICE confirms the person's status, and (3) ICE plans "to take the individual into Federal custody." *Id.* § 1252c(a). Yet on Federal Defendants' theory, where the second and third requirements are satisfied, an officer may arrest under subsection (g)(10)(B)—whether or not the first requirement is met. The Federal Defendants' reading would also run contrary to the Supreme Court's refusal to "give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law," especially in cases involving the balance of responsibilities between federal and state authorities. *U.S. v. Locke*, 529 U.S. 89, 106–107 (2000).

---

[6] U.S. DEP'T OF HOMELAND SEC., GUIDANCE ON STATE AND LOCAL GOVERNMENTS' ASSISTANCE IN IMMIGRATION ENFORCEMENT AND RELATED MATTERS 13–15 (2015), https://www.dhs.gov/sites/default/files/publications/guidance-state-local-assistance-immigration-enforcement.pdf. (providing a list of qualifying "Cooperation and Other Permissible Actions," which does not include arresting or detaining individuals based upon detainer requests but *does* include "exercising certain immigration authorities delegated to it by DHS pursuant to a written agreement").
[7] Significantly, the INA expressly "authorize[s the Attorney General] to confer or impose upon any employee of the United States . . . any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder upon officers or employees of [ICE]." 8 U.S.C. § 1103(a)(6). By contrast, as highlighted above, the INA does not similarly confer on the Attorney General any broad authority to delegate to SL officials the power to arrest and detain removable alien suspects.

The legislative history of § 1357(g) confirms that Congress never imagined that § 1357(g)(10)(B)'s narrow savings clause would authorize widespread local arrests. To the contrary, the enactment of § 1357(g) was premised on Congress's understanding that local officers lacked immigration arrest authority *entirely*. As Members explained, there was "nothing" local officers could do when they encountered a potentially removable non-citizen "other than calling the local INS officer to report the case." 142 Cong. Rec. H2476-77 (Mar. 20, 1996) (Rep. Latham); *see id.* H2477 (Rep. Doolittle) ("Federal law does not allow" a removable individual apprehended by police "to be held": "All the local law enforcement can do is call up the INS and notify them."); 142 Cong. Rec. H2191-92 (Mar. 13, 1996) (history of § 1252c) (similar). The solution Congress provided was § 1357(g) agreements, which allowed only "specially trained State officers to arrest and detain aliens." S. Rep. No. 104-249, at 20 (1996). If Congress had understood itself to be creating or preserving local authority to arrest *outside* that scheme, surely someone would have mentioned it.

Federal Defendants cite to a recent Fifth Circuit case to bolster their argument that issuing detainers without a written agreement is authorized by the INA. D.E. 69 at 14; *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018). Federal Defendants' argument based on *Cenizo* falls short. Unlike in *Cenizo*, Mr. Creedle's claims against Federal Defendants involve an "as-applied" challenge to the constitutionality of a *single* detainer. *Id.* at 189. This Court is of course not bound by any decision made by the Fifth Circuit, and *Cenizo* is not persuasive. The Fifth Circuit simply asserted that any local conduct is permissible so long as there is a "predicate federal request." *Cenizo*, 890 F.3d at 189. The Fifth Circuit did so *without* addressing any of the arguments set forth above, including but not limited to the following: that the INA dictates training and certification, not just federal oversight; that such an interpretation renders § 1252c superfluous; that *Arizona* strongly indicates that detainers do not fall

within the scope of permitted cooperation; and that the legislative history of § 1357(g)(10)(B) makes clear that Congress believed there was *no* local arrest authority outside of § 1357(g)(1) agreements.[8]

**B. Federal Defendants Exceeded their Statutory Authority and Violated the Fourth Amendment by Issuing the Detainer Against Mr. Creedle Without Probable Cause.**

Even if the Court finds that Federal Defendants were not required to obtain a written agreement with the County prior to issuing the detainer against Mr. Creedle, Federal Defendants nonetheless exceeded their statutory authority and violated the Fourth Amendment by issuing the detainer against Mr. Creedle without any probable cause that he was removable from the United States. To lawfully issue a detainer pursuant to § 1357, there must be probable cause to believe that the subject of the detainer is (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States." *Galarza v. Szalczyk*, No. 10–cv–06815, 2012 WL 1080020, at *10, *13 (E.D. Pa Mar. 30, 2012) *rev'd on other grounds*, 745 F.3d 634 (3d Cir. 2014) (citing 8 U.S.C. § 1357(d)(1)).

Here, Federal Defendants issued the detainer against Mr. Creedle despite knowing he was a U.S. citizen, as discussed above. Furthermore, the Federal Defendants' issuance of the detainer on March 13, 2017 "foreseeably caused Miami-Dade County to arrest and continue to hold Mr. Creedle after the legal grounds for his custody expired." D.E. 48 at ¶¶ 87, 90; *see also Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) (finding that "while a detainer is distinct from an arrest, it nevertheless results in the detention of an individual," and that "a law enforcement officer is responsible for the natural consequences of his actions") (internal quotations omitted). As Mr. Creedle has repeatedly alleged, this detention by the County was an unlawful seizure under the Fourth Amendment. *Id.* at ¶¶

---

[8] The same is true of the decision in *Tenorio-Serrano v. Driscoll*, No. CV1808075PCTDGCBSB, 2018 WL 3329661, at *9 (D. Ariz. July 6, 2018), which the district court was careful to emphasize was only tentative. *See id.* (court was "not persuaded at this stage").

67–71. While County officials physically arrested and detained Mr. Creedle, this arrest and detention would not have occurred but for Federal Defendants' issuance of the detainer against Mr. Creedle on March 13, 2017. *See Galarza*, 2012 WL1080020, at *10 ("The Amended Complaint alleges that Mr. Galarza would have been released on bail three days prior to his actual release but for the immigration detainer issued by defendant Szalczyk. Therefore, the immigration detainer caused a seizure of Mr. Galarza."). Accordingly, because Federal Defendants issued the detainer against Mr. Creedle without any probable cause, they exceeded their statutory authority *and* violated the Fourth Amendment of the United States Constitution.[9]

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 21, 2018, I electronically served a true and correct copy of the foregoing on counsel for Defendant via transmission of a Notice of Electronic Filing generated by the CM/ECF system of the U.S. District Court of the Southern District of Florida.

---

[9] Civil immigration violations are entirely a creature of federal statutes—not common law. The Supreme Court has notably defined the propriety of warrant-based civil immigration arrests under the Fourth Amendment in part by reference to the will of Congress as expressed in such statutes. *Abel v. United States*, 362 U.S. 217 (1960). And lower courts have found Fourth Amendment violations for civil immigration arrests where legal authority was lacking. *See, e.g., Santos v. Frederick County Bd. Of Com'rs*, 725 F.3d 451 (4th Cir. 2013) (finding local officers "lacked authority to enforce civil immigration law and violated Santos's rights under the Fourth Amendment when they seized her solely on the basis of the outstanding civil ICE warrant"). Accordingly, Federal Defendants' citation to *Virginia v. Moore*, 553 U.S. 164, 173 (2008), which held that the level of Fourth Amendment protection in the context of a criminal state arrest turned on common law and did not vary with the presence or absence of criminal state statutory authority for such arrest, is wholly irrelevant.

Respectfully submitted,

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS
Florida Bar No. 0131024
ELIZABETH MONTANO,
Law Student
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576, direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

IRA J. KURZBAN
Florida Bar No. 225517
EDWARD F. RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN WEINGER
TETZELI & PRATT, P.A.
2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF FLORIDA, INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF FLORIDA, INC.
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448