**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:17-cv-22477-KMW**

GARLAND CREEDLE,

      Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

      Defendants.

_____/

## <u>PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ALEXANDER MARTINEZ'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Defendant Alexander Martinez ("Defendant Martinez"), an officer of the United States Immigration and Customs Enforcement ("ICE"), argues for qualified immunity on the theory that he had probable cause to believe Mr. Creedle, a U.S. citizen at birth, was present in violation of U.S. immigration law. He asserts that he had probable cause because Mr. Creedle was born outside the United States and had been arrested for an alleged criminal offense.

Not only is Defendant Martinez's argument legally incorrect, but it has disturbing and untenable implications. According to the 2010 U.S. Census, foreign-born individuals make up approximately 13% of the United States population.[1] Under Defendant Martinez's theory, if these

---

[1] This is equivalent to approximately 40 million people. Elizabeth M. Grieco et al., U.S. Census Bureau, *The Foreign-Born Population in the United States: 2010* (2012), https://www2.census.gov/library/publications/2012/acs/acs-19.pdf.

people are arrested for an alleged criminal offense and their names do not appear in the government's immigration database, they could be subject to immigration detainers, arrest, and detention based only upon the fact that they were born outside the United States.[2]

Moreover, Defendant Martinez's argument that an immigration officer could reasonably believe someone is deportable for committing a crime merely because the person has been *arrested* for the alleged crime turns the foundational presumption of innocence on its head. Under Defendant Martinez's theory, any of the 40 million who are "foreign-born" could be arrested, detained, and placed into deportation proceedings simply upon an *arrest* for a deportable offense, rather than a *conviction*.

Defendant Martinez further argues that a remedy under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) is not available to Mr. Creedle. As explained below, this argument fails because Mr. Creedle's claim does not arise in a new context, there are no alternative remedies to relieve Mr. Creedle's injuries, and there are no special factors counseling against granting Mr. Creedle a *Bivens* remedy.

### BACKGROUND[3]

On March 13, 2017, Defendant Martinez issued an immigration detainer naming Plaintiff Garland Creedle as its subject with the Miami-Dade Corrections and Rehabilitation Department ("MDCR"). Although Mr. Creedle had already posted the bond for his release, this immigration detainer requested that MDCR hold Mr. Creedle in detention based on Defendant Martinez's assertion that Mr. Creedle "either lack[ed] immigration status or notwithstanding such status [was] removable

---

[2] It is important to note that the U.S. Census Bureau considers individuals who, like Mr. Creedle, were "born abroad of at least one U.S. citizen parents" and therefore were U.S. citizens at birth to be "native born," not "foreign born." Thus, this estimate is actually *less* than the total number of people that would be affected if Defendant Martinez's theory was correct. *Id.*

[3] The relevant factual allegations are set forth in the First Amended Complaint and Mr. Creedle realleges and fully incorporates them here. *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277 (11th Cir. 2001)("We consider allegations in the complaint as true for the purposes of the motion").

under U.S. immigration law." Defendant Martinez issued the detainer based solely on the facts that Mr. Creedle was born in Honduras, that an alleged database check discovered no immigration records connected to Mr. Creedle, and that Mr. Creedle had been arrested the night before "after an *alleged* domestic dispute." D.E. 68 at 17–18 (emphasis added).

On July 5, 2017, Mr. Creedle filed this lawsuit originally against Miami-Dade County alleging that the County's policy of holding individuals beyond the time authorized by law based on immigration detainer requests like the one issued by Defendant Martinez violated the Fourth and Fourteenth Amendments of the United States Constitution. *See* D.E. 1 at ¶¶ 64, 65, 68, 69. Mr. Creedle then filed his First Amended Complaint on June 1, 2018. *See* D.E. 48. Mr. Creedle does *not* agree with the County's argument that the federal government was the *sole* cause of his injuries. D.E. 11 at 1. However, consistent with the County's own position that "[i]f [Mr. Creedle's] allegations [we]re true and he is in fact a U.S. Citizen that was improperly identified by a Federal Immigration official as being a removable alien, then he may have a claim under Bivens – or some other action against the officer individually or the Federal Government as an entity," Mr. Creedle named Defendant Martinez, the United States Department of Homeland Security ("DHS"), and ICE as additional defendants. *See* Exhibit A, Trans. of Hearing, at 19; D.E. 48. With respect to Defendant Martinez, the First Amended Complaint states a claim under *Bivens* that Defendant Martinez individually violated Mr. Creedle's Fourth and Fifth Amendment rights by issuing an immigration detainer without the necessary preliminary finding of probable cause.[4]

In his Motion to Dismiss, Defendant Martinez asserts that he is entitled to qualified immunity. *See* D.E. 68 at 11. This argument fails, however, as it was clearly established at the time of Defendant

---

[4] The allegations against Defendant Martinez and DHS are in addition to Mr. Creedle's allegations against the County and are not in any way meant to detract from Mr. Creedle's argument that the County's policy, regardless of whether there was probable cause to issue the detainer, violated Mr. Creedle's Fourth and Fourteenth Amendment rights.

Martinez's issuance of the detainer against Mr. Creedle that a foreign birth and a criminal arrest alone could not establish probable cause for an immigration detention, especially of an individual the officer could have discovered was a U.S. citizen based on information known and available to the agency and the officer at the time. In essence, Defendant Martinez asserts that the federal government can issue immigration detainers against any individual who was not born in the United States and has been merely arrested for alleged criminal conduct. This, however, is not the law and would have unjustifiable consequences for over 40 million "foreign-born" people currently living in the U.S. *See supra* notes 1–2 and accompanying text.

Defendant Martinez also asserts that *Bivens* does not apply to this case because it arises in a "new context." D.E. 68 at 4. However, this case arises in constitutional contexts that are well-established as appropriate for *Bivens* claims: "the search and seizure context," in which the Supreme Court itself has just recently reaffirmed *Bivens* as a "fixed principle in the law," and the due process context. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017); *Davis v. Passman*, 442 U.S. 228, 245 (1979). Nor is this case "different in a meaningful way" in other respects identified by the Court. *See Abbasi*, 137 S. Ct. at 1859-60. Even if Mr. Creedle's allegations did somehow arise in a new context, there are no "special factors counselling hesitation" in expanding a *Bivens* remedy to this case, and the cases cited by Defendant Martinez to boost his argument to the contrary are inapposite. *See Abbasi*, 137 S. Ct. at 1857–58. The First Circuit case of *Chadbourne* is particularly helpful for this Court's decision here. 793 F.3d 208, 214 (1st Cir. 2015). While this case will be discussed further for its insight into whether Defendant Martinez is entitled to qualified immunity, it is important to note that the First Circuit did not hesitate to extend Bivens to facts and claims that are almost identical in every meaningful way to Mr. Creedle's case. *Id.*

**ARGUMENT**

Under Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Mr. Creedle has sufficiently stated a *Bivens* claim for damages stemming from Defendant Martinez's unlawful issuance of a detainer against him on March 13, 2017. When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts of the First Amended Complaint and construe them in the light most favorable to Mr. Creedle. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). The Court does not need to determine whether Mr. Creedle's victory is probable. Rather, the inquiry must focus on whether the facts pled, if true, would entitle Mr. Creedle to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To state a claim for relief under *Bivens*, Mr. Creedle "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Stevens v. Osuna*, 877 F.3d 1293, 1309 (11th Cir. 2017).

**I.      Defendant Martinez is Not Entitled to Qualified Immunity.**

Defendant Martinez asserts that Mr. Creedle's claims against him must be dismissed because he is entitled to qualified immunity. *See* D.E. 68 at 11. Qualified immunity provides individual federal officers with complete protection from suit unless the plaintiff shows that qualified immunity is not appropriate because "(1) the defendant violated a constitutional right" of which a reasonable person would have known," and "(2) the right was clearly established at the time" of the defendant's offense. *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1265 (11th Cir. 2010) (quoting *Hollowman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). The court may exercise its discretion in assessing in what order the two prongs should be addressed. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Conduct violates clearly established law so as to defeat a qualified immunity defense when, "at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would…underst[and] that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) (internal quotation marks omitted). Furthermore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741, (2002).

The Eleventh Circuit "uses two methods to determine whether a reasonable officer would know that his conduct is unconstitutional." *Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (internal quotation marks omitted)). Mr. Creedle's *Bivens* claims rest upon law that was clearly established at the time Defendant Martinez issued the detainer against Mr. Creedle based upon both the first method, which looks to the caselaw at the time of the violation, and the second method, which "looks not at case law, but at the officer's conduct, and inquires whether that conduct lies so obviously at the very core of what the [Fourth and Fifth] Amendment prohibits that the unlawfulness of the conduct was readily apparent to the [officer], notwithstanding the lack of fact-specific case law." *Id.* (quoting *Fils*, 647 F.3d at 1291).

### A. Mr. Creedle's Fourth Amendment Claim Alleges a Violation of Clearly Established Law.

Defendant Martinez violated Mr. Creedle's Fourth Amendment constitutional right to be free from unreasonable seizures. Mr. Creedle was illegally detained by MDCR based upon Defendant Martinez's issuance of an immigration detainer that falsely and summarily asserted that Mr. Creedle was removable from the United States. Importantly, "[l]ongstanding precedent establishes that [t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Morales*, 793 F.3d 208, 214 (citing *United States v. Brignoni-Ponce*,

6

422 U.S. 873, 878 (1975), *Davis v. Mississippi*, 394 U.S. 721 (1979), and *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)).[5]

Defendant Martinez argues that because there was no traditional face-to-face "encounter" between Defendant Martinez and Mr. Creedle, the Fourth Amendment does not apply to his issuance of the detainer. However, the Fourth Amendment is broadly "designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215, (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976).

Furthermore, "while a detainer is distinct from an arrest, it nevertheless results in the detention of an individual." *Morales*, 793 F.3d 208, 217 (citing 8 C.F.R. § 287.7). While Defendant Martinez did not detain Mr. Creedle himself, it is also clearly established that a law enforcement officer is "responsible for the natural consequences of his actions." *Id.* (finding that the natural consequence of the ICE officer's issuing an immigration detainer against a U.S. citizen was that the individual would be detainer for up to 48 hours); *see also Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (holding that "an officer whose request for a warrant allegedly caused an unconstitutional arrest" can be held liable for the arrest where "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable") (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)).

Additionally, an immigration officer must have probable cause to believe that an individual is removable from the United States before issuing an immigration detainer naming the individual as its

---

[5] Furthermore, "there is a substantial body of law in support of the proposition that a plaintiff who alleges overdetention, sometimes even for very short periods, states a claim for constitutional violations." *Holder v. Town of Newton*, 638 F. Supp. 2d 150, 153 (D.N.H. 2009) (quoting *Barnes v. District of Columbia*, 242 F.R.D. 113, 117 (D.D.C. 2007)); *see, e.g., Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 714 (8 th Cir. 2004); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

subject. *Brignoni-Ponce*, 422 U.S. at 881–82 (stating that any further detention of an individual for purposes of determining immigration status "must be based on…probable cause").[6] Notably, "[a]lthough the line between an arrest that requires probable cause and a temporary detention for interrogation which does not is not always clear, pre-2009 cases clearly show that 48 hours of imprisonment—which is what the detainer requests—falls well on the arrest side of the divide." *Morales*, 793 F.3d at 215–16 (citing *United States v. Place*, 462 U.S. 696, 709 (1983)).

Defendant Martinez asserts that he had probable cause to believe that Mr. Creedle was removable from the United States based on three facts: (1) the computer database did not show any immigration records in connection with Mr. Creedle; (2) Mr. Creedle was born in Honduras; and (3) Mr. Creedle had been arrested for an alleged domestic dispute. *See* D.E. 68 at 17. However, the clearly established law at the time shows that these three facts, whether considered alone or in connection with each other, are nowhere near enough to constitute probable cause to believe an individual is removable from the United States. *Morales*, 793 F.3d at 218–19; *see also Brignoni-Ponce*, 422 U.S. at 886 (stating that Hispanic appearance alone is not enough to justify a seizure for immigration purposes).

While Defendant Martinez argues that he could not have known Mr. Creedle was a citizen of the United States without first determining whether Mr. Creedle's father satisfied the statutory residence requirement for transmitting citizenship, this argument is either false or irrelevant. First of all, that inquiry had already been conducted and completed by ICE. Mr. Creedle's U.S. citizenship was

---

[6] "Courts have consistently held that the 'reason to believe' phrase in § 1357 must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause." *Morales*, 793 F.3d at 216; *see, e.g.*, *Au Yi Lauv. v. INA,* 445 F.2d 217, 222 (D.C. Cir. 1970); *Tejeda–Mata v. INS,* 626 F.2d 721, 725 (9th Cir.1980) ("The phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause."); *United States v. Cantu,* 519 F.2d 494, 496 (7th Cir.1975) ("The words of the statute 'reason to believe' are properly taken to signify probable cause."); *see also United States v. Quintana,* 623 F.3d 1237, 1239 (8th Cir. 2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause.").

known to ICE since 2015 and therefore should have been known to Defendant Martinez. Moreover, regardless of whether Mr. Creedle was a United States citizen, the fact that he was of foreign-birth did not give Defendant Martinez the necessary probable cause to believe Mr. Creedle was removable from the United States. In fact, ICE's most recent detainer policy clearly states that probable cause, for purposes of detainer issuance, cannot be "solely based on evidence of foreign birth and the absence of records in available databases," which has been coined "foreign-born-no-match." ICE Policy No. 10074.2 at ¶ 2.6.

Furthermore, while probable cause of a person's removability can be based upon the fact that the individual was "convicted of a crime," and would therefore be removable based on this conviction, this is irrelevant here. Mr. Creedle was a U.S. citizen and therefore any criminal conviction, let alone any *arrest*, could not possibly give Defendant Martinez probable cause to believe Mr. Creedle was removable from the United States. Moreover, Mr. Creedle was only *arrested* for an *alleged* domestic dispute. He was never charged, convicted, or sentenced to imprisonment based upon this arrest. Therefore, Defendant Martinez's statement that he had probable cause to believe Mr. Creedle was deportable based upon the fact that he was "convicted of a crime" is patently false and inapplicable to this case. D.E. 68 at 17.

In short, Defendant Martinez's conduct is a clear example of the "arrest first, fact-check later" approach to probable cause that the courts of this country have repeatedly and rightfully rejected. Despite his repeated assertions to the contrary, no reasonable officer would have issued the detainer against Mr. Creedle based upon the available facts at the time and in light of the robust law that was clearly established at the time. *Carter v. Gore*, 557 F. App'x 904, 911 (11th Cir. 2014) (holding that qualified immunity did not bar further proceedings against an officer who issued a warrant when "the entirety of the facts known to him could not establish arguable probable cause," no "reasonable officer" in the same position would believe there was arguable probable cause, and the plaintiff's

amended complaint "plausibly suggest[ed]" that the officer secured a warrant "with virtually no evidence").

**B. Mr. Creedle's Fifth Amendment Claim Alleges a Violation of Clearly Established Law.**

The Fifth Amendment prohibits law enforcement officials from depriving individuals of their substantive right to due process, including the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (substantive due process challenge to imprisonment under the Fifth and Fourteenth Amendments); *Kelley v. Georgia Dep't of Corr.*, 145 F. App'x 329, 330 (11th Cir. 2005). To state a claim that a federal officer has violated this right, a plaintiff must show that the defendant acted with deliberate indifference to the individual's due process rights. To do so, the plaintiff must show that the official (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that was more than mere negligence. *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007).

Mr. Creedle clearly and specifically alleges that Defendant Martinez (1) intended to cause Mr. Creedle's confinement with deliberate indifference to his unlawful arrest; (2) knew of the risk of serious harm to Mr. Creedle; and (3) disregarded that risk by actions beyond mere negligence. *See* D.E. at ¶ 99. Unlike in *Franklin v. Curry* where the plaintiffs merely alleged that the defendants "knew or should have known" of the risk of serious harm to the plaintiffs, Mr. Creedle has clearly alleged and pled that Defendant Martinez knew that he had insufficient information to reasonably believe Mr. Creedle was removable, and therefore knew of the risk of serious harm to Mr. Creedle, which he disregarded by conduct that was more than mere negligence. 738 F.3d 1246, 1249 (11th Cir. 2013). At the very least, Defendant Martinez should have known Mr. Creedle was a U.S. citizen, which is clear from Mr. Creedle's allegations that DHS had documentation proving his U.S. citizenship. *See* D.E. 48 at ¶¶ 42–46. Accordingly, Defendant Martinez should not be entitled to qualified immunity on this

10

claim and Mr. Creedle should be allowed to conduct discovery to uncover facts more specific to these allegations.

Even if these allegations are insufficient to plausibly allege Defendant Martinez's deliberate indifference to a risk of serious harm by lodging the detainer, as Defendant Martinez argues, the Court should follow the Supreme Court's two-pronged approach of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, plausible gave rise to an entitlement to relief. *Id.* (citing *Iqbal*, 556 U.S. at 679). Here, Mr. Creedle alleges that DHS has previously terminated removal proceedings against Mr. Creedle in 2015 based on documentation submitted by Mr. Creedle that established he was a U.S. citizen. D.E. 48 at. ¶¶ 42–46. Thus, the fair and reasonable inference from this allegation is that, because DHS and ICE *recognized* and knew Mr. Creedle was a U.S. citizen, Defendant Martinez could have discovered this fact but was instead deliberately indifferent to it at the time he issued the detainer at issue in this case.

These allegations, viewed in the light most favorable to Mr. Creedle, are more than enough to support Mr. Creedle's Fourth and Fifth Amendment *Bivens* claim against Defendant Martinez. Because further facts on this issue are within the sole possession of Defendant Martinez and the other defendants in this case, Defendant Martinez's Motion should be denied and Mr. Creedle should be allowed to pursue discovery on these issues.

## II.    Mr. Creedle Properly Seeks Relief Under *Bivens.*

In *Bivens*, the Supreme Court held that victims of a constitutional violation by a federal official or someone acting under color of federal law may recover damages against that person despite the absence of any statute conferring such a right of action. 403 U.S. at 397. One key purpose of a *Bivens* action is to deter future constitutional violations of individual officers by providing a mechanism by which they can be held accountable for their actions. *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 70

11

(2001). To establish a claim for relief under *Bivens*, a plaintiff must demonstrate: (1) that the conduct was committed by a federal actor, and (2) that the plaintiff was deprived of a right secured by the Constitution or federal laws as a result.

The Supreme Court has developed a framework to determine whether *Bivens* establishes a cause of action for a particular claim. First, courts must ask whether the claim arises in a new context, or a context where the Supreme Court has not previously applied *Bivens. See, e.g.*, *Abbasi*, 137 S. Ct. at 1859–60. If the context is *not* new, the analysis stops there and *Bivens* applies. *Id.* at 1860. If the context *is* new, then courts must ask "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the judicial branch to refrain from providing a new and freestanding remedy" and whether there are "any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).

Applying this framework, *Bivens* provides Mr. Creedle with a cause of action to seek damages against Defendant Martinez. First, the context is not new. In fact, this case arises in a context similar to those where the application of *Bivens* has been affirmed by the Supreme Court as "a fixed principle in the law." *Abbasi*, 137 S. Ct. at 1856–57. Second, even if the context were somehow new, there are no special factors, such as a comprehensive remedial scheme, that counsel hesitation applying *Bivens* to Mr. Creedle's case.

### A.  Mr. Creedle's Claims Do Not Arise in a New Context.

It is well-established that plaintiffs may pursue both Fourth Amendment and Fifth Amendment claims under *Bivens. Harvey v. United States*, 681 F. App'x 850, 853 (11th Cir. 2017) (citing *Bivens*, 403 U.S. at 392; *Davis*, 442 U.S. at 243–44). In *Bivens* itself, the Supreme Court allowed the plaintiff to recover damages from federal officers in the same Fourth Amendment context present here: an unreasonable seizure without probable cause. 403 U.S. 388, 389 (1971). Importantly, the

Supreme Court held that the Fourth Amendment "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Id.*

More recently, the Supreme Court reaffirmed the core holding of *Bivens*, stating that "it must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose" and that "the settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law," are powerful reasons to retain it in that sphere. *Abbasi*, 137 S. Ct. at 1856–57. Importantly, the Supreme Court extended *Bivens* to the Fifth Amendment Due Process Clause, recognizing that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Davis v. Passman*, 442 U.S. 228, 245 (1979); *see also Iqbal*, 556 U.S. at 675 (impliedly approving of the existence of a *Bivens* claim under the Fifth Amendment Due Process Clause despite questioning the existence of a *Bivens* claim under the First Amendment).

Mr. Creedle's *Bivens* claims are substantially similar to *Bivens* cases previously decided by the Supreme Court and other federal courts. At bottom, Mr. Creedle seeks relief for an unreasonable seizure, which was caused by, *inter alia*, the detainer issued by Defendant Martinez without the necessary probable cause. Claims which seek a remedy for violations of the Constitution's protection against unreasonable searches and seizures are quintessential *Bivens* claims. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (presuming that *Bivens* applied to a Fourth Amendment claim challenging pretextual detention under the Material Witness Statute); *Groh v. Ramirez*, 540 U.S. 551, 563–64 (2004) (recognizing a *Bivens* claim challenging a search pursuant to a deficient warrant); *Anderson v. Creighton*, 483 U.S. 635, 636–37 (1987) (assuming *Bivens* applied to a claim challenging the warrantless search of

a home to find a robbery suspect). The fact such violations are committed by a federal immigration

agent does not preclude a plaintiff from receiving relief under *Bivens*.[7]

Defendant Martinez misstates the true nature of Mr. Creedle's *Bivens* claim, as Mr. Creedle's

*Bivens* claims do not involve "the authority of an immigration officer to lodge a detainer against an

already incarcerated individual." D.E. 68 at 4. To the contrary, Mr. Creedle's *Bivens* claims involve only

whether Defendant Martinez issued the detainer without the necessary finding of probable cause that

he was removable from the United States. Nevertheless, even if Mr. Creedle's claim did involve the

authority of an immigration officer to lodge a detainer against an already incarcerated individual, the

claim would still not qualify as a "new context" under *Bivens*. As courts across the country have stated,

being held pursuant to an immigration detainer is a "seizure" under the Fourth Amendment and

issuing such a detainer requires probable cause. *See infra* Section II. A.

Defendant Martinez attempts to analogize Mr. Creedle's case to cases that have failed to

extend *Bivens* to contexts in which the plaintiff was challenging immigration custody or proceedings.

*See Alvarez v. ICE,* 818 F.3d 1194 (11th Cir. 2016), *cert. denied sub nom. Alvarez v. Skinner*, 137 S. Ct. 2321,

---

[7] *See, e.g.*, *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir. 2006) ("No remedy for the alleged constitutional violations would affect the BIA's final order of removal. Any remedy available to Mr. Ballesteros would lie in a Bivens action."); *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 627 (5th Cir. 2006) (denying qualified immunity defense to immigration officer where noncitizen alleged that immigration officer physically assaulted and arrested her without provocation); *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (reversing dismissal of Bivens claims against immigration agents on behalf of noncitizen killed in detention); *Humphries v. Various Fed. USINS Emp.*, 164 F.3d 939, 944 (5th Cir. 1999) (reversing dismissal of claim for involuntary servitude and mistreatment while in immigration custody); *Franco-de Jerez v. Burgos*, 876 F.2d 1038, 1044 (1st Cir. 1989) (allowing case to proceed to discovery against immigration officer on Bivens claim where noncitizen held incommunicado for ten days); *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986) (finding Bivens available where immigration officers assisted in searches and arrests "without knowledge of the details of the warrant under which [they] presume[d] to act"); *Jasinski v. Adams*, 781 F.2d 843, 850 (11th Cir. 1986) (affirming denial of summary judgment to defendants in Bivens challenge to detention and search by immigration officers at checkpoint); *Matter of Sandoval*, 17 I&N Dec. 70, 82 (BIA 1979) (citing Bivens for the proposition that "civil or criminal actions against the individual officer may be available.").

198 L. Ed. 2d 724 (2017); *De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015); *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2011). Mr. Creedle's case differs significantly from the cases cited by Defendant Martinez because Mr. Creedle was in County, not immigration, custody. He is not an individual who had been lawfully placed in immigration custody and had been ordered removed after the denial of an application for immigration relief, and who is complaining that his custodians unconstitutionally prolonged his detention by knowingly making false statements. *Alvarez*, 818 F.3d at 1195. Likewise, Mr. Creedle was not, at the time Defendant Martinez issued the detainer, an individual known to be unlawfully present in the United States, and he is not alleging that the officer lied or otherwise unlawfully interfered with his release on bond in the course of immigration proceedings. *Mirmehdi*, 689 F.3d at 979. Furthermore, Mr. Creedle, a U.S. citizen, is not an individual unlawfully in the United States in a position to assert in civil immigration proceedings his claim that officers unlawfully stopped or arrested him in traffic. *De La Paz*, 786 F.3d at 370–72. Accordingly, contrary to Defendant Martinez's misguided assertions, Mr. Creedle's case does not differ "in a meaningful way from previous Bivens cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1859.

### B.  The Court Can and Should Extend *Bivens* to this Case.

If, however, this Court finds that Mr. Creedle's claims arise in a new context, then it should next find that it is appropriate to extend *Bivens* to the context presented in this case because: (1) Mr. Creedle lacks any other adequate alternative remedies; and (2) there are no "special factors" that should lead the Court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages in this context. *Id.* at 1857–58; *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018).

### i.  There Are No Alternative Remedies Available to Mr. Creedle.

Defendant Martinez claims that there are several alternative existing processes "for protecting a detained individual's rights when a detainer is lodged against him." D.E. 68 at 7. Defendant Martinez

asserts the following alternative, albeit incorrect, alternatives: (1) the detainer's one-line instruction at the bottom of the "Notice to the Detainee," which states that the detainee can call a toll-free telephone number if he believes he is a United States citizen; (2) the detainer's instructions that it "takes effect only if [the law enforcement agency] serve[s] a copy of this form on the subject"; (3) the detainer's instruction that the law enforcement agency only hold the individual for up to 48 hours; (4) the availability of habeas corpus; and (5) the Congressional amendments of the INA on seven occasions since 1952. D.E. 68 at 8.

None of the "alternative remedies" proposed by Defendant Martinez address or support the key purpose of *Bivens*: to deter future constitutional violations of individual officers by providing a mechanism by which they can be held accountable for their unlawful actions. *Malesko,* 534 U.S. at 70; *Alba v. Montford*, 517 F.3d 1249 (11th Cir. 2008) ("*Bivens*' goal of deterring federal officials from violating the Constitution would be better served through an action against the individual officers") (citing *Carlson v. Green*, 446 U.S. 14, 20–21 (1980)). Here, a finding that the detainer's various disclaimers—that the detainee could call a toll-free telephone number if he believes he is a United States citizen, that it "takes effect only if [the law enforcement agency] serve[s] a copy of this form on the subject," and that the law enforcement agency can only hold the individual for up to 48 hours—provided Mr. Creedle with adequate alternative remedies would not deter individual federal officers, such as Defendant Martinez himself, from issuing immigration detainers without any probable cause in the future. Nor would they hold these federal officers accountable for their individual acts that violate the Constitution of the United States.

Defendant Martinez's attempt to analogize Mr. Creedle's case to *Alvarez* in order to suggest that habeas corpus is an appropriate alternative remedy falls flat. In *Alvarez*, the plaintiff had been detained for over one year, in which he had more than enough time to, and did in fact, file a habeas corpus petition for his release. 818 F.3d at 1198. Mr. Creedle, in contrast, was detained overnight with

no opportunity to file a habeas corpus petition. Additionally, even if he could have filed a habeas corpus petition, such a petition would not have provided the accountability and deterrence to Defendant Martinez that *Bivens* requires.

Crucially, Mr. Creedle is a U.S. citizen and was not in removal proceedings when Defendant Martinez issued the detainer against him and when the County complied with the detainer. As such, Mr. Creedle could not avail himself of the "numerous avenues" set out by the INA "for aliens to obtain review of ICE decisions" while seeking immigration relief or benefits. *Alvarez*, 818 F.3d at 1207; *see also Lyttle v. United States*, 867 F. Supp. 2d 1256, 1277 (M.D. Ga. 2012) ("There is scant evidence that Congress gave any thought to what the remedy should be for a citizen who is wrongly detained and deported"); *Mendia v. Garcia*, 165 F. Supp. 3d 861, 884 (N.D. Cal. 2016). Accordingly, "it is damages under *Bivens* or nothing" for Mr. Creedle, as the INA does not apply to or protect Mr. Creedle. *Rodriguez*, 899 F.3d at 744.

### ii. No Special Factors Counsel Hesitation in Granting a *Bivens* Remedy.

Defendant Martinez also argues that special factors exist that preclude Mr. Creedle from a *Bivens* remedy. Defendant Martinez includes the following as "special factors" counseling hesitation in granting Mr. Creedle a *Bivens* remedy: (1) the INA contains no provision for a damages remedy, which suggests that Congress may believe a damages remedy was not needed; (2) separation of powers counsels hesitation, since Congress has the authority to prescribe a uniform rule of Naturalization and the Executive has the authority to conduct foreign relations; (3) asking the Court to look into whether Defendant Martinez had legal justification for lodging a detainer would exert a chilling effect on a basic tool used by ICE.  D.E. 68 at 11.

While Congress' failure to provide a damages remedy in the INA to immigrants and individuals in removal proceedings may not have been inadvertent, this failure is both irrelevant and inapplicable to this case. As stated above, the INA does not apply to or protect Mr. Creedle because he is a U.S.

citizen and was not in removal proceedings at the time Defendant Martinez issued the detainer against him. Therefore, even if a damages remedy existed in the INA, Mr. Creedle would not be able to use it. Thus, this is not a special factor that should lead the Court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages in this context. Similarly, there is no separation of powers issue present in this case. Federal courts have a long history and jurisprudence that show they are more than competent to administer remedies and conduct analysis in cases involving Fourth and Fifth Amendment violations by federal officials. *See supra* Section I.A.

Defendant Martinez's final argument—that asking the Court to determine whether Defendant Martinez had a legal justification for lodging a detainer against Mr. Creedle would result in a chilling effect on ICE—is illogical. For the same reason that there is no separation of powers issue present in this case, there is also no risk that the Court's decision would result in an unwanted "chilling effect." Federal courts have long analyzed and administered remedies for Fourth and Fifth Amendment violations. The goal of such remedies is to deter federal officers from engaging in future violations. The fact that the federal officer is an immigration officer does not affect the Court's ability to determine whether the official violated the Fourth and Fifth Amendments in the course of his duties. *Dunaway v. New York,* 442 U.S. 200, 214–15 (1979) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'"). *See supra* note 8 and accompanying text. Unlike in *Alvarez* where the plaintiff was an individual in immigration detention based on a valid removal order, Mr. Creedle is a U.S. citizen who was unlawfully detained based on a detainer that was issued by Defendant Martinez without probable cause. Therefore, the risk of an onslaught of litigation or a chilling effect on ICE does not exist and is not a special factor counseling hesitation in granting Mr. Creedle a *Bivens* remedy.

While a *Bivens* claim is "not a proper vehicle for altering an entity's policy," Mr. Creedle's claim against Defendant Martinez does not challenge any government policy. *Abbasi*, 137 S.Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). The plaintiff in *Abbasi* sued policymakers, including the Attorney General and the FBI Director, to challenge "major elements of the Government's whole response to the September 11 attacks." *Id.* In contrast, Mr. Creedle does not challenge the federal government's policy of issuing immigration detainers. Rather, Mr. Creedle sues a "rank-and-file officer" for conduct that violated his Fourth and Fifth Amendment rights. *Rodriguez*, 899 F.3d at 744–45. Specifically, Mr. Creedle sues Defendant Martinez for issuing an immigration detainer against him on the basis of his foreign birth alone, especially when Defendant Martinez could have discovered Mr. Creedle was a U.S. citizen based on information known and available to him at the time. Accordingly, no other special factors counsel hesitation in granting a *Bivens* remedy to Mr. Creedle in this case.

## CERTIFICATE OF SERVICE

I hereby certify that, on September 21, 2018, I electronically served a true and correct copy of the foregoing on counsel for Defendant via transmission of a Notice of Electronic Filing generated by the CM/ECF system of the U.S. District Court of the Southern District of Florida.

Respectfully submitted,

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS
Florida Bar No. 0131024
ELIZABETH MONTANO
Law Student
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF
LAW
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576, direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF
FLORIDA, INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF
FLORIDA, INC.
4343 W. Flagler St., Suite 400

IRA J. KURZBAN
Florida Bar No. 225517
EDWARD F. RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN WEINGER
TETZELI & PRATT, P.A.
2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503

Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448