GARLAND CREEDLE,

      Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MIAMI-DADE COUNTY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Garland Creedle files this opposing memorandum of law to the County's motion to

dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## BACKGROUND[1]

On June 1, 2018, Mr. Creedle filed an amended complaint against Miami-Dade County alleging

that the County, pursuant to its policy of honoring immigration detainers issued by federal

immigration officers, violated his Fourth and Fourteenth Amendment rights by holding him beyond

the time authorized by law. *See* D.E. 48 at 1-2, 12-14. Mr. Creedle also made a state-law claim for false

---

[1] The relevant factual allegations are set forth in the First Amended Complaint and Mr. Creedle realleges and fully incorporates them here. *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277 (11th Cir. 2001)("We consider allegations in the complaint as true for the purposes of the motion").

imprisonment. *See* D.E. 48 ¶¶ 76-83. Mr. Creedle's amended complaint raises the same claims against the County as his initial complaint. As a result, the County's motion to dismiss the amended complaint makes the same arguments as its prior motion to dismiss, except the County now cites to Fed. R. Civ. P. 12(b)(1) in support of dismissal of Mr. Creedle's claim for declaratory relief (not Mr. Creedle's damages claims). *See* D.E. 11; D.E. 70. This response addresses this new issue in Section IV.

As Mr. Creedle argued in his prior response, the Court reviews a Rule 12(b)(6) motion to dismiss by construing the pleading broadly, and "the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Watts v. Fla. Int'l Univ.*, 495 F.2d 1289, 1295 (11th Cir. 2007) (citations omitted). Mr. Creedle has stated claims for which relief can be granted in his three counts against the County, and both damages and declaratory judgment are appropriate relief.

## ARGUMENT

### I.     The County lacked authority to detain Mr. Creedle after his criminal custody ended.

The County does not dispute that its decision to continue to detain Mr. Creedle after receiving the immigration detainer request amounted to a subsequent arrest under the Fourth Amendment and Florida state law. *See, e.g., Morales v. Chadbourne*, 793 F.3d 208, 217 n.3 (1st Cir. 2015). Neither federal nor state law authorized the County's re-arrest and detention of Mr. Creedle after he posted bond in his criminal case.

### A.  No federal law authorized the County's post-bond detention of Mr. Creedle.

The County argues that its arrest of Mr. Creedle was made pursuant to a delegation of federal immigration arrest authority. But far from authorizing the County's blanket policy of honoring immigration detainers, federal law imposes clear limitations on participation in federal immigration enforcement—limitations that the County exceeded by re-arresting and holding Mr. Creedle. Because no federal statute authorized the County's detention of Mr. Creedle, the Court should reject the County's efforts to evade responsibility for the consequences of its detainer policy.

The Immigration and Nationality ("INA") establishes a comprehensive federal scheme for immigration regulation. The INA confers immigration arrest and detention authority on certain *federal* immigration law enforcement officials. *See* 8 U.S.C. § 1357(a) ("Powers of immigration officers").[2] State and local governments are not permitted to enforce civil immigration laws unless Congress has expressly granted such authorization. *Arizona v. United States*, 567 U.S. 387, 407-10 (2012). Congress has authorized state and local law enforcement officers ("LEAs") to participate in immigration enforcement only in "limited circumstances" that are carefully set out in applicable statutes, none of which permit the County's conduct here. *See Arizona*, 567 U.S. at 408-09 (citing 8 U.S.C. §§ 1357(g)(1): 1103(a)(10); 1252c).[3]

The County argues that its authority to arrest and detain persons for suspected civil immigration violations derives from 8 U.S.C. § 1357(g), which governs the limited circumstances in which LEAs may arrest someone for a suspected civil immigration violation. This statute authorizes federal immigration officials to contract with LEAs to allow them to "perform a function of an immigration officer," including the "apprehension" and "detention" of noncitizens, and only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). Participation in these "287(g) agreements" requires not only a written contract, but certification by the federal government that the LEAs deputized to perform immigration officer functions are "qualified to perform" them and have received "adequate training" on federal immigration law. *Id.* § 1357(g)(2). The County does not have a 287(g) agreement with the federal government.

---

[2] The regulations list the federal officials authorized to make warrantless arrests and arrests based on warrants. 8 C.F.R. §§ 287.5(c), 287.5(e)(3).

[3] The one reference to detainers in the INA, 8 U.S.C. § 1357(d), only authorizes requests for *notification* of an individual's pending release from criminal custody, not detention. *Arizona*, 567 U.S. at 410. The only statutory authority extended to LEAs that is even arguably relevant to arrests based on immigration detainers is 8 U.S.C. § 1357(g). The other two limited circumstances involve a declared "mass influx" (8 U.S.C. § 1103(a)(10)) and arrests of previously deported felons with warrants of removal (8 U.S.C. § 1252c).

The County also cites 8 U.S.C. § 1357(g)(10) as a source of statutory authority to arrest Mr. Creedle.[4] But, as explained in Mr. Creedle's opposition to the federal government's motion to dismiss, § 1357(g)(10)'s use of the word "cooperate" does not authorize the County to perform the core immigration-officer function of making civil immigration arrests. *See* Plaintiff's Response and Memorandum of Law in Opposition to Defendants United States Department of Homeland Security and United States Immigration and Customs Enforcement's Motion to Dismiss Plaintiff's First Amended Complaint, Section II(A) (explaining that performing arrests, unlike the supporting roles the Supreme Court listed in *Arizona*, does not constitute "cooperation" for purposes of § 1357(g)(10)).[5]

A detainer arrest goes beyond mere "cooperation." But even if detainers somehow fit within §1357(g)(10)(B), that provision is simply a preemption savings clause. It does not convey any new authority to local officers. *Lunn v. Commonwealth*, 78 N.E. 3d 1143, 1159 (2017). A local officer therefore cannot "act under color of authority" of §1357(g)(10)(B) because this provision does not provide any authority under which to act. *See New England Power Co. v. New Hampshire*, 455 U.S. 331, 344 (1982) (explaining that preemption savings clauses "do[] not provide any affirmative grant of authority"). In other words, because cooperating officers do not "exercise[] power possessed by virtue of §1357(g)(10)(B), they are not acting "under color of" § 1357(g)(10)(B). *West v. Atkins*, 487 U.S. 42, 49 (1988) (describing state action doctrine, from which § 1357(g)(8)'s language is derived). Instead §

---

[4] The County also relies on 8 U.S.C. § 1357(g)(8). But this provision applies only to jurisdictions that have entered into 287(g) agreements. *See Santos v. Frederick Cty. Bd. of Com'rs*, 725 F.3d 451, 463 (4th Cir. 2013). Section 1357(g)(8) appears in a list of provisions that all pertain to 287(g) agreements only. *See* 8 U.S.C. § 1357(g)(1)-(9).

[5] *See also Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 972-75 (S.D. Ind. 2017) (explaining that a detainer arrest does not qualify as "cooperation" under § 1357(g)(10)(B)); *Ochoa v. Campbell*, No. 1:17-CV-03124-SMJ, 2017 WL 3476777, at *10 (E.D. Wash. July 31, 2017) (rejecting claim that § 1357(g)(10) provided valid basis for local arrest, despite ICE's request for assistance, and explaining that under the INA "state and local law enforcement and other officials are *presumed* to be unqualified and unable to perform the functions of federal immigration law enforcement officers"); *Dep't Homeland Sec., supra* note 4, at 4 (making no reference to detainers as falling within the ambit of "cooperation" under § 1357(g)(10).

1357(g)(8) simply applies *Bivens* and 28 U.S.C. § 2679 (the Westfall Act) to suits brought against local officers deputized through 287(g) agreements, either when they carry out immigration officer functions (actions "under color of authority under this subsection) or when they perform lesser functions that are part of the officer's 287(g) duties (actions taken pursuant to an "agreement," such as operational support, joint task forces, or even driving in the scene of an enforcement action).

Unable to identify any statute that could authorize its seizure of Mr. Creedle, the County relies on a regulation, 8 C.F.R. § 287.7(d), as a source of detention authority. But that regulation does not authorize non-federal officers to conduct immigration arrests. Instead it instructs that jurisdictions in receipt of an immigration detainer must *limit* the length of any detention to a "period not to exceed 48 hours…." 8 C.F.R. § 287.7(d). Thus, for an entity that has independent authority to hold the subject of a detainer—for instance, because the entity has signed a 287(g) agreement—§ 287.7(d) limits that detention to 48 hours.[6]

The County cannot establish that its detention of Mr. Creedle was authorized for an additional reason. Mr. Creedle was arrested without a warrant. But under the INA, even *federal* immigration agents may make warrantless arrests of persons suspected of civil immigration violations only in two narrow circumstances: (1) where a noncitizen in the officer's "presence or view is entering or attempting to enter the United States" unlawfully; or (2) where the agent has "reason to believe" that the noncitizen is in the United States in violation of law *and* "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).[7] The County's arrest of Mr. Creedle does not fit within either of

---

[6] *See, e.g., Galarza*, 745 F.3d at 640 (holding that the regulation's use of "'shall' serves only to inform an agency that otherwise decides to comply with an ICE detainer that it should hold the person no longer than 48 hours"). *See also Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 807 (N.D. Ill. 2014) ("[N]owhere does [8 C.F.R. § 287.7(d)] authorize the detention of an alien for 48 hours *after local custody over the detainee would otherwise end.*") (emphasis in original).

[7] These limitations on immigration arrest authority were established when the INA was first enacted, *see* Immigration and Nationality Act, Pub. L. No. 82-414, § 287, 66 Stat. 163 (1952) (codified at 8 U.S.C. § 1357(a)(2), (4)) (permitting warrantless arrests only where the subject is "likely to escape

these narrow circumstances. Mr. Creedle was not "attempting to enter the United States" unlawfully in an officer's "presence or view." *Id.* Nor did ICE or the County make any individualized showing that Mr. Creedle was "likely to escape before a warrant can be obtained for his arrest." *Id.* A warrantless arrest based on flight risk requires "an individualized assessment of the likelihood that a suspected removable alien, who is in the custody of an LEA, will seek to evade immigration officers upon release before a warrant can be obtained." *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1009 (N.D. Ill. 2016). Yet ICE agents "'[did] not make any determination at all' with respect to this issue" before issuing the detainer request. *Id.* at 1006 (emphasis omitted). His arrest was therefore illegal. *See Orellana v. Nobles Cty.*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017) ("Without any showing that Orellana was likely to escape before a warrant could be secured, the warrantless arrest [by local officers] violates the Fourth Amendment.").

**B. No State law authorized the County's post-bond detention of Mr. Creedle.**

County correctional officers needed federal *and* state authority to lawfully detain Mr. Creedle for a civil immigration violation. *See Lunn v. Commonwealth*, 78 N.E. 3d 1143 (2017) (detainer arrest was illegal because officers lacked state-law arrest authority); *Cisneros v. Elder*, No. 18-cv-30549 (Colo. D. Ct. 2018) (same).[8] They had neither. Without Florida law authority to detain Mr. Creedle, the County falsely imprisoned him. *See* Fla. Stat. § 787.02(1)(a); *see also Smart v. City of Miami*, 107 F. Supp. 3d 1271, 1281 (S.D. Fla. 2015) (referring to *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010)).

The County points to Fla. Stat. § 950.03 as a source of arrest authority—a statute that governs scenarios in which the federal government contracts with state prison or local jails to house people detained by the federal government. *Dyal v. State*, 386 So. 2d 868, 869 (Fla. 1st DCA 1980). Fla. Stat.

---

before a warrant can be obtained for his arrest"), and they embody a "very carefully considered distinction between powers which may be exercised without warrant and such where a warrant will be required." H.R. REP. NO. 82-1365, at 55 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1710.

[8] The *Cisneros* opinion is available at https://bit.ly/2PTs2vA.

§ 950.03 directs that municipal jailers "shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States." But that statute is not a source of *arrest* authority. It simply directs jailers to hold prisoners who have already been validly arrested by federal officers. At the time the County arrested Mr. Creedle on the detainer, the federal government had not yet arrested him. It had only issued a detainer request.[9] As a result, Mr. Creedle was not a prisoner lawfully committed to the County's charge under the authority of the United States. Indeed, as one district judge put it, "whenever a sheriff stopped, detained, arrested, or jailed an individual, he was cloaked with the authority of state law, regardless of whether an Immigration and Customs Enforcement agent requested the action." *See Committee for Immigrant Rights of Sonoma County v. County of Sonoma*, No. C 08-4220 RS, 2010 WL 246030 (N.D. Cal. June 11, 2010). The detainer was a request by the Department of Homeland Security ("DHS") that *another agency* make the initial arrest. *See Orozco v. U.S. I.N.S.*, 911 F.2d 539, 541 (11th Cir. 1990) (for purposes of the custody requirement for habeas corpus proceedings, the filing of a federal detainer does not cause a person to come within the legal custody of the United States); *see also Gonzales-Corrales v. I.C.E.,* 522 F. App'x 619 (11th Cir. 2013) (incarcerated plaintiff was not in ICE custody despite detainer request); *Roberts v. INS*, 372 F. App'x 921 (11th Cir. 2010) (incarcerated plaintiff with detainer request wanted to challenge the denial of her naturalization application, court found INS did not have custody); *see also Campillo v. Sullivan*,

---

[9] No party in this case disputes that Mr. Creedle's continued detention beyond the close of his criminal case was a new seizure or arrest needing probable cause and that the seizure was by the County, not ICE. *See* D.E. 48 at ¶¶ 47, 62 (Mr. Creedle); D.E. 68 at 2–3 (Defendant Martinez); D.E. 69 at 5 (Federal Defendants); D.E. 70 at 4–5 (The County). This "new arrest must be analyzed under the Fourth Amendment." *Miranda Olivares v. Clackamas County No.* 12-cv-02317, 2014 WL 1414305, at *9-10 (D. Or. Apr. 11, 2014) (awarding summary judgment to the detainee); *see also Morales v. Chadabourne*, 493 F.3d 208, 217 (1st Cir. 2015) (Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by new probable cause justification."); *Moreno v. Napolitano*, 213 F.Supp.3d 999, 1005 (N.D. Ill. 2016 (noting that the federal government's concession "that being detained pursuant to an . . . immigration detainer constitutes a warrantless arrest").

853 F.2d 593 (8th Cir. 1988); Gethers *v. State*, 838 So. 2d 504, 507 (Fla. 2003) (quoting *Price v. State*, 598 So. 2d 215, 217 (Fla. 5th DCA 1992).

As further confirmation that Mr. Creedle was not a federal prisoner—and therefore could not validly be held under § 950.03—ICE does not reimburse the County for holding people on detainers. But if Mr. Creedle were a federal prisoner housed by the County, federal law would have mandated that the federal government reimburse the County for the cost of his detention. *See* 18 U.S.C. § 4007 ("[E]xpenses attendant upon the confinement of persons arrested or committed under the laws of the United States . . . *shall* be paid out of the Treasury of the United States in the manner provided by law.") (emphasis added). Similarly, Florida law provides that the United States pay the expenses of housing U.S. prisoners in county jails, just as any Florida county or municipality pays for the expenses of its prisoners when they are committed to the jails of other counties or municipalities. *See* Fla. Stat. §§950.04, 944.091; *see also* Fla. Stat. §§ 142.15, 950.01, 951.23(6)9b), and 951.13. However, the County bore the cost of jailing Mr. Creedle.

The County further claims it had authority to detain Mr. Creedle on an immigration detainer under Fla. Stat. § 901.18. This statute states that "[a] peace officer making a lawful arrest may command the aid of persons she or he deems necessary to make the arrest." Fla. Stat. § 901.18. As the Court recognized at the May 16, 2018 hearing in this case, the County's position is untenable.[10] In the County's view, § 901.18 would require *every person* who is asked to make an arrest to make that

---

[10] At the hearing, the County argued that Florida Statute § 901.18 "provides that an officer making a lawful arrest may command the aid of persons he or she deems necessary to make the arrest. [Therefore] Florida Law provided that a police officer in a different context could enlist a citizen without any training, not deputized—no authority independently of themselves to assist that police officer in making that arrest. And [that] Florida law also spells out when that person provides that assistance they shall not be civilly liable." *See* Transcript of Hearing Held on May 16, 2018, at 42. In response, the Court stated that it could not "even imagine the scenario that [the County was] describing as somehow illustrative." *Id.* Nor did the Court think that this was "likely to be a situation nor [] something agencies would countenance or counsel their officers to employ." *Id.*

arrest. There would be no limit to the arrests that federal agencies could demand of local officers, or that local officers could demand of ordinary citizens. This goes far beyond the statute's limited purpose: authorizing Florida officers to request the assistance of bystanders in making arrests. It does not justify the kind of systematic assistance involved in the County's policy of compliance with all detainers.

The County has failed to rebut Mr. Creedle's allegations that it arrested Mr. Creedle without a warrant and that County correctional officers are not "law enforcement officers" authorized to make warrantless arrests under Florida law. *See* D.E. 1 at 13; *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x. 821, 824-25 (11th Cir. 2013) ("We cannot say, as a matter of Florida law, that a correctional officer inherently qualifies as a 'law enforcement officer' as that term is used in section 901.15(1)."). Even if County correctional officers were considered "law enforcement officers" with warrantless arrest authority under Fla. Stat. § 901.15, nothing in this statute confers authority on correctional officers to arrest Mr. Creedle for a civil immigration violation pursuant to an immigration detainer. *See* D.E. 1 at 13.[11]

### C. The County did not even have probable cause of removability.

At a minimum, the County lacked authority to hold Mr. Creedle once he informed them that he was a U.S. citizen. D.E. 48 at ¶ 1, 53. Citizens are not subject to removal and so can never be

---

[11] Because there exists no citizen's right to arrest for civil immigration violations—which are neither felonies, nor breaches of the peace, nor misdemeanors observed in an officer's presence—County correctional officers also lacked the required arrest authority at Florida common law. *Cf. Phoenix v. State*, 455 So. 2d 1024, 1025 (Fla. 1984); *Thomas v. State*, 614 So. 2d 468, 470-72 (Fla. 1993) (holding that a full custodial arrest for violation of a municipal ordinance which was neither a crime nor a "noncriminal violation" under Florida statutes was unconstitutional under both the Fourth Amendment and Article I, section 12 of the Florida Constitution); *L.B.B. v. State*, 998 So. 2d 1217, 1218 (Fla. 2d DCA 2009) (holding that a bicycle infraction is noncriminal in nature and a person cannot be arrested for such infraction); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor *criminal* offense *in his presence*, he may, without violating the Fourth Amendment, arrest the offender.") (emphases added).

detained pursuant to an immigration detainer. By arresting Mr. Creedle without probable cause of removability, the County violated his Fourth Amendment rights. *See Morales*, 793 F.3d at 218 (holding that the Fourth Amendment "require[s] probable cause to detain [a person] pursuant to an immigration detainer.").

The County cannot claim that it had probable cause because of the detainer. Even if the fellow officer rule applied in this context, *see infra* Part III, the County received countervailing evidence that negated probable cause as soon as Mr. Creedle told them that he was a citizen. As the Eleventh Circuit has made clear, "in evaluating probable cause, an officer may not unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her or electing not to obtain easily discoverable facts that might tend to exculpate a suspect." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018) (quotation marks and alterations omitted). The County simply ignored Mr. Creedle's citizenship claim, pursuant to its policy of honoring all detainers. And it "elect[ed] not to obtain easily discoverable facts," such as Mr. Creedle's citizenship records. *Id.* at 1294; *See* D.E. 48 at ¶ 44. Under these circumstances, the County lacked probable cause even of removability. *See also Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) ("an officer may not choose to ignore information that has been offered to him or her," including an arrestee's "assertions" that they did not commit the offenses); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1283 (M.D. Ga. 2012) (officers must investigate a citizenship claim before making immigration arrest).

## II. Mr. Creedle has sufficiently alleged that Miami-Dade County has a policy or practice of honoring ICE detainers that caused his post-bond detention.

Mr. Creedle has sufficiently alleged that the County has a policy or practice of honoring all immigration detainer requests. He has further alleged that this policy and practice—a voluntary action by the County—caused him to be detained after he paid his criminal bond (and should have been released). His allegations, taken as true, are sufficient to meet *Monell*'s requirement that a county policy

or practice, as opposed to an individual's action, is a proximate cause of the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The clause in Miami-Dade Board of County Commissioners' Resolution No. R-163-17 ("Resolution No. R-163-17") stating that correctional officials must comply with the law is no defense. Nor is the County's unsupported assertion that ICE's actions were the "sole cause" of Mr. Creedle's detention. D.E. 11 at 1. Lastly, the County's claim that Mr. Creedle must establish "deliberate indifference" is incorrect, as the County established a policy expressly instructing its correctional officers to honor ICE detainers.

Mr. Creedle alleges that the County caused his post-bond detention because it voluntarily agreed to ICE's detainer request and that this action was pursuant to County policy and practice. Specifically, Mr. Creedle alleges that Mayor Gimenez issued an official, written directive to jail officials to honor all ICE detainers, D.E. 48 ¶ 38, and the County Board of Commissioners enacted a resolution ratifying Gimenez's memorandum by mandating that the County cooperate with ICE regarding immigration detainer requests. D.E. 48 ¶ 39. This resolution reversed a prior resolution that limited the honoring of detainers to only narrow circumstances, effectively halting the practice of detaining people for ICE. *Id.* at ¶¶ 32-37. Mr. Creedle further alleges that the County has "maintained a policy and practice of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request." *Id.* at ¶ 40. These allegations, taken as true, are sufficient to establish that the County has a policy or practice of holding people beyond the end of their criminal custody and that this policy or practice caused Mr. Creedle's post-bond detention.[12]

---

[12] *See Orellana v. Nobles Cty.*, 230 F. Supp. 3d 934, 948 (D. Minn. 2017) (denying summary judgment because the court believed a "jury could determine that [the plaintiff] was detained illegally for 10 days pursuant to an official Nobles County policy that was in effect at the time"); *Galarza*, 745 F.3d at 645 (reversing the district court's judgment dismissing a U.S. citizen's § 1983 case because county "was free to disregard the ICE detainer, and it therefore cannot use as a defense that its own policy did not cause the deprivation of Galarza's constitutional rights").

The clause in Resolution No. R-163-17 stating that the detainer policy must comply with the law in no way insulates the County from liability or makes it facially lawful. The official position of the County—as evidenced by the County's position in this lawsuit—is that its blanket policy of honoring all detainers issued by ICE is lawful. If adding a statement that its policies are subject to the constraints of the law exempts a local government from liability, a municipality could always avoid liability by simply including such a statement. No *Monell* lawsuit would ever succeed, no matter how patently unconstitutional a municipality's actions are. *See United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012) (striking down as preempted a statute despite a clause providing that it should be interpreted in a manner consistent with federal law). And in any event, Mr. Creedle has also alleged a county *practice* of detaining people for ICE. D.E. 48 ¶ 40. No policy statement of lawfulness overcomes his detailed allegations of an unlawful policy and practice.

The County argues that it can escape liability because federal immigration officials were the "sole cause" of Mr. Creedle's detention. This argument fails because it assumes that the sole challenged action is the mistaken identification of Mr. Creedle as a noncitizen. Without the County's policy of honoring all detainers, Mr. Creedle would not have been held on the detainer. Thus, even if ICE's actions were relevant to the causation analysis, they were plainly not the sole cause of Mr. Creedle's detention. Mr. Creedle would not have been detained if the County had refused to honor the detainer request. The relevant point is that the County intentionally detains people for suspected civil immigration violations. And it has no policy in place to ensure that it does not hold U.S. citizens on immigration detainers.

The County's action in holding Mr. Creedle in post-bond detention straightforwardly qualifies as a proximate cause of the injury he alleges. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Martinez v. Cal.*, 444 U.S. 277, 285 (1980). Assessing whether a cause is "proximate" involves "consideration of the 'foreseeability or the scope of the risk created by the predicated conduct,' and

12

require[s] the court to conclude that there was 'some direct relation between the injury asserted and the injurious conduct alleged." *Cty. of L.A., Cal. v. Mendez*, 137 S. Ct. 1539, 1548-49 (2017) (citation omitted). Here, there is a direct and foreseeable connection between the County's detainer policy and practice and Mr. Creedle's allegations of violations of Fourth/Fourteenth Amendments and substantive due process. While it is true that ICE started the chain of events that led to Mr. Creedle's post-pond detention, it was the County alone that voluntarily decided to hold Mr. Creedle beyond the close of his criminal case. By establishing a policy mandating correctional officers honor immigration detainers, the County could readily foresee that people would be held in post-bond detention.[13] The County was an affirmative and direct cause of Mr. Creedle's alleged injury—his post-bond detention. *See Orellana*, 230 F. Supp. 3d at 948; *Galarza*, 745 F.3d at 639-45; *Mercado*, 229 F. Supp. 3d at 504.[14]

The County incorrectly claims Mr. Creedle must establish "deliberate indifference" to establish it detained him pursuant to a "policy" for a *Monell* liability. As the Eleventh Circuit has explained: "When a municipal policy itself violates federal law, or directs a municipality to do so, resolving 'issues of fault and causation is straightforward.'" *American Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011) (citing *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Only in the absence of an express policy does "determining causation [become] more difficult" and courts must consider whether the municipality engaged in deliberate indifference of the "known or obvious consequences" of its action. *Id.*; *Brown*, 520 U.S. at 407 (quoting *City of Canton,*

---

[13] A "policy" is a "course of action consciously chosen among various alternatives." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985). The County changed course on its immigration detainer policy, reversing its 2013 resolution and mandating cooperation with ICE with respect to detainers. This voluntary reversal straightforwardly qualifies as a policy for the purpose of *Monell* liability.

[14] The causation in this case parallels that found in *Monell*. As the County acknowledges, the causation requirement was easily met in *Monell*. The causal relationship between the municipal action and the injury was apparent from the face of a written policy. D.E. 70 at 13. In *Monell*, the municipality had a policy that compelled pregnant employees to take unpaid leave. The unpaid leave caused the alleged injury. *Id.* The situation here is the same. The plain language of the Board's resolution compels the post-bond detention of those on immigration detainers, like Mr. Creedle.

*Ohio*, 489 U.S. at 388). Here, Mr. Creedle argues the County *intended* to detain him—and many others—for ICE.[15]

### III. The fellow officer rule has no relevance.

Contrary to the County's assertion, the fellow officer/collective knowledge rule is not relevant to this case. D.E. 70 at 11 ("Miami-Dade is entitled to rely on ICE's representations as to probable cause"). The fellow officer rule permits arresting officers engaged in a "common investigation" to rely upon the information possessed by members in the group to establish probable cause for a warrantless arrest, as long as the officers have engaged in more than "minimal communication." *See United States v. Ventresca*, 380 U.S. 102, 111 (1965) (rule applies in context of arresting officers engaged in a "common investigation"); *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985) (a "reviewing court may examine the collective knowledge of law officers if they maintained at least a minimal level of communication during their investigation"). Courts have held that the fellow officer rule does not apply when local jail officials detain people based on a probable cause finding of a civil immigration violation made by federal immigration officers. *See, e.g., Ochoa*, 2017 WL 3476777 at *13-14.

The fellow officer rule does not apply in Mr. Creedle's case for several reasons. There was neither a common investigation nor the communication needed to trigger the rule. The County detained Mr. Creedle solely based on an immigration enforcement officer's request. D.E. 48 ¶ 64. There was no joint investigation, and the immigration enforcement officer's only communication with the jail officials was the lodging of the detainer request. *See United States v. Webster*, 750 F.2d 307, 323-24 (5th Cir. 1984) (fellow officer rule does not apply because insufficient information was communicated); *Ochoa*, 2017 WL 3476777 at *14 (analyzing fellow officer rule as not applying because

---

[15] Even if deliberate indifference were the correct standard in this case, Mr. Creedle has sufficiently alleged that the county was deliberately indifferent to the fact that its correctional officers would honor all ICE detainers because of the Board's resolution, as this was a "known" and "obvious consequence" of its actions. *Brown*, 520 U.S. at 407; *see also Mercado*, 229 F. Supp. 3d at 520-21.

there was insufficient communication). Moreover, as explained above, Mr. Creedle had informed the County that he was a U.S. citizen— information regarding the lack of probable cause that the County was not permitted to ignore. *See Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (fellow officer rule does not permit arresting officer to "disregard facts tending to dissipate probable cause"); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) (an arrest "cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest").

Nor does the fellow officer rule override the many other reasons, beyond a lack of probable cause, why Mr. Creedle's arrest was illegal. The rule, where it applies, simply allows officers to pool information to support probable cause. It does *not* provide any affirmative arrest authority. As noted above, County correctional officers lack state authority to make a warrantless arrest, and federal law does not authorize County officers to make civil immigration arrests. The fellow officer rule does not alter this lack of state and federal authority. *See Pierre*, 537 F. App'x. at 824-25 (fellow officer rule does not apply when officer in question lacked warrantless arrest authority).

In any event, the County's cite to *Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000), is unavailing. In *Dry*, the court rejected the plaintiff's claim that the jailer was obligated to question the arresting police officers regarding the basis of their probable cause finding and to conduct an independent analysis of the legal and jurisdictional basis of the arrest. *Dry*, 235 F.3d at 1259. The court held that "absent any objectively apparent 'lack of a basis for a detention which should arouse suspicion, a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest.'" *Id.* (citing Summ. J. Order at 7, Aplt. Br. At Tab 10). The holding in *Dry* supports Mr. Creedle's position. The detainer request contained an "objectively apparent 'lack of a basis for a detention'" because it contained no specific articulable facts, and County correctional officers lacked authority under state or federal law to detain for civil immigration violations. *Id.* Moreover, Mr.

15

Creedle's statement to his jailers that he was a U.S. citizen should also have alerted the County to the fact that no probable cause existed in his detention.[16]

**IV.    The Court should not dismiss based on Rule 12(b)(1) and should grant declaratory relief.**

The County argues under Rule 12(b)(1) that "Mr. Creedle lacks standing to request declaratory relief, therefore, this Court lacks subject matter jurisdiction to grant this request." D.E. 70 at 6. A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F. 3d 1229, 1232 (11th Cir. 2008). The County is asserting a factual challenge to Mr. Creedle's standing, presumably by trying to bring in the Declaration of Dean Caputo, D.E. 69-1 at 2, which declares that "Mr. Creedle is now denoted in ICE's database as a U.S. citizen."[17] However, as explained in Mr. Creedle's Response and Memorandum of Law in Opposition to Defendants United States Department of Homeland Security and United States and Customs Enforcement's Motion to Dismiss Plaintiff's First Amended Complaint, Argument, Section I(A)–(B) ("Response to Federal Defendants Motion to Dismiss"), Mr. Creedle has Article III standing to seek declaratory relief and his requested relief is not moot. Mr. Creedle should be allowed to pursue discovery based on the conflicting factual inferences raised. *Id.*

**A.  Declaratory judgment is appropriate in this case.**

The County incorrectly asserts that declaratory relief pursuant to 28 U.S.C. § 2201 is inappropriate in this case because there is no "actual" or "continuing controversy" that would be

---

[16] The County cites *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976), for the idea that the county is not liable for errors outside their "realm of responsibility." But the error challenged by Mr. Creedle is not the lodging of a detainer against a U.S. citizen but the County's voluntary decision to seize him. Reliance on *People v. Xirum*, 993 N.Y.S. 2d 627 (N.Y. Sup. Ct. 2014), is also not directly relevant, as the underlying facts involved a noncitizen still in criminal detention who had a final order of removal.
[17] However, it is not clear from the County's motion to dismiss what the factual attack is. *See* D.E. 70 at 6.

remedied by a declaratory judgment in Mr. Creedle's favor. To establish that there is an actual and continuing controversy, a "plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred" and "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). The facts alleged by Mr. Creedle establish that an actual and continuing controversy between him and the County exists. The County's attempt to convince the Court otherwise is based on factors that are factually and legally irrelevant.

First, Mr. Creedle's claim does not depend on whether the illegal detainer policy started with the Mayor's directive or the vote of the County Board. The County Board voted to *affirm* the Mayor's immigration detainer policy and the policy continues in place.[18] *See* D.E. 70 at 3-4. Next, the County argues that Mr. Creedle has no standing to pursue declaratory relief because he is no longer in the County's custody and the detainer request issued against him has been withdrawn. Although the events that gave rise to this lawsuit have past, this is a classic case of unlawful government action that is "capable of repetition, yet evading review." The Supreme Court has recognized two elements that a plaintiff must satisfy in a non-class action in order to establish standing based on this doctrine: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1324 n.6 (11th Cir. 2001) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Mr. Creedle satisfies both prongs. Unlawful detentions pursuant to an ICE detainer request usually do not exceed 48 hours, which is obviously not enough time to fully litigate a case. Additionally,

---

[18] *See also Miami-Dade Commissioners Vote in Favor of Mayor's Policy on Immigration Issue*, NBC Miami, Feb. 17, 2017, http://www.nbcmiami.com/news/local/Miami-Dade-Commission-Meeting-Friday-to-Deal-With- Mayors-Reversal-on-Immigration-Issue-414049616.html.

it is possible that Mr. Creedle could again be illegally detained pursuant to an ICE detainer request if he is ever again in the County's custody. Although the County argues that immigration databases "now properly reflect[]" that Mr. Creedle is a U.S. citizen, D.E. 70 at 8, the County conveniently ignores the fact that DHS itself found Mr. Creedle to be a U.S. citizen in 2015, two years before Mr. Creedle filed this action. The County fails to address whether the ICE database was updated with Mr. Creedle's citizenship information prior to the allegations in the complaint and, if so, why the database did not reflect this change at the time the detainer was issued.

The fact that the detainer was issued against Mr. Creedle, a known U.S. citizen, supports Mr. Creedle's assertion that, if this case is terminated at this stage, the unlawful conduct alleged is likely to recur. The County's policy requires its officers to blindly comply with any detainer request issued by ICE. If ICE wrongfully issues another request to detain Mr. Creedle, the County would hold him pursuant to ICE's request. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical") (quoting *Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)).[19]

A district court, in another non-class action involving a challenge to detention pursuant to an ICE detainer request, examined this exact issue and correctly found that the plaintiff had standing to seek a declaratory judgment that his detention was unconstitutional because "ICE issues hundreds of thousands of detainers each year but the prolonged detention is never long enough to get legal review while it is actually happening." *Uroza v. Salt Lake Cty.*, No. 2:11CV713DAK, 2014 WL 4457300, at *7

---

[19] It is not necessary for a plaintiff to specifically allege fear of future injury in the complaint. He must only "allege facts from which the continuation of the dispute may be reasonably inferred." *See Emory*, 756 F.2d at 1552. *See also 907 Whitehead St., Inc. v. Vilsack*, No. 09-10050-CIV- MARTINEZ-BROWN, 2010 WL 11505219, at *3 (S.D. Fla. Aug. 25, 2010) (rejecting defendants' argument that plaintiff had to allege continuing and future injury in its complaint, "[l]iberally construing the complaint in favor of the Plaintiff," and finding that plaintiff's allegations provided "a basis to infer" continuing and future injury.).

(D. Utah Sept. 10, 2014). The court also found that the plaintiff "and others like him face a real risk of being subject to the policy again in the future." *Id.* The court noted that a declaratory judgment was necessary to resolve the case as "damages alone would not resolve the controversy." *Id.* at *8.

The County also argues in a footnote that Mr. Creedle's requested relief is moot because ICE has changed its detainer policy and now issues administrative warrants.[20] This argument fails for the same reasons Mr. Creedle states in his Response to Federal Defendants' Motion to Dismiss. *See* Response to Federal Defendants' Motion to Dismiss at Section I(A)–(B). Moreover, it is hard to see how a change in ICE's detainer policy is relevant to Mr. Creedle's challenge to the County's detainer policy. The administrative warrants issued by ICE are directed solely to an "immigration officer" and on their face do not purport to provide any additional authority for, or command to, local law enforcement to take any action with regard to an alleged noncitizen. These warrants do not provide additional arrest authority to local officials. *See* Warrant for Arrest of Alien ("Ex. 2"); *Ochoa,* 2017 WL 3476777 at *12 ("Nothing in the [ICE] administrative warrant indicates that it is directed at [county] officials or anyone other than authorized immigration officers."). ICE's administrative warrants in no way alter the County's policy of complying with immigration detainer requests, which is the only policy being challenged in this lawsuit.

Finally, even if the change in ICE policy is somehow relevant, voluntary cessation of allegedly illegal conduct does not deprive the Court of its power to hear and determine the case if there is a reasonable expectation that the unlawful activity will recur following the termination of the suit. *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). The County

---

[20] The County makes this argument by merely stating at the end of a footnote, that "[Mr. Creedle's] request for relief would still be subject to dismissal on the ground of mootness for the reasons stated in the motion to dismiss filed by co-Defendants DHS and ICE." D.E. 70 at 8, n.9. The County then cites to the pages of Federal Defendants' motion to dismiss that expand on this argument. *See* D.E. 69 at 9–11.

fails to show that there is no reasonable expectation that the County's unlawful behavior will not recur. *Id.* In fact, the current written ICE policy itself indicates that it is not intended to be legally binding, as it states that the issuance of administrative warrants is not required under the law and could be revoked at any moment. ICE Policy No. 10074.2 ("This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice."); n.2 ("ICE maintains that [new policy] is not legally required"). Mr. Creedle's allegations thus establish that, if the Court dismisses this case as moot, the County may well persist in the behavior that led to his injury.

### CERTIFICATE OF SERVICE

I hereby certify that, on September 21, 2018, I electronically served a true and correct copy of the foregoing on counsel for Defendant via transmission of a Notice of Electronic Filing generated by the CM/ECF system of the U.S. District Court of the Southern District of Florida.

Respectfully submitted,

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS
Florida Bar No. 0131024
CANDELARIO
SALDANA-BRISENO, Law
Student
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576, direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

IRA J. KURZBAN
Florida Bar No. 225517 EDWARD F. RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN WEINGER
TETZELI & PRATT, P.A.

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF FLORIDA, INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF FLORIDA, INC.
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448

2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503