UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

       Plaintiff,

vs.

ALEXANDER MARTINEZ,
Deportation Officer, Immigration and
Customs Enforcement, individually, et al.,

       Defendants.

_____/

### DEFENDANT MARTINEZ'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Alexander Martinez, by and through his undersigned counsel, files his Reply to

Plaintiff's Opposition to Motion to Dismiss First Amended Complaint, and states:

I.      DEFENDANT MARTINEZ HAD PROBABLE CAUSE, OR ARGUABLE PROBABLE CAUSE, TO BELIEVE CREEDLE WAS AN ALIEN SUBJECT TO REMOVAL FROM THE UNITED STATES

In his opposition, Creedle assails the facts relied upon by Officer Martinez in lodging the

detainer.  D.E. 88 at 1-2; 4; 3-10.   To counteract the fact that he was born in Honduras, Creedle

contends that approximately 13% of the United States population are foreign-born.   In response

to Defendant Martinez's argument that the first amended complaint does not allege he knew

Creedle's father was a U.S. citizen. let alone had sufficient knowledge to determine whether his

father satisfied the requirements in 8 U.S.C. § 1401 for transmitting U.S. citizenship to a child

born abroad, Creedle contends Officer Martinez should have known ICE had already determined

he was a U.S. citizen in 2015.  D.E. 88 at 8-9.

Creedle's attempt to isolate each fact, and demonstrate that such fact is not probative, is an

incorrect analysis of probable cause requirements under the Fourth Amendment.    The Supreme Court has observed that, "[b]ecause probable cause 'deals with probabilities and depends on the totality of the circumstances,' it is a 'fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'"    Dist. of Columbia v. Wesby, 138 S.Ct. 577, 586 (2018), citing Maryland v. Pringle, 540 U.S. 366, 371 (2003), and Illinois v. Gates, 462 U.S. 213, 232 (1983). Moreover, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and "[p]robable cause is not a high bar." Id. at 586, citing Kaley v. U.S., 134 S.Ct. 1090, 1103 (2014).

In Wesby, the Supreme Court criticized the lower court for viewing each fact in isolation, rather than as a factor in the totality of the circumstances.  136 S.Ct. at 588.  "Our precedents recognize that the whole is often greater than the sum of its parts – especially when the parts are viewed in isolation." Id., citing U.S. v. Arvizu, 534 U.S. 266, 277-278 (2002).  This "divide and conquer analysis" for reasonable suspicion and probable cause determinations has been rejected by the Supreme Court, as well as lower courts.   In U.S. v. Hunter, 291 F.3d 1302, 1306-07 (11th Cir. 2002), the Eleventh Circuit noted that "reasonable suspicion may exist even if each fact alone is susceptible to an innocent explanation."

Creedle attempts to dismiss his birth in Honduras by claiming that 13% of the U.S. population is foreign-born, implying that many U.S. citizens were born in foreign countries. However, the relevant fact is that most persons born in Honduras are citizens of Honduras, so that Officer Martinez could reasonably believe that Creedle was a Honduran citizen.    While the first amended complaint does not contain a factual allegation that Officer Martinez knew Creedle's father was a U.S. citizen, Creedle attempts to overcome this shortcoming by claiming Officer Martinez "could have discovered [he] was a U.S. citizen based on information known and available

to the agency and the officer at the time." D.E. 88 at 4. Specifically, he claims the inquiry into his citizenship had already been conducted by ICE in 2015 "and therefore should have been known to Defendant Martinez." D.E. 88 at 8-9. Creedle provides no legal authority for the proposition that Defendant Martinez was charged with knowledge of what occurred before an Immigration Judge in New York City in 2015.

Under the collective knowledge doctrine, sometimes referred to as the "Fellow officer Rule," "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is 'some degree of communication between the two.'" U.S. v. Preston, 608 F.2d 626, 632 n.5 (5th Cir. 1979)(citations omitted), and U.S. v. Pineda-Areola, 372 Fed.Appx. 661, 663 (7th Cir. 2010)(probable cause to arrest existed where local police officer was told by ICE agent that Pineda-Areola was in the United States unlawfully). In U.S. v. Villasenor, 608 F.3d 467 (9th Cir. 2010), Villasenor entered the United States at the port of entry at Calexico, California. He was referred to secondary inspection, where a narcotics detecting dog (NDD) sniffed the car but failed to alert. Id. at 470. ICE Agent Torregrosa had previously received information that Villasenor's vehicle might be transporting drugs into the U.S. Shortly after Villasenor entered the United States, Torregrosa spotted his vehicle and began to follow him. Villasenor made several stops at gas stations, talked on his cell phone, but did not purchase any gas. Based on this suspicious behavior, Torregrosa had the local police conduct a traffic stop on Villasenor.

Torregrosa arrived on the scene while Villasenor was given a traffic citation. Id. at 470-71. Villasenor was told he would have to wait, while Torregrosa called for a narcotics detection dog to sniff Villasenor's car. Forty-five minutes later, another officer arrived with a NDD, who sniffed Villasenor's vehicle and alerted to the rear rocker panel. Fifteen packages of cocaine,

weighing 37.36 pounds were discovered.  Id. at 471.

Villasenor moved to suppress the drug evidence.  Id. at 472.  The government argued the search was lawful under the theory that it was an extended border search.   Under that doctrine, a search is conducted following a border crossing at points beyond the first practicable stopping point.  U.S. v. Garcia, 672 F.2d 1349, 1366 (11th Cir. 1982).   Three elements must be met for an extended border search:  (1) the government must prove that the object searched crossed the border: (2) that its condition remained unchanged between the time of crossing and the time of the search; and (3) that there was reasonable suspicion at the time of the search that the object was involved in criminal activities.  Id. at 1366-67.   Villasenor claimed that Torregrosa lacked reasonable suspicion, arguing that knowledge of the failed dog sniff in secondary inspection was imputed to Torregrosa.  Id. at 475.   The district court agreed and suppressed the evidence.  Id. at 472.

On appeal, the Ninth Circuit reversed.   The appellate court specifically rejected Villasenor's argument that knowledge of the failed drug sniff was imputed to Torregrosa under the collective knowledge doctrine.  The court identified two situations in which the doctrine applied.  First, "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned."  Id. at 475, citing U.S. v. Ramirez, 473 F.3d 1026, 1032 (9th Cir. 2007).  Second, "where an officer … with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion … directs or requests that another officer … conduct a stop, search or arrest."  Id. (emphasis in original).  The Ninth Circuit noted, "[i]n both situations, collective knowledge may be imputed only if there has been some 'communication among agents.'"  Id.   The Court found the first situation did not apply since there was no evidence that CBP agents and ICE Agent Torregrosa were working together in an

investigation, or engaged in communication regarding Villasenor.   The second situation did not apply because there was no evidence in the record that CBP agents directed or requested that Torregrosa conduct a stop, search or arrest.   The Court concluded, "[j]ust as we would not permit the government to comb its collective files to establish probable cause or reasonable suspicion, we decline to indulge Villasenor's effort to assemble everything known by agents working on the border in an effort to show that Torregrosa knew too much." Id. at 476.

As applied to this case, there is no allegation that DHS officials involved in Creedle's 2015 removal proceedings were working on an investigation with Officer Martinez, or that some communication between those DHS officials and Officer Martinez occurred.   As to the second situation, there is no allegation that DHS officials involved in the 2015 removal proceedings in New York City directed or requested Officer Martinez to conduct a stop, search or arrest.   In short, there is no basis for imputing to Officer Martinez knowledge about the 2015 proceedings.

There was also a reasonable basis for Officer Martinez to believe Creedle was subject to removal from the United States.    He was arrested by the local police "after an alleged domestic dispute."   D.E. 48, ¶ 47.    Creedle misstates Officer Martinez's position when he states that "Defendant Martinez's statement that he had probable cause to believe Mr. Creedle was deportable based upon the fact that he was 'convicted of a crime' is patently false and inapplicable to this case."   D.E. 88 at 9, citing D.E. 68 at 17.   What Martinez actually said was, "[b]ased on Creedle's arrest for 'an alleged domestic dispute,' defendant Martinez could reasonably believe that Creedle could be amenable to removal from the United States, if he was ultimately convicted of one of the offenses enumerated in § 1227(a)(E)."   D.E. 68 at 17 (emphasis supplied) and 20.

The same 8 U.S.C. § 1227(a)(2)(E)(ii) provides that an alien who violates a court-issued protection order, by engaging in conduct that "involves protection against credible threats of

violence repeated harassment, or bodily injury to the person or person for whom the protection order was issued is deportable." Like many of the grounds of inadmissibility in § 1182(a), and ground of deportability in § 1227(a), § 1227(a)(2)(E)(ii) requires no conviction. Creedle's arrest for a domestic dispute was a reasonable basis for Martinez to believe he could well be amenable to removal, depending on the facts underlying his arrest. Based on his experience as a law enforcement officer, Officer Martinez could reasonably conclude that an assault or battery likely occurred, to justify a police officer's arrest of Creedle. Further, Martinez could also believe that previous incidents of domestic violence occurred, perhaps resulting in a conviction, since that is a not uncommon occurrence in many domestic violence cases. "[P]robable cause must not be judged with clinical detachment, but with a common sense view to the realities of normal life." U.S. v. Agostino, 608 F.2d 1035 (5th Cir. 1979).

II.      OFFICER MARTINEZ DID NOT VIOLATE ANY CLEARLY ESTABLISHED RIGHTS OF WHICH A REASONABLE OFFICER WOULD HAVE KNOWN

In Coffin v. Brandau, 642 F.3d 999 (11th Cir. 2011)(en banc), the Eleventh Circuit explained that, "[o]ur Court looks only to binding precedent – cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claims arose – to determine whether the right in question was clearly established at the time of the violation." Id. at 1013, citing Amnesty Int'l USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009). Creedle argues that Defendant Martinez is not entitled to qualified immunity because he violated Fourth and Fifth Amendment rights that were clearly established. D.E. 88 at 6-11. He cites repeatedly to Morales v. Chadbourne, 793 F.3d 208 (1st Cir. 2015), which involved a Bivens action involving the lodging of a detainer. D.E. 88 at 4, 6, 7, and 8.

Creedle cannot rely upon Morales for what is clearly established law because that decision is not from the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida.

6

He has provided no binding precedent from any of those courts that address the issue of whether an immigration officer can reasonably rely upon a person's birth in a foreign country to conclude that person is an alien.   Nor has he provided case law addressing the specific issue of what facts may be relied upon by an immigration officer in deciding whether a person believe to be an alien may be subject to removal from the United States.   In this case, the first amended complaint alleges Creedle was arrested "after an alleged domestic dispute." D.E. 48, ¶ 47.   Section 1227(a)(2)(E) renders deportable any alien convicted of one of a host of domestic violence offenses, to include stalking, violation of protection orders, and child abuse.   Significantly, violators of protection orders entered by a court are subject to deportation, without a conviction.   § 1227(a)(2)(E)(ii).   Probable cause does not require an officer to resolve conflicts in favor of the suspect.   Bailey v. Bd. of County Commissioners of Alachua Cty., Fla., 956 F.2d 1112, 1119 n.5 (11th Cir. 1992)("An officer is not required … to resolve all inferences and all factual conflicts in favor of the suspect. An officer's decision to arrest a suspect may be objectively reasonable even though that officer has not specifically discarded every probable non-criminal explanation for the conduct that forms the basis for her decision to arrest a suspect.").

Officer Martinez is also entitled to qualified immunity on Creedle's Fifth Amendment due process claim.   He was permitted to rely on Creedle's birth in Honduras to believe he was a Honduran citizen.   There is no basis under the collective knowledge doctrine to impute what occurred in immigration court in 2015, in New York City, to Officer Martinez.   There are no factual allegations supporting the claim that Officer Martinez was subjectively aware of a risk of serious harm to Creedle by lodging the detainer, or that Officer Martinez's actions were beyond mere negligence.

III.   A CAUSE OF ACTION UNDER *BIVENS* SHOULD NOT BE IMPLIED

7

Creedle argues that his <u>Bivens</u> action does not arise in a new context. D.E. 88 at 12-15. In <u>Ziglar v. Abassi</u>, 137 S.Ct. 1843 (2017), the Supreme Court set out a straight forward test for determining when a case presents a new <u>Bivens</u> context: "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." <u>Id.</u> at 1859. Creedle claims that, in <u>Bivens</u> itself, the Supreme Court "allowed the plaintiff to recover damages from federal officers in the same Fourth Amendment context present here: an unreasonable seizure without probable cause." D.E. 88 at 12. If the term "new <u>Bivens</u> context" is to mean anything, the instant case is meaningfully different than a warrantless search of Bivens' apartment and his arrest.   Officer Martinez did not have any face-to-face encounter with Creedle, nor did he assert his authority to physically seize him.  Instead, the cause of action is based solely upon the lodging of a detainer with the jail where Creedle was already confined.     In his attempt to distinguish <u>Alvarez v. ICE</u>, 818 F.3d 1194 (11th Cir. 2016), <u>De La Paz v. Coy</u>, 786 F.3d 367 (5th Cir. 2015), and <u>Mirmehdi v. U.S.</u>, 689 F.3d 975 (9th Cir. 2011), Creedle claims that his "case differs significantly from the cases cited by Defendant Martinez because Mr. Creedle was in County, not immigration, custody." D.E. 88 at 15. Thus, in Creedle's view, his status as a County detainee is not enough to make his case arise in a new context, but it is enough to distinguish it from three appellate court cases finding that Fourth Amendment claims of unlawful immigration detention are not actionable under <u>Bivens</u>.  This argument makes little sense.  If Creedle was in County custody, then he has no claim against Officer Martinez for arresting him without probable cause.

Next, Creedle argues there are no alternative remedies available to him, nor are there any special factors counseling hesitation. D.E. 88 at 15-19. He claims none of the alternative remedies identified by Officer Martinez serves to "deter future constitutional violations of individual officers by providing a mechanism by which they can be held accountable for their unlawful

actions." D.E. 88 at 16 (citations omitted).    Under the terms of the detainer, it only becomes effective when it is served upon the incarcerated individual.  D.E. 68-1 at 2.  There is a Notice to the Detainee which advises the detainee to call the ICE Law Enforcement Support Center, at a toll-free number, "[i]f you believe you are a United States citizen or the victim of a crime."  D.E. 68-1 at 3.  Plainly, a detainee has an avenue to address a claim that a detainer was mistakenly lodged because the detainee is a United States citizen.  Creedle alleges he "told MDCR officials that he is a U.S. citizen."  D.E. 48 at 10, ¶ 53.    Presumably he could have used the toll-free number to advise the ICE Law Enforcement Support Center that he was a U.S. citizen, and that the detainer was improperly lodged.

Creedle contends the habeas remedy identified in Alvarez as an appropriate alternative remedy would not work in his case since he was only detained overnight.  D.E. 88 at 16-17.  Ironically, he complains that the habeas remedy would not work for him because his detention was too short.  Under this odd logic, a longer allegedly unlawful detention would actually favor a Bivens defendant, since the habeas remedy would be more efficacious, thereby militating against a finding of an implied cause of action.

Creedle contends that none of the alternatives identified by Alvarez and De La Paz would deter future constitutional violations since those alternatives do not provide a mechanism by which the federal officer can be held accountable.  D.E. 88 at 16.   The lack of a damages remedy against individual agents does not mean the INA, or the habeas statute, does not adequately protect Creedle's Fourth Amendment interests.    In Alvarez, the Eleventh Circuit observed that "the Supreme Court has made it clear that Congress's failure to provide monetary relief is not dispositive."  818 F.3d at 1211, citing Malesko, 534 U.S. at 69.   In De La Paz, the Fifth Circuit reasoned that, "[t]he INA need not provide an exact equivalent to *Bivens*."  786 F.3d at 377, and

9

noted, "[t]he absence of monetary damages in the alternative remedial scheme is not ipso facto a basis for a *Bivens* action."   Id.   Creedle claims he is a U.S. citizen and was not in removal proceeding when the detainer was lodged.   Consequently, he argues, the remedies under the INA were not available to him.   D.E. 88 at 17.   He is incorrect because disputed claims to U.S. citizenship can, and are, litigated in removal proceedings under the INA.   The crux of Creedle's claim is that he is a U.S. citizen and not subject to the INA.   Had ICE disagreed that U.S. citizenship was transmitted by Creedle's father, that issue would have been litigated in a removal proceeding.[1]

On the issue of special factors counseling hesitation to imply a Bivens remedy, Creedle argues it is "illogical" to contend that implying a cause of action for money damages, for lodging a detainer against him, would exert a chilling effect on ICE officers.   D.E. 88 at 18.   The Fifth and Eleventh Circuits had no problem understanding how the prospect of being held personally liable for money damages for a mistaken judgment could discourage ICE officials from performing their duties:

> And we cannot ignore that this volume of litigation could chill ICE officials from engaging in robust enforcement of this country's immigration laws.  As the Fifth Circuit explained, "Faced with a threat to his checkbook from suits based on evolving and uncertain law, the officer may too readily shirk his duty."

Alvarez, 818 F.3d at 1211, citing De La Paz, 786 F.3d at 379.

Officer Martinez is entitled to qualified immunity.   The first amended complaint should be dismissed for failure to state a claim.

---

[1] Indeed, Congress provided a cause of action in 8 U.S.C. § 1503 for a declaration of United States nationality for individuals who have been denied a right or privilege of U.S. nationality by a department or independent agency, based on a finding that the person is not a national of the United States.   Significantly, the § 1503(a) action is not available where "the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding."   Plainly, Congress intended that issues of U.S. nationality arising in a removal proceeding should be resolved in those proceedings.

Dated:  October 5, 2018                    Respectfully submitted,

                                           ARIANA FAJARDO ORSHAN
                                           UNITED STATES ATTORNEY


                              By:      __s/ Dexter A. Lee_____
                                       DEXTER A. LEE
                                       Assistant U.S. Attorney
                                       Fla. Bar No. 0936693
                                       99 N.E. 4th Street
                                       Miami, Florida   33132
                                       (305) 961-9320
                                       Fax:  (305) 530-7139
                                       E-mail:  dexter.lee@usdoj.gov

                                       ATTORNEY FOR DEFENDANT
                                       ALEXANDER MARTINEZ

                       CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that, on October 5, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.


                                       ___s/ Dexter A. Lee_____
                                       DEXTER A. LEE
                                       Assistant U.S. Attorney

                            SERVICE LIST

              Garland Creedle v. Miami-Dade County, et al.,
                    Case No. 17-22477-CIV-WILLIAMS
              United States District Court, Southern District of Florida

Rebecca Sharpless
Fla. Bar No. 0131024
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida  33146
(305) 284-3576 (direct)
(305) 284-6092 (clinic)
rsharpless@law.miami.edu

ATTORNEY FOR PLAINTIFFS

Dexter A. Lee, AUSA
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANT
ALEXANDER MARTINEZ

12