UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

       Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and
ALEXANDER MARTINEZ, Deportation
Officer, Immigration and Customs
Enforcement, individually,

       Defendants.

_____/

**FEDERAL AGENCY DEFENDANTS REPLY
IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' opposition to the Federal Agency Defendants' motion to dismiss fails to demonstrate any basis for denying their Motion to Dismiss. While Plaintiff asserts that he has standing and the relief he requests is not moot, it is clear that his claims against the Federal Agency Defendants must be dismissed, because Plaintiff cannot seek declaratory relief as to the Federal Agency Defendants as there is no real and immediate possibility that he will again be subject to a detainer.

On the merits, although Plaintiff initially asserted that the issuance of ICE detainers violates the INA and the Fourth Amendment, Plaintiff now concedes the issue, narrowing his complaint by explicitly disclaiming any argument that "the issuance of detainers in general violates the INA or that the issuance of detainers in general violates the Fourth Amendment." Response at 2. Instead, Plaintiff asserts the much more modest—but equally erroneous claim  already rebutted by Defendants in their motion to dismiss—that the issuance of a detainer against him last year violated the INA because Miami-Dade County did not have a formal § 287(g) agreement authorizing ICE to send such detainers

1

or Miami-Dade to cooperate with them. As the Fifth Circuit Court of Appeals and numerous federal district courts have held, that claim is baseless, and so Count IV must be dismissed.

Plaintiff also contends that the issuance of a detainer to him violated the Fourth Amendment as applied to him. But this argument cannot survive a motion to dismiss for the simple reason that as a matter of law, the issuance of a facially valid detainer which articulates its basis for probable cause does not constitute a seizure. Accordingly, Count V also must be dismissed.

## I. Plaintiff lacks Article III standing to seek prospective declaratory relief, and his request for relief is moot.

Plaintiff explicitly disclaims that he seeks relief declaring that the issuance of detainers in general is unlawful. Instead, he seeks relief (as to the Federal Agency Defendants) declaring the issuance of a detainer to him violated his Fourth Amendment rights and exceeded the Federal Agency Defendants statutory authority. Resp. p. 2-3. However, despite the narrowing of his claims, the fact remains that Plaintiff lacks Article III standing to raise these claims for declaratory relief. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or *declaratory* relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999) (emphasis added). Even if a plaintiff has standing to obtain damages to redress *past* injury, to obtain the declaratory relief he is seeking as to the Federal Agency Defendants, he must demonstrate that he is "likely to suffer future injury from" the challenged conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). This he simply cannot do. Not only has Plaintiff failed to allege—let alone demonstrate—*any* likelihood that he will ever again be subject to an ICE detainer under the new policy, such a showing would require him to demonstrate that he is likely to commit more crimes and be arrested. This is simply cannot support standing because Plaintiff is "able—and indeed *required by law*—to prevent such a possibility from occurring." *Spencer v. Kemna*, 523 U.S. 1, 15 (2003) (emphasis added). Courts "assume that [individuals] will conduct their activities within the law and so avoid prosecution and conviction."

*O'Shea*, 414 U.S. at 497. Thus, even though Plaintiff attempts to raise disputes about what ICE's records show and what they showed at the time the detainer was placed, he simply cannot overcome the standing hurdle by alleging he will commit further crimes and will therefore be subject to another detainer.[1] S*ee also Lopez-Lopez v. Allegan Cty.*, Case No. 1:17-cv-786, pp. 5-7 (W.D. Michigan) (attached to Defendants' Motion to Dismiss) (finding plaintiff lacks standing to challenge detention alleged to have been in response to an ICE detainer where he cannot show a likelihood of being detained in the future, relying on *Lyons*).

In attempting to make the showing required to establish standing, Plaintiff alleges that that "this is not the first time Federal Defendants have attempted to place him in removal proceedings." But that is not the showing Plaintiff must make to demonstrate that he faces "a real and immediate threat that he again" will suffer the same harm—being subject to a detainer. *Lyons*, 461 U.S. at 105. The showing he must make is whether a detainer will ever be placed on him again. Even disregarding the evidence put forth by the Federal Agency Defendants that ICE's records now reflect that Plaintiff is a United States citizen, Plaintiff himself can avoid *any* potential injury associated with any hypothetical future detainer by refraining from further criminal conduct and getting arrested again, as ICE policy provides that ICE may issue a detainer *only* when a state or local agency has arrested the alien for a *criminal* offense in an exercise of its independent arrest authority. ICE Policy No. 10074.2 ¶ 2.5.

Furthermore, Plaintiff's requested relief—a mere declaration that ICE's issuance of a detainer exceeded the agency's statutory authority and violated the Fourth Amendment—is moot, because it would have no force or effect going forward given the policy change. Plaintiff seeks nothing more from the Federal Agency Defendants than a declaration that *his* rights *were* violated by the issuance of the detainer in his case, and that the issuance of the detainer to him was ultra vires. Resp. at 2-3. But this is an empty request for relief that would require the Court to issue an advisory opinion. "A

---

[1] The fact that Plaintiff is required by law not to commit further crimes underscores the unnecessary nature of Plaintiffs' request to conduct jurisdictional discovery. Regardless of what any discovery might show, this legal obligation not to commit further crimes remains, and defeats Plaintiffs' standing to seek declaratory relief.

declaration that [] past conduct violated Emory's constitutional rights and Georgia law would [be] nothing more than a gratuitous comment without any force or effect." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (internal quotation omitted). Because Plaintiff cannot, as discussed above, make the required showing that he will suffer injury in the future, and his request for relief is "nothing more than a gratuitous comment without any force or effect," *id.*, his claims against the Federal Agency Defendants must be dismissed.

**II.     Even if Plaintiff had standing and his request for relief was not moot, he fails to state a claim.**

Even if Plaintiff had standing, and his requested relief was not moot, his claims would fail on the merits, because the Federal Agency Defendants do not need a § 287(g) or other written agreement to issue a detainer to Miami-Dade County, and the Federal Defendants did not violate Plaintiff's Fourth Amendment rights by issuing a detainer against him because there was never any seizure.

**A.   ICE does not need a § 287(g) agreement to issue a detainer to Miami-Dade County, and Miami-Dade County does not need a § 287(g) agreement to cooperate.**

As Plaintiff has now explicitly limited his claim, his argument that Federal Agency Defendants exceeded their statutory authority to issue a detainer is based on his contention that Federal Agency Defendants were required to have a written § 287(g) agreement with Miami-Dade County in order to request cooperation through a detainer. This is simply wrong. That is because it is clear that the Federal Agency Defendants' authority to issue detainers to state and local law enforcement is not limited to only those jurisdictions which have so-called § 287(g) agreements with ICE. The INA explicitly envisions local cooperation, and authorizes local officers to "cooperate" with federal officials "in the identification, apprehension, detention, or removal of aliens." 8 U.S.C. § 1357(g)(10)(B). That cooperation expressly does "not[]" "require an agreement," and nothing in the statute suggests that local officers need formal training before cooperating with federal enforcement efforts at the specific request and direction of the federal government, such as the case with detainer requests. *Id.* § 1357(g)(10). Plaintiff's argument was recently rejected by the Fifth Circuit. *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018). As that Court explained, the INA, through section

1357(g)(10)(B), "indicates that Congress intended local cooperation without a formal agreement," and without "a written agreement, training, and direct supervision by DHS . . . in a range of key enforcement functions." *Id.* That is, the issuance of immigration detainers to jurisdictions without § 287(g) agreements, and cooperation by those jurisdictions with immigration detainers, such as what happened in this case, is permitted and envisioned by the INA without any of the formal training and certification requirements necessary for "state and local officials [to] become de facto immigration officers, competent to act on their own initiative" under a formal § 287(g) agreement. *Id.* And as a panel (at the stay stage) of the Fifth Circuit held, "nothing in *Arizona v. United States*, 567 U.S. 387 (2012), prohibits such assistance" and "8 U.S.C. § 1357(g), provides for such assistance." *See City of El Cenizo, Texas v. Texas*, 2017 WL 4250186, \*1-2 (5th Cir. Sept. 25, 2017). *See also Tenorio-Serrano v. Driscoll*, -- F. Supp. 3d --, No. CV1808075PCTDGCBSB, 2018 WL 3329661, at \*9 (D. Ariz. July 6, 2018) ("the Court is not persuaded at this stage that § 1357(g) prohibits Defendants from complying with detainers. Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual. This conduct appears to fall within § 1357(g)(10)(B)."); [2] *Perez-Ramirez v. Norwood*, No. 18-4043-JWL, -- F. Supp. 3d --, 2018 WL 3524606, \*2 (D. Kan. July 18, 2018) (holding that compliance with ICE detainer was lawful). In making this argument, Plaintiff ignores the differences between the actions that a local jurisdiction may take when cooperating with a request from ICE, and when authorized by formal agreements. Under a formal agreement, local officers undergo the training necessary to "perform [the] function of an immigration officer," 8 U.S.C. § 1357(g)(1)—allowing them to enforce immigration law unilaterally, without any triggering request from the federal government to do so. *See Arizona*, 567 U.S. at 409-10 (explaining when DHS "grant[s] that authority to specific

---

[2] Plaintiff argues that this ruling was "tentative." To be precise, it was a ruling on the merits of a motion for preliminary injunction, and the Court found no likelihood of success on Plaintiff's argument to the contrary in that case. Subsequently, Plaintiffs in that action dismissed the case.

officers" through formal agreement). Under section 1357(g)(10), officers not subject to such agreements may still cooperate absent any formal training, so long as such cooperation is not "unilateral," but at the "request, approval, or other instruction from the Federal Government." *Id.* at 410; *see United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (argument to the contrary is "meritless").

Although Plaintiff argues that *Arizona* supports their contention, the Supreme Court in *Arizona* did not purport to define the outer limits of cooperation permitted by section 1357(g)(10). Instead, it listed a number of examples of permissible cooperation that States and localities may undertake without the training and certification requirements of a formal agreement under 8 U.S.C. § 1357(g)(1), including, but not limited to, "arrest[ing] an alien for being removable" if that arrest is made in response to a "request" from the federal government. 567 U.S. at 410. *Arizona* distinguished between such a scenario—which is permissible under section 1357(g)(10)(B)—and the scenario authorized by the law at issue in *Arizona*: "unilateral state action to detain . . . aliens in custody for possible unlawful presence without federal direction and supervision" and without any federal "request" to do so. *Id.* at 410, 413; *accord El Cenizo*, 890 F.3d at 179-80 (state law requiring cooperation with federal detainers "permit[s] no unilateral enforcement activity" because cooperation only occurs following "a predicate federal request for assistance"). While Plaintiff argues that these scenarios "involved local officers playing a supporting role as *federal* officers perform immigration-officer functions," that characterization is fully consistent with this situation—where the Federal Agency Defendants requested supporting assistance from Miami-Dade County through a detainer, which outlined the specific parameters of the request. Such assistance does not require a § 287(g) agreement.

Plaintiffs' argument relying on § 1252c is also unavailing. 8 U.S.C. § 1252c authorizes local officers to make an arrest and detain an alien in a specific circumstance, when: (1) the alien is illegally present in the United States, and (2) has previously been convicted of a felony in the United States and deported or left the United States after such conviction; *provided* that the State or local law enforcement official obtains confirmation of the alien's status, and "only for such period of time as may be required for the Service to take the individual into Federal custody for purposes of deporting

6

or removing the alien from the United States." § 1252c(a). The fact that Congress chose to give officers confronted with an illegally present criminal alien (confirmed by ICE) additional authority to arrest and detain so that ICE can take custody does not change the fact that Congress also envisioned local officers cooperating with immigration enforcement efforts at the request and direction of the United States. § 1357(g)(10). Cooperation at ICE's request, such through detinaers, is manifestly different from cooperation under § 1252c, where officers can affirmatively reach out to ICE for confirmation of an alien's status and ICE's desire to take custody, allowing them to then exercise arrest and detention powers under § 1252c. *See United States v. Vasquez-Alvarez,* 176 F.3d 1294, 1300 (10th Cir. 1999) (holding that both the plain language and legislative history of § 1252c reflect that Congress intended it to displace Federal limitations on the authority of state and local officers to arrest criminal illegal aliens, but that despite that history, the Court could not identify such limitations. Thus, the Court noted that its "interpretation of § 1252c leaves the provision with no practical effect. That reason standing alone is not, however, sufficient for this court to manufacture a purpose for § 1252c by interpreting it to preempt state law.") *See also Tenorio-Serrano,* 2018 WL 3329661, at *9 ("it is noteworthy that all of the authorities relied on by Plaintiff address unilateral arrests by state officers. These include the cases cited by Plaintiff, including *Gonzales,* Plaintiff's arguments regarding the need for training and supervision of state officers under § 287(g) agreements, and Plaintiff's arguments regarding 8 U.S.C. § 1252c.").

Because Plaintiff's arguments that the Federal Agency Defendants acted in excess of their statutory authority are meritless, Count IV must be dismissed.

**B. Plaintiff fails to state a claim because the issuance of his specific detainer did not violate the Fourth Amendment as a matter of law.**

Plaintiff's claims that ICE violated the Fourth Amendment when it lodged a detainer with Miami-Dade County fails, because lodging a detainer does not effect a seizure by the Federal Government. Under well-settled Fourth Amendment principles, unless and until ICE takes physical custody, there is no seizure by the *Federal Government.*

The Fourth Amendment prohibits unreasonable "seizures." Thus, absent a seizure, there can

be no Fourth Amendment violation in Plaintiff's case. For the Federal Government Defendants to effect a new Fourth Amendment seizure of a person, the government must exert its authority to "willful[ly]" to restrain or constrain the person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). There must be "an intentional acquisition of physical control" by a government actor. *Id.* The government action alleged to be a seizure must be "designed to produce" the seizure. *Id.* at 598. "A seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625 (1991) (quoting *Thompson v. Whitman*, 29 Wall. 457, 471 (1874)).

Thus, regardless of whether DHS and ICE had probable cause to issue the detainer, as Plaintiff disputes, the relevant question is whether the act of issuing a detainer effects a Fourth Amendment seizure. It does not, for the simple reason that detainers are simply requests. "All Courts of Appeals to have commented on the character of ICE detainers refer to them as 'requests' or as part of an 'informal procedure.'" *Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014). Thus, cases addressing whether a detainer request effects a Fourth Amendment seizure have emphasized that the detainer does not itself cause the seizure, and that such a seizure instead requires a further, intentional act. *See Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011) ("[D]etainer alone does not cause imprisonment or a seizure by ICE. *Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE.*") (emphasis added); *Nasious v. Two Unknown B.I.C.E. Agents*, 657 F. Supp. 2d 1218, 1223, 1225 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010) ("Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer," and "could not, as a matter of law, constitute a restraint on or deprivation of a liberty"); *see also Hendrickson v. Thurston Cty.*, 2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008) (rejecting Fourth Amendment claim that existence of a warrant on a separate charge "influenc[ed] third-party bail bondsmen to refuse to issue a bond to assist the individual in posting bail"). Indeed, for that reason in the related habeas context, multiple circuits have held "[t]he filing of [a] detainer, standing alone, [does] not cause [the petitioner] to come within the custody of [immigration officials]." *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 623 (11th Cir. 2013) (citing *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990)). *See also Garcia v. Taylor*, 40 F.3d 299, 303 (9th

8

Cir. 1994) (the issuance of a "bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available."); *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (collecting cases and agreeing that absent an order of removal, "prisoners are not 'in custody' for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them"). It follows *a fortiori* that the issuance of a detainer request alone, without further action by *ICE*, does not "seize" an alien with respect to the Federal Agency Defendants. Rather, a seizure occurs, if at all, when ICE *arrests* the alien, which never happened here. Thus, because there was no seizure, there can be no claim for a Fourth Amendment violation against the Federal Agency Defendants.

Likewise, the mere fact that ICE requests through a detainer to be notified of an alien's impending release, or even for an alien to be detained at some future point in time so ICE may take custody, does not render the issuance of a document titled a detainer a seizure, let alone an unreasonable one. A federal request for notification is "simply an administrative mechanism that ensure[s] that upon the completion of his state criminal matter, [the alien] [will] be transferred to federal custody." *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014). Such requests "do not limit [the receiving agency's] discretion" in any way. *Garcia*, 40 F.3d at 303. "[S]tate charges [remain] the impetus for the entire duration of [any] pretrial detention" in such circumstances. *Juarez-Velasquez*, 763 F.3d at 436. A locality's "responding to requests for information about when an alien will be released from their custody," in turn, is a permissible act of cooperation with the federal government and raises no Fourth Amendment—or other constitutional—concerns. *Arizona*, 567 U.S. at 410.

And even if the issuance of a detainer somehow was a seizure, even though no federal officer effects an arrest or causes a detention at the time the detainer is issued such seizures are fully consistent with the Fourth Amendment. "The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). That any seizure would be reasonable and therefore consistent with the Fourth Amendment is true whether effected by the federal government or a state or local officer at the federal

government's request. *See El Cenizo,* 890 F.3d at 187; *see also Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("The Fourth Amendment's meaning [does] not change with local law enforcement practices."). Thus, where, as here, ICE issues a facially valid detainer evidencing probable case, any seizure is fully consistent with the Constitution because "an ICE-detainer request evidences probable cause of removability in every instance." *El Cenizo,* 890 F.3d at 187. Accordingly, as the Fifth Circuit explained, "[c]ompliance with an ICE detainer [] constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts." *Id. Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [an ICE agent's] probable cause determination for the detainer").

Moreover, the Fifth Circuit also rejected the argument "that state and local officers may only arrest individuals if there is probable cause of criminality." *Id.* Rather, the court held, seizures based on probable cause of a civil violation are consistent with longstanding precedent, and there is no requirement that an arrest may not occur "absent probable cause that a crime has been committed." *See id.* at 188 (collecting cases). As the Court explained, the contention to the contrary is "patently at odds with immigration law and procedure; civil removal proceedings necessarily contemplate detention absent proof of criminality." *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)). Thus, any suggestion that ICE effects an unlawful seizure by issuing a detainer to a state or local entity that according to Plaintiff cannot effect a civil arrest is baseless. Accordingly, Count V must be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims as to the Federal Agency Defendants should be dismissed, and the Federal Agency Defendants should be dismissed from this case.

Dated:  October 5, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

Attorneys for the Federal Defendants

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive notices of electronic filing.

Dated:  October 5, 2018                Respectfully submitted,

                                              */s/ Lauren C. Bingham*
                                              Lauren C. Bingham
                                              Trial Attorney
                                              U.S. Department of Justice, Civil Division
                                              Office of Immigration Litigation
                                              District Court Section

**SERVICE LIST**
Creedle v. Miami-Dade County, et al.
CASE NO. 1:17-cv-22477-KMW

**Attorneys for Plaintiff, Garland Creedle**
Rebecca Sharpless and Romy Louise Lerner
University of Miami School of Law
Immigration Clinic
1311 Miller Drive, Suite E-273
Coral Gables, Florida 33146
(305) 284-3576,
(305) 284-5448
rsharpless@law.miami.edu
rlerner@law.miami.edu

Ira J. Kurzban, Edward F. Ramos,
Ian K. Shaw, and Kevin A. Gregg
Kurzban, Kurzban Weinger
Tetzeli & Pratt, P.A.
2650 SW 27th Avenue, 2d Floor
Miami, FL 33133
(305) 444-0060
ira@kkwtlaw.com
eramos@kkwtlaw.com
ishaw@kktlaw.com
kgregg@kkwtlaw.com

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue
Tampa, FL 33607
(813) 288-8390
akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4500 Biscayne Blvd., Ste. 340
Miami, FL 33137
(786) 363-2700
nabudu@aclufl.org

**Attorney for Miami-Dade County**
Michael B. Valdes
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Ste. 2810
Miami, Florida 33128
(305) 375-5151
mbv@miamidade.gov

**Attorney for U.S. Dept. of Homeland
Security, U.S. Immigration and Customs
Enforcement**
Lauren C. Bingham
U.S. Dept. of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-4458
(202) 598-8085
Lauren.c.bingham@usdoj.gov

**Attorney for Officer Martinez**
Dexter A. Lee
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9320
dexter.lee@usdoj.gov