**United States District Court**
**Southern District of Florida**
**Case No. 17-22477-Civ-Williams/Torres**

**Garland Creedle**,

      Plaintiff,

  v.

**Miami-Dade County, et al.,**

      Defendants.

---

**Defendant Miami-Dade County's Reply in Support of Its Motion to Dismiss**

This case concerns the intersection of the federal government's "broad, undoubted power over the subject of immigration," *Arizona v. United States*, 567 U.S. 387, 394 (2012), and the valuable role that state and local governments can serve in assisting the federal government with those responsibilities, *see id.* at 410. Under applicable case law, statutes, regulations, and guidance, the only general limitation imposed on the way in which that assistance can be provided is that the state or local government must actually be *assisting* the federal government in the exercise of their duties and not unilaterally enforcing immigration laws or acting outside the scope of the federal government's direction. *See id.* (noting that cooperation does not include "the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government."); 8 U.S.C. § 1357(g) (providing, generally, that a local officer's performance of immigration functions "shall be subject to the direction and supervision of [DHS]").

Miami-Dade County's alleged conduct in this case falls squarely within the ambit of that space. To wit, the federal government first acts pursuant to its authority to detain removable aliens and issues a detainer request seeking assistance with that task, *see* 8 C.F.R. § 287.7, and then Miami-Dade County, upon receipt of a facially valid detainer, responds to that request for assistance in accordance with (1) the express terms of the detainer form and (2) the County's policy to "cooperat[e] with the federal government to the extent permissible by law" and "require the federal government to show probable cause on all immigration detainer requests," *see* D.E. 11-2 at 6.

Notwithstanding these facts, Plaintiff Garland Creedle attempts to portray Miami-Dade County's policy as an impermissible and unauthorized "blanket policy of honoring immigration detainers." D.E. 89 at 2. But, in so doing, he paints this picture with overly broad brush strokes that misapplies case law, fails to fully quote both the relevant statutes and the relevant policy, and oversimplifies the issues.[1] Accordingly, his claims against Defendants ought to be dismissed with prejudice.

## I.    Declaratory relief is not appropriate in this case

Since the outset of this litigation, Miami-Dade County has argued that Mr. Creedle's "allegations, even if assumed to be true, provide [him] with nothing more than a potential tort claim against the official who issued the immigration detainer." D.E. 11 at 2. This should be a simple case with limited issues. Regrettably, Mr. Creedle erroneously insists that it is not.

---

[1] For example, Mr. Creedle makes reference to Miami-Dade County's policy on immigration detainers on at least a dozen occasions in his Response but displays a seemingly inveterate reluctance to acknowledge that the County's policy requires the federal government to show probable cause on immigration detainers in order for Miami-Dade County to offer its cooperation. *See* D.E. 89.

Instead, after another round of extensive briefing, Mr. Creedle continues to maintain that he is entitled to seek declaratory relief for both past and future conduct. But the inherently prospective nature of declaratory relief bars the former, *see Emory v. Peeler*, 756 F.2d 1547 (11th Cir. 1985), and his inability to establish a substantial likelihood of suffering imminent harm prohibits the latter, *see Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006). These are the facts: (1) Mr. Creedle is a U.S. citizen; (2) After he was interviewed by an ICE official, the detainer that was issued against him was withdrawn and he was immediately released; (3) The ICE database demonstrates that he is a U.S. citizen; (4) Detainers are not to be issued under such circumstances. *See generally* D.E. 70 at 6-9.

Under these facts, any future interaction between Mr. Creedle, Miami-Dade County, and ICE based upon an immigration detainer is wholly speculative, not imminent, and, above all else, highly unlikely. Consequently, it is not necessary for this Court to indulge Mr. Creedle's unentitled request to wade into broader questions regarding Miami-Dade County's cooperation with immigration detainers generally to resolve the allegations in this case specifically.

Yet, Mr. Creedle insists that "the unlawful conduct alleged is likely to recur." D.E. 89 at 18. He, however, provides no facts or arguments to help explain why. And additional facts recently discovered by Miami-Dade County explains why such support is lacking.[2] In short, Mr. Creedle's own experience during this litigation betrays his argument here.

This suit was filed on July 5, 2017. D.E. 1. It concerned a sequence of events that began when Mr. Creedle was arrested on March 12, 2017 on charges of aggravated battery on a pregnant woman and ended when he was released on March 14, 2017. D.E. 70 at 4. Throughout this litigation, Mr. Creedle has argued that he requires prospective declaratory relief because it is reasonably likely that he could be arrested again and briefly held pursuant to another detainer request, D.E. 89 at 18. But those concerns are not reasonable because, as it turns out, Mr. Creedle has already been arrested again and he was not the subject of a detainer request.

On February 4, 2018 (seven months after this suit began and four months before the Amended Complaint was filed), Mr. Creedle was arrested for a second time on charges of aggravated battery on

---

[2] Undersigned counsel for Miami-Dade County only became aware of this information last night when conducting a search on the Clerk of Court's website to verify a citation to Mr. Creedle's 2017 criminal case. As soon as the information was verified this afternoon, undersigned counsel spoke with opposing counsel to see if they would rescind their request for declaratory relief in light of this new information thereby mooting the need to brief this matter. However, because (a) communication was only made late Friday afternoon, (b) opposing counsel stated that she would understandably need time to raise this issue with her co-counsel and (c) that could not occur prior to the deadline for this Reply, Miami-Dade County was advised to proceed with briefing the issue.

3

a pregnant woman. *See* D.E. 100-1 at 2.[3] While in Miami-Dade County's custody on those charges, no detainer was logged, and he was released the very next day after posting bond. *See* D.E. 100-1.[4]

Accordingly, there is no factual basis to support Mr. Creedle's contention that "the unlawful conduct alleged is likely to recur," D.E. 89 at 18. Instead, all of the evidence submitted by the defendants seeking dismissal under Fed. R. Civ. P. 12(b)(1) shows the opposite. Therefore, all of Mr. Creedle's requests for declaratory relief should be dismissed.[5]

## II.    Miami-Dade County had the requisite authority to detain Mr. Creedle

In his Response, Mr. Creedle argues that "[n]either federal nor state law authorized the County's re-arrest and detention of Mr. Creedle after he posted bond in his criminal case." D.E. 89 at 2. But Miami-Dade County is authorized to assist the federal government under both.

### a.   Miami-Dade County is authorized under federal law to honor detainers

Under 8 U.S.C. § 1357(g), the federal government has authorized state and local government officials to cooperate with federal immigration enforcement. Both parties agree at least on this much. *See* D.E. 70 at 11-12; D.E. 89 at 3. They quickly differ, however, on how this statute should be interpreted. For Mr. Creedle, section 1357(g) merely "authorizes federal immigration officials to **contract** with [law enforcement agencies]" and, therefore, a written agreement is required if Miami-Dade County seeks to cooperate with direct requests from federal immigration officials. D.E. 89 at 3-4 (emphasis added). Put simply, the plain language of the statute says otherwise.

Section 1357(g) expressly provides that cooperation by state or local officials can come in one of two forms: (1) a "written agreement" with the state or local government or (2) cooperation, absent a written agreement, "in the identification, apprehension, **detention**, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(1), (10) (emphasis added). As such, Miami-Dade County's policy to provide assistance by honoring detainers supported by probable cause lies within the permissible cooperation in § 1357(g)(10) because it is cooperation in the detention of aliens not lawfully present in the United States. *See City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018) (holding that local governments may comply with detainer requests because 1357(g) "expressly allows

---

[3] A copy of the inmate information forms for each of Mr. Creedle's arrests are attached as Exhibit 1.

[4] By way of comparison, the inmate information from Mr. Creedle's 2017 arrest includes the description "Hold for Immigration" whereas the inmate information from his 2018 arrest does not. *See* Ex. 1.

[5] Although the factual record, standing alone, dooms Mr. Creedle's claims for declaratory relief, the case law that he relied upon is similarly insufficient. *See* D.E. 25 at 8-9 (explaining why *Fla. Right to Life v. Lamar* and M*assachusetts v. EPA* are distinguishable).

cooperation in immigration enforcement outside those agreements"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164-65 (8th Cir. 2014) (holding—in a case dealing with a state trooper that detained a removable alien "until the Border Patrol agent could take custody"—that "no written agreement is required for a state official to cooperate with [DHS] in identifying apprehending, and detaining any individual unlawfully present in the United States."); *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010); *Arizona*, 567 U.S. at 456 ("§ 1357(g)(10)(B) makes clear that States and municipalities need not enter into those agreement 'otherwise to cooperate … in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.'"); *Santos v. Frederick Cty. Bd. of Comm'rs.* ("Santos I"), No. L-09-2978, 2010 WL 3385463, at *3 (D. Md. Aug. 25, 2010) (holding that local law enforcement officers could cooperate by honoring detainers even in the absence of a formal agreement).[6]

In attempting to further disavow the plain language of the statute, Mr. Creedle also argues that § 1357(g)(10) must be read narrowly to exclude Miami-Dade County's actions because "a detainer request goes beyond mere 'cooperation.'" D.E. 89 at 4. In his view, "cooperation" is limited to only "'include situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to allow officials to gain access to detainees held in state facilities.'" D.E. 87 at 13 (quoting *Arizona*, 567 U.S. at 410).[7] Although the language in 1357(g)(10) imposes no such restriction and the plain meaning of 'cooperate' implies no such limit, Mr. Creedle reads this limitation into the statute by misquoting *Arizona*, 567 U.S. at 410. In *Arizona*, the Supreme Court did not purport to establish a definitive listing of all that 1357(g)(10) permits. Instead, it was providing an illustrative sampling of the types of cooperation that could be provided and those examples came directly from a DHS memorandum that explicitly

---

[6]   Mr. Creedle also incorrectly states that *Santos v. Frederick Cty. Bd. of Com'rs* ("Santos II"), 725 F.3d 451, 463 (4th Cir. 2013) holds that 8 U.S.C. § 1357(g)(8) does not apply absent a written agreement. *See* D.E. 89 at 4, n. 4. In reality, the Fourth Circuit only held that 1357(g)(8) did not apply in this case because the deputies acted outside the scope of their written agreement with ICE and had not been given direction by federal officials for their actions. *See Santos* II at 463. Moreover, Mr. Creedle's claim that the other provisions of 1357(g) only apply pursuant to written agreements is further undermined by subsequent discussion in *Santos* II. *Id.* at 464 (noting that § 1357(g)(3) applies "[w]hen enforcing federal immigration law pursuant to Section 1357(g)" with or without a written agreement).

[7]   Notably, Mr. Creedle's interpretation of 1357(g) is directly at odds with the federal government's own interpretation of the statute and the type of cooperation that it permits. *See* D.E. 69 at 3-4, 13-14; D.E. 100-2.

described this list as a "non-exhaustive." *See* D.E. 100-2 at 2.[8]

More importantly, the DHS Memorandum cited approvingly by the Supreme Court in *Arizona* and relied upon by Mr. Creedle, when read in full context, endorses Miami-Dade County's position. That Memorandum is entitled "Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters" and it was issued by the Department of Homeland Security pursuant to its authority under 8 U.S.C. § 1103(a)(3) to establish regulations and issue instructions.[9] In it, the Department of Homeland Security notes:

> The Department interprets the term 'cooperate' in [ ] 1357(g)(10(B) to mean **the rendering of assistance by state and local officers to federal officials, in the latter officials' enforcement of the INA, in a manner that maintains the ability to conform to the policies and priorities of DHS and that ensures that individual state and local officers are at all times in a position to be—and, when requested, are in fact—responsive to the direction and guidance of federal officials charged with implementing and enforcing the immigration laws**."

D.E. 100-2 at 8 (emphasis in original). The DHS Memorandum goes on to further state that, consistent with § 1357(g)(10), "DHS may choose to confine its role simply to establishing a general program under which a state of local officer may act repeatedly in a manner that is consistent with that program and with the policy or direction set by the Federal Government as it relates to the program." *Id.* at 10. Thus, Miami-Dade County's policy to cooperate with the federal government to the extent permissible by law and, therefore, to provide the precise assistance expressly requested by a federal immigration official via a detainer request—and nothing more—clearly falls within the scope of that definition.

In addition to the authority conferred by 8 U.S.C. 1357(g)(10), Miami-Dade County also argued that local assistance on detainers is expressly contemplated under applicable federal regulations. *See* 8 C.F.R. § 287.7. On its face, 8 C.F.R. § 287.7 provides a clear delineation as to the purpose of detainers, who has authority to issue them, and how local agencies should proceed should they choose to honor the request. In particular, § 287.7(d) provides that "[u]pon determination by [DHS] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours … in order to permit assumption of custody by [DHS]."

Notwithstanding this clear language contemplating local assistance on detainers, Mr. Creedle claims that the regulation does not authorize local officials to honor detainers and that the regulation instead simply "instructs jurisdictions in receipt of an immigration detainer [to] limit the length of any

---

[8]   A copy of the memorandum referenced in *Arizona*, 567 U.S. at 410, is attached as Exhibit 2.
[9]   Because this memorandum was issued pursuant to such authority, it is entitled to *Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 226-29 (2001)

detention to a 'period not to exceed 48 hours.'" D.E. 89 at 5.[10] However, if there is no federal authority to honor detainers as Mr. Creedle claims, then what purpose would these instructions and limits serve? Indeed, Mr. Creedle's position creates a peculiar framework whereby (1) federal law and regulations authorize federal immigration officials to request assistance from state and local governments (with or without a written agreement) and also impose limitations on the length of time in which that assistance can be provided but (2) those same laws and regulations evidently do not allow the state and local governments to provide that assistance. It simply defies credulity that the federal government intended to achieve such an illogical system. *See Jay v. Boyd*, 351 U.S. 345, 360 (1956) ("We must read the body of regulations [for the Immigration and Nationality Act] so as to give effect, if possible, to all of its provisions.").

Lastly, Mr. Creedle argues that Miami-Dade County was not entitled to honor the detainer request because "even federal immigration agents may make warrantless arrests of persons suspected of civil immigration violation only in narrow circumstances" that did not apply in this case. D.E. 89 at 5. While Mr. Creedle is certainly correct that it is incumbent upon federal immigration officials to make proper determinations prior to seeking assistance in conducting a warrantless seizure, Miami-Dade County as a matter of law is entitled to presume that the federal immigration officials have made those requisite determinations prior to issuing a detainer. *See Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) (noting that officers providing assistance may "fill in any gaps in the account with reasonable inferences premised on [the fellow officer] acting in a constitutional manner and in good faith."). In addition, the federal government has acknowledged that it deems its authority to issue detainers as an extension of its statutory authority to make warrantless arrests. *See* Defendants' Memorandum in Support of Opposition to Plaintiffs' Motion for Summary Judgment, *Moreno v. Napolitano* ("Moreno I"), No. 1:11-cv-05452 (N.D. Ill. Feb. 9, 2016) D.E. 218 at 12. Therefore, the presumption that federal officials have made all determinations required for a warrantless arrest prior to issuing a detainer is even more well-founded.[11]

---

[10]   In support, Mr. Creedle relies on *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014). D.E. 19 at 5, n. 6. However, *Villars* dealt with a substantively distinct set of facts. Notably, "the detainer in Villars's case was not even addressed to the [ ] Defendants" and it also had no averment as to probable cause because this case dealt with an older version of the I-247 form requesting that the subject be detained for investigatory purposes. *Id.* at 797, 802.

[11]   In his Response, Mr. Creedle points to *Moreno v. Napolitano* ("Moreno II"), 213 F. Supp. 3d 999, 1006 (N.D. Ill. 2016) as support because it held that ICE agents had previously failed to "make any determination at all with respect to [flight risk]" before issuing the detainer request." But the prior conduct described in *Moreno* II is of no legal moment given the inference and good faith

### b. Miami-Dade County is authorized under state law to honor detainers

Having established federal law authority, we now to Mr. Creedle's claim that the County lacks state law authority to honor detainers supported by probable cause to the extent permitted by law.

First, Mr. Creedle argues that Fla. Stat. § 950.03 is not applicable because "Mr. Creedle was never a prisoner lawfully committed to the County's charge under the authority of the United States because he was never arrested by the federal government." D.E. 89 at 7. However, in *Gethers v. State*, 838 So. 2d 504 (Fla. 2003), the Florida Supreme Court described the difference in an inmate's status before and after a detainer is acted upon. Specifically, a detainer that had been lodged—but not acted upon— does not cause the inmate to be "in custody pursuant to the detainer." *Id*. However, "if the prisoner is subject to release but is being held because a detainer has been lodged" then "**the person is in custody pursuant to the detainer.**" *Id*. (emphasis added). *See also Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591, 593 (Fla. 4th DCA 2008) (stating that when an inmate subject to a detainer request "posts bond … he will be released from state custody and then booked on [a] federal immigration detainer" whereby "the sheriff will not be holding [him] pursuant to state authority **but pursuant to federal authority**").[12]

Second, Mr. Creedle argues that Fla. Stat. § 901.18 is similarly inapplicable because the application of this statute to this case would be "untenable" based upon a discussion between undersigned counsel and the Court at May 16, 2018 hearing. D.E. 89 at 8. But that discussion merely addressed this Court's skepticism as to the **wisdom** of that statute not its **validity**. Indeed, Mr. Creedle takes issue with Miami-Dade County's interpretation of § 901.18, D.E. 89 at 8, only to provide a nearly identical description a few sentences later, *id*. at 9 (acknowledging that § 901.18 authorizes officers to request assistance in making arrests). Thus, Mr. Creedle's argument is less about whether authority exists—it does—and more about raising questions as to how such authority might be exercised. That, however,

---

presumption that *Wilkerson* entitles Miami-Dade County to make. Moreover, the implication of Mr. Creedle's argument (i.e. that ICE agents would continue to not make these necessary determinations prior to issuing detainers) is belied by subsequent developments in that case and ICE's own policy. *See* Judgment, *Moreno v. Napolitano* ("Moreno III"), No. 1:11-cv-05452 (N.D. Ill. Nov. 28, 2016) D.E. 239 at 2 (permanently enjoining the ICE Chicago Field Office from issuing detainers unless the ICE official has probable cause that a subject is a non-removable alien and either a warrant or reason to believe the individual is likely to escape); D.E. 70 at 3 (noting that pursuant to ICE Policy No. 10074.2 every immigration detainer must be accompanied by an administrative warrant issued by an authorized immigration official as of April 2, 2017).

12 Similarly, *Orozco v. U.S. I.N.S.*, 911 F.2d 539 (11th Cir. 1990) and other Eleventh Circuit decisions cited at D.E. 89 at 7 do not provide the support that Mr. Creedle intends because those cases only dealt with the effect of "the filing of a detainer" not what occurs once that detainer is honored.

is the basis for a policy disagreement not a legal challenge.

In addition, Mr. Creedle misapplies the relevant provisions of Fla. Stat. § 901.18 when he asserts that "nothing in this statute confers authority on correctional officers to arrest Mr. Creedle for a civil immigration violation pursuant to an immigration detainer." D.E. 89 at 9. While technically true, Mr. Creedle's statement is legally irrelevant because § 901.18 does not need to provide specific grants of authority because it states, as a general matter, that "[a] person commanded to aid a peace officer **shall have the same authority to arrest as that peace officer** and shall not be civilly liable for any reasonable conduct in rendering assistance to that officer" (emphasis added). Thus, when Miami-Dade County is in receipt of a facially valid detainer from the federal government that seeks assistance, Miami-Dade County, under the express terms of § 901.18, is imbued with the same authority to arrest as the immigration official who lodged the detainer.[13]

But, even putting aside the express statutory authority referenced above, there is a more fundamental reason why Mr. Creedle's claims fail: he misunderstands the role of Miami-Dade County's Corrections Department with respect to detaining inmates, generally. Correctional officers, by definition, are officials who have the authority to detain individuals on behalf and upon the authority of fellow law enforcement officials. More specifically, in the jail setting, no inmate is being detained on the correctional facility's independent arrest authority; they are in custody based upon the authority of a law enforcement official that has requested that the jail maintain custody of that individual on their behalf. Here, federal officials authorized to both detain removable aliens and issue immigration detainers seeking local assistance in that effort, provided Miami-Dade County with a facially valid detainer concerning subjects that already happened to be in its custody on local, criminal charges. Notably, these detainers also represented that there was probable cause that the subject was a removable alien. And, the immigration detainer did nothing more than ask Miami-Dade County to maintain custody of that individual on behalf and on the authority of the federal government until federal officials could arrive and assume custody themselves. *See id.* That type of cooperation clearly lies within the scope of authority given to correctional facilities.

### III.  Mr. Creedle fails to allege a proper policy and practice to establish a *Monell* claim

In their Motion to Dismiss, Miami-Dade County argued that "any constitutional violation that Mr. Creedle may have suffered lies with the federal government's alleged error in identifying Mr. Creedle

---

[13]  *See Mauldin v. United States*, 328 F.2d 779 (5th Cir. 1964) (applying Florida law relating to "peace officers" to the actions of a federal agent).

as a removable alien" not Miami-Dade County's policy to cooperate with federal officials to the extent permitted by law and when supported by probable cause. D.E. 70 at 14. Nevertheless, Mr. Creedle attempts to keep his *Monell* claim against Miami-Dade County alive by arguing that the County's decision to honor detainers—and not the mistake made by the entity issuing the detainer—was the moving force behind his alleged harm. In so doing, Mr. Creedle misunderstands the relevant causation analysis for *Monell* claims.[14] *See City of Springfield v. Kibbe,* 480 U.S. 257, 267-268 (1987).

He also incorrectly states that he does not need to establish "deliberate indifference" to state a *Monell* claim. In *Am. Fed'n of Labor & Cong. of Indus. Organizations v. City of Miami*, the Eleventh Circuit expressly held that "[i]f a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." 637 F.3d 1178, 1187 (11th Cir. 2011) (internal quotation omitted). Here, the County policy is to "cooperate with the federal government to the extent permissible by law" and "require the federal government to show probable cause on all immigration detainer requests." D.E. 70-4 at 6. There is nothing in the language of that policy that is facially unlawful. And, given that fact, Mr. Creedle cannot show deliberate indifference  given that: (1) the County limits cooperation "to the extent permissible by law" and upon a showing of probable cause; (2) this cooperation is in line with the guidance provided in the DHS Memorandum, D.E. 100-2; (3) federal law authorizes local cooperation in the detention of removable aliens absent a written agreement; (4) the specific cooperation requested is codified in applicable regulations; (5) the federal request was directed at Miami-Dade County; (5) Miami-Dade County did not exceed the scope of that request; (6) there is no binding precedent from the Eleventh Circuit prohibiting this form of cooperation; (7) there is considerable authority from multiple courts, including federal appellate courts, that have approved of cooperation under these terms.

## IV.   The fellow officer rule applies in this context

In his Response, Mr. Creedle argues that the "fellow officer" rule does not apply. D.E. 89 at 14. First, the Fifth Circuit has already disagreed with his argument. *See El Cenizo*, 890 F.3d at 187. Second, his argument relies on cases that are either taken entirely out of context or misapplied.

For example, Mr. Creedle cites to *United States v. Webster*, 750 F.2d 307, 323-24 (5th Cir. 1984) for the proposition that the fellow officer rule does not apply if "insufficient information was

---

[14] Part of that misunderstanding lies in the fact that, in addition to the misapplication of other case law, one of the cases that Mr. Creedle cites, *Martinez v. California*, 444 U.S. 277 (1980), D.E. 89 at 12, does not deal with *Monell* liability.

communicated." *Id.* In actuality, however, *Webster* does not deal with the quality or quantity of the information received; it deals with the time in which it was received. In *Webster*, the dispositive fact was that the relevant information was not shared until *after* the arrest was made. *See* 750 F.2d 307.

Similarly, Mr. Creedle's reliance on *United States v. Ventresca*, 380 U.S. 102, 111 (1965) and *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985) is misplaced. Those decisions simply held that the relevant communication met the collective knowledge standard; neither of those decisions establish that communication by the transmission of an immigration detainer is insufficient. And other more applicable decisions support Miami-Dade County's position. *See United States v. Impson*, 482 F.2d 197, 199 (5th Cir. 1973) ("We do not question in the least the correctness of the principle that the searching-arresting officer can act on the basis of information of which he has no personal knowledge which has been relayed to him by police transmission facilities."); *Webster*, 750 F.2d at 323 (extending collective knowledge doctrine to cases "where the arresting officer has no personal knowledge of *any* of the facts establishing probable cause, but simply carries out directions to arrest given by another officer who does have probable cause").

Mr. Creedle also argues that the fellow officer rule cannot apply because he "had informed the County that he was a U.S. citizen." D.E. 89 at 14. But a self-serving statement as to one's citizenship, absent objective evidence or additional corroboration,[15] cannot require a correctional facility to disregard the representations of law enforcements officials. Indeed, if Mr. Creedle's contention was valid, then the most common phrase at the County jail ("I'm innocent.") would be all that one would have to say to ensure their release. *See Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (holding that there is "no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979) ("[W]e are quite certain that a detention of three days over a New Year's weekend [notwithstanding the accused's protests of mistaken identity] does not and could not amount to such a deprivation. … The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").

---

[15] Mr. Creedle cites to *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297 (11th Cir. 2018) and *Kingsland v. City of Miami*, 382 F.3d 1220, 1226–27 (11th Cir. 2004). In both of those cases, however, the officers ignored objective evidence. In *Cozzi*, it was the subject's lack of tattoos. In *Kingsland*, it was the officer's failure to conduct any search of the vehicle for drugs and only charging the subject with a drug offense for cannabis after the subject passed a breathalyzer test.

## Conclusion

For the reasons stated above and in the Defendants' Motion to Dismiss, D.E. 70, Miami-Dade County requests that Mr. Creedle's claims be dismissed.

Dated: October 5, 2018

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Michael B. Valdes*
Michael B. Valdes
Assistant County Attorney
Florida Bar No. 93129
Phone: (305) 375-5151
Fax: (305) 375-5634
E-Mail: mbv@miamidade.gov

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on October 5, 2018 on all counsel or parties of record in the manner indicated on the Service List below.

/s/ *Michael B. Valdes*
Assistant County Attorney

## Service List

### Counsel for Plaintiff

Rebecca Sharpless
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Telephone: (305) 284-3576
E-mail: rsharpless@law.miami.edu

Ira Kurzban, Edward Ramos, and Ian Shaw
Kurzban Kurzban Weinger Tetzeli & Pratt P.A
2650 SW 27th Avenue, Second Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Telephone: (305) 444-3503

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone: (813) 288-8390
E-mail: akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (305) 786-363-2700
Fax: (786) 363-1448
E-mail: nabudu@aclufl.org

*Electronic Service*

### Counsel for Defendants

Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Fax: (305) 375-5634
E-mail: mbv@miamidade.gov
    orosent@miamidade.gov
*No service necessary*

### Others Receiving Service

Erez Reuveni and Vinita Andrapalliyal
U.S. Dept. of Justice, Civil Division
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085

Lesley Blackner
340 Royal Poinciana Way, Suite 317-377
Palm Beach FL 33480
Telephone: (561)659-5754
E-mail: lesleyblackner@gmail.com

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
E-mail: chajec@irli.org

*Electronic Service*

13