UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-CIV-22477-WILLIAMS

GARLAND CREEDLE,

     Plaintiff,

vs.

MIAMI-DADE COUNTY, *et al.*,

     Defendants.

_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS MATTER** is before the Court on Defendant Alexander Martinez's motion to dismiss (DE 68), Defendants United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement's ("ICE") motion to dismiss (DE 69), and Defendant Miami-Dade County's ("County") motion to dismiss (DE 70). Plaintiff Garland Creedle ("Mr. Creedle") filed a response in opposition to each motion. (DE 87; DE 88; DE 89). Defendants replied. (DE 100; DE 101; DE 102). For the reasons below, Martinez's motion to dismiss is **GRANTED**, while DHS and ICE's motion to dismiss and the County's motion to dismiss are **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

Mr. Creedle filed his original complaint against Carlos A. Gimenez and the County on July 5, 2017. (DE 1). This Court held a hearing on May 16, 2018, during which it granted in part Gimenez and the County's first motion to dismiss. (DE 47). On June 1, 2018, Mr. Creedle filed an amended complaint against the County, DHS, ICE, and Martinez, an ICE officer. (DE 48). Defendants filed motions to dismiss the amended complaint soon after. (DE 68; DE 69; DE 70).

For purposes of ruling on the motions to dismiss, the Court accepts the following facts alleged in the amended complaint and contained in the exhibits as true. Mr. Creedle is a U.S. citizen who was 19 years old when the amended complaint was filed. (DE 48 at 3). Although Mr. Creedle has been a U.S. citizen since the moment of his birth by virtue of his father's U.S. citizenship, when he came to the U.S. from Honduras in 2015, ICE arrested him and placed him in administrative removal proceedings. *Id.* at 9-10. In April 2015, DHS filed a motion with the immigration judge stating that the proceedings should be terminated because Mr. Creedle is a U.S. citizen. *Id.* at 10; *see also* DE 48-1, Ex. B. The immigration judge granted the motion and terminated the proceedings against Mr. Creedle. *Id.*; *see also* DE 48-1, Ex. C. It is not clear from the amended complaint or the Parties' briefing why removal proceedings were initiated against a U.S. citizen.

On March 12, 2017, Mr. Creedle was arrested after an alleged domestic dispute and taken to the Miami-Dade County jail. (DE 48 at 10). Mr. Creedle was never charged with an offense related to this arrest. *Id.* That evening, Miami-Dade Corrections and Rehabilitation Department ("MDC") officials fingerprinted Mr. Creedle and sent his fingerprints to DHS. *Id.* at 4, 10. On March 13, 2017, MDC received an immigration detainer request from Martinez, an immigration enforcement officer, listing Mr. Creedle as its subject. *Id.* The "Request for Voluntary Transfer" form stated that Mr. Creedle was "a removable alien" under civil immigration law and asked MDC to hold him for up to 48 hours after he would otherwise be released from MDC's custody. *Id.* at 11.

The detainer did not allege probable cause to believe that Mr. Creedle had committed a crime, did not "state facts amounting to an individualized determination that

there was probable cause to believe that [Mr. Creedle] was removable from the U.S.,"
and did not state that he posed a risk of flight. *Id.* at 11. Instead, the detainer form
asserted that "[p]robable cause exists that [Mr. Creedle] is a removable alien" and, as
support for this assertion, a box on the form had been checked next to an option stating
that ICE's probable cause was based on "biometric confirmation of the subject's identity
and a records check of federal databases that affirmatively indicate, by themselves or in
addition to other reliable information, that the subject either lacks immigration status or
notwithstanding such status is removable under U.S. immigration law." *Id.*; *see also* DE
48-1, Ex. D. The form was signed only by Martinez.

On the same day, Mr. Creedle posted bond to be released from MDC. *Id.* at 11.
Mr. Creedle told MDC officials that he was a U.S. citizen, but because of the ICE detainer,
MDC refused to release him. *Id.* at 10. Instead, MDC detained him until the following
day, March 14, 2017, after ICE officials had interviewed Mr. Creedle and withdrawn the
detainer request. *Id.* at 12.

Mr. Creedle alleges that the County re-arrested him on March 13, 2017 pursuant
to a recent change in policy that, in effect, requires MDC staff to "honor all immigration
detainer requests." *Id.* at 9. This policy reversed the County's previous policy, which had
been in place since December 2013 and significantly circumscribed the County's authority
to arrest individuals pursuant to immigration detainer requests. *Id.* at 7. The 2013 policy
stated that MDC could honor detainer requests from ICE only if (1) "the federal
government agrees in writing to reimburse Miami-Dade County for any and all costs
relating to compliance with [ICE] detainer requests"; (2) "the inmate that is the subject of

3

such a request has a previous conviction for a Forcible Felony . . . "; and (3) the inmate has, at the time the County received the detainer request, "a pending charge of a non-bondable offense . . . ."  Miami-Dade Cty. Bd. of Comm'rs, Resolution 1008-13, at 5 (Dec. 3, 2013), http://www.miamidade.gov/govaction/legistarfiles/MinMatters/Y2013/ 132196min.pdf.  Because the federal government "declined to reimburse the County for any expenses associated with detainers," MDC stopped arresting individuals based on detainer requests in January 2014.  (DE 48 at 7-8).

In 2016, the Board ratified its position when it unanimously opposed "statewide legislation that would preempt its anti-detainer policy."  *Id.* at 8.  Resolution 77-16, which the Board passed on January 20, 2016, cited the fact that "federal courts have found that local law enforcement agencies that detain individuals on the sole authority of a detainer request violate the Fourth Amendment of the U.S. Constitution, exposing such agencies to legal liability unless there has been an independent finding of probable cause to justify detention."  *Id.*  The Board's resolution goes on to state that "while criminal detainers are subject to multiple procedural safeguards, including a requirement of court approval, [ICE] detainer requests lack comparable protections . . . [because] a judge is not required to review or approve an immigration detainer."  Miami-Dade Cty. Bd. of Comm'rs, Resolution 77-16, at 5-6 (Jan. 20, 2016), http://www.miamidade.gov/govaction/legistarfiles/ MinMatters/Y2015/153028min.pdf.  The Board noted that "a judge is not required to review or approve an immigration detainer," and that a detainer "may be issued by a single Immigration[] and Customs Enforcement officer when there are no immigration proceedings pending."  *Id.* at 6.  "[T]his process," the Board found, "does not meet the

U.S. Constitution's minimum standard for authorizing detention after an inmate is scheduled to be released." *Id.*

Despite the County's[1] clear position on the legality and efficacy of honoring all detainer requests, on January 26, 2017, Miami-Dade County Mayor Gimenez reversed course, issuing a memorandum to MDC that ordered it to "honor all immigration detainer requests." (DE 48-1).[2] The directive was not preceded by any public notice or opportunity for debate, nor did it mention the Board's 2013 resolution limiting MDC's authority to hold people pursuant to detainer requests and the myriad legal concerns with honoring detainers.

On February 17, 2017, the Board ratified the Mayor's directive and amended its 2013 Resolution (1008-13) to direct the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County . . . is cooperating with the federal government to the extent permissible by law." Miami-Dade Cty. Bd. of Comm'rs, Resolution 163-17 (Feb. 17, 2017), http://www.miamidade.gov/govaction/matter.asp?matter=170440&file=false&yearFolder=Y201.[3] MDC is following the Mayor's directive—as ratified by the Board's resolution—and, since January 26, 2017, has maintained a policy and practice

---

[1] The Board's 2016 resolution—which expressed in no uncertain terms that detaining individuals on the sole basis of an immigration detainer is illegal—was drafted by the Miami-Dade County Attorney's Office, which is now defending the County's current policy and practice of honoring all detainer requests.

[2] The Parties appear to agree that the Mayor's directive—while clearly the impetus for the County's policy reversal—did not have the force of law until ratified by the Board's resolution on February 17, 2017.

[3] This resolution also states that the County "will continue to require the federal government to show probable cause on all immigration detainer requests." *Id.* at 5. It is not clear whether this probable cause requirement refers to criminal matters or civil removal proceedings. *See infra* note 11 and accompanying text.

of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request.

Mr. Creedle's amended complaint contains three counts against the County. Counts I and II are brought under 42 U.S.C. § 1983 and allege that the County violated Mr. Creedle's Fourth and Fourteenth Amendment rights under the U.S. Constitution. (DE 48 at 12-13). Count III is a claim for false imprisonment under Florida law. *Id*. at 14. Counts IV and V against DHS and ICE each seek declaratory relief and damages.[4] Count IV—brought under Section 706(2) of the Administrative Procedure Act ("APA")—seeks a declaratory judgment that ICE exceeded its statutory authority; Count V seeks a declaratory judgment that ICE's actions violated Mr. Creedle's Fourth Amendment rights. *Id*. at 15-16. Counts VI and VII against Martinez are *Bivens* claims brought under the Fourth and Fifth Amendments, respectively. *Id*. at 16-17.

The amended complaint seeks: (1) a declaration that the County's policy of arresting people pursuant to immigration detainers is unlawful, (2) a declaration that Mr. Creedle's arrest pursuant to the detainer violated his Fourth and Fourteenth Amendment rights and constituted false imprisonment under Florida law, (3) a declaration that the detainer issued by ICE exceeded ICE's statutory authority and violated Mr. Creedle's Fourth Amendment rights; (4) a declaration that Martinez violated Mr. Creedle's Fourth

---

[4] Although the amended complaint does not explicitly request relief in the form of damages as to DHS and ICE, Counts IV and V both state that, as a result of ICE's allegedly unlawful conduct, Plaintiff "suffered injuries, including financial, pain and suffering, humiliation, and emotional harm." (DE 48 at 15-16). Thus, the Court will assume for purposes of ruling on ICE's motion to dismiss that Plaintiff intends to seek damages as well as declaratory relief against DHS and ICE.

and Fifth Amendment rights; (5) monetary damages against the County under 42 U.S.C. § 1983; and (6) monetary damages against DHS, ICE, and Martinez.  (DE 48 at 18).

All Defendants have moved to dismiss with prejudice.  DHS and ICE moved to dismiss on the grounds that: (1) Mr. Creedle lacks standing to seek declaratory relief because he is not likely to suffer the same injury in the future; (2) Mr. Creedle's request for declaratory relief is moot because ICE has since altered its detainer policies; and (3) Mr. Creedle has failed to state a claim because ICE's issuance of the detainer was authorized by federal law and therefore did not exceed ICE's statutory authority or violate Mr. Creedle's Fourth Amendment rights.[5]  (DE 69 at 7-11).

The County moved to dismiss on the grounds that: (1) Mr. Creedle lacks standing to seek declaratory relief because he is not likely to suffer the same alleged injury in the future; (2) there can be no municipal liability for the County under Section 1983 because an official policy authorized by law cannot be the "proximate cause of a constitutional violation"; (3) the County's cooperation with ICE is expressly allowed under federal and state law, and; (4) the County's cooperation with ICE occurs under color of federal authority.  (DE 70 at 1).

Martinez moved to dismiss on the grounds that: (1) *Bivens* does not apply in the context of a wrongful immigration detainer issued by an immigration officer, and; (2) Martinez is entitled to qualified immunity.  (DE 68 at 4, 11).

---

[5] Going forward, for ease of reference and because DHS and ICE filed a joint motion to dismiss, references to ICE will mean, generally, DHS and ICE.

## II.   STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes as true all well-pled factual allegations and determines whether they plausibly give rise to an entitlement for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Id.* at 1950.

Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that he is entitled to relief. *Twombly*, 550 U.S. at 556.  A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id.* at 557.  Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 476 U.S. 69, 73 (1984)).

8

A challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be presented as either a facial or factual attack. *McElmurray v. Consol. Gov't of August-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, which the district court takes as true when considering the motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, factual attacks challenge the existence of subject matter jurisdiction in fact, and in such cases "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* The Eleventh Circuit has held that "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

## III.   DISCUSSION

The Court first addresses Mr. Creedle's claims for declaratory relief, and the corresponding issues of standing and mootness, in Sections III.A.1 and III.A.2 below, as these arguments raise threshold challenges to the Court's ability to adjudicate certain claims. Then, in Sections III.B and III.C, the Court addresses Count IV—an APA claim— and Count V—a Fourth Amendment claim—against DHS and ICE. Next, in Section III.D, the Court addresses Counts I and II—Fourth and Fourteenth Amendment claims under Section 1983—against the County. In Section III.E, the Court addresses Count III—a claim for false imprisonment—against the County. Finally, in Section III.F, the Court addresses Counts VI and VII—*Bivens* claims under the Fourth and Fifth Amendments— against Martinez.

9

## A. Claims for Declaratory Relief

As discussed above, Mr. Creedle brings claims for declaratory relief against both the County and ICE.  As to the County, he seeks a declaratory judgment concerning both future and past conduct; he requests a declaration that the County's policy and practice of arresting people on immigration detainers is unlawful, and that its re-arrest of him in March 2017 pursuant to ICE's detainer violated his rights under federal and Florida law. As to ICE, however, Mr. Creedle seeks a declaratory judgment regarding *past* conduct only—that ICE's issuance of his detainer was unlawful.  Defendants insist that Mr. Creedle lacks standing to pursue any declaratory claims and that all such claims are moot.

### 1. Mr. Creedle Has Standing to Seek Prospective Declaratory Relief

The County and ICE argue that Mr. Creedle lacks standing to obtain declaratory relief because he has not alleged, and cannot show, a sufficient likelihood of future injury from the challenged conduct: detention pursuant to a detainer.  (DE 69 at 8; DE 70 at 7). According to Defendants, there is no "real and immediate threat" that Mr. Creedle will ever again be arrested and then held pursuant to a detainer.

To support their argument, Defendants cite to a declaration by Dean Caputo, an ICE officer, which states that "[u]pon information and belief, ICE [Enforcement and Removal Operations] database records state that the Plaintiff, Garland Creedle, is a United States citizen." (DE 69-1).  Further, Defendants argue that Mr. Creedle is unlikely to be held pursuant to a detainer again because he is a U.S. citizen.  (DE 101 at 3; DE 100 at 3).  The County also argues that the fact that Mr. Creedle was arrested again during this litigation—"no detainer was logged, and he was released the very next day

after posting bond"—demonstrates that he is not likely to be held by the County pursuant to a detainer in the future.  (DE 101 at 3-4).  ICE further asserts that Mr. Creedle cannot demonstrate standing because he "can avoid *any* potential injury associated with any hypothetical future detainer by refraining from further criminal conduct and getting arrested again."  (DE 100 at 3) (emphasis in original).  In short, Defendants argue that declaratory relief is improper because Plaintiff cannot show a "likelihood of substantial and immediate irreparable injury."  (DE 69 at 8) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Mr. Creedle argues that he has standing to seek declaratory relief because the amended complaint contains allegations that support a "reasonable inference" that he will "again suffer future injury from the [D]efendants' conduct."  (DE 87 at 6).  Specifically, Mr. Creedle contends that his prior history with the immigration system—being forced into removal proceedings and later arrested pursuant to a detainer despite being a U.S. citizen—supports an inference that he is sufficiently likely to be subject to a detainer again.  Mr. Creedle further argues that it would be premature to dismiss his claims for declaratory relief at this stage.

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Article III standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  To satisfy the first "injury" element, the plaintiff must demonstrate that the injury affects the plaintiff in a personal and individual way.  *Id.* at 1548; *see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury").

  "Article III of the U.S. Constitution 'limits the jurisdiction of federal courts to cases and controversies.'"  *Hartford Cas. Ins. Co. v. Intrastate Const. Corp.*, 501 F. App'x 929, 937 (11th Cir. 2012) (quoting *Christian Coal. of Fla., Inc. v. United States,* 662 F.3d 1182, 1189 (11th Cir. 2011)).  "Similarly, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of 'actual controversy,' that is, a 'substantial continuing controversy between parties having adverse legal interests.'"  *Id.* (quoting *Emory v. Peeler,* 756 F.2d 1547, 1551-52 (11th Cir.  1985)).   "This 'continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.'"  *Id.* (quoting *Emory,* 756 F.2d at 1552).  "Although a case may have involved an actual controversy initially, the case becomes moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'"  *Id.* (quoting *Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1166 (11th Cir. 2012); *see also Christian Coal. of Fla., Inc.,* 662 F.3d at 1190 (stating that, for purposes of Article III, "the controversy must be extant at all stages of review, not merely at the time the complaint is filed").

"'A party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, No. 15-14669, 2018 WL 4560682, at *11 (11th Cir. 2018) (quoting *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994)). "Whether a future injury is likely to occur in part depends on whether the misconduct alleged is authorized by or part of a government policy." *Id.* at *11 (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003)). "When alleged misconduct is 'authorized or part of a policy, it is significantly more likely that the injury will occur again.'" *Id.* "On the other hand, if future injury is based on the occurrence of a random or unauthorized act, then the injury is 'too speculative' for standing purposes." *Id.*

Here, "treating the allegations in the complaint as true and liberally construing the complaint in favor of" Mr. Creedle, this Court concludes that the amended complaint contains allegations "which could reasonably support a finding that [Mr. Creedle] [is] likely to be subject to future injury from the application of the [policy] he challenge[s]." *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("[I]n order for this Court to have jurisdiction to issue a declaratory judgment . . . [Plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future.").

First, Mr. Creedle alleges that he has already been wrongfully detained twice. In 2015, Mr. Creedle was "arrested" and put in "administrative removal proceedings before an immigration judge." (DE 48 at 10). These proceedings were terminated after DHS

filed a motion stating that Mr. Creedle is a U.S. citizen. *Id.* Mr. Creedle alleges that "[o]n April 30, 2015, an immigration judge granted the federal government's motion and terminated proceedings against [him]." *Id.* The County nonetheless re-arrested Mr. Creedle pursuant to a detainer two years later on the grounds that ICE had "probable cause" to believe that he was "removable under U.S. immigration law." *Id.* at 11.[6] Though not dispositive of the issue, Mr. Creedle's prior history of being held unnecessarily for alleged immigration purposes—twice in two years—strongly undermines Defendants' contention that a repeat detention is "highly unlikely" and suggests that Mr. Creedle is susceptible to being held pursuant to a detainer in the future.

Second, at this stage, Defendants' contention that ICE's records "now" reflect that Mr. Creedle is a U.S. citizen cannot defeat standing because Mr. Creedle—a U.S. citizen since birth—was already incorrectly placed in immigration removal proceedings in 2015 and then was unjustifiably held pursuant to a detainer in 2017. At this juncture, the declaration from Caputo is insufficient to defeat standing because it is woefully deficient

---

[6] Martinez claims that the detainer he signed and issued for Mr. Creedle was supported by probable cause that he was removable based on two grounds: (1) that Mr. Creedle was born in Honduras, and (2) that Mr. Creedle was arrested and therefore would be removable if ultimately convicted of one of certain crimes enumerated in the Immigration and Nationality Act ("INA"). (DE 68 at 17). Although the Court need not reach the issue of whether Martinez had probable cause to issue the detainer against Mr. Creedle, Martinez's stated grounds for probable cause are insufficient as a matter of law.

First, the Supreme Court has held that an individual's place of birth is insufficient to justify a reasonable belief that the individual is an "alien." *See United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (holding that a person's ancestry, or apparent ancestry, is insufficient to justify either a reasonable belief that the person is an "alien," or a reasonable belief that the person is otherwise engaged in illegal activity). Further, Martinez's contention that he had probable cause based on Mr. Creedle's arrest because his arrest demonstrated that Mr. Creedle could eventually be convicted of a certain offense and thereby rendered removable—assuming he was not a U.S. citizen—also fails as a matter of law because probable cause must have existed at the time Martinez issued the detainer. *See, e.g., United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981) ("[P]robable cause must exist at the moment of the arrest."). Martinez could not have had probable cause to believe that Mr. Creedle was removable when he issued the detainer if the removability was contingent on a future conviction.

in information.  The declaration fails to state what the "ICE ERO database records" are, whether this is the only database upon which ICE officers rely before issuing detainers, when the ICE ERO database was allegedly updated to reflect that Mr. Creedle is a U.S. citizen, or how the database works.  A cursory statement that one of ICE's databases reflects that Mr. Creedle is a U.S. citizen does not overcome the factual allegations in the amended complaint supporting an inference that he is sufficiently likely to suffer the same injury in the future.  *See Roy v. Cty. of Los Angeles*, No. CV-1209012-AB-FFMX, 2018 WL 914773, at *19 (C.D. Cal. Feb. 7, 2018), *reconsideration denied*, No. CV-1209012-AB-FFMX, 2018 WL 3439168 (C.D. Cal. July 11, 2018) (denying ICE's motion for summary judgment as to the plaintiffs' Fourth Amendment claims on the grounds that "a factual dispute exists as to the reliability of the databases that ICE uses . . . to establish probable cause" because plaintiffs presented evidence that "ICE encounters errors in [one database,] CIS[,] in approximately three out of ten cases").[7]

Mr. Creedle's status as a U.S. citizen is also not determinative of whether he is likely to be held pursuant to a detainer in the future because, as other courts have recognized, U.S. citizens are frequently held pursuant to detainers.  *See, e.g., Uroza v. Salt Lake Cty.*, No. 2:11CV713DAK, 2014 WL 4457300, at *5 (D. Utah 2014) ("Between 2008 and 2012, ICE issued detainers against more than 800 U.S. citizens and 28,000 legal permanent residents."); *see also Morales v. Chadbourne,* 2014 WL 554478, at *14-

---

[7] In *Roy*, ICE did not dispute that there are at least four databases that ICE requires "agents issuing detainers on the basis of electronic database checks alone to check . . . prior to issuing a detainer." *Roy*, 2018 WL 914773, at *19.  "Those databases are the following: (1) Central Index System ('CIS'), (2) Computer Linked Application Information Management Systems ('CLAIMS'), (3) Treasury Enforcement Communications System ('TECS'), and (4) Enforcement Case Tracking System ('ENFORCE')/EARM." *Id.*

15 (D.R.I. Feb. 12, 2014) (finding that a U.S. citizen who was arrested by local law enforcement pursuant to a detainer on two separate occasions had standing to seek an injunction halting the unlawful use of detainers against her).  Indeed, Mr. Creedle has already been subject to a detainer despite immigration officials allegedly knowing that he is a U.S. citizen.

Further, Mr. Creedle's 2018 arrest and release without being held pursuant to a detainer does not undermine Mr. Creedle's standing;  it does not establish that he will not be held pursuant to a detainer again.  Moreover, the Court has no information regarding whether a detainer was issued, why Mr. Creedle was released, or if the County even notified ICE that Mr. Creedle was in its custody.  In short, the factual circumstances related to this arrest are far too unclear to infer that the likelihood of Mr. Creedle being held pursuant to a detainer again is now "too speculative" to confer standing.

ICE and the County rely on the Supreme Court case *Los Angeles v. Lyons*, 461 U.S. 95 (1983), to support their arguments that Mr. Creedle—given Defendants' factual arguments above—has failed to demonstrate that he is "likely to suffer future injury" from Defendants' conduct.  In *Lyons*, the plaintiff alleged that police officers injured him by subjecting him to a chokehold without justification and that officers in the City regularly used such chokeholds pursuant to the authorization and instruction of the City. *Id.* at 98. Lyons "sought declaratory judgment that the use of chokeholds absent proper justification was a *per se* violation of constitutional rights and an injunction barring the city officers from using chokeholds absent justification." *Uroza*, 2014 WL 4457300, at *5 (citing *Lyons*, 461 U.S. at 98).  But the Supreme Court held that Lyons lacked standing to obtain

injunctive relief because of the "speculative nature of his claims that he will again experience injury as a result of that practice even if continued." *Id.* (quoting *Lyons*, 461 U.S. at 109).

In *Uroza*, the district court explained why the plaintiff in *Lyons* is far different, for standing purposes, from a plaintiff like Mr. Creedle, who challenges a blanket policy of honoring all immigration detainers as facially unconstitutional. *Uroza*, 2014 WL 4457300, at *5. First, the court stated that "after *Lyons,* several federal courts have held that the victim of an established government policy can sue to enjoin that policy even if he would not again be subject to it unless arrested once more." *Id.* "*Lyons,* itself, held that plaintiffs lack standing to enjoin incredible or unbelievable policies that do not pose a realistic threat to them." *Id.* While the Supreme Court in *Lyons* "thought it 'incredible' that LAPD officers always choked citizens they encountered or that the City authorized them to act in that manner," the plaintiff in *Uroza* did "not challenge a sporadic practice . . . but an established governmental policy." *Id.* (quoting *Lyons*, 461 U.S. at 106) ("When a foreign-born person lacking proof of status enters Salt Lake County jail custody, it is not speculation but a near certainty that the jail will notify ICE, ICE will issue a detainer, and the jail will honor the detainer to extend the person's incarceration."). "While it was conjecture for the plaintiff in *Lyons* to claim that the LAPD would act unconstitutionally 'in every instance of a traffic stop, arrest, or other encounter,'" the court in *Uroza* explained, "it is a near certainty that [ICE] will continue to issue detainers without probable cause and based only on perceived national origin or ethnicity." *Id.* (quoting *Lyons*, 461 U.S. at 106, n.7).

17

Similarly, in *Morales,* 2014 WL 554478, at *14-15, a U.S. citizen who was arrested by local law enforcement pursuant to a detainer on two separate occasions was found to have standing to seek an injunction halting the unlawful use of detainers against her.  The court found that the plaintiff had standing because she set forth "plausible allegations that the threat of a repeat, unlawful detention is realistic."  *Id.* at *37; *see also, e.g., Mack v. Suffolk County,* 191 F.R.D. 16, 20 (D. Mass. 2000) (finding that plaintiffs had standing to seek injunctive relief against a policy of strip-searching all women detained at a county jail after being arrested); *Georgia Latino All. for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1259 (11th Cir. 2012) (affirming the district court's finding that plaintiffs had standing to enjoin enforcement of certain Immigration and Nationality Act provisions, one of which authorized "law enforcement officers to investigate the immigration status of criminal suspects where the officer has probable cause to believe the suspect committed another criminal offense").

In *Georgia Latino Alliance*, the Eleventh Circuit addressed and rejected the defendants' argument—identical to the County and ICE's argument—that the plaintiffs lacked standing to challenge a law if they would first need to be arrested before the challenged provision would be triggered.  691 F.3d at 1259 (citing *O'Shea v. Littleton,* 414 U.S. 488, 497 (1974)) ("The State Officers further contend that we must assume that Plaintiffs will conduct their activities within the law and so avoid prosecution and conviction.").  The Eleventh Circuit explained that "[w]hereas in *Littleton* the alleged unconstitutional conduct could only result from an *actual* legal violation, prosecution, and conviction for that crime, here all that is necessary for application [of the challenged law]

is an officer's finding of probable cause that a legal violation has occurred." *Id.* (emphasis in original).

The Court agrees with the decisions in *Georgia Latino Alliance*, *Morales*, *Uroza* and other cases that have found that plaintiffs have standing for prospective declaratory relief under similar circumstances.  Mr. Creedle is not challenging a sporadic, random practice of government officers gone rogue, but an established, blanket County policy that requires MDC officials to honor all detainers and effectively re-arrest and detain anyone who is the subject of a detainer.  This case is not like *Lyons*, where the plaintiff challenged a valid policy that, on rare occasions, resulted in an unconstitutional application of that policy because of police officers' unjustified conduct.   Here, Mr. Creedle challenges the County's current policy and practice of honoring all detainers as unlawful in all circumstances because detainers do not evince probable cause of a crime.

Further, contrary to ICE's argument, Mr. Creedle "need not break the law to end up in this situation again; a police officer need merely think he did."  *Uroza*, 2014 WL 4457300, at *5.  Mr. Creedle's likelihood of future injury is akin to that of the plaintiff in *Morales*, who was found to have standing to seek injunctive relief because "she was twice unlawfully detained based on flawed immigration detainers."  *Morales*, 996 F. Supp. 2d at 37. Therefore, the Court finds that Mr. Creedle has set forth plausible allegations that he "remains vulnerable to being the subject of [a] detainer again, not least because he was subject to one before."  *Uroza*, 2014 WL 4457300, at *5.

Accordingly, the Court finds that, at this early stage of the litigation, and viewing the facts alleged in the amended complaint in the light most favorable to Mr. Creedle, he

has alleged facts demonstrating that his injury is sufficiently likely to occur again and he therefore has standing to proceed with his claims for *prospective* declaratory relief against the County.  As explained below, however, Mr. Creedle cannot seek declaratory relief solely on the grounds that Defendants' past conduct was unlawful.

### 2. Mootness

The County and ICE also argue that Mr. Creedle's claims for declaratory relief are moot because "ICE has changed its detainer policies."  (DE 69 at 9; DE 70 at 8, n.9).  The County and ICE contend that, as of April 2, 2017, "ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. § 1226 or § 1231(a)."  (DE 69 at 10).   The County and ICE also argue that because Mr. Creedle seeks declaratory relief regarding past conduct, the requested "declarations" are impermissible.  (DE 70 at 9).

Mr. Creedle, on the other hand, argues that declaratory relief is proper because this is a "classic case of unlawful government action that is capable of repetition, yet evading review."  (DE 89 at 17) (quotations omitted).  As to the County, Mr. Creedle contends that the change in ICE's policy is irrelevant because the "administrative warrants in no way alter the County's policy of complying with immigration detainer requests, which is the only policy being challenged."  *Id*. at 19.  As to ICE, Mr. Creedle submits that his claims are not moot because he is arguing that ICE's "specific issuance of the detainer against him . . . violated statutory law and [his] constitutional rights."  (DE 87 at 9).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack

a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)) (internal quotation marks omitted).  The mootness doctrine is subject to certain exceptions, however.

The Supreme Court has recognized "an exception to the general rule [of mootness] in cases that are 'capable of repetition, yet evading review.'" *Murphy*, 455 U.S. at 482 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).  To establish standing based on this doctrine, a plaintiff must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (citations omitted); *see also Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1324, n.6 (11th Cir. 2001) (same).  Thus, under this exception, Mr. Creedle must show: (1) that his detention pursuant to the detainer was too short to be fully litigated before it ended, and (2) that he has a reasonable expectation that he will again be arrested pursuant to a detainer.

### a. Mr. Creedle's Claims Against the County for Prospective Declaratory Relief are Not Moot

The Court agrees with Mr. Creedle's argument that this case presents the sort of injury that is "capable of repetition, yet evading review."  Detainers, by their nature, are meant to result in an individual being held on behalf of ICE for no more than 48 hours.  Because 48 hours is an insufficient period in which to litigate a case challenging a detainer, the first prong of the exception to the mootness doctrine is met.  The County's cursory argument—presented in a footnote in their motion to dismiss—that Mr. Creedle's claims for declaratory relief are moot because ICE changed its detainer policy to require

an accompanying administrative warrant is also unpersuasive.  The change in ICE's policy, which is not binding on that agency and could be rescinded at any time, is irrelevant to the County's challenged policy of honoring detainers.  *See* (DE 87 at 10); *see also* ICE Policy Number 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* (April 2, 2017), at 6 ("This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice."), https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf.

Therefore, the argument that Mr. Creedle's claims for declaratory relief are moot because ICE has changed its detainer policy during the course of this litigation is unpersuasive.

Further, there remains an active case and controversy because Mr. Creedle is challenging a County policy that remains in place and, as discussed in <u>Section III.A.1</u>, Mr. Creedle has sufficiently alleged a likelihood that he will again be subject to the same injury as a result of the County's challenged conduct.  Accordingly, the Court finds that Mr. Creedle's claims against the County for prospective declaratory relief are not moot.

### b. Mr. Creedle's Claims Against DHS and ICE for Retrospective Declaratory Relief are Moot

To the extent that Mr. Creedle requests a declaration from this Court related to past conduct alone, such declaratory relief is moot and those requests are denied.  *See Emory*, 756 F.2d at 1552; *see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999) ("[A] declaration that the [challenged] statute as applied in the past to these plaintiffs is unconstitutional would [be] nothing more than a gratuitous comment without any force or effect.") (internal quotations omitted).

Mr. Creedle's amended complaint specifically highlights the fact that he seeks a declaration only as to ICE's *past* conduct.  (DE 48 at 18) ("Plaintiff respectfully requests that this Court . . . [d]eclare that ICE's issuance of a detainer against Plaintiff **exceeded** the agency's statutory authority and **violated** the Fourth Amendment because it purported without lawful authority to authorize Plaintiff's arrest and detention by the County.") (emphasis added).  Accordingly, Mr. Creedle's declaratory judgment claims that seek only retrospective declaratory relief, as the claims in Counts IV and V appear to, are dismissed as moot.[8]  The Court does not find, however, that Mr. Creedle's claims for damages in Counts IV and V against DHS and ICE are moot.

## B. Count IV: Administrative Procedure Act

Mr. Creedle brings Count IV against ICE pursuant to the APA, 5 U.S.C. §§ 101–913, which governs the conduct of federal administrative agencies.  The APA permits a court to "hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(A).  The APA provides for judicial review of all "final agency action for which there is no other adequate remedy in court," *id.* § 704, except when "statutes preclude

---

[8] It appears that Mr. Creedle seeks both prospective and retrospective declaratory relief in the claims against the County.  (DE 48 at 18) ("Plaintiff respectfully requests that this Court . . . [d]eclare that the County's arrest of Mr. Creedle pursuant to ICE's immigration detainer request **violated** his Fourth Amendment right to be free from unreasonable seizure, **violated** his substantive due process right under the Fourteenth Amendment to be free from false imprisonment, and **constituted** false imprisonment under Florida law.") (emphasis added).  Assuming this is the case, any retrospective declaratory judgment claim against the County is also dismissed as moot for the reasons stated in this Section III.A.2.b.

judicial review" or the "agency action is committed to agency discretion by law," *id.* § 701(a).[9]

Mr. Creedle asserts that ICE lacked authority to issue a detainer against him because ICE did so without a written agreement with the County pursuant to 8 U.S.C. § 1357(g). (DE 48 at 15). Mr. Creedle also argues that ICE exceeded its statutory authority under Section 1357 when it issued a detainer against him without probable cause determined by a neutral and impartial magistrate and without "any individualized assessment of his risk of flight." (DE 48 at 11). Although Mr. Creedle does not specify under which subsection of Section 706(2) Count IV is brought, the Court will assume from the language used throughout the amended complaint that the intended section is Section 706(2)(C), which addresses agency action "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). ICE contends that Mr. Creedle has failed to state a claim under the APA because ICE was within its statutory authority under Section 1357 when it issued the detainer for Mr. Creedle and, thus, did not violate Mr. Creedle's Fourth Amendment rights.

---

[9] Section 706 of the APA states that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be —
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity;
    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
    (D) without observance of procedure required by law."
5 U.S.C. § 706(2)(A)-(D).

### 1. ICE's Authority to Issue Detainers

Under 8 U.S.C. § 1226(a) of the Immigration and Nationality Act ("INA"), "an alien may be arrested and detained" while awaiting a removal decision, but the arrest must be pursuant to "a warrant issued by the Attorney General."[10]   8 U.S.C. § 1226(a).   An exception to this warrant requirement is found in Section 1357(a)(2), but that provision allows for a warrantless arrest only if ICE has "reason to believe" that the suspected removable individual "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).   The Parties do not dispute that the detainer causing Mr. Creedle's re-arrest was not accompanied by a warrant.   Thus, in effectuating Mr. Creedle's warrantless arrest, ICE was required to comply with Section 1357(a)(2).

Several courts have found that, without a determination that a suspected removable individual is "likely to escape before a warrant can be obtained," ICE exceeds its statutory authority under Section 1357(a)(2) by issuing a detainer against such individual.  *See, e.g., Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. Ill. 2016) (holding that detainers are invalid for exceeding ICE's statutory authority because there was no determination of likelihood of escape); *De La Paz v. Coy*, 786 F.3d 367, 376 (5th Cir. 2015) ("[E]ven if an agent has reasonable belief, before making an arrest, there must also be a likelihood of the person escaping before a warrant can be obtained for his arrest.") (internal quotations omitted); *United States v. Cantu*, 519 F.2d 494, 496-97 (7th Cir. 1975) (holding that the statutory requirement of likelihood of escape in 8 U.S.C. § 1357 "is

---

[10] Although the INA refers to the "Attorney General" throughout, immigration enforcement responsibilities were transferred to the Secretary of DHS in 2002; therefore, references to the Attorney General now mean the Secretary of DHS and her subordinates.  *See* 6 U.S.C. §§ 202, 291, 557; *see also Clark v. Martinez*, 543 U.S. 371, 374, n.1 (2005).

always seriously applied"); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) ("Section 1357(a)(2) requires that the arresting officer reasonably believe that the alien is in the country illegally *and* that she 'is likely to escape before a warrant can be obtained for [her] arrest.'") (quoting 8 U.S.C. § 1357(a)(2)) (emphasis in original); *Westover v. Reno*, 202 F.3d 475, 479-80 (1st Cir. 2000) (noting that an immigration arrest was "in direct violation" of Section 1357(a)(2) because "[w]hile INS agents may have had probable cause to arrest [plaintiff] by the time they took her into custody, there is no evidence that [plaintiff] was likely to escape before a warrant could be obtained for her arrest").

In *Moreno v. Napolitano*, the court granted summary judgment for plaintiffs—one of whom was a U.S. citizen—who were held by local law enforcement after ICE had issued detainers against them.  *Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. Ill. 2016).  The plaintiffs in *Moreno* brought a claim under Section 706(2)(C) of the APA alleging that ICE's policy of issuing detainers exceeded its statutory authority under Section 1357(a)(2) because ICE failed to make a determination "that the suspected removable alien 'is likely to escape before a warrant can be obtained for his arrest.'"  *Id.* at 1005 (quoting § 1357(a)(2)).  The *Moreno* court rejected the argument made by defendants that "any potentially removable alien who is in the custody of a local law enforcement agency is, by definition, 'likely to escape before a warrant can be obtained,' once he or she is released," and instead found that "because immigration officers make no determination whatsoever that the subject of a detainer is likely to escape upon release before a warrant can be obtained, ICE's issuance of detainers that seek to detain

individuals without a warrant goes beyond its statutory authority to make warrantless arrests under 8 U.S.C. § 1357(a)(2)." *Id.* at 1007, 1008-09 (citations omitted).   The *Moreno* court also noted that, given ICE's "insistence" that the agency "makes (and always has made) a probable cause determination as to a subject's removability before a detainer is issued, it is difficult to see why . . . it would take materially longer for ICE to obtain a warrant than to issue a detainer." *Id.* at 1006.

Similarly, in *Gonzalez v. Immigration & Customs Enf't*, No. CV-13-04416-BROFFMX, 2014 WL 12605368, at *7 (C.D. Cal. July 28, 2014), the court found that plaintiffs had sufficiently pled a claim that ICE's detainer practices were "ultra vires" because "Plaintiffs alleged that ICE issued—and, as a matter of policy, continues to issue—immigration detainers without probable cause resulting in unlawful detention" and "[p]robable cause is necessary under either 8 U.S.C. § 1357(a) or 8 U.S.C. § 1357(d)." *Gonzalez*, 2014 WL 12605368, at *7 (citing *United States v. Gorman*, 314 F.3d 1105, 1112 (9th Cir. 2002)).

### 2.  Mr. Creedle Has Stated a Claim Against ICE under the APA

The Court agrees with the reasoning and holdings in *Moreno* and *Gonzalez*.  Thus, the Court finds that Mr. Creedle has stated a plausible claim against ICE under Section 706(2)(C) of the APA based on the allegations that ICE—in issuing an immigration detainer for him—failed to comply with Section 1357(a)(2) because the agency (1) made no determination whatsoever about the chances that Mr. Creedle would have been "likely

to escape" before a warrant for his arrest could be obtained, and (2) did not have probable cause to believe that he was removable from the U.S.[11]

Mr. Creedle alleges—and nothing on the face of the detainer suggests otherwise—that when ICE issued the detainer against him the agency did not have "reason to believe that Mr. Creedle posed a risk of flight" and did not conduct "any individualized assessment of Mr. Creedle's risk of flight." (DE 48 at 11). Mr. Creedle also alleges that the detainer was not supported by "a sworn, particularized showing of probable cause that [he] is a noncitizen and removable under federal immigration law." *Id.* at 5-6. These allegations, taken as true at this stage, are sufficient to state a claim that ICE exceeded its statutory authority when it issued a detainer for Mr. Creedle because ICE failed to comply with an explicit requirement of Section 1357(a)(2) and lacked probable cause to believe that he was removable from the U.S.

Because the Court finds that the allegations in the amended complaint are sufficient to state a claim under the APA on the above-enumerated grounds, the Court need not—at this stage—reach the Parties' arguments regarding whether ICE was authorized to issue a detainer for Mr. Creedle without having a formal agreement with the County under 8 U.S.C. § 1357(g).

---

[11] Throughout this Order, two different probable cause contexts generally will be discussed: civil and criminal. Pursuant to certain provisions in the INA, ICE officers may arrest individuals (because, for example, the person has committed a specific civil immigration violation) provided that ICE has complied with all of the statutory requirements (probable cause that the person is removable and that the person is likely to escape before a warrant can be obtained). *See* 8 U.S.C. § 1357(a)(2). The authority given to ICE officers in the INA is a narrow exception to the general rule—applicable to all other law enforcement officers—that a seizure or detention under the Fourth Amendment requires probable cause of a *crime*. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 96 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that a[ ] [criminal] offense has been committed.") (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

### C. Count V: Fourth Amendment Claim Against DHS and ICE

ICE next seeks dismissal of Mr. Creedle's Fourth Amendment claim.  Issuing a detainer cannot constitute a "seizure" under the Fourth Amendment, according to ICE, because "detainers are requests."  (DE 69 at 15).  And even if issuing a detainer does constitute a seizure, ICE argues, "that seizure is fully consistent with the Constitution because an ICE-detainer request evidences probable cause of removability in every instance."  (DE 100 at 10) (quotations omitted).  Mr. Creedle responds that "[b]y issuing a detainer against him . . . ICE foreseeably caused Miami-Dade County to arrest and continue to hold" Mr. Creedle in violation of his Fourth Amendment rights.  (DE 48 at 16).  Mr. Creedle also contends that ICE violated his Fourth Amendment rights by issuing a detainer against him when the agency lacked either probable cause that he was removable from the United States, probable cause that he posed a flight risk, or probable cause that he had committed a crime.  (DE 87 at 18).

#### 1. The Fourth Amendment and Probable Cause for ICE to Execute a Warrantless Arrest

The Fourth Amendment to the U.S. Constitution provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated. U.S. Const. amend. IV.  Generally, under the Fourth Amendment, "the predicate for an arrest is probable cause to believe the arrestee is committing or has committed a crime."  *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 975-76 (S.D. Ind. 2017) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Brown v. Texas*, 443 U.S. 47, 51 (1979); *Dunaway v. New York*, 442 U.S. 200, 212-13 (1979)).  In the context of federal immigration enforcement, however, federal immigration officials may conduct

reasonable arrests to face administrative proceedings based on probable cause that certain civil immigration violations have been committed. *See Abel v. United States*, 362 U.S. 217, 232-34 (1960) ("[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation.").

A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause to believe a crime has been committed. *Beck*, 379 U.S. at 91; *see also Baker v. McCollan*, 443 U.S. 137, 142 (1979) (holding that, under the Fourth Amendment, "a fair and reliable determination of probable cause" of a crime must be provided "as a condition for any significant pretrial restraint of liberty") (citation omitted). The Supreme Court has defined "probable cause" as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing a[ ] [criminal] offense.'" *Gerstein*, 420 U.S. at 111-12 (quoting *Beck*, 379 U.S. at 91) ("These long-prevailing [Fourth Amendment] standards seek to safeguard citizens from rash and . . . unfounded charges of crime.") (citation omitted); *see also Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293-94 (11th Cir. 2018) (same), *cert. denied sub nom. Thomas v. Cozzi*, No. 18-368, 2018 WL 4539139 (U.S. Oct. 15, 2018). "The operative 'reason to believe' standard [in the INA] is equivalent to the constitutional probable cause standard." *Davila v. United States*, 247 F. Supp. 3d 650, 663 (W.D. Pa. 2017) (citing and quoting *Babula v. INS*, 665 F.2d 293, 298 (3d Cir. 1981)).

Under 8 U.S.C. § 1226(a) of the INA, "an alien may be arrested and detained" by ICE while awaiting a removal decision, but the arrest must be pursuant to "a warrant issued by [ICE]." 8 U.S.C. § 1226(a). Section 1357(a)(2) provides an exception to the warrant requirement, but this provision allows for a warrantless arrest only if ICE has "reason to believe" that the suspected removable individual "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Because the detainer causing Mr. Creedle's re-arrest was not accompanied by a warrant, ICE was required to comply with Section 1357(a)(2).

### 2. Mr. Creedle Has Stated a Fourth Amendment Claim Against ICE

The fact that ICE issued a "voluntary" request[12] for the County to arrest Mr. Creedle on behalf of ICE does not insulate ICE from liability under the Fourth Amendment. *See Gonzalez*, 2014 WL 12605368, at *5 ("The fact that the immigration detainers impose no mandatory obligation on a law enforcement agency does not necessarily negate causation . . . [because] the immigration detainers are intended to—and actually do— induce law enforcement agencies to incarcerate individuals beyond the time they would otherwise be released."). While ICE suggests that, in order to have violated Mr. Creedle's Fourth Amendment rights, the agency itself must have arrested him, several courts have disagreed with this argument.

For example, in *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015), the First Circuit affirmed the district court's order allowing a Fourth Amendment claim to proceed

---

[12] The Parties do not dispute that detainers are voluntary requests that local law enforcement detain an individual. *See, e.g., Galarza v. Szalczyk*, 745 F.3d 634, 636 (3d Cir. 2014) ("[I]mmigration detainers are permissive and, to hold otherwise, would violate the anti-commandeering principles inherent in the Tenth Amendment.").

against ICE officials who issued a detainer against Morales, a U.S. citizen. The First Circuit found that, "the Constitution requires probable cause for the immigration detention that a detainer requests." *Morales*, 793 F.3d at 217. The court explained that "[u]nder federal law, *immigration officers* may arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States' if a 'warrant [is] issued by the Attorney General.'" *Id.* (quoting 8 U.S.C. § 1226(a)) (emphasis added). Statutory authority for warrantless arrests, including the issuance of detainers, is provided in 8 U.S.C. § 1357. "Without a warrant, immigration officers are authorized to arrest an alien only if they have '*reason to believe* that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" *Id.* (quoting § 1357(a)(2)).

Numerous other courts around the country have concluded that ICE can be held liable for its role in issuing detainers that caused arrests in violation of the Fourth Amendment. *See, e.g.*, *Uroza*, 2014 WL 4457300, at *5 (finding that plaintiff who had been detained for over 43 days pursuant to a detainer had standing to seek an injunction against ICE and denying ICE's motion for summary judgment on damages claims); *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (finding that plaintiff's injury was traceable to ICE for purposes of establishing standing to sue for damages where plaintiff alleged that ICE caused his extended detention by issuing a detainer that precluded him from posting bail); *Galarza v. Szalczyk*, No. 10-CV-06815, 2012 WL 1080020, at *14 (E.D. Pa. 2012) (finding that plaintiff who was held for three days on a detainer stated claims for damages against ICE agent because ICE "lacked probable cause to support the

issuance of an immigration detainer"), *rev'd on other grounds,* 745 F.3d 634 (3d Cir. 2014); *Gonzalez,* 2014 WL 12605368, at \*5 (holding that because "immigration detainers are intended to—and actually do—induce law enforcement agencies to incarcerate individuals beyond the time they would otherwise be released," the detention is "directly traceable to ICE" for purposes of standing to seek injunctive relief).

ICE relies heavily on a case recently decided by the U.S. Court of Appeals for the Fifth Circuit, *City of El Cenizo v. Texas,* 890 F.3d 164 (5th Cir. 2018).[13] *El Cenizo* involved a facial challenge to the constitutionality of several provisions of Senate Bill 4 ("SB4"), a law passed by the Texas legislature related to local immigration enforcement activities. The Fifth Circuit reviewed the case on an appeal by all parties challenging the district court's entry of an order granting a preliminary injunction as to several of SB4's provisions, including a provision mandating that local officers comply with detainer requests. *El Cenizo,* 890 F.3d at 174.

Although *El Cenizo* contains dicta discussing the Fourth Amendment implications of honoring detainer requests, the procedural posture is markedly different and undermines its applicability. The Fifth Circuit stresses throughout its opinion that plaintiffs had a stringent burden, not only because of the preliminary injunction standard,[14] but also

---

[13] *El Cenizo* was decided by a two-judge "quorum" because "Judge Edward Prado, a member of the original panel in th[e] case, retired from the Court on April 2, 2018, and therefore did not participate in th[e] decision." *El Cenizo,* 890 F.3d at 183, n.1.

[14] The Fifth Circuit stated the standard for issuing a preliminary injunction as follows: "To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Id.* at 176.

because of the "exacting standard" of bringing a "pre-enforcement facial challenge." *Id.* at 187. In *El Cenizo*, no discovery had yet been taken and no facts had been adduced other than those alleged in the complaint. The Fifth Circuit noted that "such a challenge is the most difficult to mount successfully" because "it is not enough for the plaintiffs to demonstrate that the ICE-detainer mandate will often cause Fourth Amendment violations." *Id.* Instead, plaintiffs "must establish that the mandate is unconstitutional in all of its applications." *Id.* (internal quotations and citations omitted). In analyzing whether the "ICE-detainer mandate" in SB4 *facially* violated the Fourth Amendment, the Fifth Circuit stated that "plaintiffs must establish that every seizure authorized by the ICE-detainer mandate violates the Fourth Amendment" and concluded that plaintiffs could not satisfy that "exacting standard." *Id.*

This Court does not find the analysis in *El Cenizo* persuasive or helpful in deciding the issues in Defendants' motions to dismiss. The procedural posture there—reviewing the grant of a preliminary injunction enjoining the enforcement of a state law—does not address the very different standard involved here—reviewing a motion to dismiss—where the Court takes as true all well-pled allegations in the amended complaint and views all facts in the light most favorable to Mr. Creedle.

Here, if ICE's issuing a detainer constituted a seizure for Fourth Amendment purposes—as Mr. Creedle alleges it did—the next step in the analysis is whether ICE, when it caused the warrantless arrest that the detainer resulted in, had probable cause to believe both (1) that Mr. Creedle was removable from the U.S., and (2) that Mr. Creedle

was likely to escape before a warrant could be obtained for his arrest.  *See* 8 U.S.C. §

1357(a)(2).  The Court addresses each of these requirements in turn.

ICE's argument that issuing a detainer could not have violated Mr. Creedle's

Fourth Amendment rights because the detainer was voluntary and it was the County, not

ICE, that actually arrested Mr. Creedle, is unpersuasive.  As the Supreme Court has

stated in another Fourth Amendment context, ICE is "responsible for the natural

consequences of [its] actions."  *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *see also*

*Morales*, 793 F.3d at 217 (holding that federal defendants could be liable under the Fourth

Amendment for plaintiff's arrest pursuant to a detainer because "a law enforcement officer

is responsible for the natural consequences of his actions").  ICE cannot issue a detainer

that avers "probable cause" to believe an individual is removable from the U.S., only to

later disclaim all responsibility for that person's arrest when it turns out that the individual

is a U.S. citizen.  *See Gonzalez*, 2014 WL 12605368, at *5 (holding that because

"immigration detainers are intended to—and actually do—induce law enforcement

agencies to incarcerate individuals beyond the time they would otherwise be released,"

the detention is "directly traceable to ICE").

Next, because ICE argues that it had probable cause to issue a detainer for Mr.

Creedle for a civil immigration violation (rather than a criminal violation), "a finding of

probable cause would require specific 'facts and circumstances sufficient to warrant a

prudent [person] in believing' that [Mr. Creedle] was a non-citizen who was subject to

detention and removal."  *Morales*, 996 F. Supp. 2d at 39 (quoting *Gerstein v. Pugh,* 420

U.S. 103 (1975)).  Because Mr. Creedle alleges that he was arrested without a warrant,

his arrest also would have required a probable cause determination that he was "likely to escape before a warrant [could] be obtained." *See* 8 U.S.C. § 1357(a)(2).

ICE's argument that, even if issuing the detainer did constitute a "seizure" of Mr. Creedle for Fourth Amendment purposes, it had probable cause to issue the detainer based on the language on the detainer form itself also fails. Not only is this argument entirely circular, it also fails substantively because the language on Mr. Creedle's detainer form that purportedly supported ICE's "probable cause" to issue the detainer states: "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *See* DE 48-1, Ex. D. Even if this bare, conclusory statement were sufficient to show that ICE had probable cause to believe that Mr. Creedle was removable from the U.S., the detainer form would still be insufficient because there is no mention of Mr. Creedle being likely to escape before an arrest warrant could be obtained.

ICE has not yet proffered any facts regarding the agency's probable cause analysis—and the Court declines to consider the facts alleged by Martinez in his motion to dismiss when ruling on ICE's motion to dismiss—but to the extent that ICE relied on the fact that Mr. Creedle was born outside of the U.S. to support a probable cause finding that he was removable, that basis, standing alone, is wholly insufficient as a matter of law. *See, e.g.*, *Morales*, 996 F. Supp. 2d at 39 ("The only fact that the state had in deciding whether to detain Ms. Morales was that she was born in another country. Certainly, that single factor is insufficient to warrant a prudent person to believe that she

was in this country illegally . . . [because] there are over 17 million United States citizens that were born in another country."); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (holding that a person's ancestry, or apparent ancestry, is insufficient to justify either a reasonable belief that the person is an "alien," or a reasonable belief that the person is otherwise engaged in illegal activity).

Finally, ICE relies on *Abel*, a 1960 Supreme Court case stating that "legislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel*, 362 U.S. at 232-34.  Even under this precedent, however, ICE officials would have needed an administrative warrant, which was not present here, to comport with the requirements of the Fourth Amendment when it caused Mr. Creedle's arrest.

For the reasons stated above, Mr. Creedle has alleged facts sufficient to state a claim against ICE under the Fourth Amendment.  Mr. Creedle has alleged that (1) ICE issued a detainer without probable cause that he was removable from the U.S., that he was likely to escape before a warrant could be obtained, or that he had committed a crime, and (2) the detainer caused his unlawful arrest by the County for civil immigration purposes.  As the review of cases involving immigration detainers above demonstrates, Mr. Creedle's allegations are sufficient to survive a motion to dismiss.

### D. Counts I and II: Fourth and Fourteenth Amendment *Monell* Claims

Having reviewed the threshold issues of standing and mootness in Sections III.A.1 and III.A.2 above, and having discussed the arguments in ICE's motion to dismiss, the

Court now turns to the remaining arguments in the County's motion to dismiss.  The Court will first analyze Mr. Creedle's Fourth Amendment claim and then turn to his Fourteenth Amendment claim.

Mr. Creedle brings Count I of this action pursuant to 42 U.S.C. § 1983, which provides a private right of action against anyone who subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights or privileges secured by the Constitution and laws of the United States. *Rehberg v. Paulk*, 566 U.S. 356 (2012).  Mr. Creedle argues that he has stated claims against the County under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978), because the amended complaint alleges that Mr. Creedle was re-arrested without probable cause after posting bond in his initial criminal matter pursuant to the County's new policy and practice of "re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request."  (DE 48 at 9).  But for the County's policy of requiring MDC to "honor all immigration detainer requests," Mr. Creedle would not have been re-arrested by the County based on a purported civil immigration infraction in violation of his Fourth and Fourteenth Amendment rights.  *Id.* at 12.  Thus, Mr. Creedle contends that these allegations, taken as true, are sufficient to meet *Monell*'s requirement that the County's policy and practice of honoring detainers was a proximate cause of his constitutional rights being violated and that the County acted under color of state law when it re-arrested him based on the detainer.

The County responds that Mr. Creedle cannot proceed with his suit because he has not adequately alleged a policy or practice claim under *Monell*.  The County argues that "there can be no municipal liability under 42 U.S.C. § 1983 because all relevant actions were taken under color of federal authority and an official policy that is authorized by law and that, on its face, requires compliance with the law cannot be the moving force and proximate cause of a constitutional violation."  (DE 70 at 1).

### 1. *Monell* Claims under Section 1983

"[T]o demonstrate a *Monell* claim, the plaintiff must show: (1) the violation of a federal right occurred; (2) the existence of a municipal policy or custom; and (3) a causal connection between the violation and the municipal policy or custom."  *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1270 (S.D. Fla. 2015) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  The plaintiff must also show that the constitutional violation occurred "under color of State law."  *Monell*, 436 U.S. at 683.

The Eleventh Circuit has held that, when reviewing Section 1983 claims, a district court must "provide appropriate time for discovery so that both parties may obtain the evidence necessary to present the facts and law relevant to the district court's determination of the alleged constitutional violations."  *Id.* at 999 (reversing a district court's grant of summary judgment to the defendant, the City of Fort Lauderdale, and stating that discovery may be necessary to establish a constitutional violation in Section 1983 cases so that "[t]he district court . . . will be in a position to determine if plaintiffs-appellants have established the first element of a prima facie case under section 1983, or if their allegations of constitutional violations warrant trial").

In *Bannum, Inc.*, the district court converted the defendants' motion to dismiss into a motion for summary judgment and found that defendants were entitled to summary judgment. *Id.* at 995. The Eleventh Circuit reversed on the grounds that the "case was terminated at a premature stage" and found that "[t]he district court ha[d] neither addressed plaintiffs-appellants' allegations of constitutional deprivations nor allowed discovery on these issues to enable plaintiffs-appellants to develop their case fully." *Id.* at 999.

### a. Plaintiff has Sufficiently Alleged a Constitutional Violation

Mr. Creedle argues that the County lacked authority under federal immigration laws to arrest him on behalf of ICE pursuant to a detainer and, therefore, the County violated Mr. Creedle's Fourth Amendment rights when it arrested him. The County, however, argues that it was authorized under federal law to cooperate with ICE by honoring the detainer requesting that Mr. Creedle be held after he would have otherwise been released based solely on probable cause that he was removable from the U.S.

### i.   The INA and Immigration Case Authority

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens[,]" *Arizona v. United States*, 567 U.S. 387, 394 (2012), "subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Federal governance of immigration and alien status is extensive and complex." *Arizona*, 567 U.S. at 395. The "comprehensive federal statutory scheme for regulation of immigration and naturalization" is embodied in the INA. *See Buquer v. City of Indianapolis*, No. 1:11-cv-708, 2013 WL 1332158, at *1 (S.D. Ind. Mar. 28,

2013) (quoting *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 587 (2011)).

"In the INA, 'Congress has specified which aliens may be removed from the United States and the procedures for doing so. Aliens may be removed [and are removable] if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law. Removal is a civil, not criminal, matter. A principal feature of the removal system is the broad discretion exercised by immigration officials.'" *Lopez-Aguilar*, 296 F. Supp. 3d at 969 (quoting *Arizona*, 567 U.S. at 396 (citations omitted)). Moreover, the Supreme Court has held that local law enforcement officials cannot unilaterally detain individuals based on mere suspicion of illegal presence in the United States. *See Arizona*, 567 U.S. 387.

The INA provides that the Secretary of DHS may enter into a written agreement with a state or any political subdivision of a state, pursuant to which an officer or employee of the state or political subdivision, who is determined by the Secretary of DHS to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the U.S., may carry out such function at the expense of the state or political subdivision and to the extent consistent with state and local law. 8 U.S.C. § 1357(g)(1). Moreover, an administrative detainee held by local officials pursuant to such an agreement remains under ICE custody and control. *See Parlak v. Baker*, 374 F. Supp. 2d 551, 557 (E.D. Mich. 2005), *vacated on other grounds*, *Parlak v. U.S. Immigration and Customs Enforcement*, 2006 WL 3634385 (6th Cir. 2006).

States and their political subdivisions are not required to enter into an agreement under Section 1357(g).  8 U.S.C. § 1357(g)(9).  The statute also states that nothing in Section 1357(g) shall be construed to require an agreement in order for an officer or employee of the state or subdivision to "otherwise cooperate" with DHS in the identification, apprehension, detention or removal of aliens not lawfully present in the United States.  8 U.S.C. § 1357(g)(10)(B); *see also Abriq v. Hall*, 295 F. Supp. 3d 874, 880 (M.D. Tenn. 2018) (providing an overview of permissible cooperation between federal and state authorities under Section 1357(g)).

Nonetheless, "the system Congress created . . . specifies limited circumstances in which state officers may perform the functions of an immigration officer." *Arizona*, 567 U.S. at 408; *Buquer*, 2013 WL 1332158, at *9 ("[C]ircumstances [in which state enforcement officers may be authorized to assist the federal government in immigration matters] are limited and clearly defined under federal law.").  The "principal example" of permissible cooperation identified in *Arizona* is a formal, written agreement under Section 1357(g).  *Arizona*, 567 U.S. at 408; *see* 8 U.S.C. § 1357(g)(1)-(2); *Buquer*, 2013 WL 1332158, at *2.  Under such an agreement, a state officer is "subject to the Attorney General's direction and supervision[,]" *Arizona*, 567 U.S. at 409 (citing 8 U.S.C. § 1357(g)(3)), receives training in the "significant complexities involved in enforcing federal immigration law," *id.* (citing 8 U.S.C. § 1357(g)(2), 8 C.F.R. §§ 287.5(c), 287.1(g)), and requires written certification that adequate training has been completed.  *Id.* (citing 8 U.S.C. § 1357(g)(2)).

The *Arizona* Court noted other, specific examples of permissible cooperation as defined under the INA: authorization by the Secretary of DHS in response to an actual or imminent "mass influx of aliens arriving off the coast of the United States," *id.* at 408-09 (quoting 8 U.S.C. § 1103(a)(10)); arrest "in [the] specific circumstance" of a noncitizen who has been convicted of a felony, deported, and returned, only "after consultation with the Federal Government," *id.* at 409 (citing 8 U.S.C. § 1252(c)); and authorization "to arrest for [the federal crime of] bringing in and harboring certain aliens[.]" *Id.* at 409 (citing 8 U.S.C. § 1324(c)).

Because the INA provides that a formal, written agreement under Section 1357(g) is not required for any state officer "otherwise to cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," the *Arizona* Court also considered what would constitute permissible cooperation under this provision. 8 U.S.C. § 1357(g)(10)(B), *cited in Arizona*, 567 U.S. at 410. The Court found that "situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities," would be consonant with this provision of the INA. *Arizona*, 567 U.S. at 410. The Court also noted, as another example of permissible cooperation, communication authorized by statute. *Id.* ("State officials can also assist the Federal Government by responding to requests for information about when an alien will be released from their custody."); *see also Lopez-Aguilar*, 296 F. Supp. 3d at 973-74 (finding that "federal permission for state-federal cooperation in immigration enforcement does not embrace detention of a person

based solely on either a removal order or an ICE detainer . . . because [s]uch detention exceeds the limited circumstances in which state officers may enforce federal immigration law") (quotations omitted).

### ii.    The Fourth Amendment

The Fourth Amendment provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated.  U.S. Const. amend. IV.  Under the Fourth Amendment, "the predicate for an arrest is probable cause to believe the arrestee is committing or has committed a crime." *Lopez-Aguilar*, 296 F. Supp. 3d at 975-76 (citing *Devenpeck*, 543 U.S. 146; *Brown*, 443 U.S. at 51; *Dunaway*, 442 U.S. at 212-13).  Because "it is not a crime for a removable alien to remain present in the United States[,] [i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona*, 567 U.S. at 407.

A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause.  *See Beck*, 379 U.S. at 91.  "Probable cause exists 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Cozzi*, 892 F.3d at 1293-94 (quoting *Lee*, 284 F.3d at 1195 (internal quotation marks omitted)); *see also Gerstein*, 420 U.S. at 114 ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.").  "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United*

*States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006))."

The "seizure" of individuals for known or suspected immigration violations can violate the Fourth Amendment when conducted under color of state law because it is not a crime for a person who is removable to remain present in the United States. *Lopez–Aguilar*, 296 F. Supp. 3d at 974-75. Only when acting under color of federal authority—that is, as directed, supervised, trained, certified, and authorized by the federal government—may state officers effect constitutionally reasonable seizures for civil immigration violations. *Id.* at 977-98. "[K]nowledge that an individual has committed a civil immigration violation does not constitute reasonable suspicion or probable cause of a criminal infraction" and therefore cannot justify a Fourth Amendment seizure. *Id.*

The Court agrees with Mr. Creedle's contention that, if "otherwise cooperate" under Section 1357(g)(10), a catch-all provision, were read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE, the training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (holding that the "rule against superfluities" means that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quotations and citation omitted); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("The canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *City of Chicago v.*

45

*Sessions*, 888 F.3d 272, 277, 285 (7th Cir. 2018) (holding that the Attorney General did not have authority to place certain conditions on grants to "sanctuary cities" because "[a] clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose *any* conditions on *any* grants") (emphasis in original). Accordingly, the Court finds that Mr. Creedle has alleged plausible facts to support his contention that the County violated his Fourth Amendment rights when it arrested him based on a detainer and without probable cause that he had committed a crime. Mr. Creedle has plausibly alleged that his arrest by the County for an alleged immigration violation fell outside the scope of permissible "cooperation" under Section 1357(g).

Numerous courts have determined that when local law enforcement agencies hold someone pursuant to a detainer—and without separate probable cause that the person has committed a crime—such detention gives rise to a Fourth Amendment claim against the local law enforcement. *See, e.g., Lunn v. Commonwealth*, 477 Mass. 517, 535-37, 78 N.E.3d 1143, 1159 (2017) (finding that state officers were not authorized to arrest people for civil immigrations violations under Massachusetts common law and thus had no authority to "to arrest and hold an individual solely on the basis of a Federal civil immigration detainer" because "it is not reasonable to interpret § 1357(g)(10) as affirmatively granting authority to all State and local officers to make arrests that are not otherwise authorized by State law"); *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1259 (E.D. Wash. 2017) ("Courts around the country have held that local law enforcement officials violate the Fourth Amendment when they temporarily detain individuals for

immigration violations without probable cause."); *Morales*, 793 F.3d at 216 (finding "clear law" establishing that the constitution requires probable cause for the immigration detention that a detainer requests); *Abriq*, 295 F. Supp. 3d at 880-81 (finding that the defendant, a local law enforcement agency, lacked probable cause to detain the plaintiff pursuant to an immigration detainer); *Lopez–Aguilar v. Marion County Sheriff's Department*, 296 F. Supp. 3d 959, 969-70 (S.D. Ind. Nov. 7, 2017) (approving the parties' stipulated judgment declaring that "seizures by [Marion County] based solely on detention requests from ICE (in whatever form) or removal orders from an immigration court violate the Fourth Amendment unless ICE supplies, or [Marion County] otherwise possess[es], probable cause that the individual to be detained has committed a *criminal* offense").

In *Lopez–Aguilar*, the county argued that it held the plaintiff based on a detainer because it was required to "cooperate" with federal immigration officials.  296 F. Supp. 3d at 969-70.  The *Lopez–Aguilar* court held that "the full extent of federal permission for state-federal cooperation in immigration enforcement does not embrace detention of a person based solely on either a removal order or an ICE detainer." *Id.* at 973.  "Such detention exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created.'" *Id.* (citations omitted).

The *Lopez–Aguilar* court also held that "seizures conducted solely on the basis of known or suspected civil immigration violations violate the Fourth Amendment when conducted under color of state law." *Id.* at 975 (citing *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 464-68 (4th Cir. 2013); *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012)).  "[E]ven in cases where ICE has or supplies probable cause to believe a

noncitizen is deportable for a civil immigration violation, such probable cause, without more, does not justify the seizure of a person under color of state law." *Id.* at 976. The *Lopez–Aguilar* court noted that "[i]n general, civil matters do not justify arrests or custodial seizures amounting to arrests." *Id.* (citing *Doe v. Metro. Police Dep't*, 445 F.3d 460, 469 (D.C. Cir. 2006) ("Because the four Jane Does were arrested for a civil offense, their claims state a cause of action under the Fourth Amendment.")). "Two exceptions to this general rule are seizures under writs of bodily attachment or bench warrants for civil contempt of court, *see Armstrong v. Squadrito*, 152 F.3d 564, 567, 569-70 (7th Cir. 1998) (citations omitted), and seizures to effect involuntary commitments, or 'mental-health seizures,' in accordance with 'the governing [state statutory] legal standard.'" *Id.* (quoting *Bruce v. Guernsey*, 777 F.3d 872, 875-76 (7th Cir. 2015)). "The state's interests in making the two types of permitted civil seizures noted above similarly lie at the heart of its reserved police power: ensuring compliance with, and the functioning of, its courts, in the case of civil contempt seizures; and protecting a person from harming himself or others, in the case of mental-health seizures." *Id.* at 976-77 (citing *Bruce*, 777 F.3d at 876 ("Generally speaking, a mental-health seizure is lawful if there is probable cause to believe that the person seized is a danger to herself or others.")). "In the case of seizures for civil immigration violations, by contrast, the state has no legitimate interest in effecting the seizure itself." *Id.* at 977 (citing *Arizona*, 567 U.S. at 409-10 (quoting *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."))).

48

In the immigration context, the *Lopez–Aguilar* court found, "[t]he state has no interest in ensuring the 'suspect's' appearance at 'trial,' because the state may not adjudicate deportability; no interest in preventing the noncitizen from continuing his offense, because the state may not deport him; and no interest in investigating the incident, because evidence from such investigation will relate only to an adjudication the state may not conduct of the suitability of a remedy the state may not order." *Id.* "Where history is silent or equivocal," the court explained, "the balance of interests weighing so decisively in favor of individual privacy requires that this kind of unauthorized seizure of persons be disapproved." *Id.* Thus, "[o]nly when acting under color of federal authority, that is, as directed, supervised, trained, certified, and authorized by the federal government, may state officers effect constitutionally reasonable seizures for civil immigration violations." *Id.* Accordingly, "detainers, standing alone, do not supply the necessary direction and supervision." *Id.*

Following *Arizona*, two federal courts of appeals have reached the same conclusion as the court in *Lopez–Aguilar*. In *Melendres v. Arpaio*, plaintiffs challenged a county sheriff's department's program of immigration enforcement on Fourth Amendment grounds. 695 F.3d at 994-95 (affirming grant of preliminary injunction). The Ninth Circuit held that plaintiffs were "likely to succeed on their claim that without more, the Fourth Amendment does not permit a stop or detention based solely on unlawful presence." *Id.* at 1000.

The court noted that, although the defendant sheriff's department "previously had authority . . . to enforce civil immigration law" through an agreement under Section

1357(g), that agreement had been rescinded in relevant part. *Id.* at 1000-01.  In the absence of authority pursuant to an agreement under Section 1357(g), the court held that the sheriff's department "must enforce only immigration-related laws that are criminal in nature[.]" *Id.* at 1001.   State officers are simply "not empowered to enforce civil immigration violations" and their attempts to do so are constitutionally unreasonable.  *Id.*; *Melendres v. Arpaio*, 989 F. Supp. 2d 822, 895 (D. Ariz. 2013) (granting permanent injunction) ("[W]hen [a sheriff's deputy] detains a vehicle's occupant(s) because [the] deputy believes that the occupants are not legally present in the country, but has no probable cause to detain them for any other reason, the deputy violates the Fourth Amendment rights of the occupants.").

Similarly, in *Santos*, plaintiff challenged her seizure by two sheriff's deputies after ICE informed the deputies of an outstanding warrant for plaintiff's deportation.  725 F.3d at 458.  A Fourth Circuit panel reversed the district court's grant of summary judgment in defendants' favor on plaintiff's municipal liability claim because "knowledge that an individual has committed a civil immigration violation does not constitute reasonable suspicion or probable cause of a criminal infraction," and therefore cannot justify a Fourth Amendment seizure. *Id.* at 470.  The *Santos* court determined that a detainer was issued for plaintiff only after the Fourth Amendment violation had occurred and restricted its holding to the proposition that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected violations of federal immigration

law." *Id.* at 465-66.  Although the holding was narrow, the Fourth Circuit noted the general lack of state authority over civil immigration violations.  *Id.* at 459, 464.

Citing both *Melendres* and *Santos*, the *Lopez–Aguilar* court held that (1) "seizures conducted solely on the basis of known or suspected civil immigration violations violate the Fourth Amendment when conducted under color of state law," and (2) "federal permission to cooperate in federal immigration enforcement does not permit a state to require its law enforcement officers to comply with removal orders, standing alone, or ICE detainers, standing alone." 296 F. Supp. 3d at 978.

### iii.   The County Lacked Authority under Federal Law to Arrest Mr. Creedle for a Civil Immigration Violation

The Court agrees with the above cases and finds that Mr. Creedle has plausibly alleged that the County was not authorized by federal law to arrest him for a civil immigration violation and, therefore, because he was arrested without probable cause of a crime, the County violated his Fourth Amendment rights.

### iv.   The County Lacked Authority under State Law to Arrest Mr. Creedle for a Civil Immigration Violation

The County maintains that it had authority under two provisions of Florida law to detain Mr. Creedle on behalf of the federal government for an alleged civil immigration offense.   Mr. Creedle responds that these state law provisions are not independent sources of authority for the County to arrest individuals for civil immigration violations.

### a)   Florida Statute Section 950.03

First, the County argues that it had authority to arrest Mr. Creedle under Florida Statute Section 950.03, which provides that "[t]he keeper of the jail in each county within

this state shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States and shall safely keep each prisoner according to the warrant or precept for such commitment until he or she is discharged by due course of law of the United States." Fla. Stat. § 950.03. Mr. Creedle contends that this statute—enacted in 1847—is irrelevant here because, rather than operating as an independent source of arrest authority, it instead authorizes "jailers to hold prisoners who have already been validly arrested by federal officers." (DE 89 at 7). Moreover, the County agrees that Mr. Creedle was in its sole custody—not being "receive[d] into" its custody—when he was detained pursuant to the detainer request from ICE. (DE 70 at 19) ("Martinez requested that the County maintain custody of [Mr. Creedle], who was already in its charge, under the authority of the United States . . . .").

The Court agrees with Mr. Creedle that Section 950.03 is not an independent source of authority under which the County could lawfully arrest Mr. Creedle solely on the basis of a detainer. As discussed above, the County did not have authority under federal law to arrest Mr. Creedle based on a detainer, and this archaic Florida statute adds nothing to the County's arrest authority. Accordingly, the Court finds that Section 950.03 does not support the County's arrest of Mr. Creedle pursuant to a detainer based on a purported civil immigration violation.

### b)   Florida Statute Section 901.18

The County also points to Florida Statute Section 901.18 for the proposition that it is immune from civil liability under Florida law because the County's arrest of Mr. Creedle amounted to "aid[ing] a peace officer." (DE 70 at 19). Section 901.18 provides that "[a]

person commanded to aid a peace officer shall have the same authority to arrest as that peace officer and shall not be civilly liable for any reasonable conduct in rendering assistance to that officer." Fla. Stat. § 901.18. Mr. Creedle argues that the County's position with respect to this provision of Florida law is "untenable" because the County's interpretation would "require every person who is asked to make an arrest to make that arrest" and, thus, "[t]here would be no limit to the arrests that federal agencies could demand of local officers." (DE 89 at 8-9).

The Court again agrees with Mr. Creedle's reading of the statute. It cannot be that Section 901.18 applies in the context of federal officials coordinating with the County to arrest individuals for civil immigration purposes. If an ICE official (or any other federal officer) is a "peace officer" under Section 901.18, then ICE officials could "command" the County and its officers to arrest individuals—pursuant to detainers or, presumably, for any other reason—and the County would be required to comply by "render[ing] assistance as directed by the officer." Fla. Stat. § 901.18. This reading of the statute defies both fundamental Tenth Amendment principles and also the Parties' consensus that detainers are voluntary requests because it would allow federal officers to command local law enforcement to assist with arrests, including civil immigration arrests. *See New York v. United States*, 505 U.S. 144, 175 (1992) (holding that "federal action [that] would 'commandeer' state governments into the service of federal regulatory purposes . . . [is] inconsistent with the Constitution's division of authority between federal and state governments"); *see also Printz v. United States*, 521 U.S. 898, 904 (1997) (holding invalid a federal law that "purport[ed] to direct state law enforcement officers to participate, albeit

only temporarily, in the administration of a federally enacted regulatory scheme"). Accordingly, the Court finds that Section 901.18 is not relevant to the Court's analysis of Mr. Creedle's claims and, at the very least, cannot serve the County's proffered purpose of immunizing it from liability for a Fourth Amendment violation.

For the reasons set forth above, the Court finds that Mr. Creedle has plausibly alleged that his Fourth Amendment rights were violated when the County arrested him pursuant to a detainer because the County was not authorized under either state or federal law to effectuate an arrest without a warrant or probable cause that he had committed a crime. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."); *see also Abriq*, 295 F. Supp. 3d at 880 (finding unpersuasive defendants' argument that local law enforcement was acting under color of federal authority when it detained plaintiff because it was cooperating with ICE under Section 1357(g)(10)).

### b.  Plaintiff has Sufficiently Alleged a Policy or Practice

Mr. Creedle has also alleged facts sufficient to state a plausible claim that the County had a policy and practice of re-arresting all individuals for which it received a detainer request from ICE.  "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citing *Monell,* 436 U.S. at 691, 694).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

practically have the force of law." *Id.* (citations omitted).  To adequately allege a *Monell* policy or practice claim, Mr. Creedle must "'plead[ ] factual content that allows the court to draw the reasonable inference' that the [County] maintained a policy, custom, or practice" that contributed to the alleged constitutional violations.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1949; *Monell*, 436 U.S. at 694).  "Under section 1983, local governments can be sued directly for monetary, declaratory or injunctive relief, when 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' and when constitutional deprivations result from 'governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'"  *Bannum, Inc.*, 901 F.2d at 997 (quoting *Monell*, 436 U.S. at 690-91).

Mr. Creedle has alleged that since January 26, 2017, when Miami-Dade County Mayor Gimenez issued his directive ordering MDC to "honor all immigration detainer requests"—subsequently ratified by the Board in a resolution—the County has honored all detainers from ICE by re-arresting individuals based on purported civil immigration violations after they would otherwise be entitled to release.  Moreover, the County has not disputed that, at the time of Mr. Creedle's arrest, the County was honoring all detainers from ICE.

### c. Plaintiff has Sufficiently Alleged the County's Policy or Practice was the "Moving Force" of His Constitutional Injury

Next, Mr. Creedle has sufficiently alleged that the County's policy and practice of honoring all detainer requests was the "moving force" behind his Fourth Amendment

injury.  The third element of a *Monell* claim requires that a plaintiff prove that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof."  *Monell*, 436 U.S. at 694.  The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, Mr. Creedle alleges, and the County concedes, that detainers are *voluntary* requests from ICE that the County has deliberately chosen to honor.  In fact, Mr. Creedle alleges that for the period from 2013 until the Board's resolution in 2017, the County did not accede to these detainer requests.  Mr. Creedle alleges that the County's policy and practice of complying with detainer requests was the moving force, *i.e.*, the proximate cause, of his constitutional rights being violated because, absent the County's independent decision to honor the detainer, he would not have been re-arrested after posting bond for his original criminal matter.

### d. Plaintiff has Sufficiently Alleged the County Acted under Color of State Law

Mr. Creedle has also alleged facts sufficient to plausibly claim that the County acted under color of state law, rather than federal law.  The Eleventh Circuit has held that "[i]n order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'"  *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996-97 (11th Cir. 1990) (quoting *Dollar v.*

*Haralson County,* 704 F.2d 1540, 1542-43 (11th Cir. 1983), *cert. denied,* 464 U.S. 963 (1983)) (citations omitted).

As discussed above, because Section 1357(g)(10) is not an independent source of arrest authority, the County's argument that it acted under color of federal law when it "cooperated" with ICE by arresting Mr. Creedle is unpersuasive.  Because the County made a voluntary decision to re-arrest a U.S. citizen for an alleged civil immigration violation without probable cause of a crime, Mr. Creedle has plausibly alleged that the County acted under color of state law when it violated his Fourth Amendment rights.

### e.  Mr. Creedle Has Sufficiently Alleged Deliberate Indifference

Finally, Mr. Creedle has also sufficiently alleged that the County's policy and practice of honoring all detainer requests from ICE reflected the County's deliberate indifference to the possibility that constitutional violations would result from that policy and practice.  To succeed on a facial challenge to a policy, a plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Id.* at 411; *see also Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.") (quoting *Brown,* 520 U.S. at 407).

Although the Parties dispute whether Mr. Creedle is required to prove deliberate indifference in this context, the Court need not decide that issue now.  Even if such allegations are required to withstand a motion to dismiss, Mr. Creedle has stated facts

sufficient to satisfy the "deliberate indifference" requirement under *Monell* by alleging that the County knew—based on statements the County made in the 2016 resolution discussed in <u>Section I</u> above—that holding individuals pursuant to detainer requests from ICE violates their Fourth Amendment rights.

Liberally construing Mr. Creedle's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, *Twombly*, 550 U.S. at 575, the Court finds that he has stated a viable Fourth Amendment claim against the County under Section 1983. Accordingly, the County's motion to dismiss Count I is denied.

### f.  Mr. Creedle's Fourteenth Amendment Claim Must be Dismissed

Mr. Creedle also alleges that his detention constituted a significant deprivation of life and liberty that requires due process protection under the Fourteenth Amendment. The County argues that Mr. Creedle has failed to state a Fourteenth Amendment *Monell* claim under Section 1983. A recent Eleventh Circuit decision, *Alcocer v. Mills*, No. 17-14804, 2018 WL 4870716 (11th Cir. 2018), is particularly instructive on this issue.

In *Alcocer*, the Eleventh Circuit stated that, when reviewing a Section 1983 case, the court must "begin [its] analysis by identifying 'the precise constitutional violation' the defendant has allegedly committed." *Alcocer*, 2018 WL 4870716, at *6 (quoting *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (*per curiam*)). In *Alcocer*, the plaintiff was "arrested and detained for the misdemeanor offense of driving with a suspended license." *Id*. at *1. "After Alcocer satisfied the bond requirements, the [ ] County jail continued to detain her because jail officers became suspicious that she might be present illegally in

the United States" because of a fax the jail received from ICE stating "'[ICE] RECORDS INDICATE THAT THIS SUBJECT IS NOT LEGALLY IN THE UNITED STATES.'" *Id.* at *1-2 (alteration in original).  Thus, "the district court concluded that Alcocer remained incarcerated because Defendants engaged in a second detention of her for being an illegally present alien." *Id.* at *6.

The Eleventh Circuit opined that "this fact pattern"—substantially similar to the facts here—"potentially presents two possible rights candidates for driving [the Court's] analysis: (1) the Fourth Amendment right to be free from unreasonable seizures, *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009), and (2) the Fourteenth Amendment due-process right to be free from continued detention after law enforcement should have known that the detained person was entitled to release, *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (*per curiam*)." *Id.*

After reviewing relevant precedent and the specific circumstances surrounding Alcocer's detention, the Eleventh Circuit found that, because the "facts that might have underpinned the conclusion that Alcocer was in the United States illegally were not a part of the probable cause that supported Alcocer's original detention . . . independent probable cause was required to warrant Alcocer's continued detention after she had satisfied all conditions of her bond on her original detention." *Id.* at *8 (citing *Morales*, 793 F.3d at 217.  Thus, "[t]he Fourth Amendment provide[d] an explicit source of protection for the right that Defendants allegedly violated" and was the appropriate governing constitutional analysis.  *Id.* at *9 ("Where the Constitution 'provides an explicit textual source of constitutional protection' for the violation alleged, we apply the analysis that

constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of substantive due process.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotations omitted)); *see also Abriq*, 295 F. Supp. 3d at 882 (finding that plaintiff's Fourteenth Amendment claim must be dismissed because "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); *Mercado v. Dallas Cty., Texas*, No. 3:15-CV-3481-D, 2016 WL 3166306, at *9 (N.D. Tex. June 7, 2016) (same).

Here, as in *Alcocer*, Mr. Creedle alleges that his continued detention resulted from information provided by ICE to the County—albeit in the form of a detainer—that caused the County to re-arrest him for an alleged civil immigration violation unrelated to the criminal matter for which he was originally arrested. Thus, "independent probable cause was required to warrant [Mr. Creedle]'s continued detention after [ ]he had satisfied all conditions of [his] bond on [his] original detention." *See Alcocer*, 2018 WL 4870716, at *8. Because the Fourth Amendment "provides an explicit textual source of constitutional protection" for the violation Mr. Creedle alleges, *Graham,* 490 U.S. at 395, this Court must "apply the analysis that constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of substantive due process.'" *Alcocer*, 2018 WL 4870716, at *8 (quoting *Graham*, 490 U.S. at 395). Thus, Mr. Creedle's Section 1983 claim against the County must proceed under a Fourth Amendment analysis, which the Court has conducted above, and Count II of the amended complaint is dismissed.

### E. Count III: False Imprisonment under Florida Law

The County also argues that Count III of the amended complaint must be dismissed because Mr. Creedle has not stated any facts alleging that the County detained him without "legal authority or color of authority," which is a required element of a claim for false imprisonment under Florida law.  (DE 70 at 18).  The County argues that it had the requisite legal authority under federal law to cooperate with federal immigration officials and maintain custody of Mr. Creedle for a brief period to allow DHS to assume custody.  *Id.*  The County also contends that it had authority under a Florida statute to detain individuals on behalf of the federal government.  *Id.* at 19.  Mr. Creedle responds that the County did not have authority under either federal or state law to detain him for a civil immigration violation.  (DE 89 at 6).

Under Florida law, "the tort of false imprisonment is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'"  *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) ("In a false imprisonment action the plaintiff is required only to establish imprisonment contrary to his will and the unlawfulness of the detention.").  To state a cause of action for false imprisonment, a plaintiff must establish four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances."  *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006)).

The Court finds that Mr. Creedle has alleged facts sufficient to state a plausible claim for false imprisonment.  First, Mr. Creedle adequately alleges, as discussed fully in Section III.D, that the County unlawfully detained him pursuant to a detainer because the County acted without either federal or state authority to arrest him for an alleged civil immigration violation.  Mr. Creedle also alleges that (1) he was detained against his will, because he states that he posted bond for his original offense and told MDC officials that he was a U.S. citizen; and (2) such detention was unreasonable and unwarranted because he is, in fact, a U.S. citizen and the County did not have probable cause that he had committed a crime when it re-arrested him.

Taking as true all of the facts alleged by Mr. Creedle, as the Court must at this stage, he has pled facts sufficient to state a plausible claim for false imprisonment under Florida law.  Thus, the County's motion to dismiss Count III is denied.

**F. Counts VI and VII: Fourth and Fifth Amendment *Bivens* Claims**

Having concluded the analysis of both the County and ICE's motions to dismiss, the Court now turns to the issues raised in Martinez's motion to dismiss.  (DE 68). Martinez first argues that Mr. Creedle's claims against him must fail because there is no claim applicable to Mr. Creedle's alleged injuries under the seminal Supreme Court case, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Martinez argues that this Court should not extend *Bivens* to the context present here: an immigration detainer issued by an ICE officer for Mr. Creedle, a U.S. citizen, that resulted in his allegedly unlawful detention.

Mr. Creedle responds that his claims do not arise in a new context and instead fall within the class of "quintessential *Bivens* claims" that "seek a remedy for violations of the Constitution's protection against unreasonable searches and seizures."  (DE 88 at 13). Mr. Creedle also contends that, even if the Court finds that his claims present a novel *Bivens* context, the Court should extend *Bivens* based on the facts in this case.  *Id.* at 15.

## 1. *Bivens* Claims

Under *Bivens*, a plaintiff may, in limited circumstances, recover money damages against federal officers who have violated a plaintiff's constitutional rights.  *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("The Court [in *Bivens*] held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures.").  Subsequently, the Supreme Court has cautioned lower courts against expanding *Bivens* to new contexts.  *Ziglar*, 137 S. Ct. at 1855 ("These three cases—*Bivens*,[15] *Davis*,[16] and *Carlson*[17]—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").  The

---

[15] In *Bivens*, the Court found an implied cause of action for damages under the Fourth Amendment against federal agents who entered Bivens's home without a warrant and arrested him.  *Bivens*, 403 U.S. 388.

[16] "In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination." *Ziglar*, 137 S. Ct. at 1854-55 (citing *Davis*, 442 U.S. at 248-49).

[17] "[I]n *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment." *Ziglar*, 137 S. Ct. at 1855 (citations omitted).

Court recently held that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citing *Iqbal*, 556 U.S. at 675).

The Court in *Ziglar* went on to explain "[t]he proper test for determining whether a case presents a new *Bivens* context[:] [i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859-60. For example, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.*

"In analyzing whether to recognize a *Bivens* remedy in a new context, [courts] engage in a two-step inquiry." *Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1206 (11th Cir. 2016), *cert. denied sub nom. Alvarez v. Skinner*, 137 S. Ct. 2321 (2017). First, the court asks "'whether any alternative, existing process for protecting the constitutionally recognized interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Minneci v. Pollard,* 132 S. Ct. 617, 621 (2012)). If the court "find[s] that existing process is sufficiently protective, [it] do[es] not recognize a *Bivens* remedy." *Id.* The Eleventh Circuit has explained that "[t]he alternatives need not 'provide complete relief for the plaintiff,' and as long as Congress has established an 'elaborate, comprehensive

scheme' governing a particular type of claim, this Court will not allow a *Bivens* remedy to supplement that system." *Id.* (quoting *Schweiker v. Chilicky,* 487 U.S. 412, 423, 436 (1988)).  If a court finds that the case presents a new *Bivens* context, it must conduct "a special factors analysis . . . before allowing th[e] damages suit to proceed." *Ziglar*, 137 S. Ct. at 1860.  "*Bivens* will not be extended to a new context if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1848 (citations and quotations omitted).

In *Alvarez*, the Eleventh Circuit considered whether to extend *Bivens* to claims "arising from civil immigration apprehensions and detentions," and held that "a plaintiff cannot recover damages under *Bivens* for constitutional violations that caused him to endure a prolonged immigration detention." *Alvarez*, 818 F.3d at 1208.  The Eleventh Circuit found persuasive decisions in the Ninth and Eighth Circuits declining to extend *Bivens* claims in the immigration context because, among other things, (1) the INA "provides an adequate alternative remedy" for individuals with final orders of removal who are detained by ICE past the statutory maximum without review and, (2) the existing "federal governance of immigration and alien status is extensive and complex." *Id.* at 1207-08 (quoting *De La Paz v. Coy,* 786 F.3d 367 (5th Cir. 2015) (quoting *Arizona*, 567 U.S. at 395)).

The dissent, however, argued that the court should have allowed a *Bivens* claim to proceed against one of the defendants, an ICE officer who reviewed the plaintiff's "detention at the 180-day mark, knew that [the plaintiff] could not be removed . . . and never intended to remove him." *Alvarez*, 818 F.3d at 1213 (Pryor, J., dissenting).

Because the plaintiff had "plausibly alleged [a] claim that [the defendant] performed a sham review and continued to detain him, knowing that the law required his release," the dissent found that the court should have allowed the plaintiff's "due process claim" against the defendant ICE officer to proceed. *Id.*

### 2. Mr. Creedle's Claims Present a New Context under *Bivens*

First, the Court finds that, given the Eleventh Circuit's decision in *Alvarez* and the Supreme Court's subsequent holding in *Ziglar*, Mr. Creedle's claims against Martinez under the Fourth and Fifth Amendments present a new *Bivens* context. The Court can find no prior case that addresses whether an ICE officer may be held liable for damages under *Bivens* for issuing an immigration detainer for a U.S. citizen. Indeed, the Court has not found, and the Parties have not presented, any persuasive cases addressing *Bivens* in the broader context of a wrongful arrest (other than, of course, *Bivens* itself).

This case differs from *Bivens* in several material respects. *Bivens* involved a plaintiff who was at home when federal agents entered his apartment without a search warrant, searched the entire apartment, and then arrested Bivens (without an arrest warrant) in front of his family. *Bivens*, 403 U.S. 388. Although one of Mr. Creedle's *Bivens* claims is brought under the Fourth Amendment, the specific facts of this case differ significantly from those in *Bivens*. Mr. Creedle had been arrested and was in the County's custody when Martinez, a federal immigration officer, issued a detainer requesting that the County continue to hold him for 48 hours (excluding weekends and holidays) on behalf of ICE for federal immigration purposes.

Thus, the Court concludes that Mr. Creedle's claims present a new context under *Bivens*, especially in light of the Supreme Court's analysis and holding in *Ziglar*.  *See Ziglar*, 137 S. Ct. at 1864 (finding that "even a modest extension is an extension" that presents a new *Bivens* context).  This finding, however, should not be construed to suggest that all *Bivens* claims based on immigration detainers, or in the context of immigration detention generally, would necessarily present a new context.[18]  To be sure, the Court's finding is limited to the narrow facts presented by this case, where an ICE officer is alleged to have issued a detainer against a U.S. citizen without probable cause.  Mr. Creedle does not allege that Martinez's issuance of the detainer was malicious (as was the conduct of the defendants mentioned by the dissent in *Ziglar*), based on fabricated information, or otherwise outside the scope of Martinez's rote, ministerial duties as an ICE officer.  Unlike *Alvarez*, where the plaintiff had alleged that the ICE officer conducted a sham review while knowing that the plaintiff could not be "removed in the reasonably foreseeable future," Mr. Creedle has not alleged that Martinez knew that Mr. Creedle was a U.S. citizen or that he purposefully issued a detainer knowing that Mr. Creedle could not lawfully be detained by the County pursuant to a detainer.

### 3.    Special Factors Counsel Against Extending *Bivens* to Mr. Creedle's Claim Against Martinez

Having found that Mr. Creedle's claims against Martinez present a new context under *Bivens*, the Court must next consider whether there are "special factors counselling

---

[18] This Court agrees with the dissent in *Alvarez*, which disagreed with the "broad, categorical holding that 'a plaintiff cannot recover damages under *Bivens* for constitutional violations that caused him to endure a prolonged immigration detention.'"  *Alvarez*, 818 F.3d at 1218 (Pryor, J., dissenting).

hesitation" before allowing Mr. Creedle's *Bivens* claims to proceed.  The Court finds that, under the specific facts of this case and the analysis set forth in *Ziglar*, there are.

As mentioned above, the allegations against Martinez in the amended complaint do not suggest that Martinez knowingly or purposefully issued a detainer against a U.S. citizen.  Mr. Creedle also does not allege that Martinez knew that the County could not lawfully detain him pursuant to the detainer that Martinez signed.  Instead, it appears that Martinez was acting within the parameters of ICE's current practices and procedures for issuing detainers.  The Supreme Court held in *Ziglar*, however, that "a *Bivens* action is not a proper vehicle for altering an entity's policy[,]" or otherwise "call[ing] into question the formulation and implementation of a general policy."  *Ziglar*, 137 S. Ct. at 1860 (internal quotations omitted).  That is what Mr. Creedle seeks to do here.  Rather than seeking damages for an unauthorized, ultra vires act done by a malicious or reckless official, Plaintiff makes clear in his amended complaint that he challenges the broader, general policy of issuing detainers pursuant to which Martinez acted.

Even acknowledging that Martinez lacked probable cause to issue the detainer for Mr. Creedle, it is not clear that this Court is "well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" against an individual federal employee in this new context. *Id.* at 1858 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others.").  Thus, the Court finds that, under

the specific facts of this case, a judicially-created damages remedy under *Bivens* against Martinez is not warranted.

For the reasons set forth above, Martinez's motion to dismiss is granted.  Having found that Mr. Creedle has failed to state a claim against Martinez, the Court need not address Martinez's argument that he is immune from any such claims based on qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1.  The County's motion to dismiss (DE 70) Counts I and III is **GRANTED IN PART AND DENIED IN PART**;

2.  The County's motion to dismiss Count II is **GRANTED**;

3.  DHS and ICE's motion to dismiss (DE 69) Counts IV and V is **GRANTED IN PART AND DENIED IN PART**; and

4.  Martinez's motion to dismiss Counts VI and VII (DE 68) is **GRANTED**.

ICE, DHS and the County shall file answers to Mr. Creedle's amended complaint within 14 days of the date of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, this $\underline{9th}$ day of November, 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE