**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISON**

GARLAND CREEDLE,

      Plaintiff,

v.

                                  Case No.: 1:17-cv-22477-KMW

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED           **JURY TRIAL DEMANDED**
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT;
and the UNITED STATES OF AMERICA,

      Defendants.

_____/

## <u>SECOND AMENDED COMPLAINT FOR DAMAGES AND</u> <u>DECLARATORY RELIEF</u>

Plaintiff Garland Creedle sues Defendants Miami-Dade County, Florida, United States

Department of Homeland Security (DHS), United States Immigration and Customs Enforcement

(ICE), and the United States of America (United States) and states the following:

### INTRODUCTION

1.      Miami-Dade County unlawfully arrested and detained Plaintiff Garland Creedle

solely for civil immigration purposes, even though Mr. Creedle is a U.S. citizen who cannot be

deported. The County arrested Mr. Creedle at the request of Officer Alexander Martinez, an ICE

deportation officer, pursuant to a check-the-box ICE detainer form. The County arrested Mr.

Creedle pursuant to a policy and practice of Miami-Dade County that requires the Miami-Dade

Corrections and Rehabilitation Department (MDCR) to deny release for 48 hours or more to any

person who is the subject of an ICE detainer request.

2. The impetus for Miami-Dade County's said policy and practice was a January 26, 2017 directive of Mayor Carlos A. Gimenez instructing MDCR to honor all ICE detainers. *See* Exhibit A, Attached. The subsequent ratification of this directive by the Miami-Dade County Board of County Commissioners reversed over three years of prior policy, whereby the County declined to spend millions of taxpayer dollars to underwrite the federal government's immigration enforcement agenda.

3. The County's policy of acceding to immigration detainer requests runs contrary to hundreds of other cities and counties across the country that have reaffirmed their commitment to limit their unnecessary and unlawful involvement in federal immigration enforcement. The policy causes the County to routinely violate the Fourth Amendment of the U.S. Constitution as incorporated into the Fourteenth Amendment, as well as Florida law.

4. Mr. Creedle requests a declaratory judgment that the County's detainer arrest policy violates the prohibition against unlawful seizures under the Fourth Amendment of the U.S. Constitution and constitutes false imprisonment under Florida law. Mr. Creedle requests monetary damages pursuant to 42 U.S.C. § 1983.

5. Mr. Creedle also seeks a declaratory judgment that Defendant ICE exceeds its statutory authority by issuing detainers in the manner which exposed, and continues to expose, Mr. Creedle to injury, as described below.

6. Finally, Mr. Creedle brings a claim for compensatory damages under the Federal Torts Claim Act, 28 U.S.C. § 2671 *et seq.*, against the United States on account of the illegal and negligent actions of ICE, a federal law enforcement agency under the DHS, and agents and employees working for both DHS and ICE.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, 1367, 2201-02, 2671, 5 U.S.C. §§ 702-03 and Article III of the U.S. Constitution. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      The United States is liable pursuant to the Federal Tort Claims Act for the tortious acts of its employees in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

9.      At all times relevant to this Complaint, ICE officials—including Officer Martinez—acted within the scope of their employment and their official duties as employees of DHS, an agency of the United States.

10.      On May 30, 2018, undersigned counsel, on behalf of Mr. Creedle, submitted Administrative Tort Claims to Defendants DHS and ICE. *See* Exhibit F, Plaintiff's Administrative Claim. On November 14, 2018, the United States denied Mr. Creedle's administrative tort claims. *See* Exhibit G, Denial of Administrative Claim.

11.      Mr. Creedle has therefore exhausted all available administrative remedies. 28 U.S.C. § 2675.

## PARTIES

### <u>Plaintiff</u>

12.      Plaintiff Garland Creedle was born in Honduras. He is 20 years old. Mr. Creedle is a U.S. citizen and has been since birth by virtue of the U.S. citizenship held by his father, Willie Edward Creedle.

**Defendants**

13.     Defendant Miami-Dade County is a political subdivision of the State of Florida that can be sued in its own name. Miami-Dade County is responsible for authorizing the policy and practice that led to the unlawful arrest of Mr. Creedle. The County is responsible for the acts of MDCR, an administrative department of Miami-Dade County.

14.     Defendant Miami-Dade County is sued in its official capacity and is a "person" liable for monetary damages pursuant to 42 U.S.C. § 1983. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

15.     Defendant DHS is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

16.     Defendant ICE is a component of DHS responsible for the criminal and civil enforcement of the immigration laws and is a federal agency within the meaning of 5 U.S.C. 552(f)(1).

17.     Defendant United States is the appropriate defendant under the Federal Tort Claims Act and can be held liable for the negligent and illegal conduct of Defendants DHS, ICE, and Alexander Martinez. 28 U.S.C. § 2674.

**STATEMENT OF FACTS**

**"Immigration Detainer Requests"**

18.     When a person is arrested and taken to a Miami-Dade County jail, MDCR officials take their fingerprints. These fingerprints are sent to the Federal Bureau of Investigation and DHS.

19.     The fingerprint background check reveals any outstanding judicial warrants, which appear on the booking officer's computer screen. A MDCR official transfers this information to the inmate's "jail card."

20. The fingerprint background check may also trigger a detainer request from federal immigration authorities at ICE to re-arrest a person after the person's criminal custody has come to an end.

21. A detainer request is not a judicial warrant, but a request issued by an ICE enforcement official.

22. An immigration detainer request is a boilerplate, checkbox form issued by a rank-and-file federal immigration officer for a civil immigration purpose.

23. Once MDCR officials are alerted of a detainer request made by ICE, they mark the detained person's jail card with the phrase "immigration hold" or "immigration detainer."

24. MDCR officials announce in open court when people have immigration holds on them.

25. From the moment that a person's jail card is marked to indicate an immigration detainer MDCR treats the detained person as if he or she is not eligible for release.

26. The practice of treating everyone with an immigration detainer as not eligible for release has immediate and dire effects.

27. People with immigration detainers cannot pay the standard bond amount to get out of the jail the same day that they are arrested.

28. Any inmate with an immigration detainer becomes ineligible for house arrest or a diversion program.

29. When detained persons or their family and friends ask about a detained person's eligibility for bond or try to post bond, MDCR officials announce that the detained person will not be released because of the detainer.

30. As a result of the immigration detainers, some bond companies will not post

bond.

31.     DHS agency regulations authorize the issuance of detainers in certain circumstances. *See* 8 C.F.R. § 287.7(b) (authorizing all "deportation officers" and "immigration enforcement agents," among others, to issue detainers). A detainer requests a local law enforcement agency (LEA) to arrest and detain an individual in the LEA's custody for potential civil action by federal immigration authorities *after* the person is entitled to release.

32.     Under the immigration detainer, MDCR officials re-arrest and detain the person for potential civil action by federal immigration authorities *after* the individual is entitled to release.

33.     A detainer is not supported by a warrant or any other probable cause determination by a detached and neutral judicial officer. Nor is it supported by a sworn, particularized showing of probable cause that the subject is a noncitizen and removable under federal immigration law.

34.     A detainer is a fill-in-the-blank form with check boxes for a generic list of potential sources of information that do not form the basis for a particularized probable cause determination that the detainer subject is removable on a civil immigration violation, including "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."

35.     The form used by ICE to lodge a detainer against Mr. Creedle is called a "Department of Homeland Security (DHS) Request for Voluntary Transfer."

36.     Detainer requests are not supported by probable cause in the form of a sworn

statement of specific facts relating to the subject of the detainer.

37.     The detainer request form contains no determination that there is a reason to believe that the subject individual is "likely to escape before a warrant can be obtained," as is required when federal authorities make a warrantless civil immigration arrest under federal law. 8 U.S.C. § 1357(a)(2).

### The 2013 County Resolution Limiting Miami-Dade's Participation in the Federal Government's Immigration Detainer Regime

38.     ICE detainers are merely *requests* for detention – they do not purport to *require* localities like Miami-Dade County to do anything. *See Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014) (detainer regulation "authoriz[es] only permissive requests" for detention); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 40 (D.R.I. 2014); *aff'd in part,* 793 F.3d 208 (1st Cir. 2015); *Miranda-Olivares v. v. Clackamas County*, 2014 WL 1414305, *4-8 (D. Or. Apr. 11, 2014).

39.     In December 2013, Miami-Dade's Board of County Commissioners enacted a resolution which directed the Mayor to limit the County's authority to arrest individuals pursuant to immigration detainer requests. *See* Miami-Dade Cty. Bd. of Comm'rs, Resolution 1008-13 (Dec. 3, 2013), http://www.miamidade.gov/govaction/legistarfiles/Matters/Y2013/132196.pdf. Under this policy:

> Miami-Dade Corrections and Rehabilitation Department may, in its discretion, honor detainer requests issued by United States Immigration and Customs Enforcement only if the federal government agrees in writing to reimburse Miami-Dade County for any and all costs relating to compliance with [ICE] detainer requests and the inmate that is the subject of such a request has a previous conviction for a Forcible Felony, as defined in Florida Statute section 776.08, or the inmate that is the subject of such request has, at the time the Miami-Dade Corrections and Rehabilitation Department receives the detainer request, a pending charge of a non-bondable offense, as provided by Article I, Section 14 of the Florida Constitution, regardless of whether bond is eventually granted.

*Id*. at 5. The policy thus imposed two conditions that must be satisfied before the County may detain an individual pursuant to an ICE detainer. As a threshold matter, the County would not participate in any immigration detention unless the federal government agreed to reimburse the County for all associated costs in writing. And if the federal government agreed to reimbursement, the County would arrest only individuals who have been charged or convicted of certain enumerated offenses.

40. The Resolution became effective on December 13, 2013, ten days after its adoption. *See id*. at 6; Miami-Dade Home Rule Charter § 2.02(D) (providing the Mayor a 10-day veto period over "any legislative [ . . . ] decision of the Commission"). Because the federal government declined to reimburse the County for any expenses associated with detainers, the MDCR, the department responsible for the County's jails, stopped arresting individuals pursuant to ICE detainer requests in January 2014.

41. The Board of County Commissioners ratified its position when, just over a year ago, it unanimously resolved to oppose statewide legislation that would preempt its anti-detainer policy. *See* Miami-Dade Cty. Bd. of Comm'rs, Resolution 77-16 (Jan. 20, 2016), http://www.miamidade.gov/govaction/legistarfiles/MinMatters/Y2015/153028min.pdf. The resolution recognized that, since the County Commission adopted the County's detainer policy in 2013, "the taxpayers of Miami-Dade County have saved hundreds of thousands of dollars in costs that are unreimbursed by the federal government associated with honoring immigration detainer requests." *Id*. at 4.

42. The Board's 2013 resolution also recognized that federal courts across the United States "have found that local law enforcement agencies that detain individuals on the sole authority of a detainer request violate the Fourth Amendment of the U.S. Constitution, exposing

such agencies to legal liability unless there has been an independent finding of probable cause to justify detention." *Id*. The Board noted that "a judge is not required to review or approve an immigration detainer," and that a detainer "may be issued by a single Immigration[] and Customs Enforcement officer when there are no immigration proceedings pending." *Id*. at 6. This process, the Board recognized, "does not meet the U.S. Constitution's minimum standard for authorizing detention after an inmate is scheduled to be released." *Id*. The Board thus opposed "legislation that would preempt policies set by th[e] Board related to immigration detainer requests." *Id*. at 8.

43.     For more than three years, MDCR dutifully followed the detainer policy enacted by the Board of County Commissioners.

### The 2017 Change in Policy and Practice

44.     On January 26, 2017, Miami-Dade County Mayor Gimenez sent a memorandum to MDCR's Interim Director, Daniel Junior, directing Mr. Junior and his staff "to honor all immigration detainer requests[.]" *See* Exhibit A, Attached. The directive was not preceded by any public notice or opportunity for debate, nor did it make any mention of the Board of County Commissioners' resolution to limit MDCR's authority to hold people pursuant to detainer requests.

45.     On February 17, 2017, the Board of County Commissioners amended its 2013 Resolution (1008-13) to direct the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County . . . is cooperating with the federal government to the extent permissible by law." Miami-Dade Cty. Bd. of Comm'rs, Resolution 163-17 (Feb. 17, 2017), http://www.miamidade.gov/govaction/matter.asp?matter=170440&file=false&yearFolder=Y201 7.

46.     MDCR is following Mayor Gimenez's directive and, since January 26, 2017, has

maintained a policy and practice of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request.

**MDCR's Unlawful Arrest and Detention of Plaintiff**

47. Plaintiff Garland Creedle, who was born in Honduras, has been a U.S. citizen since the moment of his birth by virtue of his father's U.S. citizenship. He is 20 years old.

48. Mr. Creedle came to the United States from Honduras in 2015.

49. Immigration enforcement officials arrested him and put him in administrative removal proceedings before an immigration judge.

50. On April 28, 2015, immigration officials with DHS filed a motion with the immigration judge stating that the proceedings should be terminated on the grounds that Mr. Creedle is a U.S. citizen. *See* Exhibit B, Attached.

51. In the motion, the Department stated that Mr. Creedle had submitted documentation showing that he had acquired citizenship through his father, Willie Edward Creedle, and that termination was warranted because Mr. Creedle is a U.S. citizen. *Id*.

52. On April 30, 2015, an immigration judge granted the federal government's motion and terminated proceedings against Mr. Creedle. *See* Exhibit C, Attached.

53. On the evening of March 12, 2017, Mr. Creedle was arrested after an alleged domestic dispute and taken to Miami-Dade County jail, where he was held on bond.

54. Mr. Creedle was never charged in court with the offense for which the police arrested him. The State of Florida issued a "No Action" in his case.

55. On the evening that police arrested Mr. Creedle, MDCR officials fingerprinted him.

56. Early the next morning, on March 13, 2017, MDCR received an immigration detainer request, a Request for Voluntary Transfer naming Mr. Creedle as its subject, from Officer Alexander Martinez from ICE. *See* Exhibit D, Attached.

57. Officer Martinez is an immigration enforcement officer.

58. Officer Martinez is not a neutral and detached adjudicator.

59. Mr. Creedle told MDCR officials that he is a U.S. citizen.

60. The Request for Voluntary Transfer form contained the bare assertion by Officer Martinez that Mr. Creedle was "a removable alien" under civil immigration law.

61. The box checked on the detainer form stated that this determination was based on a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." The form contained no additional information concerning this supposed "biometric confirmation" or "records check" of Mr. Creedle.

62. The detainer form requested MDCR to re-arrest Mr. Creedle and jail him for an additional 48 hours, excluding holidays and weekends, beyond the time he would otherwise be entitled to release.

63. The detainer form did not allege probable cause to believe that Mr. Creedle had committed any crime.

64. The detainer form did not state facts amounting to an individualized determination that there was probable cause to believe that Mr. Creedle was removable from the U.S., or that there was reason to believe that Mr. Creedle posed a risk of flight.

65. The detainer form listing Mr. Creedle as a subject was not supported by a warrant

or any other probable cause determination by a detached and neutral judicial officer, nor did it include any individualized assessment of Mr. Creedle's risk of flight.

66. On March 13, 2017, during normal business hours, Mr. Creedle sought to be released from MDCR and posted bond. *See* Exhibit E, Attached.

67. Mr. Creedle was entitled to be released immediately upon posting bond.

68. Rather than release Mr. Creedle after the bond was posted, MDCR re-arrested him and maintained custody over him for transfer to ICE.

69. Mr. Creedle spent the night of March 13, 2017 in jail in the custody of MDCR.

70. Based on nothing more than the purported authority of the immigration detainer, MDCR detained Mr. Creedle beyond the time he was entitled to release solely because ICE issued a detainer request.

71. On March 14, 2017, ICE officials interviewed Mr. Creedle in jail and withdrew the detainer request.

72. After ICE withdrew the detainer request, Mr. Creedle was released on bond.

**CAUSES OF ACTION**

**COUNT I**
**Violation of Fourth Amendment**
**(42 U.S.C. § 1983)**
**Damages and Declaratory Judgment**
**Against Miami-Dade County**

73. Mr. Creedle incorporates paragraphs 1 to 72 as if fully stated herein.

74. Defendants arrested Mr. Creedle by continuing to hold him after the legal grounds for his custody expired, solely because Defendants had received an immigration detainer requesting his continued arrest.

75. Defendants arrested Mr. Creedle pursuant to an official policy and practice of the

County, which requires MDCR to "honor all immigration detainer requests." MDCR has engaged in a practice of arresting and holding all individuals subject to an immigration detainer beyond the time they would otherwise be entitled to release.

76.     As a consequence of Defendants' actions, Mr. Creedle suffered violations of the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the incorporation doctrine, the due process clause of the Fourteenth Amendment makes the Fourth Amendment applicable to local governments. *See*, *e.g.*, *Mapp v. Ohio*, 367 U.S. 643 (1961) (freedom from unreasonable search and seizure); *Aguilar v. Texas*, 378 U.S. 108 (1964) (warrant requirement).

77.     As a proximate and reasonably foreseeable result of Defendants' actions, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

**COUNT II**
**Florida False Imprisonment**
**Damages and Declaratory Relief**
**Against Miami-Dade County**

78.     Mr. Creedle incorporates paragraphs 1 to 72 as if fully stated herein.

79.     Defendants arrested Mr. Creedle without any authority, in violation of Florida law, thereby falsely imprisoning him. Defendants lacked a warrant to detain him and had no authority to make a warrantless arrest. *See* § 901.15, Fla. Stat.

80.     Defendants falsely imprisoned Mr. Creedle against his will and without legal authority or "color of authority," which was unreasonable and unwarranted under the circumstances. *See Mathis v. Coats*, 24 So.3d 1284 (Fla. 2d DCA 2010); *City of Hialeah v.*

13

*Rehm*, 455 So.2d 458 (Fla. 3d DCA 1984).

81.     MDCR employees are not law enforcement officers authorized to arrest without a warrant. *See Pierre v. City of Miramar, Florida, Inc*., 537 Fed. App'x 821, 824-25 (11th Cir. 2013) (holding that a county correctional officer is not a "law enforcement officer" for purposes of section 901.15(1)).

82.     Mr. Creedle's detention was made pursuant to the policy and practice of the County to "honor all immigration detainer requests."

83.     Since the start of this policy and practice on or about January 26, 2017, the County has arrested and held individuals subject to an immigration detainer beyond the time they would otherwise be entitled to release.

84.     As a proximate and reasonably foreseeable result of Defendants' actions, Mr. Creedle suffered injuries, including financial, pain and suffering, humiliation, and emotional harm.

85.     Pursuant to Fla. Stat. § 768.28(6), Mr. Creedle has provided the requisite administrative notice of his false imprisonment claim.

**COUNT III**
**Violation of 5 U.S.C. §§ 706(2)(A)-(D) (Ultra Vires)**
**Declaratory Relief**
**Against DHS and ICE**

86.     Mr. Creedle incorporates paragraphs 1 to 72 as if fully stated herein.

87.     Pursuant to 8 U.S.C. § 1357, Congress limited Defendant ICE's authority to make warrantless arrests by requiring a determination that the person being arrested was likely to escape. It also limited Defendant ICE's authority to transfer its arrest powers to LEAs to certain conditions involving a written agreement with the LEA.

88.     Mr. Creedle seeks a declaratory judgment that Defendant ICE exceeds its statutory

authority by issuing detainers in the manner which exposed, and continues to expose, Mr. Creedle to injury.

89. When Defendant ICE issued a detainer against Mr. Creedle, they were asking and purporting to authorize Miami-Dade County to make an arrest of Mr. Creedle on Defendant ICE's behalf, yet they did so without a written agreement and without a determination that he was likely to escape, in violation of the limitations placed by 8 U.S.C. § 1357.

90. Defendant ICE continues to issue detainers without regard to whether there is a written agreement with the LEA and without a determination that the subject of the detainer is likely to escape and risks again causing injury to Mr. Creedle.

91. Defendant ICE's issuance of a detainer against Mr. Creedle in excess of its statutory authority foreseeably caused, and risks again causing, Miami-Dade County to arrest and continue to hold Mr. Creedle after the legal grounds for his custody expired.

**COUNT IV**
**Violation of the Fourth Amendment**
**Declaratory Relief**
**Against DHS and ICE**

92. Mr. Creedle incorporates paragraphs 1 to 72 as if fully stated herein.

93. By issuing a detainer against Mr. Creedle, in excess of its statutory authority and otherwise without probable cause, Defendant ICE foreseeably caused Miami-Dade County to arrest and continue to hold Mr. Creedle, a U.S. citizen, for an alleged civil immigration violation. Defendant ICE unreasonably deprived Mr. Creedle of his liberty, in violation of the Fourth Amendment, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

94. Defendant ICE continues to issue detainers in violation of the Fourth Amendment

and risks again causing injury to Mr. Creedle.

95.     Defendant ICE's issuance of a detainer against Mr. Creedle in violation of the Fourth Amendment foreseeably caused, and risks again causing, Miami-Dade County to arrest and continue to hold Mr. Creedle after the legal grounds for his custody expired.

**COUNT V**
**Federal Tort Claims Act**
**(False Imprisonment)**
**Damages**
**Against Defendant United States of America**

96.     Plaintiff incorporates paragraphs 1 to 72 as if fully stated herein.

97.     Officer Martinez was employed as an ICE officer at all relevant times. ICE is a federal law enforcement agency under the DHS. Officer Martinez and Defendants ICE and DHS, as employees, agents, and agencies of the United States, committed torts against Mr. Creedle within the scope of their official duties.

98.     Defendants DHS and ICE are responsible for the acts of their agents, officers, servants, and employees under the doctrine of respondeat superior.

99.     On March 13, 2017, Officer Martinez and Defendant ICE issued a detainer against Mr. Creedle.

100.    When Officer Martinez and Defendant ICE issued a detainer against Mr. Creedle they were asking and purporting to authorize Miami-Dade County to arrest and detain Mr. Creedle on Defendant ICE's behalf, yet they did so without probable cause and without legal authority.

101.    By requesting Mr. Creedle's arrest and detention through issuance of this detainer, Officer Martinez and Federal Defendants intentionally caused Miami-Dade County to arrest and continue to hold Mr. Creedle against his will after the legal grounds for his custody expired.

102.    As a result, Officer Martinez and Federal Defendants unlawfully caused Defendant

Miami-Dade County to falsely imprison Mr. Creedle against his will, unreasonably, unlawfully, and without authority, resulting in Mr. Creedle's loss of liberty. *See* § 901.15, Fla. Stat.; *Mathis v. Coats*, 24 So.3d 1284 (Fla. 2d DCA 2010); *City of Hialeah v. Rehm*, 455 So.2d 458 (Fla. 3d DCA 1984).

103. As a proximate and reasonably foreseeable result of Defendant's actions, Mr. Creedle suffered injuries, including pain and suffering, humiliation, and emotional harm.

104. Accordingly, Mr. Creedle is entitled to an award of compensatory damages against the United States for the intentional torts of Officer Martinez, ICE, and DHS.

**COUNT VI**
**Federal Tort Claims Act**
**(Negligence)**
**Damages**
**Against Defendant United States**

105. Plaintiff incorporates paragraphs 1 to 72 as if fully stated herein.

106. Officer Martinez was employed as an ICE officer at all relevant times. ICE is a federal law enforcement agency under the DHS. Officer Martinez, ICE, and DHS, as employees, agents, and agencies of the United States, committed the below negligent torts against Mr. Creedle within the scope of their official duties.

107. Defendants ICE and DHS are responsible for the acts of their agents, officers, servants, and employees under the doctrine of respondeat superior.

108. Officer Martinez, ICE, and DHS have a duty to act with reasonable care and not subject individuals to injury during the course of their duties. In addition, Defendants ICE and DHS have a duty to properly supervise ICE and DHS agents and to ensure all lawful policies and practices are followed.

109. Officer Martinez, ICE and DHS breached their duty of reasonable care. In addition,

Defendants ICE and DHS failed to adequately supervise Officer Martinez, which proximately caused Officer Martinez to issue the detainer against Mr. Creedle on March 13, 2017, without probable cause and without legal authority. *See Mallory v. O'Neil,* 69 So.2d 313, 315 (Fla. 1954).

110.    At all material times, Defendants ICE and DHS knew or should have known that a failure to adequately supervise its agents and employees could result in an individual's unlawful detention.

111.    Additionally, Defendants ICE and DHS have a duty to maintain the accuracy and reliability of the databases on which ICE, DHS, and their employees rely. *See* D.E. 105 at n.7; *Douglas v. United States*, 796 F. Supp. 2d 1354, 1366 (M.D. Fla. 2011) (quoting *Albo v. State of Florida,* 477 So.2d 1071, 1076 (Fla. 3d DCA 1985)).

112.    Defendants ICE and DHS failed to adequately maintain the accuracy and reliability of the databases on which ICE, DHS, and their employees rely, which proximately caused Officer Martinez to issue the detainer against Mr. Creedle on March 13, 2017, without probable cause and without legal authority.

113.    At all material times, ICE and DHS knew or should have known that a failure to adequately maintain the accuracy and reliability of the databases upon which its employees rely could result in an individual's unlawful detention.

114.    As a result of Defendants cumulative actions, Mr. Creedle suffered injuries, including pain and suffering, humiliation, and emotional harm.

115.    Accordingly, Mr. Creedle is entitled to an award of compensatory damages against the United States for the negligence of Officer Martinez, ICE, and DHS.

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and:

a. Declare unlawful Miami-Dade County's policy and practice of arresting people on immigration detainer requests;

b. Declare that the County's action of arresting Mr. Creedle pursuant to ICE's immigration detainer request violates his Fourth Amendment right to be free from unreasonable seizure and constitutes false imprisonment under Florida law.

c. Declare that ICE's ongoing issuance of detainers in the manner which led to Mr. Creedle's injuries exceeds the agency's statutory authority and violates the Fourth Amendment because it purports without lawful authority to authorize warrantless civil immigration arrests by the County;

d. Award Mr. Creedle compensatory damages;

e. Award Mr. Creedle punitive damages;

f. Award Mr. Creedle reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

g. Grant any other equitable relief this Court may deem just and proper.

Respectfully submitted,

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS
Florida Bar No. 0131024
ROMY LERNER
Florida Bar No. 0116713
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576, direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF FLORIDA, INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF FLORIDA, INC.
4343 W. Flagler St., Suite 400

IRA J. KURZBAN
Florida Bar No. 225517
EDWARD F. RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN
TETZELI & PRATT, P.A.
2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503

Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448

*Attorneys for Plaintiff*