**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:17-cv-22477-KMW**

GARLAND CREEDLE,

      Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and the
UNITED STATES OF AMERICA,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MIAMI-DADE COUNTY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Garland Creedle files this opposing memorandum of law to the County's motion

to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## BACKGROUND[1]

On July 5, 2017, Mr. Creedle filed an original Complaint against Miami-Dade County ("the

County"), alleging that the County, pursuant to its policy of honoring immigration detainers issued

by federal immigration officers, violated his Fourth and Fourteenth Amendment rights by holding

him beyond the time authorized by law. *See* D.E. 1 at ¶¶ 62-70. Mr. Creedle also made a state-law

claim for false imprisonment. D.E. 1 at ¶¶ 71-78. On June 1, 2018, Mr. Creedle filed an amended

---

[1] The relevant factual allegations are set forth in the Second Amended Complaint and Mr. Creedle realleges and fully incorporates them here. *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277 (11th Cir. 2001)("We consider allegations in the complaint as true for the purposes of the motion").

complaint. D.E. 48. Mr. Creedle's First Amended Complaint raised the same claims against the County as his initial complaint. *See* D.E. 48 at 1-2, 12-14; D.E. 48 ¶¶ 76-83. On August 13, 2018, the County filed a Motion to Dismiss Mr. Creedle's Amended Complaint. *See* D.E. 70. On November 9, 2018, this Court issued an order granting in part and denying in part that motion. *See* D.E. 105. The Court allowed Mr. Creedle's Fourth Amendment and Florida state-law false imprisonment claims against the County to proceed, including his requests for declaratory relief and damages. *See id.*

On December 10, 2018, Mr. Creedle filed a Second Amended Complaint. *See* D.E. 116. Mr. Creedle's Second Amended Complaint raises the same two claims against the County that this Court allowed to proceed in its Order on Defendants' Motion to Dismiss. *See* D.E. 105. As a result of Plaintiff's unchanged claims against the County, the County's Motion to Dismiss Mr. Creedle's Second Amended Complaint makes the same arguments as it did previously. D.E. 119. All of the County's arguments have already been heard and decided by the Court. *See generally* D.E. 105. However, the County attaches two new declarations—one from Garrett J. Ripa and the other from Deroda Bennett—in another attempt to defeat Mr. Creedle's request for declaratory relief. *See* D.E. 11; D.E. 70; D.E. 101; D.E. 119-7, 119-8. Because the claims against the County remain unchanged, Mr. Creedle re-asserts and incorporates here the arguments that he raised in his previously-filed Responses to the County's Motions to Dismiss. D.E. 19; D.E. 89. He also addresses the County's new declarations from Garrett J. Ripa and Deroda Bennett.

**ARGUMENT**

**I.      The County lacked authority to detain Mr. Creedle after his criminal custody ended.**

The County does not dispute that its decision to continue to detain Mr. Creedle after receiving the immigration detainer request amounted to a subsequent arrest under the Fourth

Amendment and Florida state law. *See, e.g., Morales v. Chadbourne*, 793 F.3d 208, 217 n.3 (1st Cir. 2015). County correctional officers needed federal *and* state authority to lawfully detain Mr. Creedle for a civil immigration violation. *See Lunn v. Commonwealth*, 78 N.E. 3d 1143 (2017) (detainer arrest was illegal because officers lacked state-law arrest authority); *Cisneros v. Elder*, No. 18-cv-30549 (Colo. D. Ct. 2018) (same).[2] As the Court has previously stated, they had neither. *See* D.E. 105 at 51, 53–54. Neither federal nor state law authorized the County's re-arrest and detention of Mr. Creedle after he posted bond in his criminal case.

**A. No federal law authorized the County's post-bond detention of Mr. Creedle.**

The County argues that its re-arrest of Mr. Creedle was made pursuant to a delegation of federal immigration arrest authority. But far from authorizing the County's blanket policy of honoring immigration detainers, federal law imposes clear limitations on participation in federal immigration enforcement—limitations that the County exceeded by re-arresting and holding Mr. Creedle. In its Order on Defendants' Motion to Dismiss, the Court conducted a lengthy and well-supported discussion of the history and precedent establishing that no federal statute authorized the County's detention of Mr. Creedle, which Mr. Creedle adopts and incorporates here. *See* D.E. 105 at 40–51. As the Court has already stated, "Mr. Creedle has plausibly alleged that the County was not authorized by federal law to arrest him for a civil immigration violation and, therefore, because he was arrested without probable cause of a crime, the County violated his Fourth Amendment rights." D.E. 105 at 51.

Nothing in *Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018)—decided before the Court's November 9, 2018 order—alters the Court's findings. D.E. 119 at 10–11. *Alcocer* did not involve the issue in Mr. Creedle's case, namely whether local officials violate the Fourth Amendment

---

[2] The *Cisneros* opinion is available at http://bit.ly/2HcsPZ2.

when they make civil immigration arrests without state or federal authority and without probable cause of a crime. The only issue before the Court was whether the two defendants, local officers, were entitled to qualified immunity because they lacked probable cause that the plaintiff, a U.S. citizen, was present in violation of immigration law.[3] The Court at no point considers the claim that Mr. Creedle raises in this case.

**B.  No State law authorized the County's post-bond detention of Mr. Creedle.**

The County points to Fla. Stat. section 950.03 as a source of arrest authority—a statute that governs scenarios in which the federal government contracts with state prison or local jails to house people detained by the federal government. *Dyal v. State*, 386 So. 2d 868, 869 (Fla. 1st DCA 1980). That statute directs that a municipal jailer "shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States." But by its plain terms, section 950.03 is not a source of *arrest* authority. It simply directs jailers to hold prisoners who have already been validly arrested by federal officers. At the time the County arrested Mr. Creedle on the detainer, the federal government had not yet arrested him. It had only issued a detainer request.[4] As a result, Mr. Creedle was not a prisoner lawfully committed to the

---

[3] If anything, *Alcocer* supports Mr. Creedle's contention that he could be detained again in the future because U.S. citizens are often mistakenly detained. *See infra* Section IV.A.

[4] No party disputes that Mr. Creedle's continued detention beyond the close of his criminal case was a new seizure or arrest needing probable cause and that the seizure was by the County, not ICE. *See* D.E. 48 at ¶¶ 47, 62 (Mr. Creedle); D.E. 68 at 2–3 (Defendant Martinez); D.E. 69 at 5 (Federal Defendants); D.E. 70 at 4–5 (The County). This "new arrest must be analyzed under the Fourth Amendment." *Miranda Olivares v. Clackamas County No.* 12-cv-02317, 2014 WL 1414305, at *9-10 (D. Or. Apr. 11, 2014) (awarding summary judgment to the detainee); *see also Morales v. Chadabourne*, 493 F.3d 208, 217 (1st Cir. 2015) (Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by new probable cause justification."); *Moreno v. Napolitano*, 213 F.Supp.3d 999, 1005 (N.D. Ill. 2016 (noting that the federal government's concession "that being detained pursuant to an . . . immigration detainer constitutes a warrantless arrest").

County's charge under the authority of the United States. Indeed, as one district judge put it, "whenever a sheriff stopped, detained, arrested, or jailed an individual, he was cloaked with the authority of state law, regardless of whether an Immigration and Customs Enforcement agent requested the action." *See Committee for Immigrant Rights of Sonoma County v. County of Sonoma*, No. C 08-4220 RS, 2010 WL 246030 (N.D. Cal. June 11, 2010). The detainer was a request by the Department of Homeland Security ("DHS") that *another agency* make the initial arrest. *See Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990) (for purposes of the custody requirement for habeas corpus proceedings, the filing of a federal detainer does not cause a person to come within the legal custody of the United States); *see also Gonzales-Corrales v. ICE*, 522 F. App'x 619 (11th Cir. 2013) (incarcerated plaintiff was not in ICE custody despite detainer request); *Roberts v. INS*, 372 F. App'x 921 (11th Cir. 2010) (incarcerated plaintiff with detainer request wanted to challenge the denial of her naturalization application, court found INS did not have custody); *see also Campillo v. Sullivan*, 853 F.2d 593 (8th Cir. 1988); *Gethers v. State*, 838 So. 2d 504, 507 (Fla. 2003) (quoting *Price v. State*, 598 So. 2d 215, 217 (Fla. 5th DCA 1992)). As the Court found in its Order, "this archaic Florida statute adds nothing to the County's arrest authority. Accordingly, . . . Section 950.03 does not support the County's arrest of Mr. Creedle pursuant to a detainer based on a purported civil immigration violation." D.E. 105 at 52.

The County further claims it had authority to detain Mr. Creedle on an immigration detainer under Fla. Stat. section 901.18. This statute states that "[a] peace officer making a lawful arrest may command the aid of persons she or he deems necessary to make the arrest." Fla. Stat. § 901.18. As the Court recognized at the May 16, 2018 hearing in this case and again in its Order on

Defendants' Motion to Dismiss, the County's position is untenable.[5] In the County's view, section 901.18 would require *every person* who is asked to make an arrest to make that arrest. There would be no limit to the arrests that federal agencies could demand of local officers, or that local officers could demand of ordinary citizens. This goes far beyond the statute's limited purpose: authorizing Florida officers to request the assistance of bystanders in making arrests. It does not justify the kind of systematic assistance involved in the County's policy of compliance with all detainers. As the Court has already stated, "it cannot be that Section 901.18 applies in the context of federal officials coordinating with the County to arrest individuals for civil immigration purposes." D.E. 105 at 53. As such, "Section 901.18 is not relevant to the Court's analysis of Mr. Creedle's claims and, at the very least, cannot serve the County's proffered purpose of immunizing it from liability for a Fourth Amendment violation." *Id.*

Without Florida law authority to detain Mr. Creedle, the County falsely imprisoned him. *See* Fla. Stat. § 787.02(1)(a); *see also Smart v. City of Miami*, 107 F. Supp. 3d 1271, 1281 (S.D. Fla. 2015) (referring to *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010)). Accordingly, "Mr. Creedle has plausibly alleged that his Fourth Amendment rights were violated when the County arrested him pursuant to a detainer because the County was not authorized under either

---

[5] At the hearing, the County argued that Florida Statute § 901.18 "provides that an officer making a lawful arrest may command the aid of persons he or she deems necessary to make the arrest. [Therefore] Florida Law provided that a police officer in a different context could enlist a citizen without any training, not deputized—no authority independently of themselves to assist that police officer in making that arrest. And [that] Florida law also spells out when that person provides that assistance they shall not be civilly liable." *See* Transcript of Hearing Held on May 16, 2018, at 42. In response, the Court stated that it could not "even imagine the scenario that [the County was] describing as somehow illustrative." *Id.* Nor did the Court think that this was "likely to be a situation nor [] something agencies would countenance or counsel their officers to employ." *Id.* In its Order on Defendants' Motion to Dismiss, the Court reiterated this conclusion, stating that the County's "reading of the statute defies both fundamental Tenth Amendment principles and also the parties' consensus that detainers are voluntary requests . . . ." D.E. 105 at 53.

state or federal law to effectuate an arrest without a warrant or probable cause that he had committed a crime. D.E. 105 at 53 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.")).

### C. The County did not have probable cause of removability.

At a minimum, the County lacked authority to hold Mr. Creedle once he informed them that he was a U.S. citizen. D.E. 48 at ¶ 1, 53. Citizens are not subject to removal and so can never be detained pursuant to an immigration detainer. By arresting Mr. Creedle without probable cause of removability, the County violated his Fourth Amendment rights. *See Morales*, 793 F.3d at 218 (holding that the Fourth Amendment "require[s] probable cause to detain [a person] pursuant to an immigration detainer.").

The County cannot claim that it had probable cause because of the detainer issued against him by ICE. Even if the fellow officer rule applied in this context, *but see infra* Part III, the County received countervailing evidence that negated probable cause as soon as Mr. Creedle told them that he was a citizen. As the Eleventh Circuit has made clear, "in evaluating probable cause, an officer may not unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her or electing not to obtain easily discoverable facts that might tend to exculpate a suspect." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018) (quotation marks and alterations omitted). The County simply ignored Mr. Creedle's citizenship claim, pursuant to its policy of honoring all detainers. And it "elect[ed] not to obtain easily discoverable facts," such as Mr. Creedle's citizenship records. *Id.* at 1294; *See* D.E. 48 at ¶ 44. Under these circumstances, the County lacked probable cause even of removability. *See also Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) ("an

officer may not choose to ignore information that has been offered to him or her," including an arrestee's "assertions" that they did not commit the offenses); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1283 (M.D. Ga. 2012) (officers must investigate a citizenship claim before making immigration arrest). As the Court previously stated, "Mr. Creedle has alleged plausible facts to support his contention that the County violated his Fourth Amendment rights when it arrests him based on a detainer and without probable cause that he had committed a crime." D.E. 105 at 46.

**II.     Mr. Creedle has sufficiently alleged that Miami-Dade County has a policy or practice of honoring ICE detainers that caused his post-bond detention.**

As this Court has already found, Mr. Creedle has sufficiently alleged that the County has a policy or practice of honoring all immigration detainer requests. *See* D.E. 105 at 54 ("Mr. Creedle has also alleged facts sufficient to state a plausible claim that the County had a policy and practice of re-arresting all individuals for which it received a detainer request from ICE."). This Court has also found that this policy and practice—a voluntary action by the County—caused him to be detained after he paid his criminal bond (and should have been released). *See id.* at 55–56 ("Mr. Creedle has sufficiently alleged that the County's policy and practice of honoring all detainer requests was the 'moving force' behind his Fourth Amendment injury."). His allegations, taken as true, are sufficient to meet *Monell*'s requirement that a county policy or practice, as opposed to an individual's action, is a proximate cause of the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

The County incorrectly claims Mr. Creedle must establish "deliberate indifference" to establish it detained him pursuant to a "policy" for a *Monell* liability. But regardless of whether Mr. Creedle is required to prove deliberate indifference, Mr. Creedle has stated facts sufficient to satisfy the 'deliberate indifference' requirement under *Monell* by alleging that the County knew . . . that holding individuals pursuant to detainer requests from ICE violates their Fourth

Amendment rights. D.E. 105 at 56–57; *see Brown*, 520 U.S. at 407; *Mercado* 229 F. Supp. 3d at 520–21.

**III.     The fellow officer rule has no relevance.**

Contrary to the County's assertion, the fellow officer/collective knowledge rule is not relevant to this case. D.E. 119 at 11 ("Miami-Dade is entitled to rely on ICE's representations as to probable cause . . . ."). The fellow officer rule does not apply in Mr. Creedle's case for several reasons. The rule, where it applies, simply allows officers to pool information to support probable cause. It does *not* provide any affirmative arrest authority. As discussed above, County correctional officers lack state authority to make a warrantless arrest, and federal law does not authorize County officers to make civil immigration arrests. The fellow officer rule does not alter this lack of state and federal authority. *See Pierre*, 537 F. App'x. at 824-25 (fellow officer rule does not apply when officer in question lacked warrantless arrest authority). In any event, there was neither a common investigation nor the communication needed to trigger the rule. The County detained Mr. Creedle solely based on an immigration enforcement officer's request. D.E. 48 ¶ 64. There was no joint investigation, and the immigration enforcement officer's only communication with the jail officials was the lodging of the detainer request. *See United States v. Webster*, 750 F.2d 307, 323-24 (5th Cir. 1984) (fellow officer rule does not apply because insufficient information was communicated); *Ochoa*, 2017 WL 3476777 at *14 (analyzing fellow officer rule as not applying because there was insufficient communication). Moreover, as explained above, Mr. Creedle had informed the County that he was a U.S. citizen— information regarding the lack of probable cause that the County was not permitted to ignore. *See Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (fellow officer rule does not permit arresting officer to "disregard facts tending to dissipate probable cause"); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) (an arrest

"cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest").

**IV.    The Court should not dismiss based on Rule 12(b)(1) and should grant declaratory relief.**

The County argues under Rule 12(b)(1) that "Mr. Creedle lacks standing to request prospective declaratory relief and, therefore, this Court lacks subject matter jurisdiction to grant this request." D.E. 119 at 5. The County submits declarations of Deroda Bennett and Garrett J. Ripa to support its case. But nothing in these new declarations alters this Court's prior finding that Mr. Creedle "has alleged facts demonstrating that his injury is sufficiently likely to occur again and he therefore has standing to proceed with his claims for prospective declaratory relief against the County." D.E. 105 at 19–20. These declarations are also insufficient to change the Court's finding that "Mr. Creedle has sufficiently alleged a likelihood that he will again be subject to the same injury as a result of the County's challenged conduct. Accordingly, . . . Mr. Creedle's claims against the County for prospective declaratory relief are not moot." *Id.* at 22.

**A.  Mr. Creedle has standing to seek prospective declaratory relief**

This Court previously held in its Order on Defendants' Motions to Dismiss that Mr. Creedle has standing to seek prospective declaratory relief. D.E. 105 at 10. The Court came to this conclusion despite the fact that the County cited to a declaration by Dean Caputo, an ICE officer, which stated that "[u]pon information and belief, ICE [Enforcement of Removal Operations] database records state that the Plaintiff, Garland Creedle, is a United States citizen." D.E. 69-1. Regarding Dean Caputo's declaration, the Court stated the following:

> Defendants' contention that ICE's records "now" reflect that Mr. Creedle is a U.S. citizen cannot defeat standing because Mr. Creedle—a U.S. citizen since birth— was already incorrectly placed in immigration removal proceedings in 2015 and then was unjustifiably held pursuant to a detainer in 2017. At this juncture, the declaration from Caputo is insufficient to defeat standing because it is woefully

> deficient in information. The declaration fails to state what the "ICE ERO database records" are, whether this is the only database upon which ICE officers rely before issuing detainers, when the ICE EROC database was allegedly updated to reflect that Mr. Creedle is a U.S. citizen, or how the database works. A cursory statement that one of ICE's databases reflects that Mr. Creedle is a U.S. citizen does not overcome the factual allegations in the amended complaint supporting an inference that he is sufficiently likely to suffer the same injury in the future.

D.E. 105 at 14–15.

Nothing in the two new declarations from County officials alters the Court's analysis in its November 9, 2018 Order. Rather than rectify any of the deficiencies of Dean Caputo's declaration, the statement in Deroda Bennett's declaration that "Department staff have been instructed that any immigration detainers received by ICE as to Mr. Creedle should be considered lodged in error and are not to be honored" brings about even *more* deficiencies and uncertainties. This statement does not specify which "Department staff" have received this instruction, does not explain whether the staff members will honor the instruction, does not list any consequences if staff members do not honor this instruction or incentives for the staff members to honor this instruction, does not address what happens if a staff member has not been told of this instruction, and does not clarify whether this instruction will be told to every new staff member in the Department. In short, like Dean Caputo's declaration, Ms. Bennett's declaration is "woefully deficient in information" and is therefore insufficient to defeat standing. D.E. 105 at 15.

While Garret J. Ripa's declaration provides more information on ICE's EID, the same deficiencies found in Dean Caputo's declaration still exist. The declaration, while including more details regarding Mr. Creedle's original wrongful detention by ICE, again does not state whether this "EID" is the only database upon which ICE officers rely before issuing detainer, whether the EID was updated in 2015 after Mr. Creedle was wrongfully detained and found to be a U.S. citizen and, if so, why ICE still issued a detainer against him in 2017. If the EID was not updated in 2015,

Mr. Ripa's declaration does not explain *why* Mr. Creedle's EID record was not updated with his citizenship status until 2017 despite having already been wrongfully detained in 2015.

Furthermore, while both declarations provide further information regarding Mr. Creedle's arrest in February 2018, neither declaration is sufficient to defeat standing. As the Court stated, "Mr. Creedle's status as a U.S. citizen is also not determinative of whether he is likely to be held pursuant to a detainer in the future because, as other courts have recognized, U.S. citizens are frequently held pursuant to detainers." D.E. 105 at 15 (citing *Uroza v. Salt Lake Cty.*, No. 2:11CV713DAK, 2014 WL 4457300, at *5 (D. Utah 2014) (Between 2008 and 2012, ICE issued detainers against more than 800 U.S. citizens and 28,000 legal permanent residents."); *see also Morales v. Chadbourne*, 2014 WL 554478, at *14-15 (D.R.I. Feb. 12, 2014) (finding that a U.S. citizen who was arrested by local law enforcement pursuant to a detainer on two separate occasions had standing to seek an injunction halting the unlawful use of detainers against her). Recently, a U.S. citizen was held for ICE despite his "jail file show[ing] that he was a U.S. citizen born in Philadelphia and had a valid Florida driver's license." *See Peter Sean Brown v. Richard A. Ramsay, in his official capacity as Sheriff of Monroe County*, 2019 WL 6340578 (S.D. Fla.) (Complaint).

Ms. Bennett's claim that the County's database now has a "notation" of Mr. Creedle's status as a U.S. citizen still does not fix any of the deficiencies the Court found with Dean Caputo's declaration. D.E. 119-8. Moreover, Mr. Ripa's statement that Mr. Creedle will not be subject to another ICE detainer in the future because the ICE EID now reflects he is a U.S. citizen also fails to defeat standing. D.E. 119-7. As the Court previously found, "Mr. Creedle's 2018 arrest and release without being held pursuant to a detainer does not undermine Mr. Creedle's standing; it does not establish that he will not be held pursuant to a detainer again." D.E. 105 at 16.

**B. Declaratory judgment is appropriate in this case.**

The County incorrectly asserts that declaratory relief pursuant to 28 U.S.C. § 2201 is inappropriate in this case because there is no "actual" or "continuing controversy" that would be remedied by a declaratory judgment in Mr. Creedle's favor. D.E. 119 at 6–9. To establish that there is an actual and continuing controversy, a "plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred" and "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). According to the Court, the facts alleged by Mr. Creedle establish that an actual and continuing controversy between him and the County exists, "because Mr. Creedle is challenging a County policy that remains in place." D.E. 105 at 22. The County's attempt to convince the Court otherwise is based on factors that are factually and legally irrelevant.

First, Mr. Creedle's claim does not depend on whether the illegal detainer policy started with the Mayor's directive or the vote of the County Board. The County Board voted to *affirm* the Mayor's immigration detainer policy and the policy continues in place.[6] *See* D.E. 70 at 3-4. Next, the County argues that Mr. Creedle has no standing to pursue declaratory relief because he is no longer in the County's custody and the detainer request issued against him has been withdrawn. Although the events that gave rise to this lawsuit have past, this is a classic case of unlawful government action that is "capable of repetition, yet evading review." The Supreme Court has recognized two elements that a plaintiff must satisfy in a non-class action in order to establish standing based on this doctrine: "(1) the challenged action was in its duration too short to be fully

---

[6] *See also Miami-Dade Commissioners Vote in Favor of Mayor's Policy on Immigration Issue*, NBC Miami, Feb. 17, 2017, http://www.nbcmiami.com/news/local/Miami-Dade-Commission-Meeting-Friday-to-Deal-With- Mayors-Reversal-on-Immigration-Issue-414049616.html.

litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1324 n.6 (11th Cir. 2001) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Mr. Creedle satisfies both prongs. Unlawful detentions pursuant to an ICE detainer request usually do not exceed 48 hours, which is obviously not enough time to fully litigate a case. Additionally, it is possible that Mr. Creedle could again be illegally detained pursuant to an ICE detainer request if he is ever again in the County's custody. Although the County argues that immigration databases have been updated to "reflect that Mr. Creedle is a U.S. citizen," D.E. 119 at 7–8, the County conveniently ignores the fact that DHS itself found Mr. Creedle to be a U.S. citizen in 2015, two years before Mr. Creedle filed this action. The County fails to address whether the ICE database was updated with Mr. Creedle's citizenship information prior to the allegations in the complaint and, if so, why the database did not reflect this change at the time the detainer was issued.

The fact that the detainer was issued against Mr. Creedle, a known U.S. citizen, supports Mr. Creedle's assertion that, if this case is terminated at this stage, the unlawful conduct alleged is likely to recur. Despite the County's new conclusory declarations, the County's policy still requires its officers to blindly comply with any detainer request issued by ICE. A simple "notation" on Mr. Creedle's CIN and an "instruction" to "Department Staff" not only do not defeat standing, they also do not override the County's policy. Therefore, if ICE wrongfully issues another request to detain Mr. Creedle, the County could still likely hold him pursuant to ICE's request. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical")

14

(quoting *Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)).[7]

A district court, in another non-class action involving a challenge to detention pursuant to an ICE detainer request, examined this exact issue and correctly found that the plaintiff had standing to seek a declaratory judgment that his detention was unconstitutional because "ICE issues hundreds of thousands of detainers each year but the prolonged detention is never long enough to get legal review while it is actually happening." *Uroza v. Salt Lake Cty.*, No. 2:11CV713DAK, 2014 WL 4457300, at *7 (D. Utah Sept. 10, 2014). The court also found that the plaintiff "and others like him face a real risk of being subject to the policy again in the future." *Id.* The court noted that a declaratory judgment was necessary to resolve the case as "damages alone would not resolve the controversy." *Id.* at *8.

The County points to ICE's Policy No. 10074.2, which requires that every immigration detainer issued by ICE since April 2, 2017 must be accompanied by an administrative warrant by an authorized immigration official. As the Court stated in its Order on Defendants' Motion to Dismiss "[t]he change in ICE's policy, which is not binding on that agency and could be rescinded at any time, is irrelevant to the County's challenged policy of honoring detainers." D.E. 105 at 21– 22 (citing ICE Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* (April 2, 2017), at 6 ("This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice.")). The administrative warrants issued by ICE are directed solely to an "immigration officer" and on their face do not

---

[7] It is not necessary for a plaintiff to specifically allege fear of future injury in the complaint. He must only "allege facts from which the continuation of the dispute may be reasonably inferred." *See Emory*, 756 F.2d at 1552. *See also 907 Whitehead St., Inc. v. Vilsack*, No. 09-10050-CIV-MARTINEZ-BROWN, 2010 WL 11505219, at *3 (S.D. Fla. Aug. 25, 2010) (rejecting defendants' argument that plaintiff had to allege continuing and future injury in its complaint, "[l]iberally construing the complaint in favor of the Plaintiff," and finding that plaintiff's allegations provided "a basis to infer" continuing and future injury.).

purport to provide any additional authority for, or command to, local law enforcement to take any action with regard to an alleged noncitizen. These warrants do not provide additional arrest authority to local officials. *See* Warrant for Arrest of Alien ("Ex. 2"); *Ochoa,* 2017 WL 3476777 at *12 ("Nothing in the [ICE] administrative warrant indicates that it is directed at [county] officials or anyone other than authorized immigration officers."). ICE's administrative warrants in no way alter the County's policy of complying with immigration detainer requests, which is the only policy being challenged in this lawsuit.

Finally, even if the change in ICE policy is somehow relevant, voluntary cessation of allegedly illegal conduct does not deprive the Court of its power to hear and determine the case if there is a reasonable expectation that the unlawful activity will recur following the termination of the suit. *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). The County fails to show that there is no reasonable expectation that the County's unlawful behavior will not recur. *Id.* In fact, the current written ICE policy itself indicates that it is not intended to be legally binding, as it states that the issuance of administrative warrants is not required under the law and could be revoked at any moment. ICE Policy No. 10074.2 ("This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice."); n.2 ("ICE maintains that [new policy] is not legally required"). Mr. Creedle's allegations thus establish that, if the Court dismisses this case as moot, the County may well persist in the behavior that led to his injury.

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 14, 2019, I electronically served a true and correct copy of the foregoing on counsel for Defendant via transmission of a Notice of Electronic Filing generated by the CM/ECF system of the U.S. District Court of the Southern District of Florida.

Respectfully submitted,

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS
Florida Bar No. 0131024
CANDELARIO
SALDANA-BRISENO, Law
Student
ELIZABETH MONTANO,
Law Student
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF
LAW
1311 Miller Drive Suite E-
273 Coral Gables, Florida
33146 Tel: (305) 284-3576,
direct
Tel: (305) 284-6092, clinic
rsharpless@law.miami.edu

IRA J. KURZBAN
Florida Bar No. 225517 EDWARD F.
RAMOS
Florida Bar No. 98747
IAN K. SHAW
Florida Bar No. 115167
KURZBAN KURZBAN TETZELI &
PRATT, P.A.
2650 SW 27th Avenue
Second Floor
Miami, FL 33133
Tel: 305-444-0060
Fax: 305-444-3503

AMIEN KACOU
Florida Bar No. 44302
ACLU FOUNDATION OF FLORIDA,
INC.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390

NANCY ABUDU
Fla. Bar No. 111881
ACLU FOUNDATION OF FLORIDA,
INC.
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: 786-363-2700
Fax: 786-363-1448