**United States District Court**
**Southern District of Florida**
**Case No. 17-22477-Civ-Williams/Torres**

**Garland Creedle**,

Plaintiff,

v.

**Miami-Dade County, et al.,**

Defendants.

---

**Defendant Miami-Dade County's Reply in Support of**
**Its Motion to Dismiss Plaintiff's Second Amended Complaint**

This case concerns the intersection of the federal government's "broad, undoubted power over the subject of immigration," *Arizona v. United States*, 567 U.S. 387, 394 (2012), and the valuable role that state and local governments can serve in assisting the federal government with those responsibilities, *see id.* at 410. Under applicable case law, statutes, regulations, and guidance, the only general limitation imposed on the way in which that assistance can be provided is that the state or local government must actually be *assisting* the federal government in the exercise of their duties and not unilaterally enforcing immigration laws or acting outside the scope of the federal government's direction. *See id.* (noting that cooperation does not include "the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government."); 8 U.S.C. § 1357(g) (providing, generally, that a local officer's performance of immigration functions "shall be subject to the direction and supervision of [DHS]").

Miami-Dade County's alleged conduct in this case falls squarely within the ambit of that space. To wit, the federal government first acts pursuant to its authority to detain removable aliens and issues a detainer request seeking assistance with that task, *see* 8 C.F.R. § 287.7, and then Miami-Dade County, upon receipt of a facially valid detainer averring to the existence of probable cause, responds to that request for assistance in accordance with (1) the express terms of the detainer and (2) the County's policy to "cooperat[e] with the federal government to the extent permissible by law" and "require the federal government to show probable cause on all immigration detainer requests," *see* D.E. 119-4 at 6.

Because these allegations do not establish a constitutional violation and, even if they arguably could, Mr. Creedle lacks standing to seek prospective declaratory relief, the claims against Miami-Dade County ought to be dismissed with prejudice.[1]

## I.    Declaratory relief is not appropriate in this case

"A plaintiff has standing to seek declaratory … relief **only** when he allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury **in the future***." Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation omitted) (emphasis added). Furthermore, "[t]he binding precedent in the [Eleventh Circuit] is clear that for an injury to suffice for prospective relief, it must be **imminent**." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006)

---

[1] As previously noted in its Motion to Dismiss, the claims against Miami-Dade County in the Second Amended Complaint are identical to Count I and III from Mr. Creedle's First Amended Complaint. D.E. 119 at 1. In an effort to avoid unnecessary repetition, Miami-Dade County simply re-asserts the arguments that it raised in its previously-filed Reply, D.E. 101, and supplements those re-asserted arguments with the additional analysis in this filing.

(emphasis added). Here, that critical element necessary to maintain standing is lacking.

In this case, the undisputed record evidence submitted by Miami-Dade County in support of its Motion to Dismiss shows that Mr. Creedle cannot plausibly establish that he has a substantial likelihood of being held pursuant to a federal immigration detainer request in the future. These are the facts: (1) Mr. Creedle is a U.S. citizen; (2) After he was interviewed by an ICE official on March 14, 2017, the detainer that was issued against him on March 13, 2017 was withdrawn and he was immediately released; (3) ICE databases have since been updated to show that he is a U.S. citizen; (4) As a matter of federal policy, detainers are not to be issued when there is such evidence of U.S. citizenship; (5) As a matter of fact, officials from both ICE and the County's Department of Corrections have averred that Mr. Creedle will not be the subject of a detainer in the future and, if any such detainer happens to be issued in error, it will not be honored; (6) Mr. Creedle offers neither allegations nor evidence of any subsequent encounter between himself and either Miami-Dade County or ICE based upon an immigration detainer notwithstanding the fact that he was subsequently arrested on new criminal charges after the filing of this suit. *See generally* D.E. 119-1 at 6 (stating that "ICE should not lodge an immigration detainer against or arrest the individual" for whom there is "probative evidence of U.S. citizenship"); 119-2 at 3 ("As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen."); 119-6 (showing that Mr. Creedle was subsequently in Miami-Dade County's custody on new criminal charges after this case was filed), 119-7 at ¶¶ 4-7; 119-8 at ¶¶ 6-7. Under these facts, any future interaction between Mr. Creedle, Miami-Dade County, and ICE based upon an immigration detainer is wholly speculative, not imminent, and, above all else, highly unlikely. Consequently, it is not necessary for this Court to indulge Mr. Creedle's unentitled request to wade into broader questions regarding Miami-Dade County's cooperation with immigration detainers generally to resolve the allegations in this case specifically. *See Emory v. Peeler*, 756 F.2d 1547, 1551 (11th Cir. 1985) (holding that "declaratory relief may only be issued in the case of an 'actual controversy'… [t]hat is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interest").

In response to this evidence, Mr. Creedle continues to rely on nothing more than the allegations in his Second Amended Complaint to assert standing to seek prospective relief. *See generally* D.E. 128 at 10-13. However, allegations alone are not sufficient at this stage because Miami-Dade County has sought dismissal of this claim under FED. R. CIV. P. 12(b)(1) and submitted supporting factual evidence, *see* D.E. 119-1, 119-2, 119-6, 119-7, 119-8. As a result, the Eleventh Circuit has held that Mr. Creedle must do more than simply rely on allegations, conjecture, and speculation; he is "required

to submit **facts** through some evidentiary method and has the burden of proving by a **preponderance of the evidence** that the trial court does have subject matter jurisdiction." *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (emphasis added).[2] Additionally, this Court is not required to consider Mr. Creedle's allegations in the light most favorable to him. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). *See also Morrison v. Amway Corp.*, 323 F.3d 920, 952 (11th Cir. 2003) ("In short, no presumptive truthfulness attaches to his allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.") (internal citation omitted). Here, Mr. Creedle has failed to meet this evidentiary burden and, in fact, offers *no evidence* to support his position.

As a result, the following remains undisputed: (1) Mr. Creedle was arrested after the filing of this suit on new criminal charges, *see* D.E. 119-6, 119-7 at ¶ 6, 119-8 at ¶ 3; (2) ICE had notice of Mr. Creedle's new arrest, *see* D.E. 119-7 at ¶ 6, 119-8 at ¶ 4-5; (3) No detainer was issued by ICE while Mr. Creedle remained in the County's custody on this subsequent arrest because its records now reflect that Mr. Creedle is a U.S. citizen, *see id.*; (4) ICE represents that, as a result of its database update, Mr. Creedle will not be subject to another ICE detainer in the future, *see* D.E. 119-7 at ¶ 7; (5) ICE's representation is consistent with its written policies which prohibit the issuance of a detainer against any individual for whom there is "probative evidence of U.S. citizenship," *see* D.E. 119-1 at 6, 119-2 at 3; and (6) Notwithstanding the federal government's assurances, Miami-Dade County has also placed a notation in its system regarding Mr. Creedle's U.S. citizenship and will not honor any detainer lodged against him even if the federal government erroneously issues such a detainer in the future, *see* D.E. 119-8 at ¶¶ 6-7.

Tellingly, Mr. Creedle provides no evidence to dispute these facts. Instead, he simply critiques the County's undisputed evidence as being insufficient to alter this Court's prior finding, *see* D.E. 128 at 10. But, Mr. Creedle ignores two critical facts. First, he submitted no evidence to support his claim even though Eleventh Circuit precedent clearly shifts the burden to him and requires him to do so. *See Patterson*, 644 F.2d at 523. Second, the supplemental evidence submitted in Miami-Dade County's recent Motion to Dismiss, D.E. 119, directly addresses the concerns raised by this Court in its prior Order, D.E. 105. For example, this Court previously found that it could not dismiss this cause for lack of standing because "the Court has no information regarding whether a detainer was issued [during Mr. Creedle's subsequent arrest], why Mr. Creedle was released, or if the County even notified ICE

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981.

that Mr. Creedle was in its custody." D.E. 105 at 16. All of those concerns have now been addressed in the submitted Declarations of Garrett Ripa and Deroda Bennett, D.E. 119-7, 119-8, respectively.

Accordingly, there is no factual basis to support Mr. Creedle's contention that the unlawful conduct alleged is likely to recur, D.E. 128 at 10-13. Instead, all of the evidence submitted by Miami-Dade County seeking dismissal under Fed. R. Civ. P. 12(b)(1) shows the opposite. Therefore, all of Mr. Creedle's requests for declaratory relief should be dismissed. *See Elend*, 471 F.3d at 1211-12 ("When a case involving prospective relief provides a court with no factual assurances that future injury is likely and no clues about its contours should such an injury arise, we are left with only the faintest picture of a possible constitutional transgression occurring someday, somewhere in this country. Such a claim is not fit for adjudication by this Court.").

## II.   Mr. Creedle's Allegations Fail to Establish a Fourth Amendment Violation

In the Second Amended Complaint, the only federal claim that Mr. Creedle maintains against Miami-Dade County is a Fourth Amendment claim asserting that his right to be free from unreasonable seizures was violated when Miami-Dade County maintained custody of him on behalf of the federal government based on an immigration detainer. *See generally* D.E. 116 at ¶ 74. In its prior Order, this Court held that Mr. Creedle could proceed with this claim because he "has alleged plausible facts to support his contention that the County violated his Fourth Amendment rights when it arrested him based on a detainer and without probable cause that he had committed a crime" and "has [also] plausibly alleged that his arrest by the County for an alleged immigration violation fell outside the scope of permissible 'cooperation' under Section 1357(g)." D.E. 105 at 46. However, as argued in its Motion to Dismiss, D.E. 119 at 10-11, Miami-Dade County contends that Mr. Creedle's Fourth Amendment claim and this Court's prior reasoning cannot stand in light of the Eleventh Circuit's Fourth Amendment analysis in *Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018).[3]

In *Alcocer*, the Eleventh Circuit dealt with federal § 1983 claims by a U.S. citizen that had continued to be detained after posting bond on her criminal charges based solely upon a fax that the jailer received from ICE stating that "ICE records indicate that this subject is not legally in the United States and appears to be subject to removal proceedings." *See Alcocer*, 906 F.3d at 948-50. In that case, there were no allegations that (a) the jail had probable cause of a new crime or (b) that it had received any

---

[3] Miami-Dade County notes that, although *Alcocer* was decided prior to the issuance of this Court's Order, the Eleventh Circuit's published opinion was issued after briefing on the relevant motions to dismiss had concluded. Accordingly, the impact of *Alcocer* on the relevant Fourth Amendment analysis had not been briefed by the parties in any of the prior relevant filings.

training, direction, supervision, or request by the federal government relating to immigration enforcement in Alcocer's case or even generally. Yet, the Eleventh Circuit did not hold that the absence of these elements entitled Alcocer to state a plausible Fourth Amendment claim. *See id.* at 952-54. Instead, the Eleventh Circuit held that "if the Fourth Amendment governs the analysis here,[4] to the extent that Defendants were causally involved in Alcocer's overnight detention, they must show they had **probable cause … to believe that Alcocer was illegally present in the United States**" and nothing more. *Id.* at 953. *See id.* ("Along these same lines, the Supreme Court long ago held that, beyond a *Terry* stop, any detention of a suspected alien 'must be based on consent or **probable cause'** **that the person is, in fact, an alien**. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).") (emphasis added).

In attempting to distinguish *Alcocer's* holding, Mr. Creedle implausibly argues that the Fourth Amendment analysis provided in *Alcocer* should be ignored because "*Alcocer* did not involve the issue in Mr. Creedle's case, namely whether local officials violate the Fourth Amendment when they make civil immigration arrests without state or federal authority and without probable cause of a crime." D.E. 128 at 3-4. However, that is the precise issue that *Alcocer* addressed, and the Eleventh Circuit determined that no Fourth Amendment violation occurs if a subject is held on suspicion of an immigration violation if there is "probable cause to believe that [the subject] was illegally present in the United States." 906 F.3d at 953. Furthermore, Mr. Creedle's claim that "[t]he only issue before [the panel in *Alcocer*] was whether the two defendants, local officers were entitled to qualified immunity because they lacked probable cause that the plaintiff, a U.S. citizen, was present in violation of immigration law" is simply wrong on two counts. D.E. 128 at 4.

First, the Eleventh Circuit never determined that the local officers lacked probable cause that the plaintiff was in violation of immigration law. Instead, the Eleventh Circuit specifically remanded this action back to the district court for an independent assessment as to each officer's knowledge and actions during the critical series of events based on the Fourth Amendment analysis that is subsequently provided in that same opinion. *See Alcocer*, 906 F.3d at 952-54.

Second, the Eleventh Circuit's Fourth Amendment analysis is not reserved to the qualified immunity context by the opinion's plain language. Specifically, the panel in *Alcocer* states that, when dealing with a Fourth Amendment claim, defendants "must show they had probable cause **(or in the qualified-immunity analysis, arguable probable cause)** to believe that [the subject] was illegally

---

[4] And, in that same opinion, the Eleventh Circuit later held that it did. *See id.* at 954.

present in the United States." *Id.* at 953. Thus, by explicitly noting that a qualified immunity analysis in this context would be governed by the lesser standard of arguable probable cause, *Alcocer* establishes that the general standard for Fourth Amendment claims in this context is simply "probable cause … to believe that [the subject] was illegally present in the United States." *Id.*

It is also worth noting that, in the qualified immunity context, an individual defendant is immune from liability if (a) their conduct did not violate a constitutionally protected right or (b) that right was not clearly established at the time of the misconduct. *See id.* at 951 (citing to *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). And, in *Alcocer*, there is no mention or analysis regarding "clearly established law." Instead, *Alcocer's* Fourth Amendment analysis goes exclusively to the first qualified immunity prong—whether the conduct violated a constitutionally protected right at all. *See id.* at 950-54. This is notable for purposes of applying *Alcocer's* relevant holding to the *Monell* claim at issue here because, as a matter of law, a court's analysis of the first qualified immunity prong and a related *Monell* claim should be identical. *See Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) ("The Supreme Court has explained, '[N]either *Monell* …, nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact ... the officer inflicted no constitutional harm.") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

As a result, the relevant analysis for Mr. Creedle's Fourth Amendment *Monell* claim is limited to whether his allegations show that Miami-Dade County lacked "probable cause … to believe that [Mr. Creedle] was illegally present in the United States." *Alcocer,* 906 F.3d at 953. Simply put, the allegations in the Second Amended Complaint and its corresponding exhibits belie that claim, *see, e.g.*, D.E. 116-1 at 12. Therefore, Mr. Creedle's Fourth Amendment claim should be dismissed.

## III.     Miami-Dade County had the requisite authority to detain Mr. Creedle

In his Response, Mr. Creedle argues that "[n]either federal nor state law authorized the County's re-arrest and detention of Mr. Creedle after he posted bond in his criminal case." D.E. 128 at 3. But Miami-Dade County is authorized to assist the federal government under both.

### a.   Miami-Dade County is authorized under federal law to honor detainers

Under 8 U.S.C. § 1357(g), the federal government has authorized state and local government officials to cooperate with federal immigration enforcement. Both parties agree at least on this much. *See* D.E. 119 at 11-13; D.E. 128 at 3. They quickly differ, however, on how this statute should be interpreted. For Mr. Creedle, section 1357(g) merely "authorizes federal immigration officials to ***contract*** with [law enforcement agencies]" and, therefore, a written agreement is required if Miami-Dade County seeks to cooperate with direct requests from federal immigration officials. D.E. 89 at 3-

7

4 (emphasis added). Put simply, the plain language of the statute says otherwise.

Section 1357(g) expressly provides that cooperation by state or local officials can come in one of two forms: (1) a "written agreement" with the state or local government or (2) cooperation, absent a written agreement, "in the identification, apprehension, *detention*, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(1), (10) (emphasis added). As such, Miami-Dade County's policy to provide assistance by honoring detainers supported by probable cause lies within the permissible cooperation in § 1357(g)(10) because it is cooperation in the detention of aliens not lawfully present in the United States. *See City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018) (holding that local governments may comply with detainer requests because 1357(g) "expressly allows cooperation in immigration enforcement outside those agreements"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164-65 (8th Cir. 2014) (holding—in a case dealing with a state trooper that detained a removable alien "until the Border Patrol agent could take custody"—that "no written agreement is required for a state official to cooperate with [DHS] in identifying apprehending, and detaining any individual unlawfully present in the United States."); *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010); *Arizona*, 567 U.S. at 456 ("§ 1357(g)(10)(B) makes clear that States and municipalities need not enter into those agreement 'otherwise to cooperate … in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.'").

In attempting to further disavow the plain language of the statute, Mr. Creedle relies on this Court's prior analysis, which read § 1357(g)(10) narrowly to exclude Miami-Dade County's actions because, in its view, a detainer request goes beyond mere cooperation.[5] *See* D.E. 128 at 3 (incorporating analysis in D.E. 105 at 40-51). In reaching this conclusion, this Court relied on examples of "cooperation" provided by the Supreme Court in *Arizona v. United Sates* and treated that listing as exhaustive rather than illustrative. *See* D.E. 105 at 43 (quoting *Arizona*, 567 U.S. at 410). But *Arizona* did not purport to establish a definitive listing of all that 1357(g)(10) permits. Instead, it was providing a sampling of the types of cooperation that could be provided in order to contrast forms of permissible cooperation with Arizona's conduct in that case, which included unilateral enforcement of immigration law absent any request for assistance by the federal government.[6] And those examples

---

[5]   Notably, this interpretation of 1357(g) is directly at odds with the federal government's own interpretation of the statute and the type of cooperation that it permits. *See* D.E. 69 at 3-4, 13-14; D.E. 130-1.

[6]   That same type of unilateral immigration enforcement absent any federal request is present in three of the federal court decisions relied upon by the Court in its Order, D.E. 105 at 46-50, and, for that reason, this Court should find those decisions to be distinguishable and unpersuasive given that,

came directly from a DHS memorandum that explicitly described this list as a "non-exhaustive." *See* D.E. 130-1 at 2.

More importantly, the DHS Memorandum cited approvingly by the Supreme Court in *Arizona* and relied upon by Mr. Creedle, when read in full context, endorses Miami-Dade County's position. That Memorandum is entitled "Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters" and it was issued by the Department of Homeland Security pursuant to its authority under 8 U.S.C. § 1103(a)(3) to establish regulations and issue instructions.[7] In it, the Department of Homeland Security notes:

> The Department interprets the term 'cooperate' in [ ] 1357(g)(10(B) to mean **the rendering of assistance by state and local officers to federal officials, in the latter officials' enforcement of the INA, in a manner that maintains the ability to conform to the policies and priorities of DHS and that ensures that individual state and local officers are at all times in a position to be—and, when requested, are in fact—responsive to the direction and guidance of federal officials charged with implementing and enforcing the immigration laws**."

D.E. 130-2 at 8 (emphasis in original). The DHS Memorandum goes on to further state that, consistent with § 1357(g)(10), "DHS may choose to confine its role simply to establishing a general program under which a state of local officer may act repeatedly in a manner that is consistent with that program and with the policy or direction set by the Federal Government as it relates to the program." *Id.* at 10. Thus, Miami-Dade County's policy to cooperate with the federal government to the extent permissible by law and, therefore, to provide the precise assistance expressly requested by a federal immigration official via a detainer request—and nothing more—clearly falls within the scope of that definition.

### b. Miami-Dade County is authorized under state law to honor detainers

Having established federal law authority, we now to Mr. Creedle's claim that the County lacks state law authority to honor detainers supported by probable cause to the extent permitted by law.

---

even under Mr. Creedle's own allegations, Miami-Dade County takes no action to cooperate on immigration without an express request from the federal government in the form of an immigration detainer. *See Melendres v. Arpaio*, 989 F.Supp.2d 822, 894 (D. Ariz. 2013) (local policy required deputies to arrest any subject believed to be an unauthorized alien absent any federal request); *Santos v. Frederick Cty. Bd. of Com'rs*, 725 F.3d 451, 463 (4th Cir. 2013) (deputies acted outside scope of agreement and had not been given direction by federal officials); *Ochoa v. Campbell*, 266 F.Supp.3d 1237, 1258 (E.D. Wash. 2017) ("[I]n the instant case, there is no detainer request").

[7] Because this memorandum was issued pursuant to such authority, it is entitled to *Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 226-29 (2001). Accordingly, this Court "may not substitute its own construction of [8 U.S.C. § 1357(g)] for a reasonable interpretation made by the [Department of Homeland Security]." *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

First, Mr. Creedle argues that Fla. Stat. § 950.03 is not applicable because "Mr. Creedle was not a prisoner lawfully committed to the County's charge under the authority of the United States." D.E. 128 at 4-5. However, he is incorrect as a matter of state law. In considering a state habeas challenge by an individual held by Miami-Dade County on an immigration detainer, Florida's Third District Court of Appeal recently held that "once a person in custody becomes subject to a valid immigration detainer, he … no longer is held in the custody of the state;" and "his custodial status [is] established **under federal authority**." *Lacroix v. Junior*, Case No. 3D17-452, ___ So.3d ___, 2018 WL 6822711, at *3 (Fla. 3d DCA Dec. 27, 2018) (emphasis added). *See Gethers v. State*, 838 So. 2d 504 (Fla. 2003), ("[I]f the prisoner is subject to release but is being held because a detainer has been lodged" then "***the person is in custody pursuant to the detainer.***" *Id.* (emphasis added)); *Ricketts v. Palm Beach County Sheriff*, 985 So.2d 591, 593 (Fla. 4th DCA 2008) (stating that when an inmate subject to a detainer request "posts bond … he will be released from state custody and then booked on [a] federal immigration detainer" whereby "the sheriff will not be holding [him] pursuant to state authority ***but pursuant to federal authority***").

Second, Mr. Creedle argues that Fla. Stat. § 901.18 is similarly inapplicable because the application of this statute to this case would be "untenable" because 901.18 "does not justify the kind of systematic assistance involved in the County's policy of compliance with all detainers." D.E. 128 at 6. But that concern goes to whether this form of assistance is unadvised not whether it is unauthorized under the plain language of the statute. And, while Mr. Creedle argues that Fla. Stat. § 901.18 should be read narrowly, Florida's courts have rejected such an approach and interpreted § 901.18 to, for example, "expressly allow[]" an officer to delegate to a fellow officer the authority to make an arrest. *State v. Boatman*, 901 So.2d 222, 224 (Fla. 2d DCA 2005).

Thus, when Miami-Dade County is in receipt of a facially valid detainer from the federal government that seeks assistance, Miami-Dade County, under the express terms of § 901.18, is imbued with the same authority to arrest as the immigration official who lodged the detainer.[8]

But, even putting aside the express statutory authority referenced above, there is a more fundamental reason why Mr. Creedle's claims fail: he misunderstands the role of Miami-Dade County's Corrections Department with respect to detaining inmates, generally. Correctional officers, by definition, are officials who have the authority to detain individuals on behalf and upon the authority of fellow law enforcement officials. More specifically, in the jail setting, no inmate is being detained

---

[8]   *See Mauldin v. United States*, 328 F.2d 779 (5th Cir. 1964) (applying Florida law relating to "peace officers" to the actions of a federal agent).

on the correctional facility's independent arrest authority; they are in custody based upon the authority of a law enforcement official that has requested that the jail maintain custody of that individual on their behalf. Here, federal officials authorized to both detain removable aliens and issue immigration detainers seeking local assistance in that effort, provided Miami-Dade County with a facially valid detainer concerning subjects that already happened to be in its custody on local, criminal charges. Notably, these detainers also represented that there was probable cause that the subject was a removable alien. And, the immigration detainer did nothing more than ask Miami-Dade County to maintain custody of that individual on behalf and on the authority of the federal government until federal officials could arrive and assume custody themselves. *See id.* That type of cooperation clearly lies within the scope of authority given to correctional facilities.

## IV.     The fellow officer rule applies in this context

In his Response, Mr. Creedle argues that, at a minimum, the County lacked authority to hold Mr. Creedle once he informed them that he was a U.S. citizen." D.E. 128 at 7. But a self-serving statement as to one's citizenship, absent objective evidence or additional corroboration,[9] cannot require a correctional facility to disregard the representations of law enforcements officials. Indeed, if Mr. Creedle's contention was valid, then the most common phrase at the County jail ("I'm innocent.") would be all that one would have to say to ensure their release. *See Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (holding that there is "no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Baker v. McCollan,* 443 U.S. 137, 145–46 (1979) ("[W]e are quite certain that a detention of three days over a New Year's weekend [notwithstanding the accused's protests of mistaken identity] does not and could not amount to such a deprivation. … The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."); *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) (noting that officers providing assistance may "fill in any gaps in the account with reasonable inferences premised on [the fellow officer] acting in a constitutional manner and in good faith.").

---

[9]   Mr. Creedle cites to *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297 (11th Cir. 2018) and *Kingsland v. City of Miami*, 382 F.3d 1220, 1226–27 (11th Cir. 2004). In both of those cases, however, the officers ignored objective evidence. In *Cozzi*, it was the subject's lack of tattoos. In *Kingsland*, it was the officer's failure to conduct any search of the vehicle for drugs and only charging the subject with a drug offense for cannabis after the subject passed a breathalyzer test.

11

## Conclusion

For the reasons stated above, in the Defendants' Motion to Dismiss, D.E. 128, and in its prior filings incorporated by reference, D.E. 70, 101, Miami-Dade County requests that Mr. Creedle's claims be dismissed.

Dated: January 22, 2019

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: */s/ Michael B. Valdes*
Michael B. Valdes
Assistant County Attorney
Florida Bar No. 93129
Phone: (305) 375-5151
Fax: (305) 375-5634
E-Mail: mbv@miamidade.gov

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served on January 22, 2019 on all counsel or parties of record in the manner indicated on the Service List below.

/s/ *Michael B. Valdes*
Assistant County Attorney

## Service List

**Counsel for Plaintiff**

Rebecca Sharpless
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida 33146
Telephone: (305) 284-3576
E-mail: rsharpless@law.miami.edu

Ira Kurzban, Edward Ramos, and Ian Shaw
Kurzban Kurzban Weinger Tetzeli & Pratt P.A
2650 SW 27th Avenue, Second Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Telephone: (305) 444-3503

Amien Kacou
ACLU Foundation of Florida, Inc.
4023 Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone: (813) 288-8390
E-mail: akacou@aclufl.org

Nancy Abudu
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (305) 786-363-2700
Fax: (786) 363-1448
E-mail: nabudu@aclufl.org

*Electronic Service*

**Counsel for Defendants**

Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Fax: (305) 375-5634
E-mail: mbv@miamidade.gov
        orosent@miamidade.gov
*No service necessary*

**Others Receiving Service**

Erez Reuveni and Vinita Andrapalliyal
U.S. Dept. of Justice, Civil Division
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085

Lesley Blackner
340 Royal Poinciana Way, Suite 317-377
Palm Beach FL 33480
Telephone: (561)659-5754
E-mail: lesleyblackner@gmail.com

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
E-mail: chajec@irli.org

*Electronic Service*