UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

       Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and the
UNITED STATES OF AMERICA,

       Defendants.

_____/

### DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
### SECOND AMENDED COMPLAINT FOR DAMAGES

Defendant United States of America, by and through its undersigned counsel, files its

Motion to Dismiss Second Amended Complaint for Damages, and states:

I.      PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff Garland Creedle was born in Honduras.  Second Amended Complaint (D.E.

116), ¶ 12.  Creedle is a U.S. citizen since birth by virtue of the U.S. citizenship of his father,

Willie Edward Creedle.  Id.

Creedle came to the United States from Honduras in 2015.  D.E. 116, ¶ 48.  Immigration

enforcement officials arrested Creedle and put him in administrative removal proceedings before

an immigration judge.  Id., ¶ 49.

On April 28, 2015, immigration officials with the Department of Homeland Security

(DHS) filed a motion with the immigration judge stating that the proceedings be terminated

because Creedle had submitted documentation showing that he had acquired citizenship through his father, Willie Edward Creedle.  Id., ¶¶ 50-51.  On April 30, 2015, the immigration judge granted the federal government's motion and terminated proceedings against Creedle.  Id., ¶ 52.

On March 12, 2017, Creedle was arrested after an alleged domestic dispute and taken to Miami-Dade County Jail, where he was held on bond.  Id., ¶ 53.  Miami Dade Corrections and Rehabilitation (MDCR) officials fingerprinted Creedle.

On the morning of March 13, 2017, MDCR received an immigration detainer request, a Request for Voluntary Transfer, naming Creedle as its subject.   The detainer was issued by Officer Alexander Martinez, from U.S. Immigration and Customs Enforcement.  Id., ¶ 56.

On March 13, 2017, during normal business hours, Creedle sought to be released from MDCR and posted bond.  Id., ¶ 66.  Instead of releasing him, MDCR re-arrested Creedle and maintained custody of him for transfer to ICE.  Id., ¶ 66.  Creedle spent the night of March 13, 2017, in jail in the custody of MDCR.  Id., ¶ 69.

On March 14, 2017, ICE officials interviewed Creedle in jail and withdrew the detainer request.  Id., ¶ 71.  Creedle was then released on bond.  Id., ¶ 72.

II.      CREEDLE'S TORT CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT

In Count V, Creedle claims that Officer Martinez and defendant ICE issued a detainer against him on March 13, 2017.  D.E. 116, ¶ 99.  By virtue of this detainer, Officer Martinez and the Federal Defendants intentionally caused Miami-Dade County to arrest and continue to hold Creedle against his will after the legal grounds for his custody expired.  Creedle alleges the issuance of the detainer was without probable cause and without legal authority, and caused him to be falsely imprisoned.  Id., ¶¶ 100-102.

In Count VI, Creedle alleges that Officer Martinez, ICE and DHS breached their duty of

2

reasonable care.  D.E. 116, ¶ 109.  Further, ICE and DHS failed to adequately supervise Officer

Martinez, which proximately caused Martinez to issue the detainer against him on March 13,

2017, without probable cause and without legal authority.  Id., ¶ 109.   Further, ICE and DHS

failed to adequately maintain the accuracy and reliability of the databases on which ICE, DHS,

and its employees rely.  Id., ¶ 111.

      III.     COUNT VI FAILS TO STATE A CLAIM AS FLORIDA DOES NOT
              RECOGNIZE A TORT FOR NEGLIGENT ARREST OR NEGLIGENT
              INVESTIGATION

The FTCA authorizes tort actions against the United States "under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with the law

of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  In Howell v. United

States, 932 F.2d 915 (11th Cir. 1991), the Eleventh Circuit observed, "[t]he FTCA was not

intended to create new causes of action; nor was it intended as a means to enforce federal

statutory duties. … Instead, Congress's chief intent in drafting the FTCA was simply to provide

redress for ordinary torts recognized by state law."  Id. at 917 (citation and footnote omitted).

The heart of Creedle's negligence claim is that Officer Martinez failed to adequately

investigate his background before lodging the detainer against him.   Further, he claims the ICE

failed to adequately maintain the accuracy and reliability of the databases on which ICE, DHS,

and their employees rely, which proximately caused Officer Martinez to issue the detainer

against him, and failed to adequately supervise Officer Martinez.   D.E. 116 at 18.

Florida law does not recognize a tort for negligent investigation.   In Harris v. Kearney,

786 So.2d 1222 (Fla. 4th DCA 2001), plaintiff Harris sued the Secretary of the Department of

Children and Families, Kathleen Kearney, claiming the DCF and its employees were negligent in

its investigation of her for food stamp and public assistance fraud, which resulted in plaintiff's

arrest.   The DCF Secretary asserted defenses of sovereign immunity and the absence of a duty to Harris to maintain adequate records.  Id. at 1226.  The Fourth DCA did not address government immunity as it found that no duty of care existed between the DCF Secretary and the plaintiff. Relying upon Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the Fourth DCA found that the DCF was engaging in enforcement of public laws and the protection of the public when it investigated whether Harris had committed fraud in obtaining public assistance benefits, for which no duty of care at common law existed.  "Kearney's actions in how she supervises her agents in enforcing the public assistance fraud laws does not carry with them a corresponding duty of care to the individual citizen who may be affected by such actions."  786 So.2d at 1226 (citation omitted)

In Olson v. Dier, 2011 WL 4905640 (M.D.Fla. Oct. 13, 2011), the district court observed that, "Florida does not recognize a cause of action for negligent use of excessive force, Secondo v. Campbell, 327 F. App'x 126, 131 (11th Cir. 2009), negligent arrest, Harris v. Kearney, 786 So.2d 1222, 1226 (Fla. 4th DCA 2001), or negligent investigation, Carpenter v. City of St. Petersburg, 547 So.2d 339, 341 (Fla. 2d DCA 1989)."  2011 WL 4905640 at *2.  Prior to that, another district court noted that, "[c]onceptually, then, negligence stemming from an arrest and/or imprisonment is subsumed by the tort of false arrest/false imprisonment."  Hernandez v. Metro-Dade County, 992 F.Supp. 1365, 1369 (S.D.Fla. 1997)(footnote omitted).

Thus, Florida law does not recognize a tort of negligent arrest or negligent investigation, because of a lack of duty owed to the plaintiff, Harris v. Kearney, supra, or due to the fact that any negligence stemming from an arrest or imprisonment is subsumed by the tort of false imprisonment, which Creedle asserts in Count V.

While Harris holds that a government entity engaging in the enforcement of laws and the

4

protection of the public safety owes no duty of care in carrying out those functions, 786 So.2d at 1226, the United States Supreme Court has held that the FTCA requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA "in the performance of activities which private persons do not perform." United States v. Olson, 546 U.S. 43, 46 (2005), citing Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955).   Further, the comparison of activities need not be exact. 546 U.S. at 46-47.

The closest state law analogue used frequently by courts in the analysis of whether a state law tort duty exists is the "Good Samaritan" doctrine, which provides that one who undertakes to perform a duty, and induces reliance thereby, must perform the duty in a careful manner. Zelaya v. United States, 781 F.3d 1315, 1324-25 (11th Cir. 2015)("We have recognized that '[n]ormally, the most analogous approach in determining whether the government is liable in the regulator-enforcer context under state law is the [G]ood [S]amaritan doctrine."), citing Pate v. Oakwood Mobile Homes, Inc., 374 F.3d 1081, 1086 (11th Cir. 2004).  In Union Park Memorial Chapel v. Hutt, 670 So.2d 64 (Fla. 1996), the Florida Supreme Court set out the rule:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)  his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c)  the harm is suffered because of reliance of the other or the third person upon the undertaking.

Id. at 67, citing Restatement (Second) of Torts, § 324A (1965).  The court held that a funeral director who voluntarily undertakes to organize and lead a funeral procession, owes a duty of reasonable care to procession participants.  Id. at 66.

In this case, neither DHS or ICE undertook to render any service to Creedle.  ICE is a federal law enforcement agency responsible for enforcing United States immigration laws.  In Hutt, the funeral director was leading a funeral procession of which plaintiff Hutt was a participant.  Hutt proceeded through a red light and was struck by another vehicle.  Id. at 65. The court found that, having undertaken to lead the funeral procession, the funeral director was obligated to exercise reasonable care in preventing harm to the participants.

Further, nothing ICE did increased the risk of harm to Creedle, as in Hutt where the funeral director led the procession through red lights at which traffic would normally stop.  Also, nothing ICE did induced reliance on Creedle's part, such as Mrs. Hutt believing it was safe to go against a red light because the funeral director was leading the procession, and would ensure that crossing against the red light would be safe.  The Good Samaritan doctrine does not apply to impose a tort duty upon the government in this case.

Count VI fails to state a claim because Florida law does not recognize a tort for negligent investigation or negligent arrest.  There is no state tort law analogue, such as the Good Samaritan doctrine, which would create any duty to Creedle.   Therefore, Count VI should be dismissed.

IV.    COUNT VI IS BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION, 28 U.S.C. § 2680(a)

In Count VI, Creedle alleges that ICE and DHS failed to adequately supervise Officer Martinez, which proximately caused Martinez to issue the detainer against him without probable cause and without legal authority.  DE 116, at 18.  Further, Creedle contends ICE and DHS had a duty to maintain the accuracy and reliability of the databases on which ICE, DHS, and their

6

employees rely, and they failed to adequately maintain those databases.  Id., ¶ 111-112.   Both

the negligent supervision and negligent maintenance of databases claims are barred by the

discretionary function exception, 28 U.S.C. § 2680(a), and should be dismissed for lack of

jurisdiction.

> Title 28, U.S.C. § 2680(a) excepts from the coverage of the FTCA

>> Any claim based upon an act or omission of an employee of the
>> Government, exercising due care, in the execution of a statute or
>> regulation, whether or not such statute or regulation is valid, or
>> based upon the exercise or performance or the failure to exercise or
>> perform a discretionary function or duty on the part of a federal
>> agency or an employee of the government, whether or not the
>> discretion involved be abused.

The Supreme Court has held that a district court must apply a two-part test in determining

whether the discretionary function exception applies.  United States v. Gaubert, 499 U.S. 315,

322 (1988).   First, the court examines the nature of the challenged conduct to determine whether

it involves "an element of judgment or choice."  Id. at 322.    Second, if the challenged conduct

involves an element of judgment or choice, the court determines whether the judgment or choice

is grounded in considerations of public policy because "the purpose of the exception is to

'prevent judicial "second-guessing" of legislative and administrative decisions grounded in

social, economic, and political policy through the medium of an action in tort."   499 U.S. at 323.

Under the second prong, the court looks at whether the questioned act is "susceptible to policy

analysis."   OSI, Inc. v. United States, 285 F.3d 947, 950-51 (11th Cir. 2002), citing Hughes v.

United States, 110 F.3d 765, 768 (11th Cir. 1997).

The second prong examines whether the choices made by defendants were "grounded in

considerations of public policy"  Ochran v. United States, 117 F.3d 495, 499-500 (11th Cir.

1997), citing Gaubert, 499 U.S. at 322-23.   In making this determination, courts "do not focus

on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." 117 F.3d at 500 (citations omitted).   Instead, courts "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." Id.

In Count VI, Creedle alleges, in conclusory fashion, that ICE and DHS had a duty to properly supervise ICE and DHS agents to ensure all lawful policies and practices are followed. D.E. 116, ¶ 108.  He then alleges that ICE and DHS breached their duty of reasonable care, but offers no factual assertions as to what ICE or DHS failed to do. Id., ¶ 109.  As to the negligent maintenance of databases, Creedle alleges ICE and DHS failed to adequately maintain the accuracy and reliability of the databases, but provides no specific factual assertions as to what DHS or ICE did, or failed to do, that led to an allegedly improper detained being lodged against him.

1.       The Challenged Conduct Involved an Element of Judgment or Choice

The challenged conduct in Count VI is the purported failure of DHS and ICE to properly supervise Officer Martinez, and to adequately maintain the databases used by DHS and ICE employees.  Both types of conduct alleged by Creedle are ones where DHS and ICE officials have an element of judgment or choice in making their decisions.  An ICE supervisor exercises his or her judgment in making a choice as to the appropriate supervision of a subordinate deportation officer.  Plaintiff does not elaborate on what specifically the ICE supervisor should have done to prevent Officer Martinez from lodging the detainer against him.  Plainly, Officer Martinez's supervisors had choices to make, and judgments to exercise, in deciding how to properly supervise him.  Certain tasks, such as apprehending an alien with convictions for violent crimes, would require closer supervision than obtaining a travel document from a foreign

8

consulate for an alien who has been ordered removed.

Federal courts have found that claims of negligent supervision by government employees are shielded from FTCA liability by the discretionary function exception.  In Attallah v. United States, 955 F.2d 776 (1st Cir. 1992), a courier carrying over $600,000 traveled to the Commonwealth of Puerto Rico, so he could deposit the cash at the San Juan branch of the Royal Bank of Canada.   Upon arrival, the courier declared the assets for verification by U.S. Customs Service agents.    When the courier went missing, the owner of the money flew to Puerto Rico. The courier was found dead.  Id. at 778.  Over four years' later, two former customs agents were indicted for the assault, murder, and robbery of the courier.

Attalah filed an action under the FTCA, based upon the acts of the two customs agents who murdered the courier, as well as a negligent supervision claim against the two agents' superiors.  Id. at 778-79.   The district court granted summary judgment to the United States, finding that the intentional criminal acts of the two customs agents were outside the scope of their employment, and the negligent supervision claims were barred by the discretionary function exception.

In affirming the district court, the appellate court examined the various federal statutes pertaining to the broad discretion granted to customs officers to stop, search, and examine persons coming to the United States from foreign countries, and observed that "[t]his authority to discriminate among passengers is exactly the type of discretionary function that section 2680(a) sought to protect from liability."  Id. at 784.   As to the negligent supervision claim, the Court observed that, "how, and to what extent the Customs Service supervises its employees certainly involves a degree of discretion and policy considerations of the kind that Congress sought to protect through the discretionary function exception."  Id. at 784-85(citations omitted).   The

9

Court concluded that, "[f]or the same reasons that Customs agents are granted more liberties when conducting searches at the border [], their supervisors must also be free to make discretionary decisions as to how closely, and in what manner, they will supervise Customs agents." Id. at 785.

In Vickers v. United States, 228 F.3d 944 (9th Cir. 2000), the former wife of an Immigration and Naturalization Service (INS) detention officer was shot by her ex-husband, Akanni Kendalla, with his service-issued revolver.   She filed an FTCA action, claiming the INS was negligent in supervising and retaining Kendalla, since he had been investigated previously for on and off-duty misconduct with a female detainee, and identified by INS in December 1994 for termination.   In November 1995, Kendalla was returned to duty, and reissued his service weapon. Id. at 948.   Vickers and Kendalla had reconciled.   However, in February 1996, after an argument between the two, Kendalla shot Vickers with his service-issued revolver.   The district court found that the discretionary function exception barred Vickers' negligent supervision claim, and granted the INS's motion for summary judgment.

The Ninth Circuit affirmed the district court's finding that the negligent supervision claim was precluded by the discretionary function exception. Id. at 949-51.   "This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." Id. at 950(citations omitted).    With regard to the delay in terminating Kendalla, the Ninth Circuit observed that, "[d]ecisions concerning which termination recommendations to review when and in what order, particularly when faced with staffing shortages and consequent necessary delays, are ones that involve choice or judgment." Id. at 951.

In the same vein, the decisions on what to include in ICE and DHS databases, and how

10

frequently those databases are to be updated, are decisions involving choice or judgment. The databases are designed to allow ICE and DHS employees access to information so those employees can perform different tasks – enforcement of the immigration laws; apprehension of aliens suspected of being unlawfully present in the United States; and to adjudicate claims for various immigration benefits, such as applications for lawful permanent residence, or applications for naturalization. What information to include in those databases is plainly a matter of choice and judgment, since the decision maker must decide what information is most relevant and useful in the performance of ICE and DHS duties, since there are inherent limitations on how much information can be maintained. When and where an alien was encountered by the Border Patrol; what name was used by the alien; the citizenship claimed by the alien, are all important pieces of information for an ICE official in determining the immigration history of an alien he or she may be investigating. The use of a different name, or asserting a different country of citizenship than previously, may be indicators of an intent to hide prejudicial information. Creedle does not allege what information ICE or DHS was negligent in failing to maintain. Nevertheless, what information to include in databases accessed by thousands of ICE, Customs and Border Protection, U.S. Citizenship and Immigration Services, and other DHS employees, is a matter of choice and judgment as to what types of information are most relevant and helpful to the proper enforcement of immigration laws.

> 2. The Challenged Conduct Was Susceptible to Policy Analysis

The challenged conduct in Count VI, failure to adequately supervise Officer Martinez, are decisions that meet the second prong, since they were grounded in considerations of public policy. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that

the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.  The second amended complaint provides no detail on what ICE supervisors did, or failed to do, in their supervision of Officer Martinez.   ICE supervisors, like all supervisors, have a finite amount of time to perform their duties.  They must make decisions on what tasks being accomplished by subordinate deportation officers require more supervision or less supervision. This is a decision susceptible to a policy analysis.

The task of lodging a detainer requires an investigation of the potential subject of the detainer, to determine if the person is amenable to being removed from the United States under the Immigration and Nationality Act.   The potential subject is already detained by another law enforcement organization.   An ICE supervisor must apply priorities to determine how his or her supervisory time is most effectively spent.   Apprehensions of potentially violent alien felons, or transportation of such aliens demand more close supervision, given the potential for harm if the alien subject becomes violent, or attempts to escape.   Other deportation officer tasks, such as reviewing requests for release from detention, or requests for administrative stays of removal, require less supervision since the level of potential danger to the public or ICE officers is significantly less.   Policy considerations govern these decisions.

Similarly, decisions by DHS and ICE officials on the design of computer databases for use by DHS agents and employees are plainly susceptible to policy analysis.  Competing considerations must be weighed in deciding what information and data is to be included in the computer system.   The initial inquiry is what types of information are the most useful in assisting DHS employees in the field to perform their duty of detecting aliens who are unlawfully present in the United States, or aliens attempting to enter the United States for whom there are reasons to believe may engage in unlawful activity in this country.   Encounters with

alien subjects by Border Patrol agents, CBP inspectors, and ICE Special Agents need to be recorded, so a field agent encountering an alien can access the database to determine if the same alien has been interviewed, questioned, or arrested before.  Identification information such as photographs and fingerprints may also be included, to lessen the chance that an alien can escape detection by using a different name.  Policy considerations inform these choices made by DHS officials since the information to be stored is finite, and inputting data may be time-consuming and costly.  DHS officials must decide whether the utility of certain types of information justify the expense of inputting and maintaining such information.

The discretionary function exception, however, does not apply where the challenged conduct violates a mandatory regulation or policy that allows no judgment or choice.  Autery v. United States, 992 F.2d 1523, 1526 (11th Cir. 1993).   Thus, the government's failure to conduct nondestructive inspections on an aircraft, using trained, certified mechanics as required by federal regulations, meant that the discretionary function exception did not apply.  See Miles v. Naval Aviation Museum Foundation, Inc., 289 F.3d 715, 722 (11th Cir. 2002).   Similarly, in Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court found that agency employees had failed to follow specific directions contained in applicable regulations governing the licensing of laboratories to produce polio vaccine.  Id. at 542-43.   Therefore, the discretionary function exception did not apply.

In the instant case, there was no federal statute, regulation, or policy that was violated by ICE supervisors in their supervision of Officer Martinez.   Similarly, no mandatory regulation or policy was violated by DHS officials in designing and maintaining computer databases upon which DHS and ICE employees rely.

The challenged conduct in the second amended complaint involved an element of choice

13

or judgment, and was susceptible to policy analysis.   Therefore, the discretionary function exception applies and Count VI should be dismissed.

> V.     DEFENDANT HAD PROBABLE CAUSE TO LODGE THE DETAINER
>        AGAINST CREEDLE

In Count V, Creedle alleges defendant United States falsely imprisoned him by lodging a detainer against him on March 13, 2017.  D.E. 116 at 16-17.   In Florida, the tort of false imprisonment is defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1116 (11th Cir. 2006), citing Escambia County Sch. Bd. v. Bragg, 680 So.2d 571, 572 (Fla. 1st DCA 1996).

Probable cause is an affirmative defense to a false arrest claim.[1]  Mailly v. Jenne, 867 So.2d 1250, 1251 (Fla. 4th DCA 2004), citing Jackson v. Navarro, 665 So.2d 340, 342 (Fla. 4th DCA 1995).   Further, "[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)(citation omitted).

On March 13, 2017, Officer Martinez knew that Creedle was born in Honduras, D.E. 116, ¶ 47, and had been arrested for domestic violence by the Miami-Dade Police, Id., ¶ 53. "Probable cause is a fluid concept that deals in probabilities, which include common sense conclusions by law enforcement officers." State of Florida v. Catt, 839 So.2d 757, 759 (Fla. 2nd DCA 2003), citing Williams v. State, 731 So.2d 48, 50 (Fla. 2nd DCA 1999).   A law enforcement officer could reasonably conclude that Creedle's birth in Honduras made it highly

---

[1] Under Florida law, false arrest and false imprisonment are different labels for the same cause of action.  Weissman v. K-Mart Corp., 396 So.2d 1164, 1165 n.1 (Fla. 3rd DCA 1981).

probable that he was a citizen of Honduras, not the United States.

The grounds for removal of aliens are contained in 8 U.S.C. § 1227(a), while the grounds for denying admission to aliens are contained in 8 U.S.C. § 1182(a).   Many of the grounds for removal do not require a conviction of a criminal offense.   Aliens present in the United States without being admitted or paroled, or who arrived in the U.S. at any time or place other than as designated by the Attorney General are inadmissible.   § 1182(a)(6)(A)(i).   Further, violators of domestic violence protection orders may be deported.  § 1227(a)(2)(A)(ii).

Officer Martinez had probable cause to believe Creedle was amenable to removal from the United States.  "The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which convictions must be based."  State of Florida v. Outten, 206 So.2d 392, 397 (Fla. 1968).  "The sufficiency of the officer's knowledge is not to be judged by an analysis of the effect of each isolated circumstance. Rather, it is to be measured by the test of what a reasonable man would have believed had he known all of the facts known by the officer."  Id. (citation omitted).    Officer Martinez knew that Creedle was born in Honduras, which likely made Creedle an alien.

In its Order on Defendants' Motion to Dismiss, this Court found that Officer Martinez's stated grounds for probable cause were insufficient as a matter of law.  D.E. 105 at 14 n.5.  As to Creedle's birth in Honduras being a sufficient basis to conclude he was an alien, the Court stated that, "the Supreme Court has held that an individual's place of birth is insufficient to justify a reasonable belief that the individual is a 'alien,'" citing United States v. Brignoni-Ponce, 422 U.S. 873, 886 (1975).  Defendant respectfully disagrees.   Brignoni-Ponce stated:

> In this case the officers relied on a single factor to justify stopping
> respondent's care:  the apparent Mexican ancestry of the
> occupants.  We cannot conclude that this furnished reasonable
> grounds to believe that the three occupants were aliens.  At best the

15

officers had only a fleeting glimpse of the persons in the moving car, illuminated by headlights.  Even if they saw enough to think that the occupants were of Mexican descent, this factor alone would justify neither a reasonable belief that they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in the country.  Large numbers of native-born and naturalized citizens have the physical characteristics identified with Mexican ancestry, and even in the border area a relatively small proportion of them are aliens.  The likelihood that any given person of Mexican ancestry is an alien is high enough to make Mexican appearance a relevant factor, but standing alone it does not justify stopping all Mexican-Americans to ask if they are aliens.

422 U.S. at 886-87 (footnotes omitted).

Brignoni-Ponce held that an individual's appearance of Mexican ancestry, standing alone, was an insufficient basis to believe the person is an alien, and to stop a vehicle in which the person was in.  What the Supreme Court did not say was that an immigration officer could not rely on a person's birth in a foreign country to reasonably believe the person was a citizen of that foreign country.  Officer Martinez did not believe Creedle was a Honduran citizen because of his appearance of Honduran ancestry; Martinez never saw Creedle.   Instead, Martinez relied upon Creedle's birth in Honduras to conclude that he was an alien, which is not foreclosed by Brignoni-Ponce.  "Evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the individual in removal proceedings to prove citizenship."  Cover v. U.S. Att'y General, 572 F. App'x 778, 783 (11th Cir. 2014), citing Matter of Rodriguez-Tejedor, 25 I. & N. Dec. 153, 164 (BIA 2001), and Miranda v. Sessions, 853 F.3d 69, 73 (1st Cir. 2017)("In deportation proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the [petitioner] to prove citizenship.")(citation omitted).  Officer Martinez had probable cause to believe Creedle was an alien.

The next issue facing Officer Martinez was determining whether there was a reasonable

16

basis to believe that Creedle was unlawfully present in the United States, under one or more grounds in §§ 1182(a) or 1227(a), such that he could be placed in removal proceedings.   The second amended complaint alleges that Creedle entered the United States in 2015, was arrested, and was placed in removal proceedings.   His arrest in 2015 suggests Creedle unlawfully entered the United States without being admitted or paroled.   Further, 8 U.S.C. § 1361 provides that, "[i]n any removal proceeding under part IV of this subchapter against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, but in presenting such proof he shall be entitled to the production of his visa or other entry documentation, if any, and of any other documents and records not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service."

In <u>Velasquez v. U.S. Att'y Gen.</u>, 303 F. App'x 703 (11th Cir. 2008), the Eleventh Circuit noted that, where an alien is charged as being present without being permitted or paroled, § 1182(a)(6)(A)(i), once alienage has been established, unless the respondent demonstrates by clear and convincing evidence that … she is lawfully in the United States pursuant to a prior admission, the respondent must prove that … she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged.   <u>Id.</u> at 706, citing 8 C.F.R. § 1240.8(c) and 8 U.S.C. § 1361.

Creedle's 2015 arrest by immigration authorities, as well as his birth in Honduras, provided a reasonable basis for Officer Martinez to believe Creedle was amenable to being removed from the United States.   "To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the

offense charged." Fla. Game and Freshwater Fish Comm. v. Dockery, 676 So.2d 471, 474 (Fla. 1st DCA 1996).

Defendant is not arguing that because 8 U.S.C. § 1361 shifts the burden in a removal proceeding to the alien to show time, place, and manner of entry, once alienage is established by the government, that an immigration officer can dispense with having facts sufficient to support a reasonable belief that an alien is subject to removal from the United States.   What defendant is arguing is that, once Officer Martinez had a reasonable basis to believe Creedle had no lawful immigration status in the United States, he did not have to know where, when and how Creedle unlawfully entered the United States.   In State v. M.R., 100 So.3d 272 (Fla. 3rd DCA 2012), the Third DCA observed, "[w]e note that a determination of probable cause does not require the officer on the street or the judge in court to abandon all notions of common sense or to mechanically apply a reality-defying test.  The assessment of probable cause involves application of 'practical, common-sense judgment.'" Id. at 277-78, citing Illinois v. Gates, 462 U.S. 213, 244 (1983).  Creedle's previous arrest in 2015 by immigration officers, coupled with his birth in Honduras, was a reasonable basis for Martinez to believe Creedle was subject to being removed from the United States.   Consequently, Count V should be dismissed.

CONCLUSION

Creedle's negligent arrest and investigation claims should be dismissed because Florida law do not recognize those causes of action, nor does the Good Samaritan doctrine provide a state law analogue.   Further, Creedle's negligent supervision and negligent maintenance of computer databases claims are barred by the discretionary function exception, 28 U.S.C. § 2680(a).  Finally, Creedle's false imprisonment claim should be dismissed because Officer

Martinez had probable cause to believe Creedle was an alien, and subject to removal from the United States.

Dated:  March 12, 2019       Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


By:     __s/ Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney
Fla. Bar No. 0936693
99 N.E. 4th Street
Miami, Florida   33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANT
UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on March 12, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.


___s/ Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney

<u>SERVICE LIST</u>

Garland Creedle v. Miami-Dade County, et al.,
Case No. 17-22477-CIV-WILLIAMS
United States District Court, Southern District of Florida

Rebecca Sharpless
Fla. Bar No. 0131024
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273

Coral Gables, Florida  33146
(305) 284-3576 (direct)
(305) 284-6092 (clinic)
rsharpless@law.miami.edu

ATTORNEY FOR PLAINTIFFS

Dexter A. Lee, AUSA
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANT
UNITED STATES OF AMERICA