UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

        Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and
UNITED STATES OF AMERICA,

        Defendants.

_____/

**FEDERAL AGENCY DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

In March 2017, Plaintiff was briefly detained by Miami-Dade County after his detention on state criminal charges, in response to a "detainer" from U.S. Immigration and Customs Enforcement (ICE) requesting that Miami-Dade County notify it of Plaintiff's release and hold him for up to, but no more than, 48 hours to facilitate transfer of custody upon Plaintiff's release from state charges. In his Second Amended Complaint (SAC), as to Defendants the Department of Homeland Security (DHS) and ICE (hereinafter Federal Agency Defendants), Plaintiff alleges that the issuance of the detainer to Miami-Dade County is in "excess of [ICE's] statutory authority" under the Immigration and Nationality Act (INA) and therefore violates the Administrative Procedure Act (APA) as an action ultra vires to the statute (Count III). In addition, Plaintiff asserts that the issuance of the detainer to him violated the Fourth Amendment because it caused Miami-Dade County to continue to detain Plaintiff after his release on state charges (Count IV). As relief, as to Federal Agency Defendants, he asks the court to

1

declare that ICE's issuance of detainers exceeded its statutory authority and violated the Fourth Amendment. SAC p. 19.

These claims should be dismissed. Plaintiff lacks Article III standing to seek declaratory relief as to Federal Agency Defendants because he cannot allege any real and immediate possibility that he will again be subject to an ICE detainer, let alone detained on one. Even if he had standing, his request for declaratory relief is moot, because he challenges the issuance of a detainer pursuant to a policy that no longer exists. Plaintiff's claims also fail on the merits. The INA authorizes ICE to issue detainers to state and local law enforcement agencies requesting that those agencies notify ICE of an alien's impending release and briefly detain that individual for no more than 48 hours so that ICE may take custody in a safe custodial setting. Moreover, the issuance of a detainer does not violate any rights Plaintiff may have under the Fourth Amendment. Accordingly, Plaintiff fails to state a claim upon which relief can be granted as to Federal Agency Defendants, and Counts III and IV, the only two counts against DHS and ICE, should be dismissed.

## LEGAL BACKGROUND

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending removal decision); *id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id.* § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[1]

---

[1] Following passage of the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of Homeland Security. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

Although the federal government possesses broad power over immigration, enforcing the immigration laws is a formidable challenge. To meet that challenge, the federal government works with state and local governments. These cooperative efforts are critical to enabling the federal government to identify and remove the hundreds of thousands of aliens who violate immigration laws each year.

Federal law contemplates and authorizes these cooperative efforts. Congress has authorized the Department of Homeland Security (DHS) to enter into agreements with States and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, local officers may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform specified immigration enforcement functions relating to investigating, apprehending, and detaining aliens. *Id.* § 1357(g)(1)-(9). Even without a formal agreement, States and localities may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id.* § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include: "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable"; and "responding to requests for information about when an alien will be released from their custody." *Id.*

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in immigration detainers issued by ICE, a component of DHS responsible for immigration enforcement in the country's interior. An immigration detainer notifies a State or locality that ICE intends to take custody of an alien in that jurisdiction's criminal custody, and asks them to cooperate with ICE in two main respects: (1) by notifying ICE of the alien's release date; and (2) by holding the alien for up to 48 hours, based on ICE's determination that it has

probable cause that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing release notification), (d) (describing temporary detention request). These notification and detention requests are authorized by the INA. *See, e.g., Santoyo v. United States*, No. 16-855, 2017 WL 6033861, at \*3 (W.D. Tex. Oct. 18, 2017); *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1998).

DHS's current detainer form, Form I-247A, as well as its predecessors, the I-247D and I-247X, set forth the basis for DHS's determination of probable cause to believe that the subject is a removable alien. The form states that DHS's probable-cause finding is based on: (1) a final order of removal; (2) the pendency of removal proceedings; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf. The detainer specifies that the State or locality should "[m]aintain custody of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Form I-247A (emphasis in original). The form provides that the "alien must be served with a copy of this form for the detainer to take effect," and that the existence of the detainer "should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." *Id.* The form encourages local law enforcement and the subject of the detainer to contact ICE's Law Enforcement Support Center with "*any* questions or concerns." *Id.* (emphasis added); *see also id.* at 2.

As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5,

https://www.ice.gov/detainer-policy. That arrest warrant—either a Form I-200, Warrant for Arrest of Alien (for aliens not yet subject to a removal order) or a Form I-205, Warrant of Removal/Deportation (for aliens subject to a final removal order)—is issued by an executive officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing officers who may issue warrants). ICE may issue a detainer only when a state or local agency has arrested the alien for a *criminal* offense in an exercise of its independent arrest authority. ICE Policy No. 10074.2 ¶ 2.5. The policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

## FACTUAL BACKGROUND

On March 12, 2017, Plaintiff Garland Creedle was arrested after an alleged domestic dispute and booked into the Miami-Dade County Jail. SAC, ECF No. 116, ¶ 53. The next morning, the Jail received an immigration detainer request regarding Plaintiff. *Id.* ¶ 56. The detainer reflected that a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id.* ¶ 61. Later that day, Plaintiff posted bond. *Id.* ¶ 66. The Jail maintained custody of him after his release as requested by the detainer, and the next day, March 14, 2017, ICE officers interviewed Plaintiff in the Jail. *Id.* ¶¶ 68-71. After his interview, ICE withdrew the detainer request and Plaintiff was released. *Id.* ¶ 72.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of establishing jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). Challenges to

5

jurisdiction can be either "facial" of "factual." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial challenges are limited to a plaintiff's allegations, taken as true for purposes of the motion, whereas factual challenges encompass matters outside the pleadings and allow a district court to weigh the factual record. *Id.* at 1529.

In considering a Rule 12(b)(6) motion, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may consider documents that a plaintiff has attached to the complaint. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). Moreover, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

## ARGUMENT

Plaintiff alleges that Federal Agency Defendants' issuance of a detainer violates the APA (Count III) because the detainer was issued "without a written agreement" pursuant to 8 U.S.C. § 1357(g), and without a determination he was likely to escape. Plaintiff also complains that the issuance of a detainer, without any other action by Federal Agency Defendants, violates his Fourth Amendment rights (Count IV). These claims fail at the threshold because Plaintiff lacks Article III standing, and because his claims are moot. Furthermore, Plaintiff loses on the merits, because the INA authorizes ICE to issue detainers without any formal § 287(g) agreement and because the issuance of a detainer is not a Fourth Amendment violation. Accordingly, the Court should dismiss these claims.

### I.   Plaintiff lacks Article III standing to seek prospective declaratory relief

Following this Court's ruling on Defendants' motions to dismiss, Plaintiff amended his

complaint, making it clear that the *only* relief he seeks against DHS and ICE is declaratory. *See* SAC, Count III and IV, specifying that he requests "declaratory relief" against DHS and ICE; *compare* Counts I, II, V, VII where he requests "damages." Specifically, Plaintiff seeks relief declaring that Miami-Dade County's policy of cooperation with detainers is unlawful, declaring that the County's cooperation with the detainer violated his Fourth Amendment rights and constituted false imprisonment under Florida law, declaring that ICE's issuance of detainers exceeded its statutory authority and violated the Fourth Amendment. SAC p. 19.

However, Plaintiff lacks Article III standing to raise such claims for declaratory relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-02 (1998) (rejecting notion of "hypothetical jurisdiction" and requiring resolution of antecedent Article III jurisdictional questions). Plaintiff must demonstrate standing for each and every one of his claims, and even if a plaintiff has standing for one claim or form of relief that does not supply it for another. "[S]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, (2008) (internal quotation and citations omitted). Thus, even if a plaintiff has standing to raise claims for money damages to redress *past* injury—such as Plaintiff's damages claims in Counts I, II, V, and VI[2]—to obtain prospective relief (such as the

---

[2] Furthermore, there can be no claim for damages against the United States or its agencies when sued pursuant to the APA. *See* 5 U.S.C. § 702. ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking *relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed. . . ") (emphasis added); *see also Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't. of the Treasury*, 773 F.3d 243, n.5 (11th Cir. 2014) ("Damages are not available under the Administrative Procedure Act in this action.") Plaintiff's two claims against Federal Agency Defendants arise solely under the APA, as Plaintiff has not identified any other waiver of sovereign immunity. *Cf. Chacity v. Tillerson*, 285 F. Supp. 3d 293 (2018) (discussing the difference between the claim, jurisdictional statute, and a waiver of sovereign immunity). "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S 834, 841 (1986). Thus, as explained above, Plaintiff not only lacks

declaratory relief Plaintiff seeks in Counts III and IV) a plaintiff must demonstrate that he is "likely to suffer future injury from" the challenged conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)—*i.e.*, that Plaintiff faces "a real and *immediate* threat that he again" will suffer the same harm. *Lyons*, 461 U.S. at 105. Thus, even if Plaintiff has standing to seek damages against certain Defendants for past events, he does not have standing to seek declaratory relief against Federal Agency Defendants, as explained below.

Plaintiff fails to allege—let alone demonstrate—*any* likelihood that he will ever again be subject to an ICE detainer. Not only has he long been released from both criminal and immigration custody, but Plaintiff will not be subject to an ICE detainer in the future because ICE has updated its records to reflect that Plaintiff is a United States citizen. *See* Declaration of ICE Assistant Field Office Director Garrett J. Ripa, attached hereto as Exhibit 1. The declaration explains that the reason immigration records exist for Plaintiff in the first place is because he was apprehended illegally crossing the border into the United States, and he represented to Border Patrol officers that he was a Honduran citizen. ¶ 3, 4; *see also* Form I-213 (attached hereto as Exhibit 2) (reflecting Plaintiff's illegal entry into the United States and his representations to immigration authorities that he was a Honduran citizen). Following the filing of the instant case, ICE updated its internal databases to reflect that Plaintiff is a United States citizen. ¶ 5.

Plaintiff's lack of standing to seek declaratory relief against DHS and ICE is confirmed by the fact that Plaintiff has been arrested again since the incident underlying the instant case, and no detainer was issued. *See* Ripa Declaration ¶ 6; *see also* ICE IAR Response (attached hereto as Exhibit 3) (showing communication from ICE that ICE records show that Plaintiff is a United States citizen, is not subject

standing to seek declaratory relief, but no damages are available to him on these claims, underscoring

8

to removal from the United States, and that ICE will not take further action); Miami-Dade County Motion to Dismiss Exhibit: Inmate Profile System, ECF No. 119-6 (showing "hold for immigration" regarding the March 2017 incident underlying the instant complaint, and showing no such hold for his re-arrest in 2018); Miami-Dade County Motion to Dismiss Exhibit: Declaration of Deroda Bennett, ECF No. 119-8 (testifying that Miami-Dade County did not receive a detainer regarding Plaintiff when he was re-arrested in 2018, and that Miami-Dade County records show that even if a detainer was ever issued again, Miami-Dade County staff should consider it "lodged in error" and "not be honored.").

In the face of this incontrovertible evidence that Plaintiff will never again but subject to a detainer, he has shown insufficient likelihood of future injury to warrant equitable relief. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("There must be a substantial likelihood that the plaintiff will suffer future injury: a "perhaps" or "maybe" chance is not enough."), *see also Lopez-Lopez v. Allegan Cty.*, Case No. 1:17-cv-786, pp. 5-7 (W.D. Michigan) (previously attached at ECF No. 69-2) (finding that plaintiff lacks standing to challenge detention alleged to have been in response to an ICE detainer where he cannot show a likelihood of being detained in the future, relying on *Lyons*). Accordingly, his claims against DHS and ICE must be dismissed.

## II.      Plaintiff's requested relief is moot

Plaintiff requests that this Court (as relevant to Federal Agency Defendants) issue a judgement declaring that "ICE's ongoing issuance of detainers in the manner which led to Mr. Creedle's injuries exceeds the agency's statutory authority and violated the Fourth Amendment because it purports without lawful authority to authorize warrantless civil immigration arrests by the County." SAC p. 19. Plaintiff has clearly recast this claim for declaratory relief to frame it as one for prospective relief in response to this Court's ruling that his claims for retrospective declaratory relief were moot. As this

---

that they must be dismissed.

Court correctly held, "Mr. Creedle's declaratory judgment claims that seek only retrospective declaratory relief, as the claims in Count IV and V [the original claims against Federal Agency Defendants] appear to be, are dismissed as moot." Order, ECF No. 105, at 23. However, the Court held that Plaintiff had also brought a claim for damages against Federal Agency Defendants. *Id.* Now that Plaintiff has clarified in his second amended complaint that he seeks *only* declaratory relief against DHS and ICE, it is clear that he both lacks standing and that his request for relief is moot, because ICE has changed its detainer policies, and thus, there is no "ongoing issuance" of detainers in the manner in which a detainer was issued to Plaintiff.

Events post-dating the allegations of the complaint can moot out claims. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). "When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004). The Eleventh Circuit had held that "a challenge to a government policy moot when it has been replaced by a new policy that "'appears to have been the result of substantial deliberation' on the part of the alleged wrongdoers and has 'been consistently applied' in the recent past." *Id.* at 1285 (citing *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998).

As noted above, ICE's detainer policies have changed since the time of the events underlying Plaintiff's complaint. As of April 2, 2017, ICE detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5. That arrest warrant is issued by an executive immigration officer and sets forth the basis for the probable-

cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5. Unless the alien is already detained by ICE, ICE may issue a detainer only when an agency has arrested the alien for a *criminal* offense in an exercise of its independent arrest authority. ICE Policy No. 10074.2 ¶ 2.5. The policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

This demonstrates that Plaintiff's requested relief—a declaration that ICE's "ongoing" issuance of detainers exceeds the agency's statutory authority and violates the Fourth Amendment—is indeed moot. It is clear that the new policy was the result of "substantial deliberation." The policy is a change from previous policy that affects nationwide operations, requiring ICE to obtain administrative arrest warrants prior to the issuance of any detainer. The policy has been formalized and published online for all to see. The policy change was undertaken voluntarily. And there is no allegation that since the policy change, ICE has engaged in conduct that violates it. Thus, given the policy change, the issue is "purely academic." *See Jews for Jesus*, 162 F.3d 629. "In short, this Court has consistently held that a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated. In the absence of any such evidence, there is simply no point in allowing the suit to continue and we lack to power to allow it to do so." *Troiano*, 382 F.3d 1285.

Thus, because ICE "issuance of detainer in the manner which led to Mr. Creedle's injuries" has ceased, and the policy governing the issuance of detainers has been completely revised, this Court cannot enjoin a policy that is no longer in place, and the relief Plaintiff requests is moot because ICE has changed its policies and detainer forms. Accordingly, his claims against the Federal Agency Defendants must be dismissed.

**III.      Even if Plaintiff had standing and his request for relief was not moot, he fails to state a claim**

Even if Plaintiff had standing, and his requested relief was not moot, his claims would fail on the merits. The only action challenged as to Federal Agency Defendants is the issuance of the detainer to Miami-Dade County, and that is authorized by the INA. Furthermore, the issuance of a detainer does not violate the Fourth Amendment. Thus, Plaintiff's claims as to Federal Agency Defendants fail, and must be dismissed.

**a.      Issuing a detainer is not ultra vires because it is authorized by law**

Plaintiff claims that pursuant to 8 U.S.C. § 1357, "Congress limited Defendant ICE's authority to make warrantless arrests by requiring a determination that the person being arrested was likely to escape. It also limited Defendant ICE's authority to transfer its arrest powers to LEAs to certain conditions involving a written agreement." SAC ¶ 87. Plaintiff goes on to state that by asking Miami-Dade to cooperate with his detainer, Federal Agency Defendants "did so without a written agreement and without a determination that he was likely to escape, in violation of the limitations placed by 8 U.S.C. § 1357." *Id.* ¶ 89.

Both of these assertions are meritless. As courts across the country have explained, pursuant to the INA, ICE may issue a detainer to request cooperation from a state or local law enforcement agency "either to hold the prisoner for the agency or to notify the agency when release [] is imminent." *McLean*, 173 F.3d at 1185 n.12 (holding that DHS "has authority to lodge a detainer against a prisoner"). *See* 8 C.F.R. § 287.7(a) (describing release notification), (d) (describing temporary detention request). This detainer "authority," authorized by 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), "predates the INA and has long been viewed as implied by federal immigration enforcers' authority to arrest those suspected of being removable." *Santoyo v. United States*, No. 16-855, 2017 WL 6033861, at *3 (W.D. Tex. Oct. 18, 2017); *see Mendez v. United States*, 2009 U.S. Dist. LEXIS 116522, at *2 n.2 (S.D.N.Y

2009); *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009); *see also Akande v. U.S. Marshals Serv.*, 659 F. App'x 681, 684 (2d Cir. 2016) ("the immigration detainer would appear . . . to justify an additional 48 hours of detention beyond the expiration of the prisoner's term"); *United States v. Carlos Gomez-Robles*, No. 17-730, 2017 WL 6558595, at *3 (D. Ariz. Nov. 28, 2017) ("federal law provides both the authority for DHS to issue immigration detainers and for law enforcement agencies, like the Pima County Jail, to detain those identified in those detainers"); *Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer"); *Rosario v. New York City*, 2013 U.S. Dist. LEXIS 69410, at *12 (S.D.N.Y. 2013) (noting INA "authority to detain [alien] under [] detainer"); *cf. Morales v. Chadbourne*, 793 F.3d 208, 218 (1st Cir. 2015) (explaining that ICE must have probable cause of an alien's removability to issue a detainer under the INA requesting a local law enforcement agency to temporarily detain an alien); *Galarza v. Szalczyk*, 2012 U.S. Dist. LEXIS 47023,*38 (D.N.J. 2012) (explaining probable cause to issue detainer); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (cooperation with ICE by local officer lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (local officer's cooperation with ICE request for detention without "written agreement" lawful if "not unilateral").[3]

The preceding authorities establish that Plaintiff's argument that a detainer may not be issued unless ICE has made the findings required for a *warrantless* arrest pursuant to 8 U.S.C. § 1357(a)(2) is mistaken. The bare fact of issuing a detainer does not amount to an *arrest* of an alien already in another sovereign's custody, and so there can be no "warrantless arrest" such that 8 U.S.C. §1357(a)(2) is

---

[3] *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 2017 WL 5634965, at *7-10 (S.D. Ind. Nov. 7, 2017), incorrectly suggests that ICE lacks authority to request temporary detention. The cited authorities above reject that contention. *See Akande*, 659 F. App'x at 684; *Rosario*, 2013 U.S. Dist. LEXIS 69410, at *12. *Lopez-Aguilar* is currently on appeal at the Seventh Circuit after the State of Indiana moved to intervene for purposes of appeal.

implicated at all, because issuing a detainer cannot be a "seizure" of an individual already in the custody of a local law enforcement agency. *See, United States v. Al Nasser*, 555 F.3d 722, 730 (9th Cir. 2009) (a new Fourth Amendment seizure of a person must involve newly constraining that person's liberty by "means intentionally applied."). To clarify, an ICE officer can effect an arrest only when *that specific ICE officer's* action is "the very instrumentality set in motion or put in place in order to achieve that result" and effects the "detention." *Nasser*, 555 F.3d at 731 *Id.* at 731. Section 1357(a)(2) pertains to an ICE officer's powers without a warrant, not ICE's authority to issue detainers. *See Mendez*, 2009 U.S. Dist. LEXIS 116522, at *2 n.2 (noting that ICE has authority to lodge a detainer pursuant to § 1357(g)); *Galarza*, 2012 U.S. Dist. LEXIS 47023, at *38 ("[I]n order to issue a detainer pursuant to § 1357, there must be probable cause to believe that the subject of the detainer is (1) an 'alien' who (2) 'may not have been lawfully admitted to the United States' or (3) 'otherwise is not lawfully present in the United States.'") (quoting 8 U.S.C. § 1357(d)(1)); *Sonoma Cty.*, 644 F. Supp. 2d 1177, 1199 (upholding ICE's ability to issue detainer pursuant to 8 C.F.R. § 287.7). There is no requirement in 8 C.F.R. § 287.7 that an immigration officer make a finding pursuant to 8 U.S.C. § 1357(a)(2) prior to issuing a detainer, and in any case, such a challenge would now be mooted as any newly-issued detainer is now accompanied by a signed administrative warrant of arrest, as explained above.

Furthermore, Plaintiff's contention that ICE must have a written agreement with Miami-Dade County in order to issue it an immigration detainer is also meritless. There is nothing in any of the authorizing statutes or regulations that imposes such a requirement. The INA authorizes local officers to "cooperate" with federal officials "in the identification, apprehension, detention, or removal of aliens." 8 U.S.C. § 1357(g)(10)(B). Pursuant to the very statute that Plaintiff cites, that cooperation expressly does "not[]" "require an agreement," and nothing in the statute suggests that local officers need formal training before cooperating with federal enforcement efforts, including detainer requests. *Id.*

14

§ 1357(g)(10). Cases addressing this issue typically analyze this issue from the perspective of whether a locality, such as Miami-Dade County, may cooperate with immigration detainers absent a formal § 287(g) agreement, and are instructive here. None hold that a formal § 287(g) agreement is required in order for ICE to issue a detainer to a locality. *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018). As that Court explained, the INA, through section 1357(g)(10)(B), "indicates that Congress intended local cooperation without a formal agreement," and without "a written agreement, training, and direct supervision by DHS . . . in a range of key enforcement functions." *Id.* That is, cooperation with immigration detainers is permitted and envisioned by the INA without any of the formal training and certification requirements necessary for "state and local officials [to] become de facto immigration officers, competent to act on their own initiative" under a formal § 287(g) agreement. *Id.* And as a panel (at the stay stage) of the Fifth Circuit held, "nothing in *Arizona v. United States*, 567 U.S. 387 (2012), prohibits such assistance" and "8 U.S.C. § 1357(g), provides for such assistance." *See City of El Cenizo, Texas v. Texas*, 2017 WL 4250186, *1-2 (5th Cir. Sept. 25, 2017). *See also Tenorio-Serrano v. Driscoll*, -- F. Supp. 3d --, 2018 WL 3329661, at *9 (D. Ariz. July 6, 2018) ("the Court is not persuaded at this stage that § 1357(g) prohibits Defendants from complying with detainers. Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual. This conduct appears to fall within § 1357(g)(10)(B)."); *Perez-Ramirez v. Norwood*, No. 18-4043-JWL, -- F. Supp. 3d --, 2018 WL 3524606, *2 (D. Kan. July 18, 2018) (holding that compliance with ICE detainer was lawful).

### b.      Issuing a detainer does not violate the Fourth Amendment

Count IV also fails because the mere fact that ICE lodged a detainer with Miami-Dade

County—the only action Federal Agency Defendants are responsible for—does not effect a seizure, and therefore cannot violate the Fourth Amendment's prohibition on unreasonable "seizures." For the government to effect a new Fourth Amendment seizure of a person, the government must exert its authority to "willful[ly]" to restrain or constrain the person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). As the Supreme Court has put the point, "implicit in the word 'seizure'" is the understanding that a "detention [] be willful." *Id.* Thus, a Fourth Amendment "seizure" does not occur as the result of "an unknown act" or of "the accidental effects of otherwise lawful government conduct." *Id.* Instead, there must be "an intentional acquisition of physical control" by a government actor. *Id.* "A seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625 (1991) (quoting *Thompson v. Whitman*, 29 Wall. 457, 471 (1874)).

Thus, the question is whether the very act of issuing a detainer, rather than some action later in time by some other actor, effects a Fourth Amendment seizure. That is not the case for the simple reason that detainers are requests. "All Courts of Appeals to have commented on the character of ICE detainers refer to them as 'requests' or as part of an 'informal procedure.'" *Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014). Thus, cases addressing on the merits the question whether a detainer request effects a Fourth Amendment seizure have emphasized that the detainer does not itself cause the seizure, and that such a seizure instead requires a further, intentional act. *See Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011) ("[D]etainer alone does not cause imprisonment or a seizure by ICE. Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE."); *Nasious v. Two Unknown B.I.C.E. Agents*, 657 F. Supp. 2d 1218, 1223, 1225 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010) ("Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer," and "could not, as a matter of law, constitute a restraint on or deprivation of a

16

liberty"); *see also Hendrickson v. Thurston Cty.*, 2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008) (rejecting Fourth Amendment claim premised on claim that existence of a warrant on a separate charge "influenc[ed] third-party bail bondsmen to refuse to issue a bond to assist the individual in posting bail"). Indeed, for that reason in the related habeas context, multiple circuits have held "[t]he filing of [a] detainer, standing alone, [does] not cause [the petitioner] to come within the custody of [immigration officials]." *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 623 (11th Cir. 2013) (citing *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990)). *See also Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994) (the issuance of a "bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available."); *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (collecting cases and agreeing that absent an order of removal, "prisoners are not 'in custody' for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them"). It follows *a fortiori* that the issuance of a detainer request alone, without further action by ICE, does not "seize" an alien. Rather, a seizure occurs, if at all, when ICE *arrests* the alien, which never happened here.

Likewise, the mere fact that ICE requests through a detainer to be notified of an alien's impending release, or even for an alien to be detained at some future point in time so ICE may take custody, does not render the issuance of a document titled a detainer a seizure, let alone an unreasonable one. A federal request for notification is "simply an administrative mechanism that ensure[s] that upon the completion of his state criminal matter, [the alien] [will] be transferred to federal custody." *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014).

Even if the result of the detainer is that Miami-Dade County briefly held Plaintiff, Miami-Dade County is entitled to cooperate on a facially valid detainer (as explained above) then Federal Agency Defendants cannot be liable for a Fourth Amendment violation because even were Plaintiff correct— which he is not—that the bare issuance of a detainer might somehow be a seizure, as the Fifth Circuit

has recently held, such seizures are fully consistent with the Fourth Amendment, whether effected by the federal government or a state or local officer at the federal government's request. *See El Cenizo,* 890 F.3d at 187; *see also Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("The Fourth Amendment's meaning [does] not change with local law enforcement practices."). Even if the issuance of a detainer can constitute a seizure, that seizure is fully consistent with the Constitution because "an ICE-detainer request evidences probable cause of removability in every instance." *El Cenizo,* 890 F.3d at 187. Accordingly, as the Fifth Circuit explained, "[c]ompliance with an ICE detainer [] constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts." *Id.* And if a local law enforcement does not violate the Fourth Amendment when doing so, then *a fortiori* ICE does not violate the Fourth Amendment when issuing a detainer that is later acted on.

Plaintiff seems to base his argument that ICE violated the Fourth Amendment on his assertion that ICE issued his detainer in excess of its "statutory authority." But it is well-settled that the Fourth Amendment does not turn on violations of federal or state statutory law. *Virginia v. Moore*, 553 U.S. 164, 173 (2008). And as explained above, ICE does not violate the INA when it issued a detainer without a warrant or a finding that the alien is a flight risk. 8 U.S.C. § 1357(a)(2) has no application to ICE's action in this case because the only ICE action challenged is the issuance of a *detainer*. ICE does not, and will not affect an arrest, warrantless or otherwise, until it takes custody from Miami-Dade. Whether ICE failed to rely on a warrant to effect that hypothetical arrest at a later time is not a claim before the court, as ICE never took custody of Plaintiff, but instead lifted the detainer request.[4]

---

[4] To the extent that Plaintiff suggests that ICE may not issue a detainer without probable cause of a crime with his statement that ICE issued a detainer "in excuse of its statutory authority and otherwise without probable cause," that argument is meritless. The Fifth Circuit rejected the argument "that state

In short, because the mere *issuance* of a detainer by ICE, absent any further action by ICE to effect a seizure, like serving an arrest warrant or taking physical custody of the alien upon release from state custody, is not a seizure for Fourth Amendment purposes, let alone an unreasonable one, Plaintiff's claim premised on the Fourth Amendment fails and must be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims against Federal Agency Defendants should be dismissed, and Federal Agency Defendants should be dismissed from this case.

Dated:  March 12, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

EREZ REUVENI
Assistant Director

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

Attorneys for Federal Agency Defendants

---

and local officers may only arrest individuals if there is probable cause of criminality." *El Cenizo,* 890 F.3d at 187. The court held that seizures based on probable cause of a civil violation are consistent with longstanding precedent, and there is no requirement that an arrest may not occur "absent probable cause that a crime has been committed." *See id.* at 188 (collecting cases). As the Court explained, the contention to the contrary is "patently at odds with immigration law and procedure; civil removal proceedings necessarily contemplate detention absent proof of criminality." *Id.* (citing *Demore v. Kim,* 538 U.S. 510, 531 (2003)).

19