UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:17-cv-22477-KMW

GARLAND CREEDLE,

    Plaintiff,

v.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; and the
UNITED STATES OF AMERICA,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiff Garland Creedle files this response and opposing memorandum of law to Defendant United States of America ("Defendant")'s motion to dismiss Counts V and VI of his Second Amended Complaint.

Against Count V, which seeks damages under the Federal Tort Claims Act ("FCTA") for false imprisonment, Defendant raises the affirmative defense that it had probable cause to lodge an immigration detainer naming Mr. Creedle as its subject ("the Detainer"), despite his U.S. citizenship. D.E. 133 at 14–18.

In addition, Defendant moves to dismiss Count VI, which seeks damages under the FTCA for negligence, on the grounds that it is barred by the discretionary function exception under 28 U.S.C. § 2680(a), *id.* at 6–14, and otherwise fails to properly state a claim predicated on Florida law. *Id.* at 3–6.

As explained below, Defendant's probable cause defense is unavailing. Defendant fails to refute Mr. Creedle's supporting allegations that Defendant either had knowledge of (and access to information about) Mr. Creedle's U.S. citizenship or had insufficient evidence of Mr. Creedle's removability, and that the Detainer was not supported by a warrant or by any individualized assessment of Mr. Creedle's likelihood of escape.

Defendant's motion to dismiss Count VI also misconstrues Mr. Creedle's negligence claim as either a claim for "negligent arrest" or a claim for "negligent investigation" where Defendant owed Mr. Creedle no individual duty of care. In reality, Defendant, through its employee, owed— and breached—an individual duty of care in the course of its attempt to take custody of Mr. Creedle for possible deportation. This negligence stemmed not merely from Mr. Creedle's false arrest or imprisonment but also from the threat of deportation.

Finally, the discretionary function exception does not apply because Defendant lodged and failed to adequately prevent the lodging of the Detainer in violation of federal statutory, regulatory, and agency policy mandates.

**STATEMENT OF FACTS**[1]

Though he was born in Honduras, Mr. Creedle has been a U.S. citizen since the moment of his birth, by virtue of his father's U.S. citizenship. When Mr. Creedle came to the United States from Honduras in 2015, immigration enforcement officials arrested him and put him in administrative removal proceedings before an immigration judge. On April 28, 2015, ICE acknowledged Mr. Creedle's U.S. citizenship in a motion filed in those proceedings. In the motion, ICE stated that Mr. Creedle had submitted documentation showing that he had acquired citizenship

---

[1] The following facts are set forth in the Second Amended Complaint and are restated here as relevant to Mr. Creedle's claims against Defendant United States of America.

through his father, Willie Edward Creedle, and that termination of the removal proceedings was warranted because Mr. Creedle was a U.S. citizen. On April 30, 2015, an immigration judge granted ICE's motion and terminated proceedings against Mr. Creedle.

On the evening of March 12, 2017, Mr. Creedle was arrested after an alleged domestic dispute and taken to Miami-Dade County jail, where he was detained. The County declined to pursue charges against him and the Miami-Dade Criminal Court issued a "No Action" decision in his case.

On the evening that police arrested Mr. Creedle, Miami-Dade Corrections and Rehabilitation Department ("MDCR") officials fingerprinted him. Early the next morning, on March 13, 2017, MDCR received the Detainer, which was signed by Officer Alexander Martinez, an employee of Defendant, the U.S. Department of Homeland Security ("DHS"), and the U.S. Immigration and Customs Enforcement ("ICE").

The Detainer contained the bare assertion that Mr. Creedle was "a removable alien" under civil immigration law and that this determination was based on a "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." The Detainer asked MDCR to re-arrest Mr. Creedle and jail him for an additional 48 hours, excluding holidays and weekends, beyond the time he would otherwise be entitled to release. The Detainer was not supported by a judicial or administrative warrant or by any other separate determination of probable cause for arrest, nor did it include any individualized assessment of Mr. Creedle's risk of flight.

On March 13, 2017, during normal business hours, Mr. Creedle sought to be released from MDCR and posted bond. While Mr. Creedle was entitled to be released immediately upon posting bond, MDCR instead complied with the Detainer and re-arrested Mr. Creedle. Mr. Creedle told MDCR officials that he was a U.S. citizen. MDCR nevertheless maintained custody over Mr. Creedle while awaiting his transfer to ICE detention. Mr. Creedle spent the night of March 13, 2017 in jail in the custody of MDCR based on nothing more than the purported authority of the Detainer issued by Defendant's employee.

## ARGUMENT

**I.     Defendant lacked probable cause to lodge the Detainer.**

To lawfully issue a detainer pursuant to § 1357, there must—at a minimum—be probable cause to believe that the subject of the detainer is (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States." *Galarza v. Szalczyk*, No. 10–cv–06815, 2012 WL1080020, at \*10, \*13 (E.D. Pa Mar. 30, 2012) *rev'd on other grounds*, 745 F.3d 634 (3d Cir. 2014) (citing 8 U.S.C. § 1357(d)(1) (2012)). Defendant claims it had probable cause to lodge the Detainer because, when the Detainer was lodged, "Officer Martinez knew that Creedle was born in Honduras, . . . and had been arrested for domestic violence by the Miami-Dade Police." D.E. 133 at 14. Defendant further notes that "violators of domestic violence protection orders may be deported" under 8 U.S.C. § 1227(a)(2)(A)(ii). D.E. 133 at 15. Additionally, Defendant cites to caselaw laying out the burden of proof applicable to respondents in removal proceedings, in order to support of the proposition that "[e]vidence of foreign birth gives rise to a rebuttable presumption of alienage." *Miranda v. Sessions*, 853 F.3d 69, 73 (1st Cir. 2017). However, as this Court stated in its November 28, 2018

4

Order, these "stated grounds for probable cause are insufficient as a matter of law." D.E. 105 at 14, n.6.

First, contrary to Defendant's suggestion, 8 U.S.C. § 1227(a)(2)(A)(ii) is entirely irrelevant to this case. This statute renders deportable "any alien who at any time after admission is *convicted* of two or more crimes involving moral turpitude, . . . ." 8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis added). As mentioned above, Mr. Creedle was never convicted of the offense for which the police arrested him on March 12, 2017 and which prompted Defendant's employee to lodge the Detainer against Mr. Creedle on March 13, 2017. In fact, the Miami-Dade Criminal Court issued a "No Action" decision in his case. Moreover, Defendant does not allege or present any evidence that Mr. Creedle had ever been convicted of any other "crim[e] involving moral turpitude," nor that he had ever been subject to any "domestic violation protection order[]." Rather, all allegations and available evidence presented thus far suggest that Mr. Creedle has never been convicted of *any* crime that would have made him deportable.

As this Court stated in its November 28, 2018 Order,

> Martinez's contention that he had probable cause based on Mr. Creedle's arrest because his arrest demonstrated that Mr. Creed could eventually be convicted of a certain offense and thereby rendered removable—assuming he was not a U.S. citizen—also fails as a matter of law because probable cause must have existed at the time Martinez issued the detainer. *See, e.g., United States v. Hansen*, 652 F.2d 1374, 1388 (10th Cir. 1981) ("[P]robable cause must exist at the moment of the arrest."). Martinez could not have had probable cause to believe that Mr. Creedle was removable when he issued the detainer if the removability was contingent on a future conviction.

D.E. 105 at 14 n.6.

Second, Defendant has failed to establish that its officer had probable cause to believe that Mr. Creedle was a deportable non-citizen. Defendant argues that Mr. Creedle's 2015 immigration arrest "suggests Creedle unlawfully entered the United States without being admitted or paroled"

5

and thus "provided a reasonable basis for Officer Martinez to believe Creedle was amenable to being removed from the United States." D.E. 133 at 17. To begin, Defendant does not suggest that Officer Martinez knew about the 2015 arrest at the time the Detainer was lodged. And even if Officer Martinez had such knowledge, the fact that removal proceedings were *initiated* against a person does not establish probable cause to believe that the person is *deportable*—particularly when the proceedings were terminated on the Government's own motion precisely because the Government concluded that the person was a U.S. citizen.

Third, this Court has already properly rejected the Government's claim that Mr. Creedle's foreign birth, standing alone, is sufficient to provide probable cause that it is a non-citizen. As the Court explained in its November 28, 2018 Order,

> the Supreme Court has held that an individual's place of birth is insufficient to justify a reasonable belief that the individual is an "alien." *See United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (holding that a person's ancestry, or apparent ancestry, is insufficient to justify either a reasonable belief that the person is an "alien," or a reasonable belief that the person is otherwise engaged in illegal activity).

D.E. 105 at 14 n.6.

Fourth, Defendant ignores Mr. Creedle's allegation that DHS and ICE knew—and that Officer Martinez should have known—that Mr. Creedle was a U.S. citizen, based on documentation he submitted to these agencies in 2015 proving he was a U.S. citizen. *See* D.E. 116 at ¶¶ 50–52. At that time, these agencies deemed such documentation sufficient to warrant terminating Mr. Creedle's removal proceedings. *Id*. As the court noted in *Douglas*, an FTCA lawsuit against ICE for detaining a U.S. citizen, even evidence of an individual's foreign birth would not "negate the fact that ICE did not have the authority to detain him if it knew or should have known that he was a U.S. citizen." *Douglas v. United States*, 796 F. Supp. 2d 1354, 1366, 1367 (M.D. Fla. 2011).

6

Defendant does not specify or establish that Officer Martinez lacked internal access to this information at the time he lodged the Detainer—indeed, ICE's internal policies require ICE officers to check U.S. citizenship using "all available DHS data systems and any other reasonable means available to the office."[2] Additionally, Defendant fails to allege that Officer Martinez made any attempt to obtain from MDCR any additional information about or access to Mr. Creedle, who told MDCR officials that he was a U.S. citizen. D.E. 116 at ¶ 59; *see Douglas*, 796 F. Supp. 2d at 1366–67 ("Inquiry into the reasonableness of an officer's perceptions of critical facts supporting an arrest 'must charge him with possession of all the information *reasonably discoverable* by an officer acting reasonably under the circumstances.'") (quoting *Albo v. State of Florida*, 477 So.2d 1071, 1076 (Fla. 3d DCA 1985) (emphasis added)).

For these reasons, Mr. Creedle has stated a claim that Officer Martinez lacked probable cause to believe Mr. Creedle was a noncitizen. *See*, *e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (stating that Hispanic appearance alone is not enough to justify a seizure for immigration purposes). At the very least, these questions with respect to DHS, ICE, and Officer Martinez's actual or constructive knowledge of Mr. Creedle's U.S. citizenship, foreign birth or possible alienage create genuine issues of material fact regarding whether Officer Martinez had probable cause to believe Mr. Creedle was removable—issues best resolved through discovery.

Finally, as this Court has already found in its November 28 order, even supposing that Defendant had probable cause of Mr. Creedle's removability when the Detainer was lodged, this would not suffice to establish that Defendant had probable cause to lodge the Detainer. D.E. 105 at 34–35. To do so, Defendant must have also had probable cause to believe "Mr. Creedle was

---

[2] U.S. Immigration & Customs Enforcement, Dep't of Homeland Sec., ICE Directive 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, ¶ 5.1(1) (Nov. 10, 2015), https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf.

likely to escape before a warrant could be obtained for his arrest." *Id.* (citing 8 U.S.C. § 1357(a)(2)). As the Court stated in its order, the Detainer was "insufficient because there is no mention of Mr. Creedle being likely to escape before an arrest warrant could be obtained." D.E. 105 at 36. The Court cited to numerous existing case law in support of this conclusion.[3]

Defendant has not disputed Mr. Creedle's allegation that the Detainer was not supported by a warrant or accompanied by any individualized assessment of Mr. Creedle's risk of flight. *See* D.E. 116 at ¶¶ 63–65. Therefore, Defendant lacked probable cause—and caused Mr. Creedle's false imprisonment—when it lodged the Detainer against him on March 13, 2017.

## II. Mr. Creedle has sufficiently alleged an FTCA claim for negligence predicated on Florida law.

Turning to Count VI, Defendant argues that Mr. Creedle fails to properly state a claim for negligence because "Florida law does not recognize a tort of negligent arrest or negligent investigation, because of a lack of duty owed to the plaintiff . . . or due to the fact that any negligence stemming from an arrest or imprisonment is subsumed by the tort of false imprisonment." D.E. 133 at 4 (discussing *Harris v. Kearney*, 786 So.2d 1222, 1226 (Fla. 4th DCA 2001)); *see also Hernandez v. Metro-Dade County*, 992 F. Supp. 1365, 1369 (S.D. Fla. 1997).

However, the Florida Supreme Court has held that

> [a] *special tort duty* . . . arise[s] when law enforcement officers become *directly involved* in circumstances which place people *within a "zone of risk"* [1] by

---

[3] *Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. 111. 2016) (holding that detainers are invalid for exceeding ICE'S statutory authority because there was no determination of likelihood of escape); *De La Paz v. Coy*, 786 F.3d 367, 376 (5th Cir. 2015) ("[E]ven if an agent has reasonable belief, before making an arrest, there must also be a likelihood of the person escaping before a warrant can be obtained for his arrest") (internal quotations omitted); *United States v. Cantu*, 519 F.2d 494, 496-97 (7th Cir. 1975) (holding that the statutory requirement of likelihood of escape in 8 U.S.C. § 1357 "is always seriously applied"); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) ("Section 1357(a)(2) requires that the arresting officer reasonably believe that the alien is in the country illegally *and* that she is likely to escape before a warrant can be obtained for (her) arrest.") (internal quotations omitted); *Westover v. Reno*, 202 F.3d 475, 479-80 (1st Cir. 2000) (noting that an immigration arrest was "in direct violation'" of Section 1357(a)(2) because "while INS agents may have had probable cause to arrest [plaintiff] by the time they took her into custody, there is no evidence that [plaintiff] was likely to escape before a warrant could be obtained for her arrest").

8

> *creating or permitting* dangers to exist, [2] by taking persons into police *custody*, [3] *detaining* them, or [4] *otherwise subjecting them to danger*.

*Wallace v. Dean*, 3 So. 3d 1035, 1048 (Fla. 2009) (quoting *Pollock v. Fla. Dep't of High. Patrol*, 882 So. 2d 928, 935 (Fla. 2004)). In *Pollock*, the Florida Supreme Court explained that the "premise underlying this theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." 882 So. 2d at 935.

Here, Defendant placed Mr. Creedle in a zone of risk when Officer Martinez, by lodging the Detainer, decided to assume some control over Mr. Creedle, causing his detention by MDCR in order to take custody of him, and threatening him with deportation. Meanwhile, Officer Martinez continually neglected statutory requirements, common law principles, and agency policies plainly aimed at protecting individuals like Mr. Creedle—who openly asserted his U.S. citizenship—from false arrest and wrongful deportation. As explained above, Officer Martinez lodged the Detainer despite DHS and ICE's knowledge of and access to information about Mr. Creedle's U.S. citizenship, despite insufficient evidence of his possible alienage, and without either a warrant or an individualized determination of his likelihood of escape.

Thus, Defendant, through Officer Martinez, owed Mr. Creedle a duty to act with reasonable care and to not subject him to injury when he decided, in the course of his duties, to lodge the Detainer. This duty, owed with respect to this detainer, was specific or particular to Mr. Creedle and was not owed to the general public. Defendant, through ICE and Officer Martinez, breached this duty of care not merely by lodging the Detainer without probable cause but also by their actions once the Detainer was lodged—failing for some time to cancel the Detainer despite the availability of evidence showing Mr. Creedle's U.S. citizenship.

9

Moreover, Defendant's negligence stemmed not merely from the fact that the lodging of the Detainer caused Mr. Creedle's false arrest or imprisonment, but also because it necessarily placed Mr. Creedle at risk of wrongful deportation—the prospect of which contributed to his pain and suffering, humiliation, and emotional harm.

Finally, Mr. Creedle alleges that ICE and DHS owed a related duty under Florida law to adequately supervise Officer Martinez, in order to ensure that he followed all lawful policies and practices in lodging the Detainer, as well as a duty to maintain the accuracy and reliability of the databases on which Officer Martinez relied in lodging the Detainer. Florida law is clear that local authorities and private employers alike can be found liable for negligent training or supervision. *See*, *e.g.*, *Slonin v. City of West Palm Beach*, 896 So. 2d 882 (Fla. 4th Dist. App. 2005); *McFarland & Son, Inc. v. Basel*, 727 So.2d 266 (Fla. 5th Dist. App. 1999); *Mallory v. O'Neil*, 69 So.2d 313 (Fla. 1954). Indeed, Florida courts have found that even if the arresting officer

> acted in good faith reliance on the information communicated to him through "official channels," law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility.
>
> . . . .
>
> If negligent or inadequate recordkeeping is excused merely because a fellow officer is dispatched to make an arrest or, by analogy, effectuate a search without actual knowledge of the negligence, inaccuracies, or inadequacies in the recordkeeping procedure, important safeguards now in place to protect the rights guaranteed by the Fourth Amendment will be lost.

*Albo*, 477 So.2d at 1076 (quoting *People v. Ramirez*, 668 P.2d 761, 765, 768 (1983)); *Douglas*, 796 F. Supp. 2d at 1366.

Mr. Creedle alleges that DHS and ICE breached these duties and, through Officer Martinez, contributed to Defendant's negligence. At the current stage of this litigation—a motion to dismiss

10

under Rule 12(b)(6) of the Federal Rules of Civil Procedure—the Court must accept as true all facts of the Second Amended Complaint and construe them in the light most favorable to Mr. Creedle. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). The Court does not need to determine whether Mr. Creedle's victory is probable. Rather, the inquiry must focus on whether the facts pled, if true, would entitle Mr. Creedle to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

As to his false imprisonment claim under the FTCA, Mr. Creedle has made the following allegations: (1) that Officer Martinez issued the Detainer against Mr. Creedle, D.E. 116 at ¶¶ 56, 99; (2) that Officer Martinez issued the Detainer without any facts amounting to an individualized determination of probable cause, *id.* at ¶¶ 60–61, 64, 100; (3) that Officer Martinez issued the Detainer without a warrant or any factual determination of Mr. Creedle's risk of flight, *id.* at ¶¶ 64–65, 100; (3) that by issuing the Detainer Officer Martinez intentionally caused MDCR to arrest and continue to hold Mr. Creedle against his will after the legal authority for his custody expired, *id.* at ¶¶ 66–70, 100–01; and (4) that this resulted in Mr. Creedle's loss of liberty. *Id* at ¶¶ 66–70, 101–03.

As to his negligence claim under the FTCA, Mr. Creedle has made the following allegations: (1) that Defendant and DHS knew that Mr. Creedle was a U.S. citizen based on documentation submitted to an immigration judge in 2015, *id.* at ¶¶ 50–52; (2) that Mr. Creedle told MDCR officials after he was arrested on March 12, 2017 that he was a U.S. citizen, *id.* at ¶ 59; (3) that Officer Martinez, DHS, and ICE breached their duty to act with reasonable care not to subject Mr. Creedle to injury during the course of their duties when they issued the Detainer, *id.*

11

at ¶¶ 70, 108; (4) that Defendant, ICE and DHS have a duty to properly supervise their agents, *id.* at ¶ 108; (5) that Defendant, ICE and DHS failed to supervise Officer Martinez and that this failure caused Officer Martinez' negligence in issuing the Detainer, *id.* at ¶ 109; (6) that Defendant, ICE, and DHS have a duty to maintain the accuracy and reliability of databases their employees rely upon and their failure to do so caused Officer Martinez' negligence in issuing the Detainer. *Id.* at ¶¶ 111–14.

These facts and allegations, if true, establish Defendant's liability for Mr. Creedle's false imprisonment and, *separately*, for the various negligent acts of its agents and agencies related to issuing the Detainer, failing to supervise its employees, and failing to maintain accurate and reliable databases on which its employees rely upon to issue detainers that, if honored, risk an individual's liberty and subject individuals to wrongful detention and deportation. Contrary to Defendant's contention, Mr. Creedle's negligence claim is not subsumed by his false imprisonment claim.

### III. The discretionary function exception does not apply because Defendant had no discretion to violate federal statutes, regulations or policies.

Defendant's second ground for moving to dismiss Count VI is that it is barred by the FTCA's discretionary function exception. D.E. 133 at 6–14. The discretionary function exception bars FTCA suits that (1) challenge government acts involving an "element of judgment or choice" and (2) are grounded in decisions of "public policy." *United States v. Gaubert*, 499 U.S. 315, 322 (1988). As an initial matter, it is important to note that Defendant asserts that *only* Mr. Creedle's "negligent supervision and negligent maintenance of databases claims are barred by the discretionary function exception." D.E. 133 at 7. Defendant does not assert that Mr. Creedle's false imprisonment and negligence claims are also barred by the discretionary function exception.

12

Defendant first argues that how and to what extent DHS and ICE supervise employees like Officer Martinez is an issue of "judgment or choice" which depends on policy considerations including decisions about "priorities." D.E. 133 at 12. However, Mr. Creedle's allegations raise questions about ICE and DHS's faithful implementation or operation of their supervisory policies in relation to Officer Martinez. He is not challenging those agencies' broader policy decisions, such as what to include in such supervisory policies. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (distinguishing challenges to a City's "policy decisions regarding what to include in the training of its police officers," to which the discretionary function exception applies, from challenges to "the implementation or operation of the City's police training program as it relates to . . . officers [who were] involved in [a] shooting").

As Defendant concedes, "the discretionary function exception…does not apply where the challenged conduct violates a mandatory regulation or policy that allows no judgment or choice." D.E. 133 at 13; *see also Berkovitz v. United States,* 486 U.S. 531, 536 (1988) (finding that a government act has no element of judgment or choice where a "federal statute, regulation or policy specifically prescribes a course of action for the employee to follow"); *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).

Here, federal regulations, statutes, and the Constitution itself circumscribe an ICE officer's discretion to issue immigration detainers. Regulations limit the issuance of immigration arrest warrants to certain immigration officials who have been "authorized or delegated" such authority. 8 C.F.R. § 287.5(e)(2).[4] And the power of civil immigration arrest is limited to "immigration officers who have successfully completed basic immigration law enforcement training." 8 C.F.R.

---

[4] It has been reported that ICE agents across the country are regularly issuing administrative arrest warrants—which typically accompany detainers—without the supervisory review that is required by law. Bob Ortega, *ICE Supervisors Sometimes Skim Required Review of Detention Warrants, Emails Show*, CNN (Mar. 13, 2019), https://www.cnn.com/2019/03/13/us/ice-supervisors-dont-always-review-deportation-warrants-invs/index.html.

13

§ 287.5(c)(1). Moreover, as this Court has already found, federal law "allows for a warrantless arrest only if ICE has 'reason to believe' that the suspected removable individual 'is likely to escape before a warrant can be obtained for his arrest'" and whether there is probable cause to believe that the individual is removable from the United States. D.E. 105 at 31, 34–35 (quoting 8 U.S.C. § 1357(a)(2)). Without such a determination, "ICE exceeds its statutory authority under Section 1357(a)(2) by issuing a detainer against such individual." D.E. 105 at 25–26.

The Detainer was not accompanied by a warrant, requiring DHS, ICE, and Officer Martinez to comply with section 1357(a)(2). D.E. 105 at 31. Thus, ICE and DHS had no discretion with respect to their obligations to adequately supervise Officer Martinez *at least* in accordance with their own policies and federal law by ensuring that, before he issued the Detainer, he "had probable cause to believe both (1) that Mr. Creedle was removable from the U.S., and (2) that Mr. Creedle was likely to escape before a warrant could be obtained for his arrest." D.E. 105 at 34–35. Officer Martinez' failure to obtain a warrant, to obtain available evidence of Mr. Creedle's citizenship, and to otherwise refrain from lodging the detainer before establishing probable cause of Mr. Creedle's removability and risk of flight bring his conduct outside the reach of the discretionary function exemption's limited reach. *See Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, (D.C. Cir. 1986) ("An employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function exception was enacted to protect.").

Similarly, Defendant's argument that "decisions by DHS and ICE officials on the design of computer databases for use by DHS agents and employees are plainly susceptible to policy analysis" and involve "[c]ompeting considerations," D.E. 133 at 12, ignores relevant federal statutory requirements. Notably, the Administrative Procedure Act requires that agencies "collect

14

information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights" 5 U.S.C. § 552a(e)(2), and that agencies "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Here, Officer Martinez' failure to obtain information about Mr. Creedle's U.S. citizenship either directly from him or from databases and other sources at ICE and DHS raises questions about ICE and DHS' compliance with these statutory requirements.

Defendant's broad statement that "there was no federal statute, regulation, or policy that was violated by ICE supervisors in their supervision of Officer Martinez" in this case, D.E. 133 at 13, is conclusory and, at this motion to dismiss stage, premature. It also entirely overlooks the fact that, as explained above, the lodging of the Detainer itself violated federal statutes, regulations and policies—and, at any rate, involved an action "not the kind that involve weighing important policy choices." *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir.1982); *Uroza v. Salt Lake County*, 2013 U.S. Dist. LEXIS 24640, *25–26 (D. Utah. Feb. 21, 2013).

Notably, even if specific conduct qualifies as a "discretionary act," the discretionary function exception "does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription." *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (stating that "[a]t least seven circuits . . . have either held or stated in dictum that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority"). In *Raz v. United States*, for example, the Eighth Circuit found that "the FBI's 'alleged surveillance activities f[e]ll outside the FTCA's discretionary-function exception' where the plaintiff had 'alleged they were conducted in violation

15

of his First and Fourth Amendment rights.'" *Loumiet*, 828 F.3d at 943 (quoting *Raz v. United States*, 343 F.ed 945, 948 (8th Cir. 2003)).

Mr. Creedle has sufficiently and consistently alleged that Officer Martinez's conduct in issuing the Detainer violated his Fourth Amendment rights. *See* D.E. 116 at ¶¶ 92–95. Further, this Court has already found that Mr. Creedle has stated a Fourth Amendment claim against ICE and DHS. *See* D.E. 105 at 31–37. Therefore, regardless of whether ICE, DHS, or Officer Martinez's conduct qualifies as "discretionary acts," the discretionary function exception does not apply because Mr. Creedle has sufficiently alleged that such conduct violated his Fourth Amendment rights. Thus, Defendant cannot escape liability for the unconstitutional actions of its agents and agencies by asserting the discretionary function exception.

Therefore, Defendant has failed to establish that the discretionary function exception bars Count VI.

## CERTIFICATE OF SERVICE

I hereby certify that, on March 26, 2019, I electronically served a true and correct copy of the foregoing on counsel for Defendant via transmission of a Notice of Electronic Filing generated by the CM/ECF system of the U.S. District Court of the Southern District of Florida.

Respectfully submitted,

| | |
|---|---|
| REBECCA SHARPLESS<br>Florida Bar No. 0131024<br>IMMIGRATION CLINIC<br>UNIVERSITY OF MIAMI SCHOOL OF LAW<br>1311 Miller Drive Suite E-273 Coral Gables, Florida 33146 Tel: (305) 284-3576, direct | By: /s/ Amien Kacou<br>AMIEN KACOU<br>Florida Bar No. 44302<br>ACLU FOUNDATION OF FLORIDA, INC.<br>4023 N. Armenia Avenue, Suite 450<br>Tampa, FL 33607<br>Tel: (813) 288-8390 |

| | |
|---|---|
| Tel: (305) 284-6092, clinic<br>rsharpless@law.miami.edu<br><br>IRA J. KURZBAN<br>Florida Bar No. 225517<br>EDWARD F. RAMOS<br>Florida Bar No. 98747<br>IAN K. SHAW<br>Florida Bar No. 115167<br>KURZBAN KURZBAN TETZELI &<br>PRATT, P.A.<br>131 Madeira Avenue,<br>Coral Gables, Florida 33134<br>Tel: 305-444-0060<br>Fax: 305-444-3503 | |