UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

       Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and the
UNITED STATES OF AMERICA,

       Defendants.

_____/

### DEFENDANT UNITED STATES OF AMERICA'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant United States of America, by and through its undersigned counsel, files its

Reply to Plaintiff's Response to Motion to Dismiss Second Amended Complaint and states:

I.      DEFENDANT UNITED STATES OWED NO COMMON LAW DUTY OF CARE TO CREEDLE UNDER FLORIDA LAW

In his response, Creedle argues that the United States owed him a common law duty of

care because Officer Martinez "decided to assume some control over Mr. Creedle."  D.E. 137 at

9.  He relies upon Wallace v. Dunn, 3 So.3d 1035 (Fla. 2009), where the Florida Supreme Court

applied the "undertaker's doctrine."   The Court found that sheriff's deputies responding to a 911

call undertook to check on the welfare of the decedent, Brenda Wallace, and negligently

increased the risk of harm by failing to call an ambulance, despite suggestions by a neighbor that

Wallace was in a diabetic coma.  Id. at 1041.  Because the deputies assumed this duty of care,

they owed Wallace a duty to reasonably discharge that duty.

The plaintiff, Kelly Wallace, lived in another state, and became concerned when she could not contact her mother, Brenda Wallace. Id. at 1043. Kelly contacted Marjorie Ginder, Brenda's neighbor, and asked her to check if Brenda was safe. Marjorie went next door, knocked repeatedly on the windows and doors of Brenda's home, but did not receive any response. Marjorie call 911 and two Marion County Sheriff's deputies responded. Marjorie told the deputies about Brenda's situation.

One of the deputies entered Brenda's home through an unlocked window, and allowed the other deputy, Marjorie Ginder, and Ginder's father, to enter the home. The deputies found Brenda lying in a makeshift bed, breathing but totally unresponsive. They screamed her name and shook her, in an attempt to rouse her. Brenda remained completely unresponsive. Ginder asked the deputies to summon an ambulance, but the deputies rebuffed this request by stating that was unnecessary because Brenda was merely sleeping. Ginder's father suggested Brenda might have lapsed into a diabetic coma, to which one of the deputies replied, "One does not snore if in a diabetic coma." Id. Ginder and her father relied upon the deputies' assurances that Brenda was sleeping, and their continued affirmation that emergency help was not required. The deputies left one of Brenda's side doors open, so Ginder could check on her at a later time.

The next day, Ginder went to check on Brenda, and found she had soiled herself, and was in the same position as when the deputies departed. Ginder called 911 and asked for an ambulance to be dispatched. Brenda was taken to the hospital where she died several days later without regaining consciousness.

In Wallace, the Florida Supreme Court examined its jurisprudence on the existence of a duty of care owed by government entities as set out in Trianon Park Condominium Ass'n. v. City of Hialeah, 468 So.2d 912, 919-21 (Fla. 1985). Id. at 1047-51. It found that under category II,

2

enforcement of laws and the protection of the public safety, the Court found that duties are owed to the public at large, but a plaintiff must be given an opportunity to plead facts alleging that the government actor owed the alleged tort victim a special duty of care.  3 So.3d at 1047-48.

Creedle cites to this passage from Wallace:

> [a] *special tort duty . . .* arise[s] when law enforcement officers become *directly involved* in circumstances which place people *within a "zone of risk"* [1] by *creating or permitting* dangers to exist, [2] by taking persons into police *custody*, [3] *detaining* them, or [4] *otherwise subjecting them to danger.*

D.E. 137 at 8-9, citing Wallace, 3 So.3d at 1048.

Wallace is inapposite because Officer Martinez never undertook any duty to Creedle. He never physically detained Creedle, nor did he assume any control over Creedle.   In Wallace, the Florida Supreme Court, in finding a common law duty of care existed, stated:

> Here, the Sheriff's deputies did not attempt to enforce any law and certainly were not engaged in the protection of the general public; instead, they affirmatively sought to provide a service (a 911 safety check) to a specific individual, Brenda Wallace (the decedent).

In contrast, Officer Martinez was attempting to enforce federal law by investigating Creedle to determine whether he was unlawfully present in the United States.   Further, he was engaged in the protection of the general public by investigating whether an individual arrested for domestic violence was an alien unlawfully present in the United States.   Creedle did not rely upon Officer Martinez to provide a service to him, nor did he rely upon any advice given by Martinez. In short, Officer Martinez did not undertake to perform any duty to Creedle.

Creedle fails to allege facts supporting the existence of a duty of care owed to him by the United States.   As Count VI alleges negligence on the part of the defendant United States, Creedle must establish he was owed a duty of care under Florida law by the United States before a waiver of the United States' sovereign immunity can occur.  See 28 U.S.C. § 1346(b)(1)

(district court's subject matter jurisdiction  limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").  Officer Martinez did not undertake to perform any service for Creedle.   Martinez's supervisors did not owe Creedle any tort duty to exercise reasonable care in supervising him.  Harris v. Kearney, 786 So.2d 1222, 1226 (Fla. 4th DCA 2001)("Kearney's actions in how she supervises her agents in enforcing the public assistance fraud laws does not carry with them a corresponding duty of care to the individual citizen who may be affected by such actions.").  Therefore, Creedle's negligence claims should be dismissed.

II.      THE DISCRETIONARY FUNCTION EXCEPTION BARS PLAINTIFF'S NEGLIGENT SUPERVISION AND FAILURE TO MAINTAIN ADEQUATE DATABASES CLAIMS

In an attempt to overcome the discretionary function exception, 28 U.S.C. § 2680(a), Creedle contends that "federal regulations, statutes, and the Constitution itself circumscribe an ICE officer's discretion to issue immigration detainers."[1]  D.E. 137 at 13.   He relies upon 8 C.F.R. § 287.5 and two provisions in the Privacy Act.

The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  Berkovitz v. United States, 486 U.S. 531, 536 (1988).   The federal statute, regulation, or policy must embody a "fixed or readily ascertainable standard," before a government employee's conduct will not fall within the discretionary function exception.   Autery v. United States, 992 F.2d 1523, 1529 (11th

---

[1] Creedle notes that "[d]efendant does not assert that Mr. Creedle's false imprisonment and negligence claims are also barred by the discretionary function exception." D.E. 137 at 12.  In Nguyen v. United States, 556 F.3d 1244 (11th Cir. 2009), the Eleventh Circuit held that the law enforcement proviso in 28 U.S.C. § 2680(h), which waives sovereign immunity for certain law enforcement torts, including false imprisonment, trumped the discretionary function exception in § 2680(a).   Insofar as claims for negligent investigation, the Eleventh Circuit applied the discretionary function exception to bar a claim for negligent or reckless execution of an arrest warrant.  Mesa v. United States, 123 F.3d 1435 (11th Cir. 1997).  In Douglas v. United States, 796 F.Supp.2d 1354 (M.D.Fla. 2011), a case cited by Creedle, the district court held that the plaintiff's claim that the government negligently investigated his derivative citizenship claim was barred by the discretionary function exception.  Id. at 1368-69.

4

Cir. 1993)(citations omitted).    Since defendant asserted the discretionary function exception as to Creedle's negligent supervision and negligent maintenance of records claims, Creedle must identify a federal statute, regulation, or policy, embodying a fixed or readily ascertainable standard:  (1) that a federal employee violated in his or her supervision of Officer Martinez, and/or (2) in the maintenance of files and databases, before the discretionary function exception can be overcome.

As to the negligent supervision claim, Creedle has identified no federal statute, regulation, or policy, which imposed a duty on Officer Martinez's supervisor regarding the manner in which Martinez was to be supervised.   8 C.F.R. § 287.5 pertains to the exercise of power by immigration officers; it does not provide mandatory guidance on the supervision of immigration officers.  Instead, Creedle points to the alleged deficiencies in Officer Martinez's lodging of the detainer, and attributes it to the lack of supervision.  D.E. 137 at 14.   This is insufficient to avoid the application of the discretionary function exception.  "[U]nless a 'federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard,' it will be presumed that the particular act involved an element of judgment or choice."  Zelaya v. United States, 781 F.3d 1315, 1330 (11th Cir. 2015), citing Autery, 992 F.2d at 1529.

As to the negligent management of databases claim, D.E. 116 at 18, ¶ 112-113, Creedle maintains that two provisions in the Privacy Act, 5 U.S.C. §§ 552a(e)(2) and 552a(e)(5) apply. D.E. 137 at 14-15.   Section 552a(e)(2) provides that each agency that maintains a system of records shall, "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs," while section 552a(e)(5) provides that

the agency shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."

Neither of these provisions provide a fixed or readily ascertainable standard which the government agency must follow.   Congress's use of phrases such as "to the greatest extent practicable" in § 552a(e)(2), and "as is reasonably necessary to assure fairness to the individual in the determination" in § 552a(e)(5), demonstrate that decisions as to what should be included in agency records is left to the discretion of agency officials.  Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1997)(Postal Service guidelines for security at post offices provided "ample room for postal employees to exercise judgment and choice.").   In Freeman v. United States, 556 F.3d 326 (5th Cir. 2009), the Fifth Circuit found that the DHS National Response Plan (NRP), which contained guidelines for the federal government's response to natural disasters, were not mandatory directives sufficient to overcome the government's assertion of the discretionary function exception.  "[P]laintiffs cite a large number of NRP provisions that contain generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow."  Id. at 338.   In the same vein, the two Privacy Act provisions cited by Creedle are too general and aspirational to provide the fixed, readily ascertainable standard required to be a mandatory directive under the discretionary function exception.

Creedle also contends the discretionary function exception does not apply if the alleged tortious conduct also violates the constitution.  D.E. 137 at 15-16.  Creedle contends Officer Martinez violated his Fourth Amendment rights by lodging a detainer against him without probable cause, but he has not identified any constitutional violation by Martinez's supervisors.

6

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)(emphasis in original).  Since there is no constitutional violation alleged for Martinez's supervisors, the discretionary function exception can be applied to Creedle's negligent supervision claim.

As to the negligent management of databases claim, there is no constitutional right to have the government maintain records on individuals at a certain level of accuracy and reliability.  Therefore, the discretionary function exception applies to that claim also.

### III.   OFFICER MARTINEZ HAD PROBABLE CAUSE TO LODGE THE DETAINER AGAINST CREEDLE

Creedle contends that he alleged in his second amended complaint that "DHS and ICE knew – and that Officer Martinez should have known – that Mr. Creedle was a U.S. citizen, based on documentation he submitted to these agencies in 2015 proving he was a U.S. citizen." D.E. 137 at 6, citing D.E. 116 at ¶¶ 50-52.    This is incorrect since paragraphs 50, 51, and 52 of the second amended complaint only allege what occurred in Creedle's 2015 removal proceeding, not that Officer Martinez should have known of it.   Creedle attempts to refute defendant's assertion that Martinez's knowledge of his 2015 removal proceeding provided a basis for believing he was amenable to being removed from the United States by arguing that defendant "does not suggest that Officer Martinez knew about the 2015 arrest at the time the Detainer was lodged." D.E. 137 at 6.

Creedle cannot have it both ways.   He cannot assail Officer Martinez for not knowing that his 2015 removal proceeding was terminated because he was determined to be a U.S. citizen, and also challenge his knowledge of the 2015 arrest.  Creedle's previous arrest by immigration authorities was an appropriate factor for Officer Martinez to consider in his analysis of whether

Creedle was unlawfully present in the United States.

In its motion to dismiss, defendant stated that many of the grounds for removal do not require a conviction of a criminal offense.  D.E. 133 at 15.   In particular, defendant stated that "violators of domestic violence protection orders may be deported."  Id. citing 8 U.S.C. § 1227(a)(2)(A)(ii).   This statutory reference was a typographical error, as the correct provision is "§ 1227(a)(2)(E)(ii)," entitled "Violators of protection orders."   The provision is important since Creedle was arrested for domestic violence, which could be the ground for removal if there was a protection order violated.   This was an appropriate factor for Officer Martinez to consider in deciding whether Creedle was amenable to being removed.

The first page of the Request for Voluntary Transfer, signed by Officer Martinez, is attached to the second amended complaint.  D.E. 116-1 at 12.   Under  "Suspected or Known Citizenship," Martinez indicated "Honduras."   Plainly, Officer Martinez believed Creedle was a citizen of Honduras, and Creedle admits he was born in Honduras.   Officer Martinez could reasonably rely upon Creedle's birth in Honduras to believe he was a citizen of Honduras. "Evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the individual in removal proceedings to prove citizenship."  Cover v. U.S. Att'y General, 572 F. App'x 778, 783 (11th Cir. 2014).

Officer Martinez believed Creedle was a citizen of Honduras based on his birth in Honduras, not because of any appearance of Hispanic ancestry.   Indeed, there is no allegation that Martinez ever saw Creedle.    In United States v. Brignoni-Ponce, 422 U.S. 873, 886 (1975), the Supreme Court held that an individual's appearance of Mexican ancestry, standing alone, was an insufficient basis to believe the person is an alien, and to stop a vehicle in which the person was in.   Officer Martinez believed Creedle was a Honduran citizen based on Creedle's

8

birth in Honduras, not Creedle's appearance.    Thus, <u>Brignoni-Ponce</u> is inapplicable.

Officer Martinez lodged the detainer on March 13, 2017.  D.E. 116, ¶ 56.  At that time, ICE did not require that a warrant of arrest be attached to the detainer.[2]  Title 8, United States Code, section 1357(a)(2), provides that authorized immigration officers may "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens] and is likely to escape before a warrant can be obtained for his arrest … ."

Section 1357(a)(2) permits arrest without a warrant if the person "is likely to escape before a warrant can be obtained for his arrest."   Nothing in § 1357(a)(2) requires an immigration officer to provide a written statement of reasons as an attachment to a detainer, stating the reasons for the officer's belief that the subject of the detainer is likely to escape before a warrant can be obtained.   Law enforcement officers making warrantless arrests are not required by the Constitution to provide the arrestee a statement of reasons supporting probable cause, in lieu of an arrest warrant.  Thus, the validity of a detainer is not impacted by the lack of a statement of reasons justifying a finding of likelihood of escape before a warrant can be obtained.

Officer Martinez reasonably relied upon Creedle's birth in Honduras to believe he was not a citizen of the United States.  Further, his arrest for domestic violence, as well as his previous arrest by immigration authorities, provided a sufficient basis to believe Creedle was amenable to being placed in removal proceedings.

---

[2] ICE Policy No. 10074.2, which imposed the requirement of attaching a warrant of arrest, became effective on April 2, 2017.

CONCLUSION

Creedle's negligence claims should be dismissed because he fails to allege a violation of

a state law tort duty by defendant.   Further, the discretionary function exception applies to his

negligent supervision and negligent maintenance of databases claims.   Finally, Officer Martinez

had probable cause to lodge the detainer against Creedle.

Dated:  April 10, 2019                              Respectfully submitted,

                                                   ARIANA FAJARDO ORSHAN
                                                   UNITED STATES ATTORNEY


                                   By:     __s/ Dexter A. Lee_____
                                           DEXTER A. LEE
                                           Assistant U.S. Attorney
                                           Fla. Bar No. 0936693
                                           99 N.E. 4th Street
                                           Miami, Florida   33132
                                           (305) 961-9320
                                           Fax:  (305) 530-7139
                                           E-mail:  dexter.lee@usdoj.gov

                                           ATTORNEY FOR DEFENDANT
                                           UNITED STATES OF AMERICA

                          CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that, on April 10, 2019, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.


                                           ___s/ Dexter A. Lee_____
                                           DEXTER A. LEE
                                           Assistant U.S. Attorney

<u>SERVICE LIST</u>

Garland Creedle v. Miami-Dade County, et al.,
Case No. 17-22477-CIV-WILLIAMS
United States District Court, Southern District of Florida

Rebecca Sharpless
Fla. Bar No. 0131024
Immigration Clinic
University of Miami School of Law
1311 Miller Drive Suite E-273
Coral Gables, Florida  33146
(305) 284-3576 (direct)
(305) 284-6092 (clinic)
rsharpless@law.miami.edu

ATTORNEY FOR PLAINTIFFS


Dexter A. Lee, AUSA
Office of the U.S. Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida  33132
(305) 961-9320
Fax:  (305) 530-7139
E-mail:  dexter.lee@usdoj.gov

ATTORNEY FOR DEFENDANT
UNITED STATES OF AMERICA