UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22477-CIV-WILLIAMS

GARLAND CREEDLE,

Plaintiff,

vs.

MIAMI-DADE COUNTY, Florida;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT; and
UNITED STATES OF AMERICA;

Defendants.

_____/

**FEDERAL AGENCY DEFENDANTS REPLY
IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' Response (Resp.) to Federal Agency Defendants' Motion to Dismiss his Second Amended Complaint (SAC) fails to demonstrate any basis for denying the motion. While Plaintiff asserts that he has standing and the relief he requests is not moot, it is clear that his claims against Federal Agency Defendants must be dismissed for lack of jurisdiction because Plaintiff cannot seek declaratory relief as there is no real and immediate possibility that he will again be subject to a detainer. He therefore lacks standing. Even if he had standing, his request for relief is moot because Federal Agency Defendants have changed their detainer policies since the time of the allegations underlying this lawsuit.

On the merits, Plaintiff abandons his argument that Federal Agency Defendants are prohibited from issuing a detainer "without a determination [Plaintiff] was likely to escape, in violation of the limitation placed by 8 U.S.C. § 1357," SAC ¶ 89, because he fails to raise any arguments in support. He argues that the issuance of his detainer violated the INA because Miami-Dade County did not have a formal § 287(g) agreement authorizing ICE to send such detainers or Miami-Dade to cooperate with them. But as Federal Agency Defendants argued, the Fifth Circuit Court of Appeals and numerous federal district courts have held that claim is baseless, and it must be dismissed. Plaintiff also contends that the issuance of a detainer to him violated the Fourth Amendment. But this

1

argument cannot survive a motion to dismiss for the simple reason that as a matter of law, the issuance of a facially valid detainer which articulates its basis for probable cause does not constitute a seizure, let alone an unlawful one. Accordingly, this claim also must be dismissed.

## I.   Plaintiff lacks Article III standing to seek prospective declaratory relief.

Federal Agency Defendants argued that Plaintiff's claims must be dismissed because he lacks standing to seek his requested prospective declaratory relief. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999). Even if a plaintiff has standing to obtain damages to redress *past* injury, to obtain the prospective declaratory relief Plaintiff is seeking as to the Federal Agency Defendants, he must demonstrate that he is "likely to suffer future injury from" the challenged conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Plaintiff argues that the past issuance of a detainer to him in 2017 is all the proof he needs to show that issuance of another detainer is likely, because his immigration court proceedings—at which ICE concluded he was a citizen—had resolved prior to the issuance first detainer. Resp. at 5. But the showing he must make is whether a detainer will ever be placed on him *again*, not whether one was *previously* erroneously placed. His earnest assertions that he *could* be subject to another detainer in the future ignore the fact that since the filing of this lawsuit, ICE has updated its records to reflect that Plaintiff is a citizen, Plaintiff was arrested again by Miami-Dade County, and no detainer was either issued or cooperated with. *See* Ripa Declaration, ECF No. 134-1; IAR Response, ECF no. 134-3; Miami-Dade County Motion to Dismiss Exhibit: Inmate Profile System, ECF no. 119-6. Furthermore, Miami-Dade County will not cooperate with another detainer for Plaintiff even if one were issued. *See* Miami-Dade County Motion to Dismiss Exhibit: Declaration of Deroda Bennet, ECF no. 119-8.

Even disregarding the evidence put forth by Federal Agency Defendants that ICE's records now reflect that Plaintiff is a United States citizen, and that when he was arrested again no detainer was issued or cooperated with, Plaintiff himself can avoid *any* potential injury associated with any hypothetical future detainer by refraining from further criminal conduct and getting arrested again, as ICE policy provides that ICE may issue a detainer *only* when a state or local agency has arrested the alien for a *criminal* offense. ICE Policy No. 10074.2 ¶ 2.5. A showing that Plaintiff will again be subject to an ICE detainer under the new policy would require him to demonstrate that he is likely to commit

more crimes and be arrested. This simply cannot support standing because Plaintiff is "able—and indeed *required by law*—to prevent such a possibility from occurring." *Spencer v. Kemna*, 523 U.S. 1, 15 (2003) (emphasis added). Courts "assume that [individuals] will conduct their activities within the law and so avoid prosecution and conviction." *O'Shea*, 414 U.S. at 497. Thus, even though Plaintiff attempts to raise disputes about ICE's records, he simply cannot overcome the standing hurdle by alleging he will commit further crimes and will therefore potentially be subject to another detainer. S*ee also Lopez-Lopez v. Allegan Cty.*, Case No. 1:17-cv-786, pp. 5-7 (W.D. Michigan) (attached to Federal Agency Defendants' first Motion to Dismiss, ECF No. 69-2) (finding plaintiff lacks standing to challenge detention in response to an ICE detainer because he was "unable to meet the *Lyons* standard because it would require showing a likelihood that he will again be arrested and detained on state criminal charged and subject to a subsequent ICE detainer. This is precisely the type of speculative theory that does not withstand scrutiny"). Plaintiff's speculative assertions are simply not sufficient to demonstrate standing in light of the evidence.

In his response, Plaintiff asserts for the first time that the Court's consideration of the Ripa declaration attached to the motion to dismiss is improper. This argument is meritless. It is well established that "under a factual attack to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), 'the district court may consider extrinsic evidence such as testimony and affidavits.'" *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2018 WL 4932282, at *3 (S.D. Fla. Oct. 10, 2018), *reconsideration denied*, No. 18-CV-60912, 2019 WL 78983 (S.D. Fla. Jan. 2, 2019) (citing *Morrison v. Amway Corporation,* 323 F.3d 920, 924 n.5 (11th Cir. 2003)). Consideration of this evidence, such as the Court did in ruling on Federal Agency Defendants' previous motion to dismiss, is entirely proper. Furthermore, it is telling that Plaintiff only chooses to raise this argument now, despite the fact that a similar, though less detailed, declaration was submitted with Federal Agency Defendants' first motion to dismiss (ECF No. 69-1), and the *identical* declaration that Plaintiffs now challenge was attached to Miami-Dade County's motion to dismiss (ECF No. 119-7), along with another similar declaration from a County employee (ECF No. 119-8.) Plaintiff failed to challenge the inclusion of any of these declarations, and his belated argument that the Court should not consider of the Ripa declaration should be rejected.[1]

---

[1] Plaintiffs undermine their argument that nothing outside the complaint should be considered by citing to a news article from CNN and a recent press release issued by the ACLU.

Accordingly, because he lacks standing to seek his requested relief, Plaintiff's claims against Federal Agency Defendants must be dismissed.

## II.     Plaintiffs requested relief is moot.

Plaintiff frankly admits that he crafted his SAC to request prospective declaratory relief, as this Court dismissed his previous claims for retrospective injunctive relief. *See* SAC p. 4 ("The SAC also modified Mr. Creedle's requests for declaratory relief against the Federal Agency Defendants to clarify: (1) that these claims do not include monetary damages claims; and (2) that the requests seek *prospective* relief.") But despite couching his request for relief in different language—namely, by arguing that Federal Agency Defendants have a "continued practice"[2] of issuing detainers in the same manner that caused Plaintiff's alleged injury—this does not change the fact that the policy governing ICE's issuance of detainers has changed since this lawsuit.   Plaintiff's requested relief as to Federal Agency Defendants—solely a declaration that ICE's issuance of detainers in the manner one was issued to him exceeds the agency's statutory authority and violates the Fourth Amendment—is moot, because it would have no force or effect going forward given ICE's 2017 policy change. Such a declaration is an empty request for relief that would require the Court to issue an impermissible advisory opinion. "A declaration that [] past conduct violated Emory's constitutional rights and Georgia law would [be] nothing more than a gratuitous comment without any force or effect." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (internal quotation omitted). Because Plaintiff cannot, as discussed above, make the required showing that he will suffer injury in the future, and his request for relief is "nothing more than a gratuitous comment without any force or effect," *id.*, his claims against Federal Agency Defendants must be dismissed.

## III.     Even if Plaintiff had standing and his requested relief was not moot, he fails to state a claim.

Even if Plaintiff had standing, and his requested relief was not moot, his claims fail on the merits, because Federal Agency Defendants do not need a § 287(g) agreement to issue a detainer to Miami-Dade County, and Federal Agency Defendants did not violate Plaintiff's Fourth Amendment rights by issuing a detainer against him because there was never any seizure, let alone an unreasonable one.

### A. ICE does not need a § 287(g) agreement to issue a detainer to Miami-Dade County, and Miami-Dade County does not need a § 287(g) agreement to cooperate.

---

[2] Even if Plaintiff did have standing, he would only have standing to seek to redress his injuries, which did not arise under the current detainer policy.

4

First, Plaintiff has abandoned his argument that "Congress limited Defendant ICE's authority to make warrantless arrests by requiring a determination that the person being arrested was likely to escape" and that Federal Agency Defendants acted *ultra vires* by not making these findings prior to issuing a detainer to Plaintiff, SAC ¶ 87, because he fails to raise any arguments in support in response to the arguments presented in Federal Agency Defendants' motion to dismiss. He merely notes that his complaint raised this claim.[3] But that is not enough. *See, e.g., Bryant v. Citigroup Inc.,* 512 F. App'x 994, 995 (11th Cir. 2013) ("an issue may be deemed abandoned where a party only mentions it in passing, without providing substantive argument in support."). Because Plaintiff has failed to respond to Federal Agency's arguments regarding his claim that ICE must make an individualized determination of his likelihood to escape before a detainer could be issued, that claim must be dismissed.

Second, Plaintiff's contention that Federal Agency Defendants must have a written § 287(g) agreement with Miami-Dade County in order to request cooperation from Miami-Dade through a detainer is wrong. The INA explicitly envisions local cooperation, and authorizes local officers to "cooperate" with federal officials "in the identification, apprehension, detention, or removal of aliens." 8 U.S.C. § 1357(g)(10)(B). According to the statute, that cooperation expressly does "**not**[]" "require an agreement," (emphasis added) and nothing in the statute suggests that local officers need formal training before cooperating with federal enforcement efforts at the specific request and direction of the federal government, such as the case with detainer requests. *Id.* § 1357(g)(10). Plaintiff's argument was recently rejected by the Fifth Circuit. *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018). As that Court explained, the INA, through section 1357(g)(10)(B), "indicates that Congress intended local cooperation without a formal agreement," and without "a written agreement, training, and direct supervision by DHS . . . in a range of key enforcement functions." *Id.* That is, the issuance of immigration detainers to jurisdictions without § 287(g)

---

[3] Plaintiff notes that Federal Agency Defendants renewed their argument that Plaintiff "lacks standing to seek prospective declaratory relief against ICE's practice of issuing detainers to Miami-Dade County without making an individualized assessment of the detainer subject's likelihood of escape and without a formal agreement under Section 1357(g)." This is not an argument that Federal Agency Defendants are required to make a determination that Plaintiff was likely to escape, but instead is simply a summary of Federal Agency Defendants' argument. Similarly, Plaintiff simply reiterates that he raised this claim in his SAC. *See* Resp. p. 10 "Plaintiff alleges that ICE exceeded its statutory authority and violated the Fourth Amendment by issuing detainers without any individualized assessment of flight risk or probable cause. . ."; *see also* p. 11 "Mr. Creedle has alleged injuries due not only to ICE's continued practice of issuing detainers without an individualized determination of flight risk."

agreements, and cooperation by those jurisdictions with immigration detainers, such as what happened in this case, is permitted and envisioned by the INA without any of the formal training and certification requirements necessary for "state and local officials [to] become de facto immigration officers, competent to act on their own initiative" under a formal § 287(g) agreement. *Id.* And despite Plaintiff's argument that Arizona supports their conclusion, a panel (at the stay stage) of the Fifth Circuit considered and rejected this argument, holding that "nothing in *Arizona v. United States*, 567 U.S. 387 (2012), prohibits such assistance" and "8 U.S.C. § 1357(g), provides for such assistance." *See City of El Cenizo, Texas v. Texas*, 2017 WL 4250186, *1-2 (5th Cir. Sept. 25, 2017). *See also Tenorio-Serrano v. Driscoll*, 324 F.Supp.3d 1053, 1065 (D. Ariz. July 6, 2018) ("the Court is not persuaded at this stage that § 1357(g) prohibits Defendants from complying with detainers. Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual. This conduct appears to fall within § 1357(g)(10)(B)."); *Perez-Ramirez v. Norwood*, 322 F.Supp.3d 1169, 1172 (D. Kan. July 18, 2018) (holding that compliance with ICE detainer was lawful).

In making this argument, Plaintiff ignores the differences between the actions that a local jurisdiction may take when cooperating with a request from ICE, and when authorized by a formal § 287(g) agreement. Under a formal agreement, local officers undergo the training necessary to "perform [the] function of an immigration officer," 8 U.S.C. § 1357(g)(1)—allowing them to enforce immigration law *unilaterally*, without any triggering request from the federal government to do so. *See Arizona*, 567 U.S. at 409-10 (explaining when DHS "grant[s] that authority to specific officers" through formal agreement). This is quite different than what happened here, which was cooperation that was requested and was limited to the terms of that request, and would be preempted if it happened unilaterally. Under section 1357(g)(10), officers not subject to such agreements may still cooperate absent any formal training, so long as such cooperation is not "unilateral," but at the "request, approval, or other instruction from the Federal Government." *Id.* at 410; *see United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (argument to the contrary is "meritless").

Although Plaintiff argues that *Arizona* supports his contention that a § 287(g) agreement is required because the Supreme Court "gave several examples of actions that likely constituted 'cooperation,'" and did not include detainers, Resp. at 13, the Supreme Court in *Arizona* did not define the outer limits of cooperation permitted by section 1357(g)(10), nor did it hold that cooperation with

6

detainers was impermissible. Instead, it listed a number of examples of permissible cooperation that States and localities may undertake without the training and certification requirements of a formal agreement under 8 U.S.C. § 1357(g)(1), including, but not limited to, "arrest[ing] an alien for being removable" if that arrest is made in response to a "request" from the federal government. 567 U.S. at 410. *Arizona* distinguished between such a scenario—which is permissible under section 1357(g)(10)(B)—and the scenario authorized by the law at issue in *Arizona*: "unilateral state action to detain . . . aliens in custody for possible unlawful presence without federal direction and supervision" and without any federal "request" to do so. *Id.* at 410, 413; *accord El Cenizo*, 890 F.3d at 179-80 (state law requiring cooperation with federal detainers "permit[s] no unilateral enforcement activity" because cooperation only occurs following "a predicate federal request for assistance"). Plaintiffs cite *Santos* in support of their argument, Resp. at 14, but *Santos* actually supports Federal Agency Defendants, as that case recognizes that a local law enforcement agency may detain someone suspected of "civil violations of federal immigration law" under the "express direction or authorization by federal statute or federal officials." *Santos v. Frederick Cty. Bd. of Com'rs*, 725 F.3d 451, 465 (4th Cir. 2013).

Plaintiffs' argument that Federal Agency Defendants' interpretation of § 1357(g) renders § 1252c superfluous is also unavailing. Resp. at 18. 8 U.S.C. § 1252c authorizes local officers to make an arrest and detain an alien when: (1) the alien is illegally present in the United States, and (2) has previously been convicted of a felony in the United States and deported or left the United States after such conviction; *provided* that local law enforcement official obtains confirmation of the alien's status, and "only for such period of time as may be required for the Service to take the individual into Federal custody for purposes of deporting or removing the alien from the United States." § 1252c(a). The fact that Congress chose to give officers confronted with an illegally present criminal alien (confirmed by ICE) additional authority to arrest and detain so that ICE can take custody does not change the fact that Congress also envisioned local officers cooperating with immigration enforcement efforts at the request and direction of the United States. § 1357(g)(10). "This collection of statutory provisions evinces a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws. Viewed against this backdrop, [the] claim that allowing state and local officers to arrest illegal aliens pursuant to preexisting state or local authority would impede the accomplishment of Congress' purposes and objectives in enacting § 1252c is particularly unconvincing." *See United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1300 (10th Cir. 1999). Cooperation at ICE's request, such as through detainers, is manifestly different from cooperation under § 1252c, where officers can affirmatively reach out to ICE for confirmation of an alien's status and ICE's desire

to take custody, allowing them to then exercise arrest and detention powers under § 1252c. *See id.* (holding that both the plain language and legislative history of § 1252c reflect that Congress intended it to displace any Federal limitations on the authority of state and local officers to arrest criminal illegal aliens, but that despite that history, the Court could not identify such limitations. Thus, the Court noted that its "interpretation of § 1252c leaves the provision with no practical effect. That reason standing alone is not, however, sufficient for this court to manufacture a purpose for § 1252c by interpreting it to preempt state law.") *See also Tenorio-Serrano*, 324 F.Supp.3d at 1065 ("it is noteworthy that all of the authorities relied on by Plaintiff address unilateral arrests by state officers. These include the cases cited by Plaintiff, including *Gonzales*, Plaintiff's arguments regarding the need for training and supervision of state officers under § 287(g) agreements, and Plaintiff's arguments regarding 8 U.S.C. § 1252c.").

Because Plaintiff's arguments that Federal Agency Defendants acted in excess of their statutory authority are meritless, this claim must be dismissed.

**B. Plaintiff fails to state a claim for a violation of his Fourth Amendment rights.**

Plaintiff's Fourth Amendment claim is that as applied to him, ICE "unreasonably deprived" him of his Fourth Amendment right to be free from unreasonable searched and seizures when it lodged a detainer with Miami-Dade County. This argument fails for the simple reason that lodging a detainer does not effect a seizure. Under well-settled Fourth Amendment principles, unless and until ICE takes physical custody, there is no seizure by the *Federal Government.*

The Fourth Amendment prohibits unreasonable "seizures." Thus, absent a seizure, there can be no Fourth Amendment violation. For Federal Agency Defendants to effect a Fourth Amendment seizure of a person, the government must exert its authority to "willful[ly]" restrain or constrain the person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). There must be "an intentional acquisition of physical control" by a government actor. *Id.* The government action alleged to be a seizure must be "designed to produce" the seizure. *Id.* at 598. "A seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625 (1991).

Thus, regardless of whether Federal Agency Defendants had probable cause[4] to issue the detainer, as Plaintiff disputes, the relevant question is whether the act of issuing a detainer effects a Fourth Amendment seizure. It does not, for the simple reason that detainers are simply requests—

---

[4] There was probable cause to issue the detainer to Plaintiff, as explained in Officer Martinez's motion to dismiss, ECF no. 68, and in the United States' motion to dismiss and reply, ECF nos. 133 and 141.

not the "physical control" that is the touchstone of a seizure. "All Courts of Appeals to have commented on the character of ICE detainers refer to them as 'requests' or as part of an 'informal procedure.'" *Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014). Thus, cases addressing whether a detainer request effects a Fourth Amendment seizure have emphasized that the detainer does not itself cause the seizure, and that such a seizure instead requires a further, intentional act. *See Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011) ("[D]etainer alone does not cause imprisonment or a seizure by ICE. *Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE.*") (emphasis added); *Nasious v. Two Unknown B.I.C.E. Agents*, 657 F. Supp. 2d 1218, 1223, 1225 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010) ("Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer," and "could not, as a matter of law, constitute a restraint on or deprivation of a liberty"); *see also Hendrickson v. Thurston Cty.*, 2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008) (rejecting Fourth Amendment claim that existence of a warrant on a separate charge "influenc[ed] third-party bail bondsmen to refuse to issue a bond to assist the individual in posting bail"). Indeed, for that reason in the related habeas context, multiple circuits have held "[t]he filing of [a] detainer, standing alone, [does] not cause [the petitioner] to come within the custody of [immigration officials]." *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 623 (11th Cir. 2013) (citing *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir.1990)). *See also Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994) (the issuance of a "bare detainer letter alone does not sufficiently place an alien in INS custody to make habeas corpus available."); *Zolicoffer v. U.S. Dep't of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (collecting cases and agreeing that absent an order of removal, "prisoners are not 'in custody' for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them"). It follows *a fortiori* that the issuance of a detainer request alone, without further action by *ICE*, does not "seize" an alien. Rather, a seizure occurs, if at all, when ICE *arrests* the alien pursuant to a valid administrative warrant (or under the circumstances under which a warrantless arrest may be made), which never happened here. Thus, because there was no seizure, there can be no claim for a Fourth Amendment violation against Federal Agency Defendants.

Likewise, the mere fact that ICE requests through a detainer to be notified of an alien's impending release, or even for an alien to be detained at some future point in time so ICE may take custody, does not render the issuance of a document titled a detainer a seizure, let alone an unreasonable one. A federal request for notification is "simply an administrative mechanism that ensure[s] that upon the completion of his state criminal matter, [the alien] [will] be transferred to

9

federal custody." *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014). Such requests "do not limit [the receiving agency's] discretion" in any way. *Garcia*, 40 F.3d at 303. "[S]tate charges [remain] the impetus for the entire duration of [any] pretrial detention" in such circumstances. *Juarez-Velasquez*, 763 F.3d at 436. A locality's "responding to requests for information about when an alien will be released from their custody," in turn, is a permissible act of cooperation with the federal government and raises no Fourth Amendment concerns. *Arizona*, 567 U.S. at 410.

And even if the issuance of a detainer somehow was a seizure, even though no federal officer effects an arrest or causes a detention at the time the detainer is issued such seizures are fully consistent with the Fourth Amendment. "The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Here, any seizure would have been reasonable because it was supported by probable cause, as evidenced on the face of the detainer. *See* ECF nos. 133 and 141. That any seizure would be reasonable and therefore consistent with the Fourth Amendment is true whether effected by the federal government or a state or local officer at the federal government's request. *See El Cenizo*, 890 F.3d at 187; *see also Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("The Fourth Amendment's meaning [does] not change with local law enforcement practices."). Thus, where, as here, ICE issues a facially valid detainer evidencing probable case, any seizure is fully consistent with the Constitution because "an ICE-detainer request evidences probable cause of removability in every instance." *El Cenizo*, 890 F.3d at 187. Accordingly, as the Fifth Circuit explained, "[c]ompliance with an ICE detainer [] constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts." *Id. Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [an ICE agent's] probable cause determination for the detainer"). Accordingly, this claim must be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims as to Federal Agency Defendants should be dismissed, and Federal Agency Defendants should be dismissed from this case.

Dated:  April 16, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

Attorneys for Federal Agency Defendants

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated:  April 16, 2019                                      Respectfully submitted,

*/s/ Lauren C. Bingham*
Lauren C. Bingham
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section

12